**JUDGE LEISURE**

Gregory P. Joseph (GJ-1210)
Peter R. Jerdee (PJ-1240)
Gregory P. Joseph Law Offices LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: 212-407-1200

*Attorneys for Defendant HealthSouth Corporation*



ECF CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PKL

07 CIV 8490

U.S.D.C. S.D.N.Y.
CASHIERS

| | |
|---|---|
| UBS AG, Stamford Branch, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Index No. _____ |
| -against- | ) |
| | ) |
| HealthSouth Corporation, | ) |
| | ) |
| Defendant. | ) |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, HealthSouth Corporation ("HealthSouth" or the "Company") files this Notice of Removal to remove the above-captioned civil action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York. In support of this Notice of Removal, HealthSouth states as follows:

1. The above-captioned matter was commenced in the Supreme Court of the State of New York, County of New York, on or about September 6, 2007.

2. Rather than serving a complaint, plaintiff UBS AG, Stamford Branch ("UBS"), on or after September 6, 2007, served HealthSouth with a summons, a notice of motion for summary judgment in lieu of complaint pursuant to New York Civil Practice Law and Rules § 3213 (the "UBS Motion," a copy of which is attached hereto as Exhibit 1), a memorandum of law in support of that motion (the "UBS Memorandum," a copy of which is attached as

1

Exhibit 2), and a declaration of David J. Kalal, with exhibits thereto (the "Kalal Dec.," a copy of which is attached as Exhibit 3).

3. No other process, pleadings or orders have been served on HealthSouth in the above captioned action.

4. The guarantee on which UBS sues (the "Guarantee") was issued as part and parcel of a massive, complex fraud perpetrated on HealthSouth by its former Chairman and Chief Executive Officer Richard M. Scrushy and several former senior officers and directors of HealthSouth, with the knowledge, assistance, and active participation of UBS. This enormous fraud — which has sent several former HealthSouth executives to prison — is the subject of a first-filed civil action that has been actively litigated in Alabama state court for the past five years (the "Alabama Action"). Accordingly, at the appropriate time and in accordance with the Individual Rules and Practices of the District Judge to whom this matter shall be assigned, HealthSouth intends to move that this action be dismissed or stayed in deference to the Alabama Action. Whether this action should be dismissed or stayed is a threshold question that should be resolved prior to adjudication of UBS's summary judgment motion. If the Court determines not to dismiss or stay this action, the Court should afford HealthSouth the opportunity to respond to UBS's motion for summary judgment, including the opportunity to file a Rule 56(f) affidavit. It is HealthSouth's position that the Guarantee is invalid and unenforceable because (i) it was the product of a fraud perpetrated on HealthSouth, and (ii) UBS knew that the HealthSouth agents who negotiated and entered into the Guarantee with UBS were acting to advance their own unlawful agenda and adversely to the interests of their principal, HealthSouth.

## GROUNDS FOR REMOVAL

5. Without waiver of any other defenses, this Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

6. This is a civil action in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Plaintiff UBS AG, Stamford Branch was at the time of commencement of this

2

action, and at present still is, a citizen of Switzerland with its principal place of business in Stamford, Connecticut. *See* UBS Memorandum (Exh. 2 hereto) at 3.

8. Defendant HealthSouth was at the time of commencement of this action, and at present still is, a citizen of the State of Delaware and the State of Alabama. HealthSouth was and is a Delaware corporation with its principal place of business in Birmingham, Alabama.

9. The Guarantee that UBS sues to enforce is contained in a Credit Agreement, dated as of March 30, 2001 (the "Credit Agreement," Kalal Dec. Exhibit A), pursuant to which UBS loaned $20 million to MedCenterDirect.com ("MCDC"), and the Guarantee purports to secure that loan. The Credit Agreement — in a section separate and apart from the Guarantee — contains a forum selection clause that provides for non-exclusive jurisdiction in the New York state courts or the United States District Court for the Southern District of New York:

> (b) <u>Submission To Jurisdiction: Waivers</u>. Each Credit Party [including the Plaintiff and Defendant] hereby irrevocably and unconditionally:
>
> (i) submits for itself and its property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the <u>non-exclusive general jurisdiction of the courts of New York, the courts of the United States for the Southern District of New York,</u> and appellate courts from any thereof;
>
> (ii) consents that any such action or proceeding may be brought in <u>such courts</u> and waives any objection that it may now or hereafter have to the <u>venue</u> of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same***.

Credit Agreement (Kalal Dec. Exhibit A) at § 12.11(b)(i)-(ii) (emphasis added).

10. HealthSouth preserved, and did not waive, its right to remove this action from the state to the federal court. It is well established that any waiver of a party's statutory right to remove a case to federal court must be made by a <u>clear and express statement of intent</u>. *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp.2d 124, 128 (E.D.N.Y. 2004) ("courts in this Circuit have generally found a waiver of the right to remove a case to federal court only if

3

the forum selection clause contains <u>explicit language</u> evidencing waiver or 'where the forum selection clause identifies a particular court in which disputes will be heard'") (emphasis added); *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y. 1987) ("Such a waiver must be <u>clear and unequivocal</u>") (emphasis added); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶107.18[1][b] (3d. ed. 2007). No such statement of intent, explicit language, or clear and unequivocal waiver of the right to remove appears in the Credit Agreement.

11. Under Section 12.11(b)(i) of the Credit Agreement, each party submits to the "non-exclusive general jurisdiction of the courts of the State of New York, the courts of the United States for the Southern District of New York, and appellate courts from any thereof." Thus, the choice of forum is permissive, not mandatory. As this Court has held, such language does not waive a defendant's right to remove. *Congress Fin. Corp. v. Bortnick*, No. 00-Civ.-6361-WHP, 2000 WL 1634248 at *2 (S.D.N.Y. Oct. 31, 2000) ("Although [plaintiff] did have an express contractual right to select either the designated New York state or federal court, [plaintiff] did not have the right to force the [defendants] to submit to that forum. Language equivalent to 'as [plaintiff] may elect' ... is absent from Paragraph 9(b) of the Guarantee"). *See also GMAC v. LaSalle Bank Nat'l Ass'n*, 242 F. Supp.2d 279, 283 (S.D.N.Y. 2002) ("Where, as here, an action 'may' be brought in either of two courts ... and where, as here, the parties 'irrevocably submit to the jurisdiction of <u>each</u> such court,' the meaning is not exclusive but, rather, is 'permissive'") (emphasis in original, citation omitted).

12. Under Section 12.11(b)(ii) of the Credit Agreement, each party "consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court ... and agrees not to plead or claim the same." As this Court has held, the waiver of "'any objection based on venue' ... does not impair the vitality of [the] right of removal." *Bortnick*, 2000 WL 1634248, at *1-2 (citing *Lindhal v. Office of Personnel Mgmt.*, 470 U.S. 768, 793 n.30 (1985)). Nor does a waiver of objection to "any such action" bar removal. *See Hilb Rogal & Hobbs Co.*

4

*v. MacGinnitie*, No. 3:04-cv-1541-JCH, 2005 WL 441509, at *1, *3 (D. Conn. Feb. 14, 2005) (forum selection clause that permitted suit in either Connecticut state or federal court and waived objection to "any such action" did not bar removal; "to the extent that this consent to jurisdiction clause can be characterized as a forum selection clause, it does not 'clearly and unequivocally' waive ... [the] right to remove") (emphasis added).

## THIS ACTION SHOULD BE DISMISSED OR STAYED IN DEFERENCE TO THE FIRST-FILED ALABAMA DERIVATIVE ACTION

13.     On August 28, 2002, Wade Tucker, a shareholder of HealthSouth, commenced the Alabama Action as a shareholder derivative action in the Circuit Court of Jefferson County, Alabama, asserting multiple claims for relief against former officers and directors of HealthSouth. More than four years ago, on August 8, 2003, UBS entities were added as defendants. The Alabama Action alleges a massive, complex scheme to defraud HealthSouth and its shareholders for the personal gain of the former HealthSouth officers and directors. HealthSouth has assumed control of the Alabama Action, and the action is being vigorously litigated. HealthSouth is pursuing claims against three UBS affiliates — UBS Group, UBS Investment Bank and UBS Securities LLC — for, *inter alia*, aiding and abetting the HealthSouth executives' breaches of fiduciary duty and for civil conspiracy. *See* Third Amended Verified Complaint (Kalal Dec. Exhibit R) at Counts IV, VI, VII, VIII, IX, XI, XII and XV, and Supplemental Complaint And Fourth Verified Amended Complaint (Kalal Dec. Exhibit S) at ¶234 (adding UBS Securities LLC as a defendant). The only reason that UBS AG, Stamford Branch is not named in the Alabama Action is because, years ago, UBS Securities LLC affirmatively alleged that <u>it</u> made the loan to MCDC (UBS Securities LLC's Answer and Counterclaims (Exh. 4 hereto) at ¶134; *see also* ¶20, *infra*).

14.     The MCDC fraud is one of the principal, perfidious transactions being litigated in the Alabama Action (Third Amended Verified Complaint (Kalal Dec. Exhibit R) at ¶¶105-113, 134(e)). It would be unjust to require HealthSouth to defend here against the enforcement of a Guarantee that was conceived in fraud, while that fraud is being actively litigated in a prior

pending action in Alabama. It would also be a waste of judicial resources.

15.  Moreover, under Alabama law, UBS's claim in the instant action is a compulsory counterclaim in the Alabama Action. Alabama Rule of Civil Procedure 13(a), which is identical to FED. R. CIV. P. 13(a), is liberally construed in the Alabama state courts. The Alabama Rule provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

ALA. R. FED. P. 13(a) (emphasis added).

16.  The goal of Alabama's Rule 13(a) "is to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim." ALA. R. CIV. P. 13 Committee Comments on 1973 Adoption (emphasis added). Alabama courts apply a "logical relationship" test to determine whether a counterclaim is compulsory or not. *See id.* (confirming that "[a] counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim") (emphasis added); *Ex parte Town of Citronelle*, 428 So. 2d 600, 603 (Ala. 1983) ("a counterclaim is compulsory rather than permissive when there is any logical relationship to the original claims") (emphasis added); *see also Ex parte Leasecomm Corp.*, 886 So. 2d 58, 63 (Ala. 2003) ("Alabama has a strong policy against splitting causes of action or claims").

17.  Under the logical-relationship test, a counterclaim is compulsory if "(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts." *Ex parte Cincinnati Ins. Cos.*, 806 So. 2d 376, 380 (Ala. 2001) (emphasis added; internal quotations and citations omitted). Both prongs of this test are satisfied in the instant case.

18.  To determine "whether the claims 'arose out of the same aggregate core of operative facts,'" Alabama courts "determine whether (1) the facts taken as a whole serve as the

6

basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant. *Id.* (internal quotations and citations omitted; emphasis added); *see also JJ's Heating & Air Conditioning, Inc. v. Gobble-Fite Lumber Co.*, 572 So. 2d 1243, 1244-45 (Ala. 1990) ("<u>Transaction</u> imports a pliable meaning and may encompass a series of occurrences, and depends in application, not so much upon the immediacy of connection, as upon logical relationship.... Thus, the term <u>transaction</u> extends to include ...'all of the facts and circumstances which constitute the foundation of a claim ... [and] '<u>all the facts and circumstances out of which the injury complained of arose</u>'") (emphasis in original; internal citations omitted).

19. The claims asserted by UBS in this action arose "out of the same aggregate core of operative facts" as the conspiracy and aiding and abetting claims asserted against UBS in the Alabama action, within the meaning of the Alabama precedent. The MCDC fraud, including UBS's loan to MCDC, is one of the transactions at the heart of the Alabama action.

20. The loan was arranged and secured by employees of UBS who, with knowledge of the fraudulent accounting practices at HealthSouth, conspired with and aided and abetted HealthSouth's disloyal officers in breaching their fiduciary duties and using MCDC for their own personal financial benefit. *See, e.g.*, Third Amended Compl. (Kalal Dec. Exhibit R) at ¶134(e) (MCDC was "central to the allegations herein[,]" that one of HealthSouth's disloyal corporate officers served on MCDC's board, and that that disloyal corporate officer did "many transactions with the UBS Parties," including a transaction whereby "<u>UBS funded and raised investment capital for MCDC</u>") (emphasis added); *see also id.* at ¶¶105-113 (MCDC fraud); Prayer for Relief ¶VIII (seeking "[r]epayment of ... other loans made, and monies owed with respect to Defendants"). In its Answer in the Alabama Action, UBS Securities LLC <u>admitted</u> that it "provided a loan to MCDC..." UBS Securities LLC's Answer and Counterclaim (Exh. 4 hereto) at ¶134.

21. UBS's loan default claim is not merely "logically related" to the claims asserted against it in Alabama. Rather, the MCDC loan, an essential part of the MCDC fraud, lies at the

7

core of the allegations of wrongdoing by HealthSouth against UBS and the Company's former disloyal officers. Tellingly, the Alabama Court has already expressly ruled that contract claims asserted <u>against</u> UBS in the Alabama Action: (1) are "inextricably intertwined with the ... other claims against other parties" and are "based on the same nucleus of operative facts," and (2) that <u>"it would be seriously inconvenient and unreasonable" to try some UBS claims in New York while concurrently trying other UBS claims in Alabama</u>. *See* Order Denying Motion to Dismiss Brought by UBS (Exh. 5 hereto) at ¶2(a), (b) (citing the "strong policy of the State of Alabama against splitting causes of action"). This holds equally true for contract claims asserted <u>by</u> UBS.

22. Consequently, it is appropriate that this Court dismiss this action in deference to the first-filed Alabama Action or, alternatively, stay this action during the pendency of the Alabama Action.

23. Whether to stay or dismiss a proceeding under the first-filed rule is a matter committed to the sound discretion of the District Judge. *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). In *Adam*, the Second Circuit dismissed an action — like this one — seeking to enforce guarantees that had been executed incident to a merger, where the merger was the subject of an earlier filed action in Michigan federal court. The Second Circuit held that deference should be accorded the earlier action under the first-to-file rule, declaring: "Where there are two competing lawsuits, the first should have priority, absent the showing of balance of convenience ...or ... special circumstances ... giving priority to the second." *Id.* at 92; *see also First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79-80 (2d Cir. 1989) (dismissing action on promissory notes because of the first-to-file rule: "The first to file rule embodies considerations of judicial administration and conservation of resources").

24. That discretion should, moreover, be exercised in favor of entering a stay where the later filed action states a compulsory counterclaim in the earlier filed action. *See, e.g., Cyprus Corp. v. Whitman*, 93 F.R.D. 598, 604-05 (S.D.N.Y. 1982) ("Where a party institutes a second action based upon a compulsory counterclaim in a still pending action, courts can use the

procedural devices of transfer, stay and consolidation to avoid multiple litigation and to effectuate the [compulsory counterclaim] Rule"); *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59 (S.D.N.Y. 2002) (consolidating cause of action that should have been brought in earlier action as a compulsory counterclaim); *Donnkenny, Inc. v. Nadler*, 544 F. Supp. 166 (S.D.N.Y. 1982) (staying claims that should have been brought in earlier action as a compulsory counterclaim). *Cf. Andrews v. S. Disc. Co. of Ga.*, 662 F.2d 722, 723 (11th Cir. 1981) (dismissing as non-appealable district court order staying federal action which stated compulsory counterclaim to pending state court action).

25.  There is some uncertainty in the case law in this District as to whether the first-filed rule, as such, applies when the prior pending action was filed in state, as opposed to federal, court or whether the Court's consideration should instead be guided by the principles of *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *Compare Pike v. WSNCHS-E., Inc.*, No. 02-CIV.-3365-GBD, 2003 U.S. Dist. LEXIS 2678, at *4-*6 (S.D.N.Y. Feb. 24, 2003) (applying first-filed rule) *with Radioactive, J.V. v. Manson*, 153 F.Supp.2d 462, 473-77 (S.D.N.Y. 2001) (applying *Colorado River*). The result is the same under *Colorado River* as under the common law first-filed rule. The Alabama Action is a concurrent or parallel proceeding, within the meaning of *Colorado River*, for the reasons identified above that establish that UBS's claim in this action is a compulsory counterclaim in the Alabama Action. *See, e.g., CFI of Wis., Inc. v. Wilfran Agric. Indus., Inc.*, No. CIV.A.99-1322, 1999 WL 994021, at *2 (E.D. Pa. 1999) (proceedings were parallel where, "[a]lthough [plaintiff's] claim in this case has not been asserted in the state action, it could be brought as a permissive counterclaim" in state court).

26.  The *Colorado River* factors considered by the Court to determine whether it should abstain in favor of a state court proceeding weigh heavily in favor of abstention here. The Alabama Action was filed five years before this action. Given the inextricably intertwined facts and legal issues in the two lawsuits, abstention would avoid piecemeal litigation, duplicative effort and waste of precious judicial resources. *See* Order Denying Motion to Dismiss Brought

by UBS (Exh. 5 hereto) at ¶2. There is a considerable overlap of discovery and witnesses, particularly with respect to HealthSouth's central defense that the Guarantee is invalid as the product of UBS's aiding and abetting breaches of fiduciary duty by HealthSouth executives and UBS's participation in a conspiracy to defraud HealthSouth, all of which are the subject of the litigation in Alabama. It would be inconvenient for the parties to litigate the same issues both in Alabama and New York. Finally, the instant action implicates purely state law claims and defenses, and there is no reason to conclude that the Alabama Court cannot adequately protect UBS's rights. Dismissal or a stay is, therefore, warranted.

**THE GUARANTEE IS INVALID AS THE PRODUCT OF A CONSPIRACY BETWEEN HEALTHSOUTH'S FAITHLESS AGENTS AND UBS TO DEFRAUD HEALTHSOUTH**

27.  The Guarantee — including its purported waiver of defenses — is not valid because the agents who purported to bind HealthSouth by entering into the Credit Agreement lacked actual and apparent authority to do so. A principal like HealthSouth is not bound by its agent's actions when the agent is acting adversely to the principal's interests, and the third party with whom the agent is dealing knows this. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l., Inc.*, 241 F.Supp.2d 246, 262 (S.D.N.Y. 2002) ("'an agent cannot bind his principal, even in matters touching his agency, where he is known to be acting for himself, or to have an adverse interest'") (quoting *Wagner v. Nichols*, 5 A.D.2d 191, 194, 170 N.Y.S.2d 542, 545 (1st Dep't 1958) and *Manhattan Life Ins. Co. v. Forty Second & G. St. Ferry R. Co.*, 139 N.Y. 146, 151, 34 N.E. 776, 777 (1893)).

28.  A third party like UBS cannot rely on an agent's apparent authority when the third party is colluding with the agent against the principal. *See* RESTATEMENT (THIRD) OF AGENCY § 5.04 cmt. (2006) ("If the third party with whom an adversely acting agent interacts does not reasonably believe that the agent acts with actual authority, the principal is not bound by the agent's actions because the agent has acted without apparent authority."). HealthSouth's agents lacked actual authority because they were acting adversely to their principal at the time they entered into the Guarantee. They lacked apparent authority because, as a co-conspirator, UBS

was well aware of this fact. The Credit Agreement's Guarantee, the product of this conspiracy, therefore does not bind HealthSouth.

## NOTICE AND FILING

29.   This Notice of Removal is timely filed.

30.   All conditions and procedures for removal have been satisfied.

31.   A filing fee of $350.00 has been tendered to the Clerk of the United States District Court for the Southern District of New York.

32.   Written notification of the filing of this Notice of Removal is being served on plaintiff's counsel on this date, as required by 28 U.S.C. § 1446(d).

33.   A true and correct copy of the Notice to State Court of Filing of Notice of Removal will be filed promptly with the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d), and is attached hereto as Exhibit 6.

34.   Nothing herein constitutes a waiver of any of defendant's rights or defenses, including without limitation its right to seek dismissal or stay of this action, and to oppose UBS's motion for summary judgment.

WHEREFORE, HealthSouth asks that this action proceed in this Court as an action properly removed to it.

Dated:   New York, New York
         October 1, 2007

> GREGORY P. JOSEPH LAW OFFICES LLC
>
> By: _____
>     Gregory P. Joseph  (GJ 1210)
>     Peter R. Jerdee   (PJ 1240)
> 485 Lexington Avenue, 30th Floor
> New York, New York 10017
> Telephone: (212) 407-1200
> *Attorneys for HealthSouth Corporation*

Gregory P. Joseph (GJ-1210)
Peter R. Jerdee (PJ-1240)
Gregory P. Joseph Law Offices LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: 212-407-1200

*Attorneys for Defendant HealthSouth Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UBS AG, Stamford Branch,<br><br>　　　　　　　*Plaintiff,*<br><br>　　　　-against-<br><br>HealthSouth Corporation,<br><br>　　　　　　　*Defendant.* | CERTIFICATE OF SERVICE<br><br>Index No. _____ |

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on October 1, 2007, I caused to be served upon Marc de Leeuw of Sullivan & Cromwell LLP, by hand delivery to the address indicated below, a true and correct copy of the attached Notice of Removal:

　　Marc De Leeuw
　　SULLIVAN & CROMWELL LLP
　　125 Broad Street
　　New York, New York 10014

　　*Attorney for UBS AG, Stamford Branch*

I certify under penalty of perjury that the foregoing is true and correct.

Executed: New York, New York
　　　　　October 1, 2007

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Maxwell A. Brooks