1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ALABAMA
 2                       SOUTHERN DIVISION

 3

 4

 5    UNITED STATES OF AMERICA,  *    Case No.  CR-03-B-338-S

 6             v.               *    Birmingham, Alabama

 7    JASON BROWN,              *    August 27, 2003

 8             Defendant.       *    2:20 p.m.
      ****************************

 9

10

                          TRANSCRIPT OF PLEA
11       BEFORE THE HONORABLE SHARON LOVELACE BLACKBURN
                  UNITED STATES DISTRICT JUDGE
12

13

      FOR THE UNITED STATES:
14
      Richard C. Smith
15    Richard N. Wiedis
      U.S. Department of Justice
16    Criminal Division, Fraud Section
      1400 New York Avenue NW, Suite 1400
17    Washington, DC  20503

18    FOR THE DEFENDANT:

19    Joseph C. Espy, III
      C. Mark Bain
20    MELTON, ESPY & WILLIAMS
      P.O. Drawer 5130
21    Montgomery, Alabama  36103-5130

22    COURT REPORTER:

23    Julie A. Martin, RMR, CRR
      Federal Court Reporter
24    1729 5th Avenue North
      Suite 325
25    Birmingham, Alabama  35203
```

```
 1                P R O C E E D I N G S
 2            THE COURT:  We're here this afternoon in the
 3   case of United States of America versus Jason Brown.
 4   I know Mr. Espy.  Which one is Mr. Brown?  You're Mr.
 5   Brown?
 6            THE DEFENDANT:  Yes, ma'am.
 7            THE COURT:  Okay.  And so I take it, you're
 8   Mark Bain?
 9            MR. BAIN:  Yes, Your Honor.
10            THE COURT:  Okay.  If all three of you then
11   would come to the podium.
12            Mr. Brown, you earlier entered a plea of not
13   guilty to charges contained in an Indictment -- excuse
14   me -- in an Information, which is docketed in this
15   court as CR-03-B-338-S.  You and your attorneys are
16   here today, because the Court has been advised that
17   you desire to enter a plea of guilty to the charges.
18            Let me first ask you, do you understand that
19   you have the right to have these charges presented to
20   a Grand Jury who would be required to find probable
21   cause before you could be indicted and charged with a
22   federal crime?
23            THE DEFENDANT:  Yes, ma'am.
24            THE COURT:  And have you waived that right
25   and executed a waiver of the right to have these
```

1    charges presented to a Grand Jury?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And that has been filed with the

4    Court; is that right?

5              MR. ESPY:  Yes, ma'am.  That was filed

6    before Judge Greene.

7              THE COURT: All right.  I'm going to go over

8    in some detail with you the charges later on, but just

9    briefly at the beginning, have you gone over all the

10   charges in detail with your attorneys?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  And do you understand the

13   charges against you?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  And I'm going to ask you that

16   again also, but let me ask you how do you wish to

17   plead to the charges in the Information?

18             THE DEFENDANT:  Guilty.

19             THE COURT:  Before accepting your plea of

20   guilty, Mr. Brown, there are certain matters into

21   which I must inquire, and this will necessitate your

22   being placed under oath.  I want to point out to you

23   that while under oath, I may ask you certain questions

24   that are pertinent to the charges in the Information

25   and other matters which may be pertinent later to your

1    sentencing.

2           Any responses to my questions must be full,

3    complete and accurate, and a false response could

4    subject you to prosecution for perjury or false

5    statement.  Do you understand?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Do you still desire to enter

8    your plea of guilty?

9           THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  All right.  I'm going to request

11    you be placed under oath at this time.

12           (Defendant sworn.)

13           THE COURT:  Mr. Brown, if anything is said

14    here today that you do not fully understand, I want

15    you to interrupt the proceedings and either ask me to

16    clear it up for you or allow you an opportunity to

17    speak with your lawyers.  Do you understand?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  It's not uncommon for pleas of

20    guilty to be offered in reliance on a plea bargain or

21    plea agreement between the defendant, his attorney and

22    the U.S. Attorney's office.  Plea bargains or plea

23    agreements are permissible, but they are not binding

24    on the court.  In other words, it is the judge who

25    makes the final decision as to an appropriate

1    sentence.

2          But when a defendant is entering a plea of

3    guilty in reliance on a plea bargain or plea

4    agreement, then the Court needs to know the terms of

5    that agreement.  So, at this time, I'm going to ask the

6    -- you're not an Assistant U.S. Attorney.  Are you a

7    Department of Justice attorney?

8          MR. WIEDIS:  Department of Justice Senior

9    Trial Attorney, Richard Wiedis, for the record.

10          THE COURT:  Mr. Wiedis is going to state for

11    the record in just one second, because I want to pull

12    it up, I've looked at it and read it, but the

13    pertinent terms of the plea agreement that's been

14    executed and filed in your case.

15          MR. WIEDIS:  And, Your Honor, it has been

16    submitted for the record, but I will summarize it at

17    the Court's request.

18          The United States has entered into a plea

19    agreement with Mr. Brown upon which Mr. Brown will

20    waive Indictment and plead guilty in the Northern

21    District of Alabama to one count of conspiracy in

22    violation of 18, U.S.C., Section 371 and one count of

23    criminal forfeiture in violation of 18, U.S.C., Section

24    981(a)(1)(C) and 28, U.S.C., Section 2461.

25          The defendant has also agreed to make

1    restitution.  As I've stated, there's a provision that

2    requires him to forfeit to the United States

3    Government any proceeds that are traceable to or

4    derived from the conspiracy offense.

5           He's been informed of the maximum possible

6    sentence in this case.  It's not more than five years

7    and/or a fine not to exceed two hundred fifty thousand

8    dollars or twice the gain or loss, as well as a term

9    of supervised release not to exceed three years and a

10   mandatory special assessment of one hundred dollars.

11          He's been informed in the plea agreement

12   that the case will be governed by the United States

13   Sentencing Guidelines.  And he understands that no

14   promises have been made to him.  He understands that

15   the Court will determine the sentence, and it will not

16   be determined by the plea agreement.

17          He has said that he's familiar with the

18   charges.  He's acknowledged his guilt.  He's agreed to

19   cooperate with the government in its continuing

20   investigation.  He has agreed to waive certain

21   constitutional rights which relate to his appeal of

22   the sentence.

23          THE COURT:  You may have mentioned this.

24   Did you mention at the beginning that you plan to

25   recommend a three-level reduction for acceptance of

1    responsibility?

2            MR. WIEDIS:  I did not mention that, Your

3    Honor.  The government has agreed to recommend a

4    three-level reduction for acceptance of responsibility

5    as well as make a motion under 5K1.1 of the United

6    States Sentencing Guidelines if the defendant provides

7    substantial assistance.

8            THE COURT:  Well, is that contemplated that

9    he already has provided substantial assistance, so

10    that you will be filing a motion, or is that --

11            MR. WIEDIS:  Well, he has provided

12    substantial assistance and will continue to provide

13    substantial assistance.

14            THE COURT:  So you will be filing a motion.

15    It just depends on what you recommend at the time of

16    sentencing, but you at this point are going to file --

17            MR. WIEDIS:  I think it's fair to say, given

18    the defendant's cooperation, we will be filing such a

19    motion, although its contents are not yet determined

20    because his cooperation is continuing.

21            THE COURT:  All right.  Mr. Espy, Mr. Bain,

22    is there anything you need to add to the statements of

23    the Department of Justice Senior Trial Attorney

24    concerning the pertinent terms of the plea agreement?

25            MR. ESPY:  No, ma'am.

1          MR. BAIN:  No, ma'am.

2          THE COURT:  All right.  Mr. Brown, you've

3     heard the statements of your attorneys, and the

4     government's attorney, concerning the pertinent terms

5     of the plea agreement.  To the best of your knowledge,

6     are those statements complete and accurate?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Is there anything you need to

9     add to the statements of the government attorney

10    concerning the pertinent terms of the plea agreement?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  All right.  I want to go over in

13    some detail with you some of the things in the plea

14    agreement, however.

15         First of all, let me ask you if you and your

16    attorneys have discussed the Sentencing Guidelines

17    which are going to apply to your sentence if the Court

18    accepts your plea of guilty this afternoon?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  And do you understand that the

21    Guidelines provide for a range of sentence based in

22    large part on a combination of what's known as an

23    offense level, that is a number that represents the

24    crimes to which you're pleading guilty, and combining

25    that with a number that represents your prior criminal

1   history to give the Court a range of sentence?  Do you

2   understand?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Do you understand there's no

5   parole from any custodial sentence imposed under the

6   Federal Sentencing Guidelines?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  All right.  Let me ask you, does

9   one attorney want to speak for the defendant or should

10  I ask both of you all to speak while we're on the

11  record?

12          MS. ESPY:  No, ma'am.  Joe Espy will speak

13  for him.

14          THE COURT:  All right.  Mr. Espy, are you

15  satisfied your client has a sufficient understanding

16  of the Sentencing Guidelines to make his plea here

17  today a knowing plea?

18          MR. ESPY:  Yes, ma'am.

19          THE COURT:  Mr. Brown, going back now to the

20  plea agreement, on Page 1 of the plea agreement, and

21  as I just briefly discussed with the government's

22  attorney, they intend to file what's called a motion

23  for downward departure to request that the Court give

24  you a sentence below the Guideline range that would

25  otherwise be applicable to your case.

1          They've stated their intention to file one,

2     but do you understand that if for some reason, after

3     reading the presentence report, I believe that the

4     motion is not due to be granted, do you understand you

5     will not have the right to withdraw your plea of

6     guilty?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  I want to go to Page 9 of your

9     plea agreement.  And at the top of the page, it's

10    entitled, "Waiver of Rights to Appeal and Collateral

11    Attack."  Do you understand that in this section of

12    the plea agreement you have waived your right to

13    appeal your sentence -- and, actually, maybe I should

14    read to you the section.

15         There's certain grounds on which you can

16    appeal a sentence, which are set forth at Title 18,

17    United States Code, Section 3742, and it provides that

18    the defendant may file an appeal of their sentence if

19    it was imposed in violation of the law; it was imposed

20    as a result of an incorrect application of the

21    Sentencing Guidelines or is greater than the sentence

22    specified in the applicable Guideline range; to the

23    extent that the sentence includes a greater fine or

24    term of imprisonment, probation or supervised release

25    than the maximum established in the Guideline range,

1    or includes a more limiting condition of probation or

2    supervised release than the maximum established in the

3    Guideline range.

4         You are waiving those grounds, except that

5    you can appeal any sentence imposed above the

6    statutory maximum or if the Court upwardly departed

7    from the Guideline range.  Other than that, you are

8    giving up your rights that are in that code section.

9    Do you understand?

10        THE DEFENDANT:  Yes, ma'am.

11        THE COURT:  Do you also understand that in

12    this section contained on the next page, on Page 10 of

13    the plea agreement, that you are waiving your right to

14    file what's called a habeas corpus petition pursuant

15    to Title 28, United States Code, Section 2255.  This

16    is what's called a collateral attack generally on a

17    defendant's conviction or sentence.

18        Do you understand you are waiving the right

19    to file a habeas corpus petition?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  And have you discussed all these

22    rights that you are waiving or giving up on these two

23    pages of the plea agreement?

24        THE DEFENDANT:  Yes, ma'am.

25        THE COURT:  Mr. Espy, are you satisfied your

1      client understands the waivers that I've just gone

2      over with him?

3              MS. ESPY:  Yes, ma'am.

4              THE COURT:  And in the next section of the

5      plea agreement on Pages 10 and 11, there is a section

6      entitled "Bankruptcy Waiver."  And in this section,

7      you have stipulated and agreed not to institute a

8      proceeding or participate rather in any proceeding to

9      interfere with, alter or bar enforcement of any fine

10     or restitution obligation pursuant to the automatic

11     stay or any other provision of the bankruptcy code in

12     a case that you might file or any of your creditors

13     might file.

14             Do you understand there might be a situation

15     where you would have the right to -- and I'm not

16     saying you would or would not -- but to get out from

17     under a fine or restitution?  And, again, I'm not sure

18     you could in a criminal case, but assuming you could,

19     you're giving up that right.  Do you understand that?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  You also are stating in this

22     plea agreement that you will execute an order or

23     stipulation granting the United States relief,

24     assuming there was an automatic stay entered in any

25     case in which you might be involved, in order for the

1    government to enforce any fine or restitution

2    obligation ordered by the Court.  Do you understand?

3         THE DEFENDANT:  Yes, ma'am.

4         THE COURT:  And, finally, do you understand

5    that in this section you are stipulating that any fine

6    or restitution obligation imposed by the Court would

7    not be dischargeable in bankruptcy?  Do you

8    understand?

9         THE DEFENDANT:  Yes, ma'am.

10        THE COURT:  And, Mr. Espy, are you satisfied

11   your client understands the waivers in this section of

12   the plea agreement?

13        MR. ESPY:  Yes, ma'am.

14        MR. WIEDIS:  Your Honor, if I may, I want to

15   clarify a question that the Court had about the 5K1

16   motion.  I believe the agreement provides that the

17   United States has agreed that if it determines the

18   defendant has cooperated fully, provided substantial

19   assistance in the investigation or prosecution of

20   another person who has committed an offense, and

21   otherwise complies with the terms of this agreement,

22   the United States will file a motion pursuant to 5K1.

23        And, of course, that's a determination that

24   we cannot make until such time as the defendant does

25   complete his cooperation.  So I don't want the record

1   to reflect that we at this time are going to file such

2   a motion, but we have agreed to file such a motion if,

3   in fact, the defendant complies with this agreement.

4        THE COURT:  Well, at this point, they feel

5   you have substantially cooperated.  And what they're

6   saying is if you continue to cooperate and comply with

7   the terms of the agreement, they will file such a

8   motion.  Do you understand?

9        THE DEFENDANT:  Yes, ma'am.

10        THE COURT:  Do you understand if they feel

11   at the time of your sentencing that you have not

12   complied with the terms of the plea agreement and have

13   not provided substantial assistance and choose not to

14   file a motion for downward departure, do you

15   understand you will not have the right to withdraw

16   your plea of guilty?

17        THE DEFENDANT:  Yes, ma'am.

18        THE COURT:  Other than the plea agreement

19   that we have just discussed, has anyone promised you

20   anything or threatened you in any way in order to

21   induce you to enter a plea of guilty?

22        THE DEFENDANT:  No, ma'am.

23        THE COURT:  I feel confident I said this,

24   this is something I usually say right at the

25   beginning, but sometimes I get started, and I don't

1    remember if I said this or not.  Did I tell you that

2    if you don't understand anything today -- I did tell

3    you that?

4            MR. ESPY:  Yes, ma'am.

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  To ask me to clear it up or

7    allow you to speak with your lawyers?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Do you understand, Mr. Brown,

10   that, if I accept your plea of guilty, all that remains

11   is for sentence to be imposed, and the maximum

12   sentence you're facing on a plea of guilty to Count

13   One, which charges with you violating Title 18, United

14   States Code, Section 371, is a fine of not more than

15   two hundred fifty thousand dollars, a custodial

16   sentence of not more than five years, a supervised

17   release time of not more than three years, an

18   assessment fee of one hundred dollars, plus

19   restitution to any victim?

20           Do you understand that's the maximum

21   sentence you're facing on a plea of guilty to Count

22   One?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  And you understand that in Count

25   Two the government is seeking forfeiture of any assets

1    that you obtained by use of the criminal activity to

2    which you're pleading guilty to in Count One?  Do you

3    understand that?

4              THE DEFENDANT:  Yes, ma'am.

5              MR. WIEDIS:  Your Honor, just for purposes

6    of the record, the maximum fine would actually be two

7    hundred fifty thousand dollars or twice the gain or

8    loss, which could potentially be more than two hundred

9    fifty thousand dollars.

10             THE COURT:  All right.  In all likelihood,

11    it will be more than two hundred fifty thousand

12    dollars.  Let me go back over the maximum fine.  It is

13    two hundred fifty thousand dollars or twice the gain

14    or loss occasioned by your criminal conduct in Count

15    One.  Do you understand?

16             So there's a very strong possibility, I

17    would think in this case, that the maximum fine could

18    be more than two hundred fifty thousand dollars.  Do

19    you understand?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  And that amount can't be

22    determined at this time.  Do you understand that?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Mr. Brown, do you also

25    understand that you have the right to insist upon your

1    earlier plea of not guilty, and that if you do so, the

2    -- actually, you probably haven't entered a plea

3    before today.

4           So you have the right to enter a plea of not

5    guilty and have the case proceed to trial and have the

6    government prove its case against you beyond a

7    reasonable doubt.  Do you understand you have the

8    right to enter a plea of not guilty to the charges?

9           THE DEFENDANT:  Yes, ma'am.

10          MR. ESPY:  Your Honor, I do want to tell

11   you, we did actually have to before Judge Greene.

12          THE COURT:  He did enter a plea of not

13   guilty before Judge Greene?

14          MR. ESPY:  Yes, ma'am.  We knew we had an

15   agreement, but it was agreed it was going to come

16   before Your Honor, so we entered a plea of not

17   guilty.

18          THE COURT:  All right.  Excuse me.  So you

19   have the right to re-enter your not guilty plea and

20   proceed to trial.  Do you understand?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  And do you understand that if

23   you proceeded to trial that you would have the right

24   to the assistance of counsel?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you understand at a trial you

2     would have the right not to incriminate yourself or to

3     produce any witnesses?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you understand the government

6     would have the burden of proving at a trial that you

7     have committed these crimes and that the burden of

8     proof would be beyond a reasonable doubt?  Do you

9     understand?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Do you understand that, with this

12     plea of guilty, there will be no jury trial, there will

13     be no further presumption of innocence, there will be

14     no right by you through your counsel to confront and

15     cross-examine the witnesses that the government would

16     be required to bring forth to prove your guilt?

17          In other words, you're giving up a number of

18     important constitutional rights by pleading guilty.

19     Do you understand all of that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Let me ask you, Mr. Brown, is

22     there anything that prevents you from understanding

23     anything I am saying to you here today?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  How do you physically feel?

1          THE DEFENDANT:  Fine.

2          THE COURT:  Within the past seventy-two

3     hours, have you taken or received any medication,

4     drugs or narcotics?

5          THE DEFENDANT:  No, ma'am.

6          THE COURT:  As you did in the last plea I

7     took in a similar case, I want you to listen carefully

8     and listen that I state the elements correctly.  It's

9     a little bit complicated, and I've gone through all

10    the statues.  And I'm sure you all also will do that,

11    but I want to make sure it's stated correctly.

12          Count One of the Information, Mr. Brown,

13    charges you with conspiracy to commit securities

14    fraud; false books and records and wire fraud, all in

15    violation of Title 18, United States Code, Section

16    371.

17          And I'm going to just go through in quite

18    some detail the charges.  First, I want to read a lot

19    of the Information on the record.

20          The introduction to Count One charges that

21    you were employed at HealthSouth Corporation since

22    1994; that you worked in the accounting division from

23    the beginning of your employment until mid 1996; that

24    from mid 1996 until the end of 1997, you worked in the

25    Corporate Development Department; that you then moved

1    to the Treasury Department; and then in May of 2000,

2    you were promoted to the position of Vice

3    President-Finance.

4         It goes on to say that HealthSouth was a

5    corporation organized under the laws of the State of

6    Delaware with its headquarters in Birmingham, Alabama.

7    HealthSouth claimed to be the nation's largest

8    provider of outpatient surgery, diagnostic imaging and

9    rehabilitative healthcare services with approximately

10   eighteen hundred locations in all fifty states, Puerto

11   Rico, the United Kingdom, Australia and Canada; that

12   HealthSouth's common stock was listed on the New York

13   Stock Exchange.

14        If you have it in front of you -- I'm sure

15   you've read it many times -- I'm just going to read

16   here, and I will say if I deviate from the

17   Information.

18        HealthSouth was an issuer of a class of

19   securities registered under Section 12 of the

20   Securities and Exchange Act of 1934.  To sell

21   securities to members of the public and maintain

22   public trading of its securities in the United States,

23   HealthSouth was required to comply with the provisions

24   of the federal securities laws, including Section

25   13(a) of the Act (Title 15, United States Code,

1    Sections 78m(a) and 78o(d)) and the regulations

2    promulgated thereunder, that were designed to ensure

3    that the company's financial information was

4    accurately recorded and disclosed to the public.

5            Under provisions of the federal securities

6    laws and the provisions promulgated thereunder,

7    HealthSouth was required to, among other things, file

8    with the Securities and Exchange Commission annual

9    financial statements audited by an independent

10    accountant; file with the SEC quarterly updates of its

11    financial statements that disclosed its financial

12    condition and the results of its business operations

13    for each three-month period; make and keep books,

14    records and accounts that accurately and fairly

15    reflected the transactions and dispositions of the

16    company's assets; and devise and maintain a system of

17    internal accounting controls sufficient to provide

18    reasonable assurances that the company's transactions

19    were recorded as necessary to permit preparation of

20    financial statements in conformity with generally

21    accepted accounting principles (GAAP) and other

22    criteria applicable to such statements and to maintain

23    the accountability of assets; and reasonable

24    assurances that the recorded accountability for assets

25    was compared with the existing assets at reasonable

1    intervals and appropriate action was taken with

2    respect to any differences.

3             From 1986, when HealthSouth issued its

4    initial public offering, it filed quarterly reports,

5    called Forms 10-Q, and annual reports, called Forms

6    10-K, with the United States Securities and Exchange

7    Commission, which is located in Washington, D.C.

8             These reports were transmitted directly and

9    indirectly from HealthSouth's offices in Birmingham,

10   Alabama, to the offices of RCI Group, Inc., in

11   Washington, D.C., a filing agent that assists

12   companies in electronically filing periodic reports

13   with the SEC, and were thereafter transmitted

14   electronically to and filed electronically with the

15   SEC, where they were available to the investing

16   public.

17            I'm sorry now that I started on it, but

18   since I started -- I don't usually read the entire

19   Indictment.  I deviated from my standard practice

20   here, but since I started.  Actually, I don't think I

21   will continue.  I think I will go on here.

22            There's a section then that talks about

23   certain relevant accounting principles, and then it

24   talks about HealthSouth's communications with

25   investors.  It then talks about an earnings shortfall,

1    and then it goes to the specific allegations of the

2    conspiracy.  And I left something in my chambers that

3    I need actually.

4         (Brief pause)

5         MR. ESPY:  Judge, I don't know if it makes

6    any difference, but if it would help, we would waive

7    the reading of the Information or however the Court --

8         THE COURT:  As I say, I'm assuming you're

9    waiving it, but I'm also going to move on anyway.

10        MR. WIEDIS:  Yes, Your Honor, if the Court

11   would read Paragraph 11, that would sufficiently cover

12   the elements which the defendant has to be advised of

13   in order to enter a plea, I believe, unless the Court

14   has its own summary of the elements, which I know is

15   sometimes the Court's practice.

16        THE COURT:  I think I will be going over all

17   that in a little bit more detail than that.  Actually,

18   let me read that, and then I'm going to come back to

19   some other things.

20        Paragraph 11, which is the conspiracy

21   charge, says, "Between in or about the summer of 2002

22   and in or about 2003, in the Northern District of

23   Alabama and elsewhere, you knowingly and willfully

24   joined a conspiracy with other persons to commit

25   offenses against the United States; that is, a

1    conspiracy to:

2            (1), to willfully and knowingly make and

3    cause to be made false and misleading statements of

4    material fact in applications, reports and documents

5    required to be filed under the Securities and Exchange

6    Act of 1934 and the rules and regulations thereunder

7    in violation of Title 15, United States Code, Sections

8    78m(a) and 78ff and Title 17, Code of Federal

9    Regulations, Sections 240.13a-1; 13a-13 13b2-2;

10            (2), to willfully and knowingly falsify

11    books, records and accounts of HealthSouth in

12    violation of Title 15, United States Code, Sections

13    78m(b)(2)(A) and (B), 78m(b)(5) and 78ff and Title 17,

14    Code of Federal Regulations, Section 240.13b2-1; and

15            (3), to devise and attempt to devise a

16    scheme and artifice to defraud and to obtain money and

17    property by means of material false and fraudulent

18    pretenses, representations and promises and to

19    knowingly transmit and cause to be transmitted, by

20    means of wire communication, in interstate and foreign

21    commerce, writings, signs, signals and sounds for the

22    purpose of executing such scheme and artifice in

23    violation of Title 18, United States Code, Section

24    1343.

25            Title 18, United States Code, Section 371

1  makes it a separate federal crime or offense for

2  anyone to conspire or agree with someone else to do

3  something which, if actually carried out, would amount

4  to another federal crime or offense.  So, under this

5  law, a conspiracy is an agreement or a kind of

6  partnership in criminal purposes in which each member

7  becomes the agent or partner of every other member.

8        In order to establish a conspiracy offense,

9  the government would not be required to prove that all

10  of the people named -- actually, there are no other

11  names, no specific names, but they would not be

12  required to prove the names of people, just that you

13  conspired with one other person.

14        They wouldn't have to prove that you all

15  entered into any formal type of agreement, that the

16  agreement was written down, but they would have to

17  prove beyond a reasonable doubt before you could be

18  convicted:

19        First:  That two or more persons, in some

20  way or manner, came to a mutual understanding to try

21  to accomplish a common and unlawful plan as charged --

22  and I may have been saying Indictment, but it is in

23  the Information.  And I just read the three objects of

24  the conspiracy that you're charged with.

25        Second:  That you, knowing the unlawful

26

1    purpose of the plan, willfully joined in it;

2    　　　　Third:  That one of the conspirators during

3    the existence of the conspiracy knowingly committed at

4    least one of the methods or overt acts described in

5    the Information.  And those overt acts are listed

6    beginning on Page 8 and going to Page 9 of the

7    Information.  And;

8    　　　　Fourth:  That such overt act was knowingly

9    committed at or about the time alleged in an effort to

10   carry out or accomplish some object of the conspiracy.

11   　　　　I'm going to go over in a little more detail

12   about the charge in Count One.  Count One charges you

13   with conspiracy, with three separate objects of that

14   conspiracy.  And the government would have the burden

15   of proving that you conspired with at least one or

16   more persons to accomplish one of the objects of the

17   conspiracy.

18   　　　　There are three separate ones listed, but

19   they would only have to prove beyond a reasonable

20   doubt that you conspired to violate one of the

21   objects.  Do you understand that?

22   　　　　THE DEFENDANT:  Yes, ma'am.

23   　　　　THE COURT:  The first object of the

24   conspiracy count charges you with conspiracy to

25   willfully and knowingly make and cause to be made

1    false and misleading statements of material fact in

2    applications, reports and documents required to be

3    filed under the Securities and Exchange Act of 1934

4    and the rules and regulations thereunder in violation

5    of Title 15, United States Code, Sections 78m(a) and

6    78ff and Title 17, Code of Federal Regulations,

7    Section 240.13a-1; 13a-13 and 13b2-2.

8            Title 15, U.S. Code, Section 78m(a) requires

9    that every issuer of a security registered pursuant to

10    Section 78l of Title 15 file with the Securities and

11    Exchange Commission, such information and documents as

12    the Commission may require to be included in or filed

13    with an application or registration statement filed

14    pursuant to Section 78l of Title 15; and, two, such

15    annual reports, certified if required by the rules and

16    regulations of the Commission by independent

17    accountants, and such quarterly reports as the

18    Commission may prescribe.

19            The Commission is charged with administering

20    and enforcing Securities laws, and in order to perform

21    its function must receive accurate and truthful

22    information.

23            Before you could be found guilty of

24    violating Title 15, U.S. Code, Section 78m(a), and the

25    regulations implementing the statute, the government

1    would have the burden of proving beyond a reasonable

2    doubt, that -- and actually, this is the substantive

3    offense.  They're charging that you conspired to

4    commit this offense, not that you in fact did it, but

5    that you made or conspired to make or caused to be

6    made false and misleading statements of material fact

7    in applications, reports or documents required to be

8    filed under the Securities and Exchange Act of 1934

9    and the rules and regulations thereunder; and, second,

10   that you acted knowingly and willfully.

11        Do you understand the charge against you in

12   the first object of the conspiracy count?

13        THE DEFENDANT:  Yes, ma'am.

14        THE COURT:  The second object of the

15   conspiracy is that you conspired to willfully and

16   knowingly falsify books, records and accounts of

17   HealthSouth in violation of Title 15, United States

18   Code, Section 78m(b)(2)(A) and (B), and Title 17, Code

19   of Federal Regulations, Section 240.13b2-1.

20        Title 15, U.S. Code, Section 78m(b)(2)(A)

21   and (B) provides that every issuer which has a class

22   of securities registered pursuant to Section 78l of

23   Title 15 and every issuer which is required to file

24   reports pursuant to Section 78o(d) of this title

25   shall:

1              (A),  Make and keep books, records and

2     accounts, which, in reasonable detail, accurately and

3     fairly reflect the transactions and dispositions of

4     the assets of the issuer;

5              (B), and every issuer shall devise and

6     maintain a system of internal accounting controls

7     sufficient to provide reasonable assurances that;

8              (i) transactions are executed in accordance

9     with management's general or specific authorization;

10             (ii) transactions are recorded as necessary

11    (I) to permit preparation of financial statements in

12    conformity with generally accepted accounting

13    principles or any other criteria applicable to such

14    statements, and (II) to maintain accountability for

15    assets;

16             (iii) access to assets is permitted only in

17    accordance with management's general or specific

18    authorization; and

19             (iv) and the recorded accountability for

20    assets is compared with the existing assets at

21    reasonable intervals and appropriate action is taken

22    with respect to any differences.

23             And, finally, they're also charging that you

24    conspired to violate Title 15, U.S. Code, Section

25    78m(b)(5) which provides that no person shall

1  knowingly circumvent or knowingly fail to implement a

2  system of internal accounting controls or knowingly

3  falsify any book, record, or account described in

4  paragraph (2) of this title.

5          And paragraph (2) of the title says, such

6  annual reports certified if required by the rules and

7  regulations of the Commission by independent public

8  accountants, and such quarterly reports, as the

9  Commission may prescribe.  And I guess -- I don't know

10  if I have to read anything else.  One more second.

11          (Brief pause)

12          There are a number of things, as you know,

13  that the government in the second object of the

14  conspiracy is charging that you knowingly and

15  willfully conspired with other people to violate

16  certain federal statutes and also a provision of the

17  Code of Federal Regulations, which provides that no

18  person shall directly or indirectly falsify or cause

19  to be falsified any book, record or account subject to

20  Section 13(b)(2)(A) of the Securities and Exchange

21  Act.

22          That was all very wordy, but basically I

23  read you the statutes that require certain things to

24  be done.  And the government is saying in this count

25  of the conspiracy or this portion of the conspiracy

1    charge that you knowingly and willfully agreed with

2    someone else to violate those federal statutes in that

3    particular provision of the Code of Federal

4    Regulations.

5           Do you understand the charge against you in

6    the second object of the conspiracy?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  The third object of the

9    conspiracy is that you conspired to devise and attempt

10   to devise a scheme and artifice to defraud and to

11   obtain money and property by means of materially false

12   and fraudulent pretenses, representations and promises

13   and to knowingly transmit and cause to be transmitted,

14   by means of wire communication, in interstate and

15   foreign commerce, writing, signs, signals and sounds

16   for the purpose of executing such scheme or artifice

17   in violation of Title 18, United States Code, Section

18   1343.  Thus, this section of the conspiracy charges

19   you with conspiring to commit an offense which would

20   be in violation of Title 18, U.S. Code, Section 1343.

21          Title 18, United States Code, Section 1343

22   makes it a federal crime or offense for anyone to use

23   interstate wire communications facilities in carrying

24   out a scheme to defraud.

25          Do you understand the charge against you in

1    the third object of the conspiracy?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And, finally, the last count is

4    a forfeiture count, which is moving the court to

5    forfeit any property, real or personal, which

6    constitutes or is derived from proceeds traceable to

7    specified unlawful activity committed by you.  Do you

8    understand the charge against you in Count Two?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  And have you had sufficient time

11   to -- let me say one other thing.  Do you understand

12   that when I said to you you must have acted knowingly

13   and willfully that that means that you had to act

14   purposely with specific intent to disregard or disobey

15   the law and not by accident or mistake?  Do you

16   understand that?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Have you had sufficient time,

19   Mr. Brown, to discuss the charges in the Information

20   with your attorneys?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  And are you satisfied with your

23   lawyers and the work they have done for you?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Mr. Espy, are you satisfied that

1    the defendant fully understands the charges,

2    specifically Count One, but both counts in the

3    Information and the consequence of entering a plea of

4    guilty to the charges?

5          MR. ESPY:  Yes, ma'am.

6          THE COURT:  Are you also satisfied that he

7    is knowingly and voluntarily entering his plea of

8    guilty?

9          MR. ESPY:  Yes, ma'am.

10          THE COURT:  As his attorney, have you had

11    sufficient time to investigate the case, the charges

12    against Mr. Brown, any possible defenses that he might

13    have to the charges and to generally give him counsel

14    and advice?

15          MR. ESPY:  We have, Your Honor.

16          THE COURT:  Just one second.  Mr. Wiedis, I

17    didn't have time to check it myself, but that "twice

18    the gain" language did not sound correct to me, so I

19    sent my courtroom deputy down -- and we don't have a

20    definitive answer, but apparently it's two times the

21    gain or loss only on a substantive count, not on a

22    conspiracy count.

23          Now, I don't know if that's right or not,

24    but, of course, I guess I'm giving him the high end

25    here if I tell him it's twice the gain or loss, but I

1    didn't think it was right.  It didn't sound right to

2    me, and I think it's only on a substantive count.

3              MR. WIEDIS:  Let me double check that.

4              MR. ESPY:  We accept this.  We understand it

5    could possibly be the worst.  I mean --

6              THE COURT:  You're pleading guilty

7    understanding, although --

8              MR. ESPY:  The worst of it.

9              THE COURT:  I've given you the worst case

10    scenario as a possible penalty, meaning that it could

11    be twice the gain or loss, but I'm not sure you are

12    actually facing that.  It could be that the maximum

13    you're facing -- we can't get a definitive answer

14    unfortunately.  No one at probation, the senior people

15    are -- but you understand I gave you the worst

16    possible scenario, but it could be less?

17              THE DEFENDANT:  Yes.

18              THE COURT:  I want you to listen carefully

19    to what the Department of Justice Attorney is going to

20    say.  He is now going to outline for you and for me

21    briefly certain of the facts he would expect the

22    government to prove should this case proceed to trial.

23              MR. WIEDIS:  Your Honor, I'm going to skip

24    some of the introductory paragraphs, and I will get to

25    the factual basis.

1          THE COURT:  I want you to tell me where

2     you're reading.

3          MR. WIEDIS:  I'm going to be reading from

4     the factual basis that was previously filed with this

5     court.

6          THE COURT:  Let me get it.  Just one second.

7     Mr. Brown, if, while he is speaking, he says anything

8     that is not true or that you do not believe the

9     government can prove, I want you to interrupt him and

10    let me know.  Do you understand?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  And I think it would be best if

13    you stop him at the time if he says something that is

14    not true.

15         All right.  Go ahead.

16         MR. WIEDIS:  I'm going to start with

17    Paragraph 5, which is the first substantive paragraph.

18    The Conspiracy:  Beginning at least in 1996, the CEO,

19    the person who has not been named but identified as

20    the CEO of HealthSouth at that time, and other senior

21    officers and members of HealthSouth's accounting staff

22    engaged in a conspiracy and scheme and artifice to,

23    among other objectives, defraud investors by

24    artificially inflating HealthSouth's earnings and

25    earnings per share, make false entries in

1   HealthSouth's books and records, file false statements

2   with the SEC and commit mail and wire fraud.

3          HealthSouth's CEO and other senior officers

4   reviewed monthly and quarterly preliminary reports

5   showing HealthSouth's true and actual financial

6   results, which usually showed that HealthSouth had not

7   met earnings per share expectations.  These senior

8   officers would then direct HealthSouth's accounting

9   staff to manipulate HealthSouth's books, accounts and

10  reports to ensure that HealthSouth's earnings per

11  share number met or exceeded those expectations.

12         Methods to increase earnings included making

13  entries to reduce offsets against revenues or to

14  reduce expenses.  Corresponding fraudulent entries

15  were made to increase assets and decrease liabilities

16  on HealthSouth's balance sheet.  Such entries were

17  made in, among other accounts, HealthSouth's Property,

18  Plant and Equipment, (PP&E ) accounts; cash accounts;

19  inventory accounts, intangible asset (goodwill)

20  accounts; and investment portfolio.

21         These entries caused the quarterly and

22  annual financial statements filed with the SEC for the

23  years from before 1994 through 2002, that is, Forms

24  10-Q and Forms 10-K, to be materially false.  The

25  cumulative overstatement of assets summed more than a

1   billion dollars.  Some of these financial statements

2   were transmitted electronically from Birmingham,

3   Alabama to Washington, D.C., to be filed with the SEC.

4        The CEO and other conspirators benefited

5   from the conspiracy by receiving salaries, bonuses and

6   increased value in their stock and stock options.  The

7   investing public suffered to the extent that they paid

8   for shares whose value was inflated by the aforesaid

9   conspiracy.

10        Your Honor, the government would also show

11   that Defendant Jason Brown was employed at HealthSouth

12   Corporation since 1994.  The Defendant Brown worked in

13   the accounting division from the beginning of his

14   employment until mid 1996.  From mid 1996 until the

15   end of 1997, the Defendant Brown worked in the

16   Corporate Development Department.  He then moved to

17   the Treasury Department.  In May of 2000, Defendant

18   Brown was promoted to the position of Vice

19   President-Finance.

20        In the course of his employment at

21   HealthSouth, Defendant Brown would and did become

22   aware of HealthSouth's earnings shortfalls and the

23   potential adverse effect on HealthSouth's stock price

24   if these shortfalls were disclosed to the public.

25        In or about the summer of 2002, Defendant

38

1    Brown learned of, and knowingly and voluntarily joined

2    in, the above-described conspiracy and scheme and

3    artifice.  Defendant Brown was instructed by other

4    senior officers of HealthSouth to create a bogus

5    document showing the sale of another publicly-traded

6    company -- I'm sorry -- showing the sale of stock of

7    another publicly-traded company owned by HealthSouth

8    in 2002 when, in fact, as the conspirators well knew,

9    the stock had been sold for more than twenty-seven

10   million dollars in 2001.

11            In meetings with other senior officers,

12   Defendant Brown discussed steps that would have to be

13   taken to make the bogus stock sale document appear

14   legitimate.  Defendant Brown was instructed to have

15   the phony document show that the stock was sold in

16   small blocks over a period of several weeks.  This

17   would be done to ensure that the number of shares

18   shown on the bogus document as sold on a particular

19   day in 2002, did not exceed the actual volume of stock

20   in the company that traded on that day.

21            Further, in creating the bogus stock sale

22   document, Defendant Brown would confirm the stock's

23   actual trading price on the dates in 2002 when the

24   bogus stock sales would purportedly take place.

25            Finally, Defendant Brown and others would

1     cause actual wire transfers from HealthSouth's

2     investment account in amounts that were consistent

3     with the purported proceeds of the bogus stock sales.

4     Employing all of the above-listed devices, Defendant

5     Brown created the bogus document which the

6     conspirators would provide to HealthSouth's auditors

7     to give the appearance that the stock sale of the

8     publicly-traded company occurred in 2002.

9          Defendant Brown provided the false and

10    fraudulent stock sale document to others in

11    HealthSouth's Treasury Department and accounting staff

12    who provided the bogus document to HealthSouth's

13    auditors.

14         In addition, Your Honor, the United States

15    would show beyond a reasonable doubt the following:

16    Same-store sales -- same-store volume figures compared

17    operating results from a defined set of facilities for

18    the current quarter with the operating results for the

19    same set of facilities for the same period during the

20    prior year.

21         Same-store volume is one of the statistics

22    that is relied upon by Wall Street analysts in

23    evaluating for their clients and the public the

24    financial condition and operating results of

25    HealthSouth.

40

1          In a meeting which took place near the end

2     of 2002, Defendant Brown met with other senior

3     officers at HealthSouth and discussed the fact that

4     HealthSouth's outpatient same-store volume had

5     declined significantly in the third quarter of 2002

6     compared to the same quarter for 2001.  At the

7     direction of the other senior officers, Defendant

8     Brown altered the actual same-store volume numbers in

9     HealthSouth's books and records, making it appear that

10    same-store volume for the third quarter of 2002 had

11    not declined as much as the actual operating results

12    showed.

13         Defendant Brown and others then caused the

14    falsified outpatient same-store volume numbers to be

15    included in a press release which was sent via

16    interstate wire to HealthSouth's analysts and to the

17    public.

18         Defendant Brown and others also maintained

19    in the files, books and records of HealthSouth the

20    above-described documents and records which they knew

21    contained false information.

22         THE COURT:  All right.  Mr. Brown, you've

23    heard the Department of Justice attorney outline

24    certain of the facts that the government would expect

25    to prove should this case proceed to trial.  Are those

1    facts substantially correct?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Mr. Brown, you're not required

4    to enter a plea of guilty, and you are free at this

5    time to withdraw your plea of guilty and re-enter a

6    not guilty plea.  Have you heard anything here today

7    that causes you to want to reconsider your decision to

8    enter a plea of guilty?

9          THE DEFENDANT:  No, ma'am.

10          THE COURT:  Do you still desire to enter

11    your plea of guilty?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  The Court finds your plea of

14    guilty to Count One and the forfeiture count is freely

15    and voluntarily entered, and the plea is accepted by

16    the Court.  The requisite factual basis also exists.

17          I will set sentencing for sometime away,

18    maybe six months.  I would normally set it for three

19    months, but I would anticipate that you would all

20    would want it longer than that.

21          MR. SMITH:  Six months, Your Honor, may

22    be --

23          THE COURT:  Too long?

24          MR. SMITH:  Six months will be fine.  We

25    will revisit it if we need more time.

1          THE COURT:  I tell you what, let me do it

2     this way:  What I normally do is to set it in three

3     months, so I will set it in three months.  If you want

4     me to continue it, you can file a motion.

5          MR. SMITH:  File a motion, yes, ma'am.

6          MR. ESPY:  Judge, can I ask a question?

7          THE COURT:  Mr. Brown, you are continued on

8     your same bond with same terms and conditions,

9     including the condition that you not violate any

10    local, state or federal law.  All right.  Mr. Espy?

11         MR. ESPY:  We had received a document styled

12    Guilty Plea Advice of Rights Certification.

13         THE COURT:  If you filled it in, that's

14    great.  And you may file it.

15         MR. ESPY:  Do you want me to file it in open

16    court?

17         THE COURT:  Yes, that's great.

18         MR. ESPY:  We did fill it in.  He signed it,

19    and I did, Your Honor.

20         THE COURT:  Is it styled at the top?

21         THE CLERK:  Yes.

22         THE COURT:  That's great.  Thank you very

23    much.

24         (Court adjourned.)

25

43

```
 1              C E R T I F I C A T E

 2

 3         I certify that the foregoing is a correct

 4    transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7

 8    _____        _____

 9    JULIE A. MARTIN, RMR, CRR            DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```