06641

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ALABAMA
2            SOUTHERN DIVISION

3

4  UNITED STATES OF AMERICA,

5              CR-03-BE-530-S

6    v.         Birmingham, Alabama

7  RICHARD M. SCRUSHY,      March 3, 2005

8
     Defendant.
9
   *********************
10

11
           TRANSCRIPT OF TRIAL
12   BEFORE THE HONORABLE KARON O. BOWDRE
     UNITED STATES DISTRICT JUDGE, and jury.
13

14

15          VOLUME XXIV

16

17

18

19

20

21

22

23

24

25

06755

1  of years before to Integrated Health, because we

2  didn't want to be in that business.

3       So I wasn't so sure, and I think even

4  Mr. Scrushy wasn't so sure that that was

5  strategically the best move.

6       MR. LEACH: Objection, Your Honor, to

7  Mr. Scrushy's knowledge.

8       THE COURT: Sustained.

9  A.  I'm sorry. At any rate, it was -- I did

10 not believe it was a strategic move for the

11 company, a good strategic move for the company.

12      So, I enlisted Bill McGahan, who was

13 our investment banker at that time, to assist me

14 in talking Mr. Scrushy out of doing the

15 transaction based on the fact that it was not a

16 good strategic fit. It didn't really fit with the

17 HealthSouth business.

18 Q.  Tell us how -- how did you get Mr. McGahan

19 to help you speak with the defendant about this

20 transaction?

21 A.  We were continuing to negotiate with

22 Mr. Ormand. And our price -- our stock price had

23 gone down, and their stock price had gone up, and

24 it was really not even making good sense in black

25 and white on paper.

06756

1       But Mr. Scrushy wanted to talk to me

2 about it. I got a call from Mr. Scrushy. He was

3 at his lake house, and he told me that he wanted

4 McGahan and I to come down to his lake house to

5 discuss whether or not we should do this.

6 Q.   Did you and Mr. McGahan travel down to the

7 defendant's lake house?

8 A.   Yes.

9 Q.   Do you recall where his lake house is

10 located?

11 A.   It's at Lake Martin.

12 Q.   Do you recall when you and Mr. McGahan

13 traveled to Mr. Scrushy's lake house to talk with

14 him?

15 A.   It was sometime in early June of 1999.

16 Q.   Tell us how you and Mr. McGahan travel down

17 to meet with Mr. Scrushy?

18 A.   Mr. McGahan was in New York that morning

19 when I got the call from Mr. Scrushy telling us to

20 come down and see him. So I met Mr. McGahan at

21 the airport, and then we took one of HealthSouth's

22 planes down to Lake Martin.

23 Q.   Did you have any conversation with

24 Mr. McGahan while you were traveling from

25 Birmingham down to Lake Martin?

06757

1  A.  Yes. I told Mr. McGahan that he had to

2  help me talk Mr. Scrushy out of this, because we

3  were not making our numbers. We were missing our

4  numbers by over three hundred million dollars at

5  that point or more. And I told him that, if we

6  did this transaction, that we would all go to

7  jail.

8  Q.  Did you and Mr. McGahan meet with the

9  defendant to talk about the proposed merger with

10 Manorcare?

11 A.  Yes, sir, we did.

12 Q.  Was there a conversation between you and

13 the defendant with Mr. McGahan being present?

14 A.  Yes. And the conversation with Mr. McGahan

15 being present centered around the strategic issues

16 with the merger. Mr. McGahan was not about to

17 bring up the fraud with Mr. Scrushy.

18      MR. LEACH: Objection, Your Honor.

19      THE COURT: Sustained.

20 Q.  Just tell us what you told the defendant

21 while Mr. McGahan was present and what the

22 defendant said to you during that conversation.

23 A.  I told the defendant I didn't think we

24 needed to do the transaction based on the fact

25 that we would be getting back into the nursing

06758
1  home business, and I didn't think it was a good

2  strategic move for HealthSouth.

3  Q.  What, if anything, did the defendant say

4  back to you, if you recall?

5  A.  When Mr. McGahan was present or --

6  Q.  While he was present first.

7  A.  He continued to think it was a good

8  transaction, and he was continuing to want to go

9  forward with it.

10  Q.  Did there come a time when Mr. McGahan left

11  the conversation?

12  A.  Yes.

13  Q.  Did you and Mr. Scrushy have additional

14  conversation without Mr. McGahan being present?

15  A.  We did.

16  Q.  Can you please tell us what you said and

17  what the defendant said when Mr. McGahan was not

18  present?

19  A.  I told Mr. Scrushy that if we go through

20  with this transaction, that the fraud would be

21  exposed.  And I said the "fraud" (indicating).

22  Never before had I used that word "fraud."

23      And Mr. Scrushy, at that point, realized

24  that we didn't need to do it if I felt like --

25      MR. LEACH:  Objection to realized, Your

06759

1  Honor.

2      THE COURT: Sustained.

3  Q.  After you told Mr. Scrushy that the fraud

4  would be exposed, did you all proceed with the

5  transaction?

6  A.  No, sir.

7  Q.  Did the defendant ask you any questions

8  after you told him that the fraud would be exposed

9  and the deal was not going to take place?

10  A.  Mr. Scrushy, because of the fact that

11  McGahan was nearby, said, did you tell Bill, Bill

12  McGahan? And I said, yeah, I told him, but he

13  won't tell anybody because he has as much to lose

14  as we do.

15  Q.  What were you talking about when you said

16  yeah, I told Mr. McGahan, but he won't say

17  anything?

18  A.  I was talking about the fraud.

19  Q.  Was there another alternative on the table

20  at the same time while you were considering

21  Manorcare? Was HealthSouth considering doing

22  anything else?

23  A.  Yes, sir. We had left on the table the

24  alternative to split the company into two pieces

25  that we were looking at back in 1998.