5/27
199

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

## HEALTHSOUTH CORPORATION LITIGATION

WADE TUCKER, derivatively for the
Benefit of and on behalf of the
Nominal Defendant HealthSouth
Corporation,

                Plaintiff,

            -vs-

RICHARD M. SCRUSHY, *et al.,*

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. CV-02-5212

## UBS SECURITIES LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT, OR ALTERNATIVELY, TO STAY THE ACTION

W. Stancil Starnes
Jay M. Ezelle
Robin H. Jones
STARNES & ATCHISON LLP
P.O. Box 598512
Birmingham, Alabama  35259-8512
(205) 868-6000

*Attorneys for Defendant*
*UBS Securities LLC*

May 27, 2004

5/27/04

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

THE ALLEGATIONS OF THE AMENDED COMPLAINT ........................................... 3

    A.    The Parties ........................................................................................... 3

    B.    The Agreements Governing the Services Provided by UBS to HealthSouth........................................................................................... 4

    C.    The HealthSouth Insider Fraud........................................................... 5

    D.    The Alleged Involvement of UBS ....................................................... 6

ARGUMENT...................................................................................................................... 7

I.    BECAUSE UBS GROUP AND UBS INVESTMENT BANK ARE NON-EXISTENT LEGAL ENTITIES, ALL CLAIMS AGAINST THEM MUST BE DISMISSED ....................................................................................................... 7

II.    PLAINTIFF LACKS STANDING TO ASSERT ANY DERIVATIVE CLAIMS. ............................................................................................................... 8

    A.    Plaintiff's Conclusory Allegation that a Majority of the Board was "Dominated" and "Beholden" to Scrushy Cannot Excuse Demand ...................... 9

    B.    Plaintiff's Conclusory Allegations of Director Participation in the Events and Potential Director Liability Cannot Excuse His Failure to Make Demand........................................................................................... 11

    C.    Certain Directors' Service on Other Boards Cannot Excuse Demand ................... 13

III.    PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY. ............................ 14

IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(B)(6)............................... 15

    A.    Plaintiff Fails to State a Claim for "Aiding and Abetting" a Breach of Fiduciary Duty ................................................................................... 15

    B.    Plaintiff Fails to State a Claim for Civil Conspiracy ............................................. 18

    C.    Plaintiff Fails to State a Claim for Suppression.................................................... 19

    D.    The Breach of Contract and Fiduciary Duty Claims Are Barred by the Governing Agreements........................................................................... 20

i

1.    The Contract Action is Barred by the Forum Selection Clause ..................20

2.    Plaintiff's Claims Are Barred by HealthSouth's Indemnity Agreements ...........................................................................................................21

3.    Plaintiff's Claim for Breach of Fiduciary Duty is Precluded by the Governing Agreements .........................................................................22

E.    Plaintiff Fails to State a Claim for Unjust Enrichment ...........................................23

V.    PLAINTIFF'S CLAIMS AGAINST UBS, ON BEHALF OF NOMINAL DEFENDANT HEALTHSOUTH, ARE BARRED BY HEALTHSOUTH'S INEQUITABLE CONDUCT AND UNCLEAN HANDS ...........................................23

VI.    PLAINTIFF'S CLAIMS ARE BARRED BECAUSE HEALTHSOUTH SUSTAINED NO LEGALLY COGNIZABLE INJURY BY VIRTUE OF ANY ALLEGED CONDUCT OR OMISSION OF UBS ...............................................24

VII.    CLAIMS BASED ON EVENTS PRIOR TO AUGUST 8, 2001 ARE TIME-BARRED .............................................................................................................25

VIII.    ALTERNATIVELY, THE ACTION SHOULD BE STAYED ........................................25

CONCLUSION ..........................................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Page(s)*

*Allison v. Gen. Motors Corp.,*
 604 F. Supp. 1106 (D. Del. 1985), *aff'd,*
 782 F.2d 1026 (3d Cir. 1985)........................................................................ 10-11, 14

*AmSouth Bank, N.A. v. Spigener,*
 505 So. 2d 1030 (Ala. 1986).........................................................................18

*Aronson v. Lewis,*
 473 A.2d 805 (Del. 1984), *overruled on other grounds by*
 *Brehm v. Eisner,* 746 A.2d 244 (Del. 2000) .......................................................10, 12

*Ash v. McCall,*
 No. Civ. A. 17132, 2000 WL 1370341
 (Del. Ch. Sept. 15, 2000) ...............................................................................10

*Banks, Finley, White & Co. v. Wright,*
 864 So. 2d 324 (Ala. Civ. App. 2001).................................................................4

*In re Baxter Int'l, Inc. S'holders Litig.,*
 654 A.2d 1268 (Del. Ch. 1995).......................................................................12

*Berry v. Druid City Hosp. Bd.,*
 333 So. 2d 796 (Ala. 1976)............................................................................21

*Bethel v. Thorn,*
 757 So. 2d 1154 (Ala. 1999)...........................................................................19

*Brehm v. Eisner,*
 746 A.2d 244 (Del. 2000) ......................................................................*passim*

*Brophy v. Cities Serv., Inc.,*
 70 A.2d 5 (Del. Ch. 1949)..............................................................................13

*Caruana v. Saligman,*
 Civ. A. No. 11135, 1990 WL 212304
 (Del. Ch. Dec. 21, 1990)................................................................................11

*Cooper v. USCO Power Equip. Corp.,*
 655 So. 2d 972 (Ala. 1995)...............................................................................9

*Dickinson* v. *Cosmos Broad. Co., Inc.*,
  782 So. 2d 260 (Ala. 2000)......................................................................................23

*Distronics Ltd.* v. *Disc Mfg., Inc.*,
  686 So. 2d 1154 (Ala. 1996)................................................................................8, 15

*Ex parte Ebbers*,
  Nos. 1020931, 1021008, 2003 WL 21570770
  (Ala. July 11, 2003) ...............................................................................................26

*Fisher* v. *Comer Plantation, Inc.*,
  772 So. 2d 455 (Ala. 2000)....................................................................................19

*In re Fuqua Indus., Inc. S'holder Litig.*,
  No. Civ. A. 11974, 1997 WL 257460
  (Del. Ch. May 13, 1997) ..........................................................................................8

*Good* v. *Getty Oil Co.*,
  514 A.2d 1104 (Del. Ch. 1986)..........................................................................11-12

*In re Granite Partners, L.P.*,
  194 B.R. 318 (Bkrtcy. S.D.N.Y. 1996).................................................................24

*Grobow* v. *Perot*,
  526 A.2d 914 (Del. Ch. 1987), *aff'd*,
  539 A.2d 180 (Del. 1988) .......................................................................................11

*Grobow* v. *Perot*,
  539 A.2d 180 (Del. 1988), *overruled on other grounds by*
  *Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000) ..........................................................9

*Guttman* v. *Huang*,
  823 A.2d 492 (Del. Ch. 2003).................................................................................13

*Hancock-Hazlett Gen. Const. Co., Inc.* v. *Trane Co.*,
  499 So. 2d 1385 (Ala. 1986)...................................................................................23

*In re Healthsouth Corp. S'holders Litig.*,
  Civ. A. No. 19896, 2003 WL 22769045
  (Del. Ch. Nov. 24, 2003), *aff'd*,
  No. 22, 2004, 2004 WL 835879 (Del. Apr. 14, 2004)...........................................24

*Hooper Assocs., Ltd.* v. *AGS Computers, Inc.*,
  74 N.Y.2d 487 (1989) .............................................................................................22

*Hughes Assocs., Inc.* v. *Printed Circuit Corp.*,
    631 F. Supp. 851 (N.D. Ala. 1986) ................................................................................... 20

*Jackson Nat'l Life Ins. Co.* v. *Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ........................................................................................ 16

*Kamen* v. *Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ........................................................................................................... 8

*Landy* v. *FDIC*,
    486 F.2d 139 (3d Cir. 1973) ...................................................................................... 16, 18

*Langer* v. *Brown*,
    913 F. Supp. 260 (S.D.N.Y. 1996) ................................................................................ 14

*Levine* v. *Smith*,
    591 A.2d 194 (Del. 1991), *overruled on other grounds by*
    *Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000) ............................................................... 8, 9

*Lyde* v. *United Ins. Co. of Am.*,
    628 So. 2d 665 (Ala. Civ. App. 1993) ........................................................................... 14

*Malpiede* v. *Townson*,
    780 A.2d 1075 (Del. 2001) .......................................................................................... 9, 15

*Massey* v. *Disc Mfg., Inc.*,
    601 So. 2d 449 (Ala. 1992) ............................................................................................ 15

*Miller* v. *Mobile County Bd. of Health*,
    409 So. 2d 420 (Ala. 1981) ............................................................................................ 14

*Nakahara* v. *NS 1991 Am. Trust*,
    718 A.2d 518 (Del. Ch. 1998) ....................................................................................... 24

*Newson* v. *Protective Indus. Ins. Co. of Ala.*,
    No. 1011342, 2003 WL 22463336
    (Ala. Oct. 31, 2003) ......................................................................................................... 4

*Northbrook Indem. Co.* v. *Westgate, Ltd.*,
    769 So. 2d 890 (Ala. 2000) .............................................................................................. 7

*Northeast Gen. Corp.* v. *Wellington Adver., Inc.*,
    82 N.Y.2d 158 (1993) ..................................................................................................... 23

*Oliver* v. *Boston Univ.*,
No. 16570, 2000 WL 1091480
(Del. Ch. July 25, 2000).................................................................................................16-17

*Overseas Private Inv. Corp.* v. *Industria de Pesca, N.A.*,
920 F. Supp. 207 (D.D.C. 1996)...........................................................................................16

*Ex parte Pate*,
673 So. 2d 427 (Ala. 1995)....................................................................................................8

*Phillips Colls. of Ala., Inc.* v. *Lester*,
622 So. 2d 308 (Ala. 1993)..................................................................................................14

*Pogostin* v. *Rice*,
480 A.2d 619 (Del. 1984), *overruled on other grounds by*
*Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000) .............................................................11, 12

*Premium Risk Group, Inc.* v. *Legion Ins. Co.*,
741 N.Y.S.2d 563 (App. Div. 2002)...................................................................................20

*Prof'l Ins. Corp.* v. *Sutherland*,
700 So. 2d 347 (Ala. 1997)..................................................................................................15

*Promuto* v. *Waste Mgmt., Inc.*,
44 F. Supp. 2d 628 (S.D.N.Y. 1999)...................................................................................22

*Rales* v. *Blasband*,
634 A.2d 927 (Del. 1993) ..................................................................................................8, 9

*Robinson* v. *Allstate Ins. Co.*,
399 So. 2d 288 (Ala. 1981)..................................................................................................14

*Schleiff* v. *Balt. & O. R. Co.*,
130 A.2d 321 (Del. Ch. 1957)..............................................................................................24

*S.E.C.* v. *HealthSouth Corp.*,
261 F. Supp. 2d 1298 (N.D. Ala. 2003)...............................................................................26

*Silverzweig* v. *Unocal Corp.*,
Civ. A. No. 9078, 1989 WL 3231
(Del. Ch. Jan. 19, 1989), *aff'd*,
561 A.2d 993 (Del. 1989) ....................................................................................................12

*Snyder* v. *Faget*,
326 So. 2d 113 (Ala. 1976)..................................................................................................18

*Stallworth* v. *AmSouth Bank of Ala.,*
　709 So. 2d 458 (Ala. 1997)............................................................................................................8

*Tucker* v. *Cullman-Jefferson Cos. Gas Dist.,*
　864 So. 2d 317 (Ala. 2003)..........................................................................................................21

## Statutes and Rules

ALA. CODE § 6-2-38(l) (1975) ........................................................................................................25

ALA. R. CIV. P. 4(c)...........................................................................................................................7

ALA. R. CIV. P. 9(b) ....................................................................................................... 1, 14-15, 18

ALA. R. CIV. P. 12 .......................................................................................................................2, 21

ALA. R. CIV. P. 23.1 ...................................................................................................................1, 3, 9

Del. Code Ann. tit. 8, § 141(a)........................................................................................................8

## PRELIMINARY STATEMENT

This action, brought derivatively on behalf of HealthSouth Corporation ("HealthSouth"), is predicated upon claims against HealthSouth insiders for financial accounting fraud, insider trading, and breaches of duty to the Company. In a transparent effort to find a "deep pocket," Plaintiff also attempts to implicate UBS,[1] one of numerous investment banks that provided investment banking services to HealthSouth. Plaintiff alleges — without any factual support — that UBS participated in HealthSouth's wrongdoing by "falsely touting" HealthSouth stock. Yet, Plaintiff ignores his own allegations and the reams of public information confirming that the fraud was committed by HealthSouth insiders, and was specifically designed to deceive outsiders, such as UBS. Indeed, none of the fifteen HealthSouth insiders who pleaded guilty to participating in the accounting fraud — including five former Chief Financial Officers — has testified that UBS had anything to do with the fraud.

Plaintiff's claims against UBS fail as a matter of law for the following reasons.

- **First**, Plaintiff lacks standing to bring these derivative claims because Plaintiff has failed to make a demand on HealthSouth's Board prior to commencing suit against UBS. Although Plaintiff claims that such a demand would have been futile, Plaintiff does not plead particularized facts, as required by *Alabama Rule of Civil Procedure* 23.1 and applicable Delaware law, demonstrating that a majority of the HealthSouth Board of Directors were incapable of making such a decision. Instead, Plaintiff wrongly seeks to arrogate to himself the authority to determine whether pursuit of litigation against UBS would be in the best interests of HealthSouth and all of its shareholders.

- **Second**, Plaintiff fails to meet its burden under *Alabama Rule of Civil Procedure* 9(b) of pleading with particularity specific facts demonstrating the existence of fraudulent misconduct by UBS. Plaintiff fails completely to specify the time, location, content, or facts supposedly misrepresented by UBS in furtherance of the HealthSouth insider fraud.

---

[1] UBS Securities LLC ("UBS") was formerly known as UBS Warburg LLC.

1

- **Third,** Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the *Alabama Rules of Civil Procedure*. No matter what label used — aiding and abetting breaches of fiduciary duties, civil conspiracy, suppression, breach of contract, or unjust enrichment — Plaintiff fails to allege facts establishing that UBS knowingly sought to enmesh itself in the alleged fraud at HealthSouth, or that UBS owed any fiduciary duty to HealthSouth. Instead, the Amended Complaint[2] concedes that UBS — like numerous other firms — simply provided typical investment banking services to HealthSouth.

- **Fourth,** Plaintiff's claims for breach of fiduciary duty and breach of contract are barred by the agreements that govern the investment banking relationship between UBS and HealthSouth. For example, in the Engagement Letters that govern the financial advisory services provided to HealthSouth by UBS, HealthSouth agreed to indemnify UBS "against all losses, claims, damages, liabilities and expenses . . . except to the extent it shall be determined by a court of competent jurisdiction . . . [they] resulted *solely* from the gross negligence or willful misconduct of UBS Warburg." *See infra* Part IV.D.2.

- **Fifth,** all of Plaintiff's claims are barred by the *in pari delicto* and unclean hands doctrines. Plaintiff concedes that HealthSouth insiders were the primary actors behind the accounting fraud, not UBS (*see, e.g.,* Am. Compl. ¶ 41), which alone establishes that HealthSouth has no viable cause of action against UBS as a matter of law.

- **Sixth,** the claims against UBS fail as a matter of law because HealthSouth sustained no legally cognizable injury by virtue of any conduct or omission by UBS.

- **Finally,** all non-contract claims arising out of conduct or omissions prior to August 8, 2001 are barred by the applicable two-year statute of limitations.

If the Court does not dismiss the Amended Complaint, this action should be stayed pending the criminal investigations of a number of the key witnesses and parties to this action. Because the parties will not be able to investigate the allegations so long as these

---

[2] The Fourth Amended Complaint in this action, filed March 29, 2004, will hereinafter be referred to as the "Amended Complaint" or "Am. Compl." Paragraphs 1-222 of the Third Amended Complaint, filed August 8, 2003, are incorporated by reference in the Amended Complaint (*See* Am. Compl. ¶ 223).

witnesses find it necessary to invoke their Fifth Amendment rights in the parallel criminal proceeding, this action should be stayed pending the completion of the criminal proceedings.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT[3]

### A.    The Parties

Plaintiff Wade Tucker, an alleged HealthSouth shareholder, (Am. Compl. ¶ 3), purports to bring this action derivatively pursuant to Rule 23.1 of the *Alabama Rules of Civil Procedure* on behalf of nominal defendant HealthSouth, a Delaware Corporation. (*Id.* ¶ 4.) Richard Scrushy, the former Chairman of the Board and CEO of HealthSouth throughout most of the relevant period (*id.* ¶ 5), and several HealthSouth current and former executives and directors are named as "Individual Defendants" (*id.* ¶¶ 5-19, n.1), along with several corporate entities related to HealthSouth or one or more of the Individual Defendants. (*Id.* ¶¶ 22-25.)

Not content to limit its claims to the alleged perpetrators of the fraud, Plaintiff later added as defendants UBS Group, UBS Investment Bank, and UBS Securities LLC ("UBS"). (*Id.* ¶ 234.) "UBS Group" and "UBS Investment Bank," however, are non-existent legal entities, and as such, were not parties to any contract or relationship with HealthSouth.[4] UBS is the successor to UBS Warburg LLC and Warburg Dillon Read LLC, and provided investment banking services to HealthSouth, from "at least 1998 through 2002." (*Id.* ¶ 21.)

---

[3]    For purposes of this motion, UBS presents, but does not concede the truth of, the allegations of the Amended Complaint.

[4]    UBS filed a motion with this Court on October 17, 2003, which established that UBS Group and UBS Investment Bank do not exist. Plaintiff nonetheless chose to include these non-existent entities in the Amended Complaint, at the same time that he added UBS as a defendant.

**B.    The Agreements Governing the Services Provided by UBS to HealthSouth.**

*The Purchase Agreements.*    During the relevant period, UBS acted as an Initial Purchaser in four private HealthSouth note offerings. A Purchase Agreement was executed in each of those offerings by HealthSouth and each of the Initial Purchasers, including UBS.[5] These agreements contain three provisions relevant to this motion. First, the Purchase Agreements provide that the agreements are governed by New York law. Second, HealthSouth agreed to indemnify UBS in connection with any actions arising out of any material misrepresentations or omissions contained in the offering memorandum. Third, HealthSouth warranted the material accuracy of the financial statements contained or incorporated in the offering memorandum.

*The Engagement Letters.*    The financial advisory services provided to HealthSouth by UBS on merger and acquisition transactions were governed by Engagement Letters.[6]    Each of those letters also had three provisions relevant to this motion. First, HealthSouth agreed that UBS was acting as an independent contractor, and not in any other capacity, including as a fiduciary. Second, HealthSouth agreed to indemnify UBS in connection with any actions arising out of financial services rendered by UBS except to the extent that the damages resulted *solely* from the gross negligence or willful misconduct of UBS.    Third,

---

[5]    The Purchase Agreement from the only transaction specified by Plaintiff in the Amended Complaint (Am. Compl. ¶ 69), the $1 billion HealthSouth note offering, is attached as Exhibit 1 to the Starnes Affidavit. The Court may properly consider the agreements governing UBS's investment banking relationship with HealthSouth on a motion to dismiss because they are incorporated by reference into the Amended Complaint. (*See id.* ¶ 69, 89, 193); *see Newson v. Protective Indus. Ins. Co. of Ala.*, No. 1011342, 2003 WL 22463336, at *4 (Ala. Oct. 31, 2003); *Banks, Finley, White & Co. v. Wright,* 864 So. 2d 324, 327 (Ala. Civ. App. 2001).

[6]    Plaintiff fails to specify any financial advisory services upon which his purported claims are based. UBS attaches as Exhibit 2 to the Starnes Affidavit the Engagement Letter for the potential restructuring of HealthSouth that was announced on August 27, 2002, which is exemplary of its Engagement Letters with HealthSouth.

4

HealthSouth agreed that any action in any way relating to the Engagement Letters, and the services rendered thereunder, would be governed by New York law and only brought in certain specified New York courts.

C.    **The HealthSouth Insider Fraud**

Plaintiff specifically alleges that the Individual Defendants embarked upon a massive fraudulent scheme designed to deceive UBS and other stock analysts who followed the Company's stock. (Am. Compl. ¶¶ 32-33.)    At the direction of Mr. Scrushy, HealthSouth employees artificially inflated HealthSouth's earnings by billions of dollars to match analysts' expectations. (*Id.* ¶¶ 33-35.)    These HealthSouth insiders perpetrated their fraud through the creation of false accounting entries, which were designed to avoid detection by outside auditors, and the filing of false financial reports with the SEC. (*Id.* ¶¶ 41-46.)    The HealthSouth insiders hoped that this would prevent the market price of HealthSouth securities from declining. (*Id.* ¶ 33.)

According to Plaintiff, certain Individual Defendants allegedly used a transmittal by the Center for Medicare and Medical Services ("CMS") as a cover story to help conceal the accounting fraud. (*Id.* ¶ 47.)    On May 17, 2002, CMS issued "Transmittal 1753" concerning the reimbursement procedure for outpatient physical therapy services (the "CMS Transmittal"). (*Id.* ¶ 68.)    HealthSouth claimed that Transmittal 1753 and CMS's interpretation of it materially changed HealthSouth's financial position, resulting in a substantial loss of income. (*Id.* ¶ 71.)    Plaintiff alleges that certain Individual Defendants, including Scrushy, sold their HealthSouth stock before HealthSouth publicly announced the supposed negative impact of Transmittal 1753 on its business. (*Id.* ¶¶ 73-77.)

### D.    The Alleged Involvement of UBS

Plaintiff premises his entire complaint against UBS primarily upon its assertion that UBS, through one of its stock analysts, Howard Capek, issued unspecified positive analysts' reports, "in an effort to ingratiate themselves with Scrushy and others in the top management of HealthSouth, so as to continue to receive investment banking business." (Am. Compl. ¶ 84.) By issuing positive ratings, Plaintiff alleges that UBS "conspired" with HealthSouth insiders to "defraud HealthSouth into granting the UBS Parties investment-banking business" (*id.* ¶ 89), and somehow assisted HealthSouth insiders to falsify records and artificially inflate the price of HealthSouth stock, thereby assisting their breaches of fiduciary duty. (*Id.* ¶ 87.)

Despite his wholesale reliance upon the issuance of positive analysts' reports, Plaintiff admits that these and other analysts' reports were based on "guidance" provided by HealthSouth's management concerning estimated revenue, income and earnings per share. (*Id.* ¶ 32.) According to Plaintiff's own allegations, therefore, UBS and other market analysts were deceived into issuing positive reports by HealthSouth management's financial fraud and affirmative misrepresentations. Indeed, Plaintiff nowhere explains how HealthSouth could have been damaged by UBS's reports given that *"numerous"* investment banks issued similarly positive "guidance" estimates during the same period. (*Id.* ¶ 32.)

The Amended Complaint also contains no allegations that suggest UBS knew of management's fraud. Plaintiff contends in conclusory fashion that UBS "knew or should have known" (*Id.* ¶ 90) of the fraud at HealthSouth based solely upon non-sensical assertions that UBS "held a position of trust with HealthSouth" (*id.* ¶ 21) that gave it "access to the Corporation's most confidential information regarding finances, operating results, and prospects" (*id.* ¶ 83), and that UBS arranged transactions for HealthSouth and profited from its relationship with HealthSouth (*id.* ¶ 85). Yet, all of these assertions are merely indicative of a typical arms-

length relationship between a company and its investment bank, and do not support any inference of knowledge of misdeeds or complicity in them.

Plaintiff also makes the separate allegation that UBS breached its contracts with HealthSouth. (*Id.* ¶ 89.) Yet, Plaintiff has not even identified the contract or contracts on which the claims are based. In fact, the relevant agreements completely defeat any claim here, confirming that UBS has no fiduciary relationship with HealthSouth and providing, among other things, that (i) HealthSouth guaranteed the accuracy of the financial information disseminated to UBS and to the public, and (ii) HealthSouth would indemnify UBS for a variety of claims including each of the claims asserted here. (*See* Starnes Aff. Exs. 1, 2.)

## ARGUMENT

### I.    Because UBS Group and UBS Investment Bank are Non-Existent Legal Entities, All Claims Against Them Must Be Dismissed

Rule 4(c) of the *Alabama Rules of Civil Procedure* requires, in relevant part, that service upon a corporation be made by "serving the agent authorized by appointment or by law to receive service of process." Here, Plaintiff has served the Third and Fourth Amended Complaints on a registered agent for UBS Securities LLC, which was added as a named defendant in the Amended Complaint. But, the Amended Complaint also names as defendants UBS Group and UBS Investment Bank, which are non-existent entities and were consequently not served with process.[7] This Court therefore lacks jurisdiction over UBS Group and UBS Investment Bank, and Plaintiffs' claims against those parties should be dismissed. *See Northbrook Indem. Co.* v. *Westgate, Ltd.*, 769 So. 2d 890, 893 (Ala. 2000) ("Failure of proper service under Rule 4 deprives a court of jurisdiction and renders its judgment void.") (citation

---

[7]    Although UBS advised both the Court and parties herein — by motion dated October 17, 2003 — that UBS Group and UBS Investment Bank are non-existent legal entities, Plaintiff inexplicably continued to name them as defendants in the Amended Complaint.

7

omitted); *see also Ex parte Pate*, 673 So. 2d 427, 428-29 (Ala. 1995) (vacating judgment as to a

defendant never named or served with process in his individual capacity).

## II.    Plaintiff Lacks Standing to Assert Any Derivative Claims.

Plaintiff does not have standing to bring this action because Plaintiff did not make

a demand on HealthSouth's Board of Directors prior to commencing suit against UBS (Am.

Compl. ¶ 130), and Plaintiff has not pled facts to excuse his failure to make such a demand.[8]  It

is a fundamental principle of Delaware Corporation Law — which governs Plaintiff's derivative

claim[9] — that "[t]he directors of a corporation and not its shareholders manage the business and

affairs of the corporation, . . . and accordingly, the directors are responsible for deciding whether

to engage in derivative litigation." *Levine* v. *Smith*, 591 A.2d 194, 200 (Del. 1991), *overruled on

other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000); *see also* Del. Code Ann. tit. 8, §

141(a). Under well-settled Delaware law, a shareholder seeking to represent the corporation in a

derivative action must *first* make an affirmative demand on the Company's board of directors.

Where, as here, a plaintiff does not challenge a specific business judgment by the board, the

---

[8]     Because no claims were alleged against UBS until the filing of the Third Amended
Complaint, Plaintiff was required at that time to make a demand to prosecute those claims on the
newly reconstituted HealthSouth Board or, alternatively, allege with particularity the reasons for
his failure to make such a demand. *See In re Fuqua Indus., Inc. S'holder Litig.*, No. Civ. A.
11974, 1997 WL 257460, at *13 (Del. Ch. May 13, 1997); *see also Rales* v. *Blasband*, 634 A.2d
927, 935 (Del. 1993) ("A stockholder demand letter would, at a minimum, notify the directors of
the nature of the alleged wrongdoing *and the identities of the alleged wrongdoers*.") (emphasis
added).

[9]     Plaintiff's requirement to make a director demand is governed by Delaware law. *See
Distronics Ltd.* v. *Disc Mfg., Inc.*, 686 So. 2d 1154, 1160 n.2 (Ala. 1996) ("established rule of
conflicts law is that the internal corporate relationship is governed by the law of the state of
incorporation"); *see also Stallworth* v. *AmSouth Bank of Ala.*, 709 So. 2d 458, 463 (Ala. 1997)
(while ALA.R.CIV.P. 23.1 governs the adequacy of Plaintiff's pleadings with regard to the
demand requirement, the substantive requirement of demand or futility of demand is governed by
the controlling substantive corporation law); *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97
(1991) ("in order to determine whether the demand requirement may be excused by futility in a
derivative action . . . we must identify the source and content of the substantive law that defines
the demand requirement in such a suit").

failure to make a demand bars any derivative litigation unless "particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales* v. *Blasband*, 634 A.2d 927, 934 (Del. 1993).

To avoid the unwarranted usurpation of a board's managerial prerogatives through a derivative suit, Delaware courts have fashioned stringent pleading requirements that a plaintiff must satisfy before its failure to make a pre-suit demand may be excused. *Id.* at 934 n.9. An assertion of demand futility must be accompanied by "specific allegations of fact and conclusions supported by specific allegations of fact." *Malpiede* v. *Townson*, 780 A.2d 1075, 1082 n.16 (Del. 2001); *Brehm*, 746 A.2d at 254 (demand futility pleadings "must comply with stringent requirements of factual particularity"). "[C]onclusionary allegations of fact or law not supported by allegations of specific fact may not be taken as true." *Grobow* v. *Perot*, 539 A.2d 180, 187 (Del. 1988), *overruled on other grounds by Brehm*, 746 A.2d 244. The heightened pleading requirements necessary to establish demand futility are "an exception to the general notice pleading standard," and a derivative plaintiff's pleading burden is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Levine*, 591 A.2d at 207-210.[10]

**A.    Plaintiff's Conclusory Allegation that a Majority of the Board was "Dominated" and "Beholden" to Scrushy Cannot Excuse Demand**

Plaintiff cannot excuse demand by using the "shorthand shibboleth" that the entire HealthSouth Board sitting at the time he filed the Third Amended Complaint was "dominated"

---

[10]    Plaintiff's claims similarly fail under ALA.R.CIV.P. 23.1, which also requires that his reasons for not making a director demand be alleged with particularity. *See Cooper* v. *USCO Power Equip. Corp.*, 655 So. 2d 972, 974 (Ala. 1995) ("To show 'futility', [plaintiff] must show 'such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty.'") (internal citations omitted).

and "beholden" to HealthSouth's former chairman, Richard Scrushy. (Am. Compl. ¶ 135); *Aronson* v. *Lewis*, 473 A.2d 805, 816 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244. To the contrary, at the time UBS was added to this action in the Third Amended Complaint, Scrushy had not been allowed to participate in HealthSouth Board matters for several months. (*See* Am. Compl. ¶ 5 ("From 1984 . . . until March 31, 2003, Scrushy was Chairman of the Board of HealthSouth").) Indeed, two new outside directors had been named to the HealthSouth Board by that time — Jon F. Hanson and Robert P. May — and since that time three new outside directors have been appointed — Lee S. Hillman, Steven Berrard, and Edward Blechschmidt.[11] In addition, Jay Grinney was recently named President and CEO of HealthSouth, and appointed to the Board of Directors. Thus, Plaintiff's allegations of domination and control by Scrushy are belied by his own allegations as well as by the recent actions of the HealthSouth Board. *See, e.g., Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *7 n.14 (Del. Ch. Sept. 15, 2000) (even the removal of directors *after* the filing of the derivative complaint "surely belie[s] plaintiffs naked assertion" that they dominated the board).

Plaintiff's allegation that the HealthSouth "board members have had ample time and opportunity to take action or voice concerns about the . . . alleged wrongdoings, yet they have done nothing" is equally insufficient. (Am. Compl. ¶ 133.) The requirement that Plaintiff make a demand on the directors is simply not excused on the basis that a majority of the board failed to take corrective action prior to the filing of the lawsuit. *See Allison* v. *Gen. Motors*

---

[11]    www.healthsouth.com. The HealthSouth Board of Directors had eight active board members when the Third Amended Complaint was filed: Charles W. Newhall, C. Sage Givens, George Strong, Joel Gordon, John S. Chamberlin, Larry D. Striplin, Jr., John F. Hanson, and Robert P. May. (Am. Compl. ¶¶ 131-35.) Seven of these eight individuals were outside directors. (*See id.* ¶¶ 131-35.)

*Corp.*, 604 F. Supp. 1106, 1114 (D. Del. 1985) (defendant's "mere failure to institute suit with knowledge of the alleged underlying wrongs and its defense of government litigation do not excuse demand as futile under Rule 23.1"), *aff'd*, 782 F.2d 1026 (3d Cir. 1985).

**B.    Plaintiff's Conclusory Allegations of Director Participation in the Events and Potential Director Liability Cannot Excuse His Failure to Make Demand**

It is well-settled that a Plaintiff's assertion that the directors acquiesced in or approved the alleged wrongdoing does not excuse his obligation to make a demand on the directors prior to filing derivative claims. *Grobow* v. *Perot*, 526 A.2d 914, 924 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988); *see also Brehm*, 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because ... the directors ... approved the underlying transaction."). In *Pogostin* v. *Rice*, the Delaware Supreme Court held that "bootstrap allegations of futility, based on claims of directorial participation in and liability for the wrongs alleged, coupled with a reluctance by directors to sue themselves, were laid to rest in *Aronson*." 480 A.2d 619, 625 (Del. 1984) (citation omitted), *overruled on other grounds by Brehm*, 746 A.2d 244. Accordingly, "[p]laintiff's allegation that the entire current . . . board of directors directly participated in, and approved, the wrongs alleged is legally insufficient" to excuse him from the demand requirement. *Caruana* v. *Saligman*, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990).

In any event, Plaintiff fails completely to allege any active participation in the wrongdoing by a majority of the Board of Directors. Despite sweeping assertions that a "majority of board members themselves are the alleged wrongdoers" and "engaged in the self-dealing" (Am. Compl. ¶ 133), apart from allegations about Scrushy's involvement and meaningless insider trading allegations (discussed below), "[t]he manner of [this alleged] participation and the nature and extent of the knowledge possessed by the members of the Board

11

of Directors are not particularized." *Good v. Getty Oil Co.*, 514 A.2d 1104, 1008 (Del. Ch. 1986). Without specific allegations regarding the Board's knowledge of the alleged illegality of the transactions, mere approval by the Board is insufficient to excuse demand. *See Brehm*, 746 A.2d at 257 n.34.

Plaintiff's related assertion that the Board is disabled because of its own potential liability is yet another variation on the consistently-rejected "incantation that demand is excused because the directors otherwise would have to sue themselves, thereby placing the conduct of the litigation in hostile hands and preventing its effective prosecution." *Aronson*, 473 A.2d at 818; (*see* Am. Compl. ¶ 133). This "bootstrap argument" would "effectively abrogate" the demand requirement, because it would apply in every case. *Id.* Delaware courts have repeatedly made clear that "the mere threat of personal liability. . ., standing alone, is insufficient to challenge" the "disinterestedness of directors." *Id.* at 815; *see also Pogostin*, 480 A.2d at 625; *Silverzweig v. Unocal Corp.*, Civ. A. No. 9078, 1989 WL 3231, at *5 n.1 (Del. Ch. Jan. 19, 1989), *aff'd*, 561 A.2d 993 (Del. 1989). Rather, directors can be considered interested only if there is a "substantial likelihood" of potential liability. *Aronson*, 473 A.2d at 815. Plaintiff fails to meet its burden of pleading particularized facts showing there is a "substantial likelihood" that a *majority* of the directors' "conduct falls outside the exemption." *See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

Plaintiff's only attempt to show some threat of liability by a majority of the Board rests entirely on his conclusory (and, indeed, contradictory) allegations that Director Defendants Givens, Newhall or Strong[12] engaged in insider trading. (*See* Am. Compl. ¶ 134(c), (e), (f).) This assertion cannot excuse demand because Plaintiff has failed to allege with particularity that

---

[12]    All three of these directors have resigned from the HealthSouth Board.    *See* www.healthsouth.com.

12

these three directors possessed any inside information concerning the alleged falsification of financials. Indeed, Plaintiff specifically alleges that each of these defendants were *ignorant* of the alleged fraud. (*See id.* ¶¶ 74-76.)

The complaint is hopelessly contradictory on this point. The alleged insider trades of directors Givens and Newhall occurred during 2001, but the CMS clarification was not issued until May 17, 2002. (*See id.* ¶¶ 68, 75-76.) Plaintiff attempts to camouflage this inconsistency by making the peculiar claim as to Directors Givens and Newhall that the trades occurred "[s]everal months before the CMS directive but after the policy behind it was *well known.*" (*Id.* ¶¶ 75, 76 (emphasis added).) Yet, a fundamental requirement of insider trading is that the information is *non-public. See, e.g., Brophy* v. *Cities Serv., Inc.,* 70 A.2d 5, 8 (Del. Ch. 1949).

Although Plaintiff generally alleges that director Strong "knew of the CMS policy and its impact" at the time of his sales of stock in June 2002 (*see* Am. Compl. ¶ 74), those allegations do not establish a disabling conflict by a majority of the Board and nevertheless are insufficient to show insider trading. The fact that a director "sold large portions" of stock does not "support the conclusion that [the director] face[s] a real threat of liability." *Guttman* v. *Huang,* 823 A.2d 492, 504 (Del. Ch. 2003). Where, as here, there are no "well-pled particularized allegations of fact detailing the precise role that [director] played at the company, the information that would have come to [his] attention in [that] role[], and any indication as to why [he] would have perceived the" impact of the challenged CMS policy clarification on the value of his shares, a disabling conflict has not been established. *Id.* at 503 (footnote omitted).

## C.    Certain Directors' Service on Other Boards Cannot Excuse Demand

Plaintiff's allegation that former HealthSouth directors Newhall and Strong could not independently address a demand as to the UBS claims because they both served as IHS

13

directors and are co-plaintiffs in an IHS lawsuit, is insufficient as a matter of law. (Am. Compl. ¶ 134(c), (e).)  First, that director defendants sit on the same board of directors of another company does not in itself establish a lack of independence. *Langer* v. *Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (applying Delaware law).  Second, their involvement in a litigation "with some striking similarities to HealthSouth's current predicament" (Am. Compl. 134(c)) is irrelevant.  Indeed, courts have routinely rejected the argument that directors are interested due to their potential or actual involvement in litigation involving the same challenged conduct. *See, e.g., Brehm*, 746 A.2d at 257 n.34 (demand is not futile because "the directors would have to sue themselves"); *Allison* v. *Gen. Motors Corp.*, 604 F. Supp. 1106, 1113 (D. Del. 1985) ("the allegation of [the nominal defendant's] participation in an administrative investigation and defense of a government agency lawsuit, without more, is insufficient to establish futility of demand.").

**III.    Plaintiff Fails to Plead Fraud With Particularity.**

Under *Alabama Rule of Civil Procedure* 9(b) "the pleader must use more than generalized or conclusory statements setting out the fraud. The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Robinson* v. *Allstate Ins. Co.*, 399 So. 2d 288, 290 (Ala. 1981).[13]  All of Plaintiff's claims against UBS sound in fraud because they arise from the following three alleged courses of allegedly fraudulent conduct:  (1) "falsely tout[ing] HealthSouth stock" (Am. Compl. ¶¶ 84-88, 168, 248); (2) conspiring with HealthSouth executives to "defraud HealthSouth into granting the UBS Parties investment-banking business"

---

[13]    *See also Phillips Colls. of Ala., Inc.* v. *Lester*, 622 So. 2d 308, 311 (Ala. 1993); *Miller* v. *Mobile County Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981); *Lyde* v. *United Ins. Co. of Am.*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993).

14

(Am. Compl. ¶ 89); and (3) inducing, aiding and abetting, and conspiring to commit "broad accounting misstatements" (Am. Compl. ¶¶ 90, 166, 197-98).

Here, however, Plaintiff has not remotely met his burden under Rule 9(b) of alleging specific facts describing with particularity the nature of the fraudulent scheme and, more importantly, UBS's supposed role in it. Plaintiff does not specify each fact allegedly misrepresented, or the time, location, or content of the misrepresentation, other than conclusory assertions that UBS rated HealthSouth positively (along with numerous other firms) with no factual allegations connecting that opinion to the underlying fraud. (*See* Am. Compl. ¶¶ 32, 85, 86, 205, 209.) Plaintiff's claims against UBS therefore failed to comply with Rule 9(b).

## IV.    Plaintiff Fails to State a Claim under Rule 12(b)(6)

### A.    Plaintiff Fails to State a Claim for "Aiding and Abetting" a Breach of Fiduciary Duty

To state a claim of aiding and abetting a breach of fiduciary duty under Delaware law,[14] a plaintiff must plead (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendant, and (4) damages proximately caused by the breach. *See Malpiede* v. *Townson*, 780 A.2d 1075, 1096 (Del. 2001). To establish knowing participation, the plaintiff must allege specific facts showing that UBS (1) acted with knowledge that the conduct advocated or assisted constituted a breach of fiduciary duty, and (2) intentionally complied in that breach. *Id.* at 1097-98. Here, the complaint fails adequately to allege that UBS knowingly participated in the Individual Defendants' alleged

---

[14]    It is a well-established rule of conflicts law that the internal corporate relationship is governed by the law of the state of incorporation. *See supra* note 9. Plaintiff's aiding and abetting of breach of fiduciary duty claim, therefore, is governed by Delaware law. *See Distronics Ltd.* v. *Disc Mfg., Inc.*, 686 So. 2d 1154, 1160 n.2 (Ala. 1996), *overruled on other grounds by Prof'l Ins. Corp.* v. *Sutherland*, 700 So. 2d 347 (Ala. 1997); *Massey* v. *Disc Mfg., Inc.*, 601 So. 2d 449, 454 (Ala. 1992).

breaches of fiduciary duty because "[m]ere conclusory statements devoid of factual details" are insufficient to establish knowing participation. *Jackson Nat'l Life Ins. Co.* v. *Kennedy*, 741 A.2d 377, 392 (Del. Ch. 1999).

Indeed, Plaintiff fails to allege any fact that UBS participated — let alone knowingly participated — in the alleged breaches of fiduciary duty by Scrushy and the Individual Defendants. The only "participation" alleged by Plaintiff merely refers to the provision of routine banking or brokerage services — assisting HealthSouth to issue a "$1 billion note" (Am. Compl. ¶ 69), "arrang[ing] more than $2 billion in deals for HealthSouth (*id.* ¶ 85), and "falsely promoting the stock" (*id.* ¶ 87).[15] According to Plaintiff, UBS supposedly "knew or should have known" (*id.* ¶ 90) of the alleged wrongdoing at HealthSouth because they "were given access to the Corporation's most confidential information regarding finances, operating results, and prospects, and indeed attended several or many of HealthSouth's Board of Directors Meetings." (*Id.* ¶ 83.)

These allegations amount to no more than a claim that UBS provided typical professional banking services to HealthSouth, which cannot be the predicate for a "knowing participation" claim. *See, e.g., Landy* v. *FDIC*, 486 F.2d 139, 163 (3d Cir. 1973) (dismissing aiding and abetting claim premised upon the delivery of routine professional services); *Overseas Private Inv. Corp.* v. *Industria de Pesca, N.A.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (same); *Oliver* v. *Boston Univ.*, No. 16570, 2000 WL 1091480, at *9 (Del. Ch. July 25, 2000) (dismissing aiding and abetting claims as "conclusory" where plaintiffs "imply that [defendants] must have known that the Insider Defendants were engaging in self-dealing because they

---

[15]    Numerous other investment banks not only issued positive research on HealthSouth (*see* Am. Compl. ¶ 32), but also rendered investment banking services to HealthSouth. For example, nine other investment banks also participated in the $1.0 billion note offering referenced by plaintiff. (*See* Starnes Aff. Ex. 1.)

negotiated with [Insider Defendants] for one year and conducted due diligence"). Moreover,

Plaintiff concedes that such information could not have given UBS knowledge of the fraud, as

the HealthSouth insiders designed the "fictitious accounting entries to avoid [] detection" and

raising the "suspicions of the auditors." (Am. Compl. ¶ 42.)

      Attempting to add some thread to its bare allegations, Plaintiff makes the peculiar

claim that a conversation whereby a former UBS employee expressed his disbelief that a

particular HealthSouth executive could have been involved in Mr. Scrushy's fraudulent scheme

somehow suggests his prior knowledge about the scheme. (Am. Compl. ¶ 88.) Rather than

supporting Plaintiff's theory, the belief that HealthSouth management were not involved in the

scheme refutes any claim of knowledge on the part of UBS.[16]

      The only other circumstances Plaintiff points to in support of UBS's supposed

knowledge of the fraud — two e-mails written by Mr. Capek questioning whether HealthSouth

deserved a "strong buy" rating (Am. Compl. ¶¶ 86-87) — also are of no help to Plaintiff. While

Plaintiff suggests that these thoughts were expressed "at the very time" that Mr. Capek issued

buy ratings on HealthSouth, Plaintiff fails to specify the time or content of any of the buy ratings,

---

[16]    Plaintiff claims that William McGahan, a former UBS investment banker, told William Owens of HealthSouth that if Mr. Scrushy tried to blame him for the false accounting, Mr. McGahan would set the record straight. This allegation is apparently based on a taped conversation between Mr. Owens and Tadd McVay describing a conversation between Mr. Owens and Mr. McGahan. The transcript of that tape, which was reported in the press reports that Plaintiff relies upon, affirmatively refutes the inference Plaintiff seeks to draw, and confirms that UBS knew nothing about the fraud. The transcript quotes Mr. Owens as stating "Now, [Bill McGahan] shouldn't — he doesn't know anything that is going on, so you know it sounds to me like he was just saying to me if Richard tries to blame you for the turn-down of the business and runs you off — but what concerns me is that maybe he's heard some conversations or second or third-hand stuff, because Bill has his fingers on a lot of stuff . . . in New York." (*See* Starnes Aff. Ex. 3 (Ex. 3 is incorporated by reference into the Amended Complaint at ¶ 88); *see* cases cited *supra* note 5.)

as required by Rule 9(b).    In fact, Mr. Capek was not covering or publishing research on HealthSouth stock at the time the two e-mails were written.[17]

Second, even if Mr. Capek did not believe that HealthSouth stock merited a "strong buy" rating at the time he issued his research reports, that in no way suggests any *knowledge of financial fraud* at HealthSouth. According to Plaintiff's allegations, such ratings were, at most, intended to assist in obtaining investment banking business (Am. Compl. ¶ 88), which is an insufficient basis upon which to allege knowledge or participation in some fraudulent scheme. *See, e.g., Landy,* 486 F.2d at 163 (dismissing aiding and abetting claim where brokers' "assistance, although necessary for the accomplishment of [the] fraud, was intended to achieve another independent goal — the generation of commissions").

### B.    Plaintiff Fails to State a Claim for Civil Conspiracy

To state a claim of civil conspiracy under Alabama law, a plaintiff must plead (1) purpose, (2) combination, and (3) an overt act causing damage. A "purpose" is not shown if "[i]f [the defendants accused with civil conspiracy] did not act *in order* that the plaintiff should suffer damage," and "they are not liable, however selfish their attitude and however inevitable the plaintiff's damage may have been." *Snyder* v. *Faget,* 326 So. 2d 113, 119 (Ala. 1976) (citations omitted) (emphasis added); *AmSouth Bank, N.A.* v. *Spigener,* 505 So. 2d 1030, 1040 (Ala. 1986). Here, Plaintiff has failed to plead *any* facts supporting an inference that UBS acted for the purpose of inflicting damage on HealthSouth. Indeed, Plaintiff alleges affirmatively that such

---

[17]    The e-mails were sent in August and September, 1999, in the middle of an eight month period during which Mr. Capek was not publishing any research on HealthSouth. (*See* Starnes Aff. Ex. 4 (indicating that Mr. Capek was *reinstating* coverage, as he had not reported on HealthSouth for several months) (Ex. 4 is incorporated by reference into the Amended Complaint at ¶¶ 85, 86, 205, 209); *see* cases cited *supra* note 5.)

18

was not the case — contending that UBS acted for the purpose of obtaining additional investment banking business (Am. Compl. ¶¶ 84, 88-89), which, at most, amounts to a claim that UBS had a "selfish attitude," and not the "purpose" required to establish civil conspiracy. Because Plaintiff failed to plead one of the three elements of his civil conspiracy claim, Count IX must be dismissed. For the same reason, Plaintiff's allegation that UBS is liable for losses due to HealthSouth's "Share Repurchase Program" must also be dismissed. (Am. Compl. ¶ 251.)[18]

### C.      Plaintiff Fails to State a Claim for Suppression

To state a claim of fraudulent suppression, the plaintiff must plead "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action resulted in harm to the plaintiff." *Bethel* v. *Thorn*, 757 So. 2d 1154, 1162 (Ala. 1999) (internal citations omitted). Here, Plaintiff fails to plead facts that show that UBS had any duty to disclose material facts to HealthSouth, *see infra* Part IV.D.3,[19] that UBS had knowledge of any facts that it concealed or failed to disclose, *see supra* Part IV.A, or that the alleged concealment induced HealthSouth to act.

To establish causation, the plaintiff must plead facts showing that HealthSouth "would have chosen a different course but for the suppression of a material fact." *Fisher* v. *Comer Plantation, Inc.*, 772 So. 2d 455, 466 (Ala. 2000). Plaintiff alleges no such thing here. Indeed, Plaintiff could not possibly allege that HealthSouth would have chosen a different course

---

[18]      Plaintiff alleges that UBS is liable for damages flowing from the HealthSouth "Share Repurchase Program" because UBS "enabled the artificial inflation of HealthSouth's market price . . . ." (Am. Compl. ¶ 248.)

[19]      In fact, the relevant agreements establish that *HealthSouth* had the duty to disclose material facts concerning its financials to UBS, and not vice versa. (Starnes Aff. Ex. 1 ¶ 5(a); Ex. 2 ¶ 5.)

19

or that it was ignorant of some supposedly suppressed fact since HealthSouth's top management and, according to Plaintiff, a majority its Board of Directors, devised and carried out the HealthSouth fraud. For all of these reasons, Counts IV and XI must be dismissed. For the same reason, Plaintiff's allegation that UBS is liable for losses due to HealthSouth's "Share Repurchase Program" must also be dismissed. (Am. Compl. ¶ 251).

### D.    The Breach of Contract and Fiduciary Duty Claims Are Barred by the Governing Agreements

#### 1.    The Contract Action is Barred by the Forum Selection Clause

This action cannot proceed in Alabama because HealthSouth expressly agreed that it would not pursue in this forum claims relating to the financial advisory services provided by UBS that are challenged in the Amended Complaint. The Engagement Letters provide that any such claims *must* be brought in state or federal court in New York City, which have exclusive jurisdiction over such matters. (*See, e.g.,* Starnes Aff. Ex. 2, ¶ 12.)

This forum selection clause is valid and must be enforced. *See Premium Risk Group, Inc.* v. *Legion Ins. Co.,* 741 N.Y.S.2d 563 (App. Div. 2002) ("Contractual forum selection clauses are prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court.").[20] Here, Plaintiff does not even attempt to challenge the validity of the agreements or any part thereof. Indeed, Plaintiff confirms the enforceability of the agreements by asserting a breach of contract

---

[20]    Under the relevant contracts, New York law applies to any claims relating to their construction. (*See* Starnes Aff. Ex. 1 ¶ 15; Ex. 2 ¶ 12); *see Hughes Assocs., Inc.* v. *Printed Circuit Corp.,* 631 F. Supp. 851, 855 (N.D. Ala. 1986) (under Alabama law, where the parties have contracted with reference to the laws of another jurisdiction, the laws of that jurisdiction govern the construction and validity of contractual provisions).

claim here against UBS.[21] Because a motion to dismiss is the proper method by which to enforce

a forum selection clause, this action should be dismissed. *See* ALA.R.CIV.P. 12(b)(1).

### 2. Plaintiff's Claims Are Barred by HealthSouth's Indemnity Agreements

Plaintiff claims that UBS "breached [its] contracts to provide . . . investment

banking services . . . in a diligent and honest fashion." (Am. Compl. ¶ 193.) In the Engagement

Letters, however, HealthSouth agreed to indemnify UBS "against any losses, claims, damages,

liabilities and expenses . . . except to the extent it shall be determined by a court of competent

jurisdiction . . . [they] resulted *solely* from the gross negligence or willful misconduct of UBS

Warburg." (*See, e.g.*, Starnes Aff. Ex. 2 ¶ 11, Indemnification Agreement.) Similarly, in the

Purchase Agreements, HealthSouth agreed to indemnify UBS against "any and all losses,

liabilities, claims, damages and expenses whatsoever . . . [that] arise out of or are based upon any

untrue statement or alleged untrue statement of a material fact contained in the Preliminary

Memorandum or the Final Memorandum . . . or arise out of or are based upon the omission or

alleged omission to state therein a material fact necessary," with the exception of information

relating to an Initial Purchaser provided to the Company. (*See, e.g.*, Starnes Aff. Ex. 1 ¶ 6(a).)[22]

---

[21]    Although Plaintiff is seeking to enforce these contracts, he has made no effort to specifically identify them, providing another basis for dismissal of his contract claims. In order to state a claim for breach of contract, a plaintiff must "allege the Existence of a valid and binding contract, performance by the plaintiff and breach by defendant. . . . In pleading the existence of an express written contract, plaintiff, at his election, may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect." *Berry* v. *Druid City Hosp. Bd.*, 333 So. 2d 796, 801 (Ala. 1976). Because Plaintiff merely alleges generally that UBS "breached their contracts with HealthSouth," including implied covenants (Am. Compl. ¶¶ 89, 193), but does not plead the existence or validity of these contracts by specifically identifying them as required under *Berry*, Plaintiff has failed to state a claim for breach of contract.

[22]    The interpretation of contractual language, such as indemnity agreements, is a matter of law. *Tucker* v. *Cullman-Jefferson Cos. Gas Dist.*, 864 So. 2d 317, 322 (Ala. 2003) ("When the terms of the contract are clear and certain, it is the duty of the court, not the jury, to analyze the contract and determine the meaning of the contract.") (internal citation omitted).

21

Here, Plaintiff does not claim that the losses suffered by HealthSouth were "solely" attributable to the gross negligence or willful misconduct of UBS or were based on information relating to an Initial Purchaser. Indeed, the gravamen of Plaintiff's allegations is that UBS knew or should have known of the willful misconduct of *other* defendants regarding the financial condition of HealthSouth but failed to disclose it. Thus, the indemnity provisions must be enforced because they are clear from the language and purpose of the agreements. *See Hooper Assocs., Ltd.* v. *AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (1989); *see also Promuto* v. *Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 650 (S.D.N.Y. 1999).

In any event, UBS had not contractually undertaken an independent due diligence review of the information supplied to it by HealthSouth. In fact, *HealthSouth* warranted the material accuracy of the information provided to UBS. Plaintiff therefore cannot claim that UBS was under any duty to know or advise HealthSouth's of its "true" financial condition. Consequently, Count VIII of the Amended Complaint must be dismissed and Plaintiff's claim for contract damages arising out of HealthSouth's "Share Repurchase Program" must also be dismissed. (Am. Compl. ¶ 250.)

### 3. Plaintiff's Claim for Breach of Fiduciary Duty is Precluded by the Governing Agreements

Plaintiff's claim that UBS breached its fiduciary duty to HealthSouth must fail because his allegation that UBS "held a position of trust with HealthSouth and were in every legal and practical sense a fiduciary of HealthSouth" (Am. Compl. ¶ 165) is expressly contradicted by the agreements that govern the investment banking relationship between UBS and HealthSouth. The Engagement Letters expressly state that UBS was acting "as an independent contractor" to HealthSouth "and not in any other capacity including as a fiduciary." (*See, e.g.*, Starnes Aff. Ex. 2 ¶ 9.) The Purchase Agreements similarly do not purport to create

22

any fiduciary relationship.[23] (*See* Starnes Aff. Ex. 1.) If HealthSouth had "wanted fiduciary-like relationships or responsibilities, it could have bargained for and specified for them in the contract." *Northeast Gen. Corp.* v. *Wellington Adver., Inc.*, 82 N.Y.2d 158, 164 (1993). It did not. In light of the nature of UBS's relationship with HealthSouth, it would be inappropriate to imply a fiduciary duty relationship where no such duty was created by the underlying contracts. Count XII of the Amended Complaint therefore must be dismissed.

### E.    Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff has also failed to state a claim for unjust enrichment under Alabama law. "The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant . . . *holds* money which was improperly paid to defendant because of mistake or fraud." *Hancock-Hazlett Gen. Const. Co., Inc.* v. *Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986). "The [unjust enrichment] claim is completely derivative of the fraud claims, and thus cannot stand as a separate state-law claim." *Dickinson* v. *Cosmos Broad. Co., Inc.*, 782 So. 2d 260, 266 (Ala. 2000). Because Plaintiff has failed, under both ALA.R.CIV.P. 9(b) and 12(b)(6), to state a claim that UBS defrauded HealthSouth, Count VII of the Amended Complaint and Plaintiff's allegation of unjust enrichment by virtue of HealthSouth's "Share Repurchase Program" (Am. Compl. ¶ 249) must be dismissed.

### V.    Plaintiff's Claims Against UBS, on Behalf of Nominal Defendant HealthSouth, are Barred by HealthSouth's Inequitable Conduct and Unclean Hands

Plaintiff's claims against UBS are barred by the legal doctrine of *in pari delicto*, and its equitable counterpart, the doctrine of unclean hands, because Plaintiff concedes that HealthSouth is at least equally culpable of the alleged wrongdoing. When a derivative action is

---

[23]    Nor should this be expected. As an Initial Purchaser, UBS did not share the interests of the issuer, but rather had the interests of a purchaser of securities.

brought by a shareholder on behalf of a company, "any defense available against [the company] is available against plaintiff." *Schleiff* v. *Balt. & O. R. Co.*, 130 A.2d 321, 327 (Del. Ch. 1957). Plaintiff's request for relief on behalf of HealthSouth must fail because HealthSouth's own acts, as alleged against its insiders and officers, offends the sense of equity to which he appeals. *Nakahara* v. *NS 1991 Am. Trust*, 718 A.2d 518, 522 (Del. Ch. 1998).

The insiders and officers of HealthSouth are alleged to have perpetrated the wrongdoing at the heart of this action, and financial advisors such as UBS are expressly referenced as a primary target of the insiders' fraud. At best, Plaintiff alleges that UBS was a conduit used (unwittingly) to perpetrate the fraud. As a result, HealthSouth is at least at "equal fault" with UBS, and therefore the complaint on behalf of HealthSouth fails as a matter of law.[24]

## VI.     Plaintiff's Claims are Barred Because HealthSouth Sustained No Legally Cognizable Injury by Virtue of any Alleged Conduct or Omission of UBS

Because Plaintiff has failed to allege any legally cognizable injury to HealthSouth by virtue of any alleged conduct or omission of UBS, the claims against UBS must be dismissed. Plaintiff alleges that UBS "proximately caused injury" to HealthSouth including:

> payment of taxes on falsely reported income; legal fees and costs in defending securities fraud cases and any judgments or settlement that HealthSouth may pay in such cases; damages resulting from failure to recognize HealthSouth's true financial state and act accordingly; opportunity costs; incentive compensation that HealthSouth may have paid based on falsely

---

[24]     Although *in pari delicto* and the "unclean hands" doctrine do not bar claims against corporate insiders or partners, it is well-accepted that they can bar claims on behalf of a corporation against third parties. *See In re Granite Partners, L.P.*, 194 B.R. 318, 332 (Bkrtcy. S.D.N.Y. 1996) (finding that claim against brokers could not be sustained by a trustee, on behalf of the debtor corporation, when the insiders of the corporation committed the primary violations), *quoted in In re Healthsouth Corp. S'holders Litig.*, Civ. A. No. 19896, 2003 WL 22769045, at *9 n.20 (Del. Ch. Nov. 24, 2003), *aff'd*, No. 22, 2004, 2004 WL 835879 (Del. Apr. 14, 2004).

24

reported revenues and earnings; payment of unwarranted
investment banking fees; and the like.

(Am. Compl. ¶¶ 170, 90.) But Plaintiff fails to explain how any of the alleged damages were

caused by the conduct or omissions of UBS. In fact, each of the "injuries" relating to the inflated

revenues are attributable to the alleged conduct of the *HealthSouth insider defendants* who

created the falsely inflated revenues in a manner "to avoid . . . detection." (*Id.* ¶ 42.) In

addition, "damages resulting from failure to recognize HealthSouth's true financial state" (*id.* ¶¶

170, 90) are entirely speculative and therefore not cognizable. Finally, the investment banking

fees received by UBS were just that — contractual fees for banking services that were provided,

and hence, not an "injury."

## VII.    Claims Based on Events Prior to August 8, 2001 Are Time-Barred

Finally, many of Plaintiff's claims against UBS are barred by the applicable

statute of limitations. All of Plaintiff's claims against UBS appear to arise out of the "wide array

of financial and transactional matters from at least 1998 through 2002," for which UBS provided

investment banking services. (Am. Compl. ¶ 83.) Under Alabama law, however, a two-year

statute of limitations applies to claims "not arising from contract." ALA. CODE § 6-2-38(l)

(1975). Consequently, Plaintiff's non-contract claims that are based upon conduct that occurred

before August 8, 2001, two years before the filing of the Third Amended Complaint which first

named UBS, are barred by the applicable statute of limitations.

## VIII.    Alternatively, the Action Should be Stayed

The Action should be stayed because the parties will not be able to investigate the

allegations so long as key witnesses find it necessary to invoke their Fifth Amendment rights

against self-incrimination. In deciding to stay the SEC's civil action against HealthSouth and

Richard Scrushy, Judge Inge P. Johnson stated:

25

> [T]he court's role in a civil proceeding such as that before it is to ensure that fairness permeates the proceeding and to try to ascertain the truth. The court is unable to accomplish either of these purposes here, as the witnesses who could testify as to the allegations in the SEC's complaint have refused to do so, by invoking their Fifth Amendment rights.

*S.E.C. v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003); *see also Ex parte Ebbers*, Nos. 1020931, 1021008, 2003 WL 21570770, at *7 (Ala. July 11, 2003) ("A court has the discretion to stay civil proceedings, to postpone civil discovery, or to impose protective orders and conditions in the face of parallel criminal proceedings against one of the parties when the interests of justice seem to require."). Because here, like in the SEC's civil action, many of the key witnesses and defendants are subject to the criminal investigation referenced by Judge Johnson, fairness dictates that this action be stayed to allow the litigants to fully investigate these allegations.

26

## CONCLUSION

For the foregoing reasons, the claims against UBS must be dismissed, or alternatively, this Court should stay the action.

Respectfully submitted,

W. Stancil Starnes
Jay M. Ezelle
Robin H. Jones
STARNES & ATCHISON LLP
P.O. Box 598512
Birmingham, Alabama 35259-8512
(205) 868-6000

Attorneys for UBS Securities LLC

May 27, 2004

## ORAL ARGUMENT REQUESTED

27

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading upon all attorneys of record by electronic mail pursuant to the Court's April 19, 2004 Order requiring the same, on this the 27th day of May, 2004.

OF COUNSEL

**Appendix 3:**
**All Counsel in *Tucker v. Scrushy***
**Pending Before The Honorable Allwin E. Horn III**

| Party | Name of Person to Serve | Email Address |
|---|---|---|
| Tucker, Wade | John Q. Somerville, Esq.<br>Ralph D. Cook, Esq.<br>John W. Haley, Esq.<br>Bruce J. McKee, Esq.<br>Steve P. Gregory, Esq.<br>Karen E. Skilling, Esq.<br>Frank DiPrima, Esq.<br>Ronald A. Brown, Esq.<br>Edward F. Haber, Esq.<br>Robert C. Schubert, Esq.<br>Juden Justice Reed, Esq.<br>Arthur L. Schingler, Esq. | jqs@gallowaysomerville.com<br>ralph@hwnn.com<br>haley@hwnn.com<br>bruce@hwnn.com<br>sgregory@diceandgregory.com<br>kes@diceandgregory.com<br>diprimalaw@aol.com<br>rabrown@prickett.com<br>ehaber@shulaw.com<br>rschubert@schubert-reed.com<br>jreed@schubert-reed.com<br>ashingler@scott-scott.com |
| Scrushy, Richard M. | H. Lewis Gillis, Esq.<br>April D. Williams, Esq.<br>Donald V. Watkins, Esq.<br>Thomas V. Sjoblom, Esq.<br>Scott Balber, Esq.<br>Thomas J. Hall, Esq. | hlgillis@tmgpc.com<br>adwilliams@tmgpc.com<br>donaldvwatkinspc@aol.com<br>tsjoblom@chadbourne.com<br>sbalber@chadbourne.com<br>thall@chadbourne.com |
| Scrushy, Gerald P. | Gerald P. Scrushy, *pro se*<br>3424 Creekwood Drive<br>Birmingham, AL 35203 | |
| MedCenterDirect.com | MedCenterDirect.com, *pro se*<br>c/o Steven Corenblum<br>420 20th St. N., Ste. 1600<br>Birmingham, AL 35203 | |
| Source Medical Solutions, Inc. | James C. Huckaby Jr., Esq.<br>John W. Scott Esq. | jch@hsdpc.com<br>jws@hsdpc.com |
| Capstone Capital Corporation a/k/a HealthCare Realty Trust | James L. Goyer, Esq.<br>Alan F. Enslen, Esq. | jgoyer@mcglaw.com<br>aenslen@mcglaw.com |
| G G Enterprises | G G Enterprises, *pro se*<br>c/o Gary Gussing<br>865 Woodmere Creek Loop<br>Birmingham, AL 35226 | |
| HealthSouth Corporation | J. Michael Rediker, Esq.<br>Thomas L. Krebs, Esq.<br>Michael K.K. Choy, Esq.<br>F. Lane Finch Jr., Esq.<br>Patricia C. Diak, Esq.<br>Peyton D. Bibb, Esq.<br>Edward P. Welch, Esq.<br>Stephen Dargitz, Esq. | jmr@hsy.com<br>tlk@hsy.com<br>mkc@hsy.com<br>flf@hsy.com<br>pcd@hsy.com<br>pdb@hsy.com<br>ewelch@skadden.com<br>sdargitz@skadden.com |

## Appendix 3 Continued

| | | |
|---|---|---|
| Martin, Michael D. | John H. Cooper, Esq.<br>C. Lee Reeves, Esq.<br>Robert W. Fleishman, Esq. | jcooper@sirote.com<br>lreeves@sirote.com<br>rfleishman@steptoe.com |
| Givens, C. Sage<br>Strong, George H.<br>Newhall, Charles W. III<br>Chamberlin, John S.<br>Gordon, Joel C.<br>Striplin, Larry D. Jr. | J. Mark Hart, Esq.<br>Paul C. Gluckow, Esq.<br>Allison R. Kimmel, Esq. | jmh@hsy.com<br>pgluckow@stblaw.com<br>akimmel@stblaw.com |
| Owens, William T. | Frederick Helmsing, Esq. | fgh@helmsinglaw.com |
| Watkins, Phillip C.<br>Foster, Patrick A.<br>Riviere, Daniel J.<br>Taylor, Larry D. | N. Lee Cooper, Esq.<br>James L. Goyer III, Esq.<br>Patrick Cooper, Esq.<br>Carl Burkhalter, Esq.<br>James R. Bussian, Esq.<br>Champ Lyons III, Esq.<br>Peter Q. Bassett, Esq.<br>Betsy Collins, Esq.<br>Susan Hurd, Esq. | lcooper@mcglaw.com<br>jgoyer@mcglaw.com<br>pcooper@mcglaw.com<br>cburkhalter@mcglaw.com<br>jbussian@mcglaw.com<br>champ@champlyons.com<br>pbassett@alston.com<br>bcollins@alston.com<br>shurd@alston.com |
| Smith, Weston L. | Charles A. Dauphin, Esq.<br>David McKnight, Esq. | cdauphin@bddmc.com<br>dmcknight@bddmc.com |
| Ernst & Young LLP | Henry Simpson, Esq.<br>Steven M. Farina, Esq.<br>Enu Mainigi, Esq.<br>Matthew J. Herrington, Esq. | henry.simpson@arlaw.com<br>sfarina@wc.com<br>emainigi@wc.com<br>mherrington@wc.com |
| UBS Warburg LLC<br>UBS Group<br>UBS Investment Bank | W. Stancil Starnes, Esq.<br>Jay M. Ezelle, Esq.<br>Robin H. Jones, Esq.<br>Robert J. Giuffra, Esq.<br>Thomas L. Leuba, Esq.<br>Julia M. Jordan, Esq. | sstarnes@starneslaw.com<br>jmc@starneslaw.com<br>rhj@starneslaw.com<br>giuffrar@sullcrom.com<br>leubat@sullcrom.com<br>jordanjm@sullcrom.com |
| Beam, Aaron Jr. | Mack B. Binion, Esq.<br>Jeremy Hazelton, Esq. | mbinion@briskman-binion.com<br>jhazelton@briskman-binion.com |
| McVay, Malcolm E. | J. Don Foster, Esq. | jdf@jacksonfosterlaw.com |
| Harris, Emery W. | J. Stephen Salter, Esq. | umstakwit@aol.com |
| Livesay, Kenneth K. | Joseph A. Fawal, Esq. | jfawal@bellsouth.net |