IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

(HEALTHSOUTH CORPORATION 2002 DERIVATIVE LITIGATION)

| | | |
|---|---|---|
| WADE TUCKER, derivatively for the Benefit of and on behalf of the Nominal Defendant HealthSouth Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. CV-02-5212 |
| -vs- | ) ) ) | |
| RICHARD M. SCRUSHY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |
| UBS Securities LLC, | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| -vs- | ) ) | |
| HealthSouth Corporation, | ) ) | |
| Counterclaim Defendant. | ) ) | |

## UBS SECURITIES LLC'S ANSWER TO THE THIRD COMPLAINT AND THE SUPPLEMENTAL AND FOURTH AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant UBS Securities LLC ("UBS") states as follows for its Answer and

Defenses to the Third Amended Verified Complaint and the Supplemental Complaint and Fourth

Amended Verified Complaint (collectively, the "Complaint") filed by Plaintiff Wade Tucker

("Plaintiff"), and asserts the following counterclaims against plaintiff HealthSouth Corporation

("HealthSouth"):

813105

## ANSWER

Where Plaintiff has paraphrased publicly filed documents, plea allocutions or media reports, UBS refers to such documents for true and correct statements of their contents:

1.      UBS denies the allegations of Paragraph 1, except admits that Plaintiff purports to bring this action in the manner alleged in Paragraph 1.

2.      UBS denies the allegations of Paragraph 2, except admits that Plaintiff purports to bring a derivative action for the benefit of HealthSouth and does not purport to assert any claims under federal or state securities laws.

3.      UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.      UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, except admits that this action purports to be a derivative action brought for the benefit of nominal defendant HealthSouth; and admits upon information and belief that HealthSouth is incorporated under the laws of the State of Delaware.

5.      UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5, except admits upon information and belief that defendant Scrushy was the Chairman of the HealthSouth Board of Directors as of March 1999 through approximately March 19, 2003, and Chief Executive Officer of HealthSouth as of March 1999 through August 27, 2002 and from January 6, 2003 to approximately March 19, 2003, and was the Chairman of the Board of Source Medical Solutions, Inc. ("Source Medical").

6.      UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, except admits upon information and belief that defendant Martin was an officer of HealthSouth as of March 1999 through approximately February 2000.

8.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, except admits upon information and belief that defendant Givens was a member of the HealthSouth Board of Directors as of March 1999 through March 19, 2003, and refers to Acacia's website for a complete and accurate description of its contents.

9.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, except admits upon information and belief that defendant Owens was an officer, director, and Chief Financial Officer of HealthSouth at certain times during the period of March 1999 to March 19, 2003.

10.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except admits upon information and belief that defendant Strong was a member of the HealthSouth Board of Directors as of March 1999 through March 19, 2003.

11.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, except admits upon information and belief that defendant Newhall was a member of the HealthSouth Board of Directors as of March 1999 through March 19, 2003.

12.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, except admits upon information and belief that defendant Chamberlin was a member of the HealthSouth Board of Directors as of March 1999 through March 19, 2003.

13.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, except admits upon information and belief that defendant Gordon was a member of the HealthSouth Board of Directors as of March 1999 through March 19, 2003.

14.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, except admits upon information and belief that defendant Striplin was a member of the HealthSouth Board of Directors as of April 1999 through March 19, 2003.

15.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, except admits upon information and belief that defendant Watkins was a member of the HealthSouth Board of Directors as of March 1999 through February 2003.

16.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, except admits upon information and belief that defendant Taylor was an executive officer of HealthSouth, and admits that Plaintiff purports to have named defendant Taylor as a fictitious party defendant in the Original Complaint and First and Second Amended Complaint in this action.

17.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, except admits upon information and belief that defendant Foster was an executive officer of HealthSouth at certain times, and admits that Plaintiff purports to have named fictitious parties as defendants in the Original Complaint and First and Second Amended Complaint in this action.

18.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, except admits upon information and belief that defendant Riviere was an executive officer of HealthSouth at certain times, and admits that Plaintiff purports to have named defendant Riviere as a fictitious party defendant in the Original Complaint and First and Second Amended Complaint in this action.

19.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, except admits upon information and belief that defendant Smith is a former Chief Financial Officer of HealthSouth; and refers to the plea allocutions of defendants Smith and Owens for a complete and accurate statement of their contents.

20.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, except admits upon information and belief that defendant Ernst & Young, LLP ("E&Y") was HealthSouth's public accountant and independent auditor as of March 1999 through March 2003 and audited HealthSouth's financial statements during that time period; and admits that Plaintiff purports to have named fictitious parties as defendants in the Original Complaint and First Amended Complaint in this action.

21.    UBS denies the allegations in Paragraph 21, except admits that (i) UBS (then UBS Warburg LLC) performed certain investment banking services for HealthSouth during the period of approximately March 1999 to March 19, 2003; (ii) UBS received fees for some of those services; (iii) HealthSouth provided certain UBS employees with then non-public information concerning HealthSouth in connection with those services; (iv) certain UBS employees attended portions of several of the HealthSouth Board of Directors meetings that were held during the period of about March 1999 to March 19, 2003; (v) Plaintiff purports to have

named fictitious parties as defendants in the Original Complaint and the First and Second Complaint in this action; (vi) Plaintiff asserts that UBS is subject to the jurisdiction of this Court; and (vii) UBS conducts business in Alabama.  UBS further refers to UBS's website for a complete and accurate statement of its contents, and avers that UBS Group and UBS Investment Bank are non-existent legal entities and UBS is a limited liability company.

22.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, except admits upon information and belief that MedCenterDirect.com ("MCDC") conducted business in the State of Alabama at certain times.

23.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, except admits upon information and belief that Source Medical Solutions, Inc. is a corporation that did business in the State of Alabama as of March 2003.

24.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.    UBS denies the allegations of Paragraph 26, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent the allegations refer to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

27.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, except admits upon information and belief that

defendant Scrushy was the Chairman of the HealthSouth Board of Directors as of March 1999 through approximately March 19, 2003, and was the CEO of HealthSouth as of March 1999 through August 27, 2002 and from January 6, 2003 to approximately March 19, 2003.

28.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

29.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required, and refers to the financial results filed by HealthSouth with the Securities and Exchange Commission ("SEC") for a complete and accurate statement of what those documents reported.

30.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required, and refers to the financial results filed by HealthSouth with the SEC for a complete and accurate statement of what those documents reported concerning contractual adjustments.

31.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, except admits that professional securities analysts typically rely on guidance provided by company management, and refers to the equity research reports issued by professional securities analysts concerning HealthSouth, including those of UBS equity research analyst Howard Capek, and HealthSouth's public trading data for complete and accurate statements of their contents and HealthSouth's stock performance.

-7-

32.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, except admits that equity research analysts relied on information provided by HealthSouth, and refers to the referenced equity research reports, including those of UBS equity research analyst Howard Capek, for complete and accurate statements of their contents.

33.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

35.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

38.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

39.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

40.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

41.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

43.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

44.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

45.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45, except refers to 18 U.S.C. § 1350 for a complete and accurate description of its requirements, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

46.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

47.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47, except refers to the (i) Form 4 filed by defendant

Scrushy on August 8, 2002 concerning his repayment of a loan made by HealthSouth for a recitation of the details of that transaction, and (ii) August 27, 2002 press release issued by HealthSouth for a complete and accurate statement of its contents.

48.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required, and refers to the operating results issued by HealthSouth on March 3, 2003 for a complete and accurate statement of that announcement.

49.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, except admits upon information and belief that E&Y was HealthSouth's outside auditor and, as such, audited and certified HealthSouth's financial statements; and refers to the Report of the Independent Auditors contained in the Form 10-K filings filed by HealthSouth with the SEC for a complete and accurate statement of the representations made by E&Y concerning HealthSouth's financial statements.

50.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

51.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, except admits upon information and belief that E&Y, as HealthSouth's auditor, was required to audit HealthSouth's financial statements for material accuracy; and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

52.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

53.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

54.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

55.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, except refers to the Form 8-K filed by HealthSouth on March 26, 2003 concerning HealthSouth's previously issued financial statements for a complete and accurate statement of its contents.

56.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

57.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

58.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, except admits upon information and belief that E&Y was HealthSouth's outside auditor; and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

- 11 -

59.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

60.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60, and refers to the complaint and Joint Stipulation of Dismissal filed in the stated *qui tam* action for a complete and accurate statement of its contents.

61.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

62.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and refers to the complaints filed in *U.S. ex rel. James J. Devage* v. *HealthSouth Corp.*, CV SA-98-CA-0372-FB, and *U.S. ex rel. DeWayne Manning* v. *HealthSouth Corp.*, CV-99-BE-2150-S; and the Form 10-K filed by HealthSouth in March 2002 for a complete and accurate statement of their contents.

63.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

64.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

65.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65, except refers to the Annual Report filed by HealthSouth in March 2002 for a complete and accurate statement of its contents.

66.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

67.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, except refers to HealthSouth's SEC filings for a complete and accurate statement of their disclosures.

68.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68, and refers to the May 17, 2002 directive issued by the Centers for Medicare and Medicaid Services for a complete and accurate statement of its contents.

69.    UBS denies the allegations in Paragraph 69, except (i) admits that HealthSouth issued $1 billion of unregistered 7 5/8% senior notes due 2012; (ii) denies knowledge or information sufficient to form a belief as to the truth of the allegations that concern Scrushy, the Individual Defendants and E&Y; and (iii) avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

70.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

71.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71, except refers to the Form 8-K filed by HealthSouth on August 14, 2002 for a complete and accurate statement of its contents, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

72.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72, except admits upon information and belief that CMS issued a directive on or about May 17, 2002, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

73.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73, except refers to the May 14, 2002 press release issued by HealthSouth and the May 15, 2002 Form 144 filed with the SEC by Scrushy for a complete statement of the details of Scrushy's May 14, 2002 sale of HealthSouth stock; and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

74.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.

75.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

76.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

77.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, except refers to the Form 4 filed by defendant Scrushy on August 8, 2002 for a complete statement of the terms of his July 31, 2002 sale of HealthSouth common stock to HealthSouth; and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

78.    UBS avers that Paragraph 78 contains no factual allegations as to which a response is appropriate or required, and refers to the decision of the Delaware Supreme Court in

*Thorpe* v. *Cerbco*, 676 A.2d 436 at 445 (Del. 1996), and the Delaware Chancery Court in *Brophy* v. *Cities Service*, 70 A.2d 5 (Del. Ch. 1949), for a complete and accurate statement of their contents.

79.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79.

80.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

81.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

82.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

83.    UBS denies the allegations in Paragraph 83, except (i) admits that UBS (then UBS Warburg LLC) performed customary investment banking services for HealthSouth during the period of approximately March 1999 to March 19, 2003; (ii) admits that certain UBS employees received then non-public information concerning HealthSouth's business in connection with those services, including its finances; (iii) admits that certain UBS employees attended portions of several HealthSouth Board of Directors meetings in connection with the routine financial advisory services provided by UBS to HealthSouth; and (iv) denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning "Fictitious Defendants W through Z" to the extent the allegations refer to entities other than UBS or

individuals other than current or former UBS employees. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

84.    UBS denies the allegations of Paragraph 84, except admits that UBS received customary compensation for the investment banking services that UBS provided to HealthSouth, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning "Fictitious Defendants W through Z" to the extent the allegations refer to entities other than UBS or individuals other than current or former UBS employees.

85.    UBS denies the allegations of Paragraph 85, except admits that (i) former UBS investment banker William McGahan was UBS's relationship coverage officer for HealthSouth, and in connection with that role Mr. McGahan was involved in providing ordinary investment banking services to HealthSouth; (ii) HealthSouth retained UBS (then UBS Warburg LLC), along with other investment banks, to provide certain investment banking services during the period of approximately March 1999 to March 19, 2003; (iii) UBS received customary investment banking fees for those services; (iv) Benjamin Lorello is the Head of UBS's Healthcare Investment Banking Group; and (v) Howard Capek is a former UBS healthcare equity research analyst. UBS further refers to the HealthSouth equity research reports issued by Mr. Capek on HealthSouth for a complete and accurate statement of their contents.

86.    UBS denies the allegations of Paragraph 86, except  (i) admits that Howard Capek, during his tenure at UBS (then UBS Warburg LLC), issued an equity research report on HealthSouth with a "strong buy" rating on May 18, 1999; (ii) admits that Mr. Capek published a HealthSouth research report with a "buy" rating on August 27, 2002; (iii) refers to each of the equity research reports issued by Mr. Capek during the period of May 11, 1999 to

August 27, 2002 for complete and accurate statements of their contents; and (iv) admits that Mr. Capek sent an e-mail to an institutional investor on September 10, 1999 concerning HealthSouth and refers to that e-mail for a complete and accurate statement of its contents. UBS further avers that Mr. Capek did not publish an equity research report or rating on HealthSouth during the period of June 5, 1999 to February 10, 2000.

87.    UBS denies the allegations of Paragraph 87, except admits that Howard Capek sent an e-mail on August 19, 1999 to an institutional client and refers to that e-mail for a complete and accurate statement of its contents. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

88.    UBS denies the allegations of Paragraph 88, except refers to (i) the unspecified press reports referenced by Plaintiff for a complete and accurate statement of their contents; (ii) the Wall Street Journal's May 23, 2003 correction to a previously issued article, which states, in relevant part, that "The [May 14] article quoted portions of the transcript of a March 18 tape . . . but didn't include the following comment by Mr. Owens about Mr. McGahan: "Now, [McGahan] shouldn't – he doesn't know anything that is going on, so, you know, it sounds to me like he was just saying to me if Richard [an apparent reference to former HealthSouth CEO Richard Scrushy] tries to blame you for the turn-down of the business and runs you off – but what concerns me is that maybe he's heard some conversations or second or third hand stuff, because Bill has his fingers on a lot of stuff . . . in New York." (*Corrections & Amplifications*, W.S.J., May 23, 2003, at A2); and (iii) the transcript describing Mr. McGahan's March 18, 2003 conversation with Owens for an accurate and complete description of its contents.

89.    UBS denies the allegations of Paragraph 89, except denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning "Fictitious Defendants W through Z" to the extent the allegations refer to entities other than UBS or individuals other than current or former UBS employees. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

90.    UBS denies the allegations of Paragraph 90, except admits that Plaintiff purports to bring derivative claims on behalf of HealthSouth in this action, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning "Fictitious Defendants W through Z" to the extent the allegations refer to entities other than UBS or individuals other than current or former UBS employees. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

91.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.

92.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

93.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 (inadvertently identified by Plaintiff in the Complaint as Paragraph 92), and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

- 18 -

94.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94.

95.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95.

96.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96.

97.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97.

98.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.

99.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.

100.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

101.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

102.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102.

103.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

104.    UBS denies the allegations in Paragraph 104 that purport to pertain to UBS, and denies knowledge or information sufficient to form a belief as to the truth of the allegations that pertain to other defendants.    UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

105.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105, except admits upon information that HealthSouth held an ownership interest in MCDC, a healthcare e-procurement company.

106.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106, except admits upon information and belief that MCDC did not publicly issue stock, and refers to MCDC's SEC filings for a complete and accurate statement of their contents.

107.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107, except admits upon information and belief that MCDC was an e-procurement vendor for HealthSouth.

108.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, except admits upon information and belief that MCDC did not publicly issue stock, and refers to the Form S-1 filed with the SEC by MCDC on March 21, 2000 for a complete and accurate statement of its contents.

109.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109.

110.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110, except admits upon information and belief that HealthSouth was a MCDC customer and refers to the public filings of MCDC and HealthSouth

for a description of the revenues earned by MCDC and their source. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

111.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111.

112.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

113.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

114.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114, except admits upon information and belief that Scrushy was the Chairman of the Board of Directors of Source Medical Solutions, Inc.; and refers to the unspecified SEC filings referenced by Plaintiff for a complete and accurate statement of their contents.

115.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115.

116.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, except admits upon information and belief that HealthSouth, Scrushy and Owens owned shares of Source Medical, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

117.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

118.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118, except refers to HealthSouth's SEC filings for their recitation of Scrushy's compensation.

119.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119.

120.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

121.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

122.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122, except admits upon information and belief that HealthSouth gave an approximately $25.2 million loan to Scrushy and refers to the Form 4 filed by defendant Scrushy on August 8, 2002 for details concerning Scrushy's repayment of that loan. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

123.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

124.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

125.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125, except admits upon information and belief that MCDC and Source Medical were HealthSouth vendors at certain times.

126.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126, except refers to the referenced proxy statement for an accurate and complete statement of its contents.

127.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127, except refers to the referenced proxy statement for an accurate and complete statement of its contents.

128.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

129.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

130.     UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130, except admits that UBS has not made a demand on the HealthSouth Board of Directors to pursue this action, because no such action is required for a defendant in a derivative action. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

131.    UBS denies the allegations in Paragraph 131 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

132.    UBS denies the allegations of Paragraph 132 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

133.    UBS denies the allegations in Paragraph 133 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

134.    UBS denies the allegations in Paragraph 134, and each subparagraph thereof, that purport to pertain to UBS and denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, except (i) admits that UBS provided a loan to MCDC; and (ii) refers to the referenced public filings, plea allocutions, court filings and other cited documents and proceedings for a full and complete statement of their contents. UBS further avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

135.    UBS denies the allegations in Paragraph 135 to the extent that they purport to pertain to UBS, except admits (i) that the Committee on Energy and Commerce of the United States House of Representatives in May 2003 issued to UBS a request for documents relating to MCDC, Source Medical, Capstone, Medpartners and Caremark; (ii) UBS relied on HealthSouth's audited financials when it provided investment banking services to HealthSouth; and (iii) former UBS equity research analyst Howard Capek issued research reports that relied on HealthSouth's audited financials when he issued equity research reports on HealthSouth. UBS further denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

136.    UBS denies the allegations in Paragraph 136 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

137.    UBS avers that Paragraph 137 contains no factual allegations as to which a response is appropriate or required.

138.    UBS avers that Paragraph 138 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to the allegations in Paragraphs 1 through 137 herein.

139.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139.

140.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140.

141.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141, except admits that Scrushy sold 5,275,360 shares of HealthSouth stock at $14.05 per share on May 14, 2002, and refers to the Form 144 filed by Scrushy on May 15, 2002 for complete and accurate statement of the details of that transaction.

142.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142, except refers to the referenced decisions for a complete and accurate statement of their contents.  UBS further avers that the allegations purport to state conclusions of law as to which no response is appropriate or required.

143.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

144.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

145.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

146.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

147.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from the enumerated defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

148.    UBS avers that Paragraph 148 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to the allegations in Paragraphs 1 through 147 herein.

149.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

150.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

151.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

152.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

153.    UBS admits that Plaintiff purports to seek the stated damages from the defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

154.    UBS admits that Plaintiff purports to seek an accounting and disgorgement from the enumerated defendants as a result of their alleged breach of fiduciary duties.

155.   UBS denies the allegations in Paragraph 155 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and admits that the Plaintiff purports to seek the stated damages and repayment from the enumerated defendants.

156.   UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

157.   UBS avers that Paragraph 157 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 156 herein.

158.   UBS denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 158, except admits upon information and belief that E&Y was HealthSouth's public accountant and auditor, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

159.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

160.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

161.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

162.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

163.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated money damages and relief from E&Y.

164.    UBS avers that Paragraph 164 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 163 herein.

165.    UBS denies the allegations in Paragraph 165, except denies knowledge or information sufficient to form a belief as to the truth of the allegations to the extent that they pertain to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

166.    UBS denies the allegations in Paragraph 166, except denies knowledge or information sufficient to form a belief as to the truth of the allegations to the extent that they pertain to entities other than UBS or individuals other current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

167.    UBS denies the allegations in Paragraph 167.

168.    UBS denies the allegations in Paragraph 168, except denies knowledge or information sufficient to form a belief as to the truth of the allegations to the extent that they pertain to entities other than UBS or individuals other current or former UBS employees, and

avers that the allegations state, in whole or part, conclusions of law as to which no response is appropriate or required.

169.    UBS denies the allegations in Paragraph 169, except denies knowledge or information sufficient to form a belief as to the truth of the allegations to the extent that they pertain to entities other than UBS or individuals other current or former UBS employees, and avers that the allegations state, in whole or part, conclusions of law as to which no response is appropriate or required.

170.    UBS denies the allegations in Paragraph 170, except denies knowledge or information sufficient to form a belief as to the truth of the allegations to the extent that they pertain to entities other than UBS or individuals other current or former UBS employees, and avers that the allegations state, in whole or part, conclusions of law as to which no response is appropriate or required.

171.    UBS admits that Plaintiff purports to request, on behalf of HealthSouth, damages and the stated accounting and other disgorgement from UBS and "Fictitious Defendants W through Z."

172.    UBS admits that Plaintiff purports to request, on behalf of HealthSouth, the stated damages, relief, and accounting and disgorgement from UBS and "Fictitious Defendants W through Z," and avers that the allegations state, in whole or part, conclusions of law as to which no response is appropriate or required.

173.    UBS avers that Paragraph 173 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 172 herein.

174.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

175.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

176.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

177.    UBS avers that the allegations in Paragraph 177 purport to state conclusions of law as to which no response is appropriate or required.

178.    UBS avers that the allegations in Paragraph 178 purport to state conclusions of law as to which no response is appropriate or required.

179.    UBS avers that the allegations in Paragraph 179 purport to state conclusions of law as to which no response is appropriate or required.

180.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

181.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

182.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

183.   UBS admits that Plaintiff purports to request, on behalf of HealthSouth, the stated money damages and relief from the enumerated defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

184.   UBS avers that Paragraph 184 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 183 herein.

185.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

186.   UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

187.   UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from E&Y, Scrushy and the Individual Defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

188.   UBS avers that Paragraph 188 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 187 herein.

189.    UBS denies the allegations in Paragraph 189, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

190.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from the defendants.

191.    UBS avers that Paragraph 191 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 190 herein.

192.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

193.    UBS denies the allegations in Paragraph 193, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

194.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from the defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

195.    UBS avers that Paragraph 195 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 194 herein.

196.    UBS denies the allegations in Paragraph 196, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph 196 to the extent that they pertain to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

197.    UBS denies the allegations in Paragraph 197, except denies knowledge or information sufficient to form a belief as to the truth of the allegations that pertain to entities other than UBS and individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

198.    UBS denies the allegations in Paragraph 198, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to entities other than UBS and individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

199.    UBS denies the allegations in Paragraph 199, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to entities other than UBS and individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

200.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

201.    UBS avers that Paragraph 201 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 200 herein.

202.    UBS denies the allegations in Paragraph 202 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to other defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

203.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

204.    UBS avers that Paragraph 204 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 203 herein.

205.    UBS denies the allegations in Paragraph 205, except denies knowledge or information sufficient to form a belief as to the truth of the allegations that pertain to entities other than UBS and individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

206.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

207.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

208.    UBS avers that Paragraph 208 contains no factual allegations as to which a response is appropriate or required, and incorporates its answers to Paragraphs 1 through 207 herein.

209.    UBS denies the allegations in Paragraph 209 that purport to pertain to UBS, except denies knowledge or information sufficient to form a belief as to the truth of the allegations that pertain to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

210.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 210, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

211.    UBS admits that Plaintiff purports to seek, on behalf of HealthSouth, the stated damages and relief from defendants, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

212.    UBS avers that Paragraph 212 contains no factual allegations as to which a response is appropriate or required, and incorporates by reference its answers to Paragraphs 1 to 211 herein.

213.    UBS avers that Paragraph 213 contains no factual allegations as to which a response is appropriate or required.

214.    UBS admits that Plaintiff purports to seek the stated damages and relief from the defendants.

215.    UBS avers that Paragraph 215 contains no factual allegations as to which a response is appropriate or required, and incorporates by reference its answers to Paragraphs 1 to 214.

216.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 216, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

217.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 217, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

218.    UBS avers that Paragraph 218 contains no factual allegations as to which a response is appropriate or required.

219.    UBS admits that Plaintiff purports to seek the stated damages and relief from the enumerated defendants.

220.    UBS avers that Paragraph 220 contains no factual allegations as to which a response is appropriate or required, and incorporates by reference its answers to Paragraphs 1 to 219.

221.    UBS denies the allegations in Paragraph 221, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

222.    UBS denies the allegations in Paragraph 222, except admits that Plaintiff purports to seek the stated damages and relief against the enumerated defendants, and avers that

this paragraph otherwise contains no factual allegations as to which a response is appropriate or required.

223.    UBS avers that Paragraph 223 contains no factual allegations as to which a response is appropriate or required, and incorporates by reference its answers to Paragraphs 1 to 222.

224.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 224, except admits upon information and belief that defendant Beam was a Chief Financial Officer of HealthSouth and a member of HealthSouth's Board of Directors.

225.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225, except admits upon information and belief that defendant McVay worked in the Finance Department and/or Treasury Department of HealthSouth from approximately 1999 to March 2003, and served as Chief Financial Officer of HealthSouth from August 27, 2002 until in or about January 2003.

226.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 226, except admits upon information and belief that defendant Harris worked in HealthSouth's Finance Department from approximately 1999 to March 2003.

227.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 227, except admits upon information and belief that defendant Livesay was a HealthSouth employee.

228.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 228, except refers to the plea allocutions of Beam, McVay, Harris, and Livesay for a complete and accurate statement of their contents.

229.    UBS denies knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 229, except refers to the plea allocution of Mr. Beam for a complete and accurate statement of its contents, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

230.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 230, except refers to the plea allocution of Mr. McVay for a true and complete statement of its contents, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

231.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 231, except refers to the plea allocution of Mr. Harris for a true and complete statement of its contents, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

232.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232, except refers to the plea allocution of Mr. Livesay for a true and complete statement of its contents, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

233.    UBS admits that Plaintiff purports to substitute Beam, McVay, Harris and Livesay as Fictitious Defendants T, U, V, V2, respectively.

234.    UBS denies the allegations in Paragraph 234, except admits that UBS advised the Court that "UBS Group" and "UBS Investment Bank" are non-existent legal entities

and Plaintiff purports to name UBS as a defendant in this action and to include UBS in the "UBS Parties" references contained in Paragraph 83 through 222 and Prayer for Relief of the Third Amended Verified Complaint.

235.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235.

236.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236, except refers to the February 8, 1999 announcement by HealthSouth for a complete and accurate statement of its contents.

237.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

238.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238, except refers to the Form 10-K filed by HealthSouth Corporation for the year ended December 31, 1999 for a complete and accurate statement of its contents.

239.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239, except refers to the Form 10-K filed by HealthSouth Corporation for the year ended December 31, 1999 for a complete and accurate statement of its contents.

240.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

241.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241, except refers to the Form 10-K filed by HealthSouth Corporation for the year ended December 31, 1998 for a complete and accurate statement of its contents.

242.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242, except refers to the Form 10-K filed by HealthSouth Corporation for the year ended December 31, 2000 for a complete and accurate statement of its contents.

243.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243, except refers to HealthSouth's Form 10-Q for the nine months ended September 30, 2002 for a complete and accurate statement of their contents.

244.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244.

245.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

246.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

247.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

248.    UBS denies the allegations in Paragraph 248, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

249.    UBS denies the allegations in Paragraph 249 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph concerning E&Y, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

250.    UBS denies the allegations in Paragraph 250 that purport to pertain to UBS, denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to E&Y, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

251.    UBS denies the allegations in Paragraph 251, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph that pertain to entities other than UBS or individuals other than current or former UBS employees, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

252.    UBS denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252, and avers that the allegations purport to state, in whole or part, conclusions of law as to which no response is appropriate or required.

253.    UBS avers that Paragraph 253 contains no factual allegations as to which a response is appropriate or required.

254.    UBS denies the allegations of Paragraph 254, and avers that the allegations purport to state, in whole or part, a legal conclusion as to which no response is required.

## AFFIRMATIVE DEFENSES

UBS asserts the following defenses without assuming the burden of proof when the burden of proof would otherwise be on the Plaintiff.

1.    Demand is not excused under Alabama Rule of Civil Procedure 23.1 and applicable Delaware law.

2.    Plaintiff has failed to state a claim against UBS on which relief can be granted.

3.    Plaintiff has failed to comply with the requirements of Alabama Rule of Civil Procedure 9(b).

4.    The venue of this action is not proper as to UBS.

5.    Plaintiff's claims against UBS are barred, in whole or in part, by the agreements between UBS and HealthSouth that govern the activities at issue.

6.    Plaintiff's claims against UBS are barred, in whole or part, by UBS's right to indemnification pursuant to the terms and conditions of UBS's agreements with HealthSouth.

7.    Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of *in pari delicto.*

8.    Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of unclean hands.

9.    Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of waiver.

10.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of ratification.

11.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of *res judicata*.

12.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrines of collateral estoppel and/or equitable estoppel.

13.     Plaintiff's claims against UBS are barred by the doctrines of accord and satisfaction and/or release.

14.     Plaintiff's claims against UBS are barred, in whole or part, by the applicable statute of limitations.

15.     Plaintiff's claims against UBS are barred, in whole or part, by Plaintiff's acquiescence.

16.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of laches.

17.     Plaintiff's claims against UBS are barred, in whole or part, because HealthSouth failed to act in good faith.

18.     Plaintiff's claims against UBS are barred, in whole or part, because UBS acted in good faith at all relevant times and did not directly or indirectly induce the alleged acts or inactions allegedly constituting the violations of law.

19.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not review, approve or authorize HealthSouth's financial statements challenged in the Complaint.

20.    UBS is contractually entitled to receive, and is entitled to retain, all of the investment banking fees that UBS received from Plaintiff.

21.    Plaintiff's claims against UBS are barred, in whole or part, because Plaintiff did not actually or justifiably rely on any alleged act or failure to act, or alleged misrepresentation and/or omission of UBS.

22.    Plaintiff's claims against UBS are barred, in whole or part, because research reports and analyst opinions are non-actionable statements that contain only expressions of opinion and repetition of publicly available information and contained sufficient disclosures.

23.    Plaintiff's claims against UBS are barred, in whole or part, because certain of the alleged misrepresentations constitute mere puffery and are not actionable as a matter of law.

24.    Plaintiff's claims are barred, in whole or part, because the challenged misrepresentations and/or omissions that are attributed to UBS did not affect the market price of HealthSouth securities.

25.    Plaintiff's claims are barred, in whole or part, because UBS did not owe or breach any duty to disclose the purported misrepresentations and/or omissions alleged in the Complaint.

26.    Plaintiff's claims and bases of recovery are barred, in whole or part, because UBS was entitled to rely on HealthSouth's financial statements and other public filings.

27.    Plaintiff's claims and bases of recovery are barred, in whole or part, by HealthSouth's breaches of contract.

28.    Plaintiff's claims and bases of recovery are barred, in whole or part, by HealthSouth's constructive or actual knowledge of the alleged fraud.

29.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not engage in any act, practice or course of conduct that operated or would operate as a fraud or deceit in connection with the provision of any investment banking services to HealthSouth.

30.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not make a false or misleading statement or omission of material fact, and are not responsible in law or in fact for any alleged false or misleading statement or omission of material fact by others on which HealthSouth allegedly relied.

31.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not know, and in the exercise of reasonable due diligence could not have known, of the existence of the alleged false and misleading statements and omissions of material fact asserted in the Complaint.

32.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not knowingly participate or assist in any breach of fiduciary duty.

33.     Plaintiff's claims against UBS are barred, in whole or part, because UBS neither owed nor breached any duty to disclose information to HealthSouth.

34.     Plaintiff's claims against UBS are barred, in whole or part, because UBS did not owe a fiduciary or other duty to HealthSouth.

35.     Plaintiff is not a proper and/or adequate representative of HealthSouth.

36.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of contributory negligence.

37.     Plaintiff's claims against UBS are barred, in whole or part, by the doctrine of assumption of risk.

38.      Plaintiff's claims against UBS are barred, in whole or part, by HealthSouth's acceptance and/or ratification of the activities or actions at issue.

39.      Plaintiff's claims against UBS are barred, in whole or part, under the doctrine of unjust enrichment and/or similar equitable principles.

40.      Plaintiff's claims are barred because UBS's alleged actions and/or inactions were not the sole or partial cause of Plaintiff's alleged losses.

41.      Plaintiff's claims are barred, in whole or part, because UBS did not directly or proximately cause or contribute to any alleged damage, loss or injury sustained by Plaintiff.

42.      Plaintiff's claims and/or damages are barred, in whole or part, by applicable federal law(s).

43.      UBS denies each and every allegation contained in the Complaint that is not expressly admitted herein.

44.      The damages sought by Plaintiff are, in whole or part, offset by amounts Plaintiff owes UBS.

45.      Plaintiff's claims are barred, in whole or part, because any loss incurred by Plaintiff was, in whole or part, caused by acts of parties outside the control of UBS. The acts of those parties constitute intervening or superseding causes of harm, if any, suffered by Plaintiff.

46.      Plaintiff is not entitled to recover punitive damages pursuant to Alabama Code Section 6-11-20 to 6-11-30.

47.      Plaintiff asserts all defenses to the assessment of punitive damages under the common law and statutory law of Alabama, Delaware and New York.

48.     Some or all of any award of punitive damages against UBS would violate one or more of the Fifth, Eighth, or Fourteenth Amendments to the Constitution of the United States of America, or corresponding provisions of the Constitution of Alabama, or both, because, among other things, the standard of liability for punitive damages in Alabama is unduly vague and subjective, permitting random, arbitrary, capricious, excessive, or disproportionate punishment serving no legitimate governmental interest, and because Alabama lacks adequate standards and procedures for reviewing awards of punitive damages.

49.     Under the principles of contribution and/or indemnity, persons or entities other than UBS are wholly or partially responsible for the purported damages, if any, that Plaintiff may have sustained.

50.     Any damage, loss or liability sustained by Plaintiff must be reduced, diminished, offset and/or eliminated in proportion to the wrongful conduct of the entities or individuals other than UBS under the principles of equitable allocations, recoupment, set-off, proportionate responsibility and/or comparative fault.

51.     Plaintiff's claims are barred, in whole or part, by HealthSouth's failure to mitigate damages, if any.

## RESERVATION OF RIGHTS

UBS hereby gives notice that it intends to rely on such other and further defenses as may become available or apparent during pre-trial proceedings in this case and hereby reserves all rights to assert such defenses.

## CLAIMS AND COUNTERCLAIMS

UBS, by its attorneys, for its counterclaims against plaintiff HealthSouth, alleges, on the basis of personal knowledge as to the conduct of UBS, and upon information and belief as to all other matters, as follows:

## <u>INTRODUCTION</u>

1.     This is an action for fraud, misrepresentation, negligence, breach of contract and indemnity against HealthSouth, who intentionally provided UBS with materially false information concerning its financial condition to induce UBS to provide investment banking services.  By this action, UBS seeks compensatory and punitive damages, and a judgment declaring that HealthSouth is liable to UBS for, among other things, any and all losses, damages, judgments, and/or fees and costs incurred by UBS in connection with this action or any other action arising out of or relating to the services provided by UBS to HealthSouth.

2.     Unbeknownst to UBS, during the period of approximately 1996 to March 2003, HealthSouth insiders executed a fraudulent accounting scheme that inflated HealthSouth's net income by at least $2.7 billion.  The HealthSouth accounting fraud was specifically designed to deceive outsiders, such as UBS, and was primarily accomplished through the creation of many thousands of fraudulent accounting entries in HealthSouth's internal computer systems.  Those entries were made in small amounts to avoid detection by HealthSouth's outside auditors, E&Y, and as a result, HealthSouth's audited financials contained material misstatements and omissions that were unknown to UBS and other outsiders.

3.     To conceal the accounting fraud and induce UBS to provide financial services, HealthSouth deliberately, materially and fraudulently misstated HealthSouth's financial condition to UBS throughout the period of approximately March 1999 to March 2003.  Because

HealthSouth represented to UBS in numerous contracts that its audited financial statements and its other representations to UBS were complete and accurate, HealthSouth's fraudulent misstatements and omissions also breached numerous provisions of its contracts with UBS.

4.    As a direct result of HealthSouth's deception, UBS (then UBS Warburg LLC) acted as an initial purchaser in four HealthSouth private placements and as an investment banker for HealthSouth for an approximate four-year period.

5.    UBS has suffered substantial damage as a result of HealthSouth's fraud and its breaches of contract, including, but not limited to significant litigation expenses in defending itself in lawsuits brought by other victims of the HealthSouth fraud and reputational damage. In this action, UBS seeks to recover those damages.

## THE PARTIES

6.    UBS is a limited liability company organized under the laws of the State of Delaware and has its principal place of business in Stamford, Connecticut.

7.    HealthSouth Corporation ("HealthSouth" or the "Company") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Birmingham, Alabama.

## JURISDICTION

8.    Jurisdiction is proper as to each party, because UBS's claims arise out of state law, and involve the same transactions or occurrences that are the subject matter of the claims that have been brought derivatively on behalf of HealthSouth in this action.

9.    Moreover, upon information and belief, HealthSouth conducts business in Alabama.

## PARTICULAR FACTUAL ALLEGATIONS

### I.    The HealthSouth Insider Fraud

10.    On March 19, 2003, the United States Securities and Exchange Commission ("SEC") filed suit against HealthSouth and its Chief Executive Officer, Richard Scrushy claiming that HealthSouth had deliberately overstated its earnings by at least $1.4 billion since 1999.  On that same day, HealthSouth announced that federal authorities had executed a search warrant at HealthSouth's corporate headquarters the prior evening, and served grand jury subpoenas on HealthSouth and certain HealthSouth employees.

11.    On March 24, 2003, HealthSouth announced that HealthSouth's previously issued financial statements "should no longer be relied on."

12.    Since March 19, 2003, fifteen former HealthSouth employees, including all five of HealthSouth's former Chief Financial Officers, have admitted to participating in the fraudulent accounting scheme at HealthSouth.

13.    Since March 19, 2003, the federal authorities revised their estimate of HealthSouth's earnings overstatement to more than $2.5 billion, and have indicated that the accounting fraud at HealthSouth dates back to at least 1996.

14.    Following the public disclosure of the HealthSouth fraud, HealthSouth's Special Audit Review Committee ("Audit Committee") conducted a "thorough and careful" forensic investigation of the accounting irregularities at HealthSouth.  (*See* Report of the Special Audit Committee of the Board of Directors of HealthSouth ("Report") at 7.)  On or about May 28, 2004, the Audit Committee issued the results of that investigation.  (*See generally* Report.)

15.     In the Report, the Audit Committee concluded that the accounting fraud at

HealthSouth "was accomplished by making over $2.7 billion in false or unsupported entries in

the Company's accounting systems. These improper accounting entries, made for the purpose of

inflating HealthSouth's earnings, took the following principal forms:    (1) exaggeration of

reported revenue, primarily through reductions to contractual adjustment accounts, and (2)

failure to properly characterize and record operating expenses." (Report at 8.)

16.     The Audit Committee stated that HealthSouth insiders increased revenue

by more than $2.2 billion by fraudulently reducing contractual adjustments alone:

> During the second quarter of 1996, HealthSouth began what was to become a systematic
> practice of reducing contractual adjustments – *i.e.*, narrowing the gap between standard
> charges and anticipated reimbursements – even though the applicable contractual
> adjustments had not actually changed and there was otherwise no support for the
> reductions.    This practice continued without interruption in every reporting period
> through mid-2002. At the same time, the Company improperly reclassified a number of
> operating expenses to make it appear as if the expenses were never incurred.
> HealthSouth fabricated hundreds of millions of dollars in pre-tax earnings during the
> income statement impact of the improper adjustments on a quarterly, annual, and
> cumulative basis:

<u>Improper Adjustments to Income Before Taxes And Minority Interest</u>
(millions of dollars)

| | 1Q | 2Q | 3Q | 4Q | Total |
|------|--------|--------|--------|--------|--------|
| 1996 | | 7.37 | 10.79 | 70.20 | 88.36 |
| 1997 | 46.76 | 75.73 | 104.95 | 168.60 | 396.04 |
| 1998 | 100.23 | 127.17 | 167.17 | 208.47 | 603.04 |
| 1999 | 85.43 | 129.79 | 63.80 | 123.94 | 402.96 |
| 2000 | 25.40 | 51.27 | 113.84 | 158.44 | 348.95 |
| 2001 | 60.53 | 228.00 | 120.04 | 167.46 | 576.03 |
| 2002 | 76.33 | 109.59 | 49.31 | (9.80) | 225.43 |
| | | | | | 2641.00 |

(Report at 10-11.)

17.     The Audit Committee stated that HealthSouth's fraudulent inflation of

income between 1996 and 2002 resulted in corresponding balance sheet manipulations that

"affected virtually all of the Company's balance sheet asset accounts." (Report at 11.) The following chart, included in the Report, illustrates how the "improper adjustments" to HealthSouth's financial balance sheets were distributed:

Improper Adjustments to Total Assets As of December 31, 2002
(millions of dollars)

| | |
|---|---|
| Property, Plant & Equipment | 1,033 |
| Cash | 373 |
| Horizon/CMS – HIS Transactions | 414 |
| Current Assets | 703 |
| Intangible Assets | 118 |
| | 2,641 |

(Report at 11.)

18.    The Audit Committee concluded that the "fraud consistently and significantly affected [HealthSouth's] reported income." (Report at 8.) Specifically, the Audit Committee concluded that HealthSouth's reported income between 1996 and the second quarter of 2002 was inflated by at least $2.741 billion. (Report at 8.) HealthSouth's financial statements for that time period were falsely inflated as follows:

Improper Adjustments To Income Before Taxes And Minority Interests

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|---|---|
| Reported | 991,480,807 | 1,485,757,791 | 2,067,102,113 | 1,295,544,178 | 1,370,911,721 | 1,493,174,801 | 1,547,458,781 |
| Adjusted | 891,838,188 | 1,086,463,765 | 1,477,895,196 | 892,058,387 | 1,021,960,053 | 917,140,318 | 1,322,027,649 |

(Report at 8.)

19.    As stated by the Audit Committee, the fraudulent accounting scheme was executed by HealthSouth through its officers and employees. In fact, the fraud "became so institutionalized at HealthSouth that [unexplained revenue increases or expense reductions] were referred to by corporate accountants as 'management entries' and by operations personnel as 'gifts,' 'pixie dust,' 'fairy dust,' or 'candy.' Indeed, annual budget planning discussions among

some operations personnel reportedly included the subject of whether corporate 'gifts' would be available to help meet revenue and earnings projections." (Report at 14.)

20.    The Audit Committee found that the HealthSouth fraud was "both enormous and complex" (Report at 7) and "the largest public accounting fraud in Alabama history and one of the largest in the history of the American business." (Report at 2.)

21.    The Audit Committee concluded that HealthSouth employees took "considerable effort" to conceal the fraudulent accounting scheme from outsiders. (Report at 7.) This finding was confirmed by the testimony of former HealthSouth CFOs Weston Smith and William Owens during the criminal trial of Richard Scrushy ("Scrushy Trial"). Smith testified that the fraud was "done to avoid detection by the outside world, by the auditors and the investment community," (March 29, 2005 Testimony of Weston Smith from the Scrushy Trial at 9024), and Owens explained that HealthSouth was able to conceal the fraud from all the banks involved in the HealthSouth transactions, such as UBS, by "controll[ing] [the banks'] access to information." (February 14, 2005 Testimony of William Owens from the Scrushy Trial at 4202.)

22.    In fact, a document prepared by Emery Harris, a former HealthSouth accountant who has pleaded guilty to participating in the HealthSouth fraud, states that HealthSouth employees made the fraudulent entries in small amounts to avoid detection by HealthSouth's outside auditors. For example, in the first quarter of 1999, 15,000 fraudulent entries were placed on HealthSouth's books and in the fourth quarter of 2001, there were over 40,000 individual fraudulent entries. (*See* May 5, 2005 Testimony of Tim Renjilian from the Scrushy Trial at 132085-86 (citing Harris's Document).)

23.    The Audit Committee also concluded that HealthSouth's internal controls – even a year after the Mach 19, 2003 public disclosure of the accounting fraud – had "serious

weaknesses, especially in the areas of contractual allowances, receivables, and fixed assets."

(Report at 38.) This finding was again reiterated by HealthSouth in the Form 10-K that it filed

on June 27, 2005.   (*See* HealthSouth Form 10-K filed on June 27, 2005 (hereinafter

"Restatement") at 6, 7 ("stating that HealthSouth new management and advisors had found that

HealthSouth's "financial systems and internal controls historically ha[d] been ineffective" and

had "material weaknesses.").)

       24.    In the Restatement, HealthSouth reduced its previously reported net

income for 2000 by $393.6 million and $642.7 million for 2000. (Restatement at 8.)   The

following chart summarizes the net impact of the adjustments made by HealthSouth in its

previously reported revenues, net income and net income per share:

| | Year Ended December 31, 2001 | | Year Ended December 31, 2000 | |
|---|---|---|---|---|
| | As Previously Reported | As Restated | As Previously Reported | As Restated |
| Revenues | $4,380,477,000. | $3,553,057,000. | $4,195,115,000. | $3,498,836,000. |
| Net income (loss) | $ 202,387,000. | $ (191,225,000.) | $ 278,465,000. | $ (364,243,000.) |
| Net income (loss) per share | | | | |
|    Basic | $0.52 | $(0.49) | $  0.72 | $    (0.94) |
|    Diluted | $0.51 | $(0.49) | $  0.71 | $    (0.94) |

       25.    In the Restatement, HealthSouth stated that, in light of the substantial time

and expense incurred to complete the restatement of the consolidated financials for 2000 and

2001, it would not restate its 1999 financial statements, but that information for that year and

earlier periods should not be relied upon.  (Restatement at 56-57.)  However, HealthSouth did

make adjustments to its January 1, 2000 opening retained earnings balance to correct items that

related to prior periods. (*Id.* 8, 64.) Those adjustments approximated $3.0 billion. (*Id.*)

**II.    UBS's Participation in HealthSouth's Private Placements in Reliance on HealthSouth's False Representations**

### A.    The HealthSouth Private Placements

26.    HealthSouth privately sold notes to a syndicate of investment banks (the "Initial Purchasers") on the following dates: (i) September 25, 2000 ("September 2000 Private Placement"); (ii) February 1, 2001 ("February 2001 Private Placement"); (iii) September 28, 2001 ("September 2001 Private Placement"); and (iv) May 17, 2002 ("May 2002 Private Placement") (collectively, "HealthSouth Private Placements").

27.    The Initial Purchasers in the HealthSouth Private Placements purchased debt securities directly from HealthSouth, and then resold those debt securities to Qualified Institutional Buyers ("QIBs") through a confidential final offering memorandum ("Final Offering Memorandum") in private placements conducted in compliance with the requirements of Rule 144A, 17 C.F.R. § 230.144A.

28.    Typically, a preliminary confidential offering memorandum ("Preliminary Offering Memorandum") preceded the Final Offering Memorandum and contained the same statements as the Final Offering Memorandum except for certain terms relating to the price of the debt securities that were to be sold by HealthSouth to the Initial Purchasers.

29.    UBS was an Initial Purchaser in each of the HealthSouth Private Placements.

### B.    The Purchase Agreements and HealthSouth's  Representations and Warranties

30.    In each of the HealthSouth Private Placements, the Initial Purchasers agreed to purchase debt securities at issue from HealthSouth in reliance on customary representations made by HealthSouth in a written purchase agreement ("Purchase Agreement" or

"PA"). The Purchase Agreements for each of the HealthSouth Private Placements contained substantially identical language and terms. A representative Purchase Agreement relating to the May 2002 Private Placement and dated May 20, 2002 is attached as Exhibit A and incorporated by reference herein. The other Purchase Agreements are dated September 20, 2000 (September 2000 Private Placement), January 25, 2001 (January 2001 Private Placement) and September 24, 2001 (September 2001 Private Placement).

31.    In each of the Purchase Agreements in a section entitled "Representations and Warranties of the Company and the Initial Purchasers," HealthSouth made the following representations and warranties to the Initial Purchasers:

(a)    The Preliminary and/or Final Offering Memorandum (collectively, the "Offering Memoranda") for the respective HealthSouth Note offering, on the date thereof, did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements relating to HealthSouth not misleading. (*See* September 20, 2000 PA at 5(a)(ii); January 25, 2001 PA at 5(a)(ii); September 24, 2001 PA at 5(a)(ii); May 17, 2002 PA at 5(a)(ii).)

(b)    All documents incorporated by reference in the Offering Memoranda for the respective HealthSouth Note Offering, on the date thereof, conformed in all material respects to the requirements of the Securities Exchange Act of 1934 and the rules and regulations thereunder, and no such document when it was filed by HealthSouth contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. (*See* September 20, 2000 PA at 5(a)(iii); January 25, 2001 PA at 5(a)(iii); September 24, 2001 PA at 5(a)(iii); May 17, 2002 PA at 5(a)(iii).)

- 57 -

(c)     The financial statements, together with the related schedules and notes, included or incorporated by reference in the Offering Memoranda ("Incorporated Financial Statements") for the respective HealthSouth Note Offering, on the date thereof, presented fairly the consolidated financial position, results of operation and cash flows of HealthSouth on the basis stated in the Offering Memoranda at the respective dates or for the respective periods to which they applied. (*See* September 20, 2000 PA at 5(a)(xi); January 25, 2001 PA at 5(a)(xi); September 24, 2001 PA at 5(a)(x); May 17, 2002 PA at 5(a)(x).)

(d)     The Incorporated Financial Statements had been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods involved, except as otherwise disclosed in the Offering Memoranda. (*See* September 20, 2000 PA at 5(a)(xi); January 25, 2001 PA at 5(a)(xi); September 24, 2001 PA at 5(a)(x); May 17, 2002 PA at 5(a)(x).)

(e)     HealthSouth was operating in compliance in all material respects with all laws, regulations, orders and decrees applicable to HealthSouth and that had a material affect on its business, properties or assets. (*See* September 20, 2000 PA at 5(a)(xvi); January 25, 2001 PA at 5(a)(xvi); September 24, 2001 PA at 5(a)(xv); May 17, 2002 PA at 5(a)(xv).)

(f)     HealthSouth maintained a system of internal accounting controls sufficient to provide reasonable assurances that (i) transactions are executed in accordance with management's authorizations; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's authorization; and (iv) the recorded accountability for assets is compared with existing assets at reasonable intervals and appropriate action is taken with respect to any

differences. (*See* September 20, 2000 PA at 5(a)(xvii); January 25, 2001 PA at 5(a)(xvii); September 24, 2001 PA at 5(a)(xvi); May 17, 2002 PA at 5(a)(xvi).)

(g)    HealthSouth had filed tax returns which were complete and correct. (*See* September 20, 2000 PA at 5(a)(xix); January 25, 2001 PA at 5(a)(xix); September 24, 2001 PA at 5(a)(xviii); May 17, 2002 PA at 5(a)(xviii).)

32.    In each of the Purchase Agreements, consistent with market custom, HealthSouth also agreed to indemnify and hold harmless each of the Initial Purchasers, its employees and officers, and each person that controls any Initial Purchaser within the meaning of Section 15 of the Securities Act or Section 20(a) of the Exchange Act, from and against any and all losses, liabilities, claims, damages and expenses whatsoever (including, but not limited to reasonable attorneys' fees and any and all reasonable expenses whatsoever incurred in investigating, preparing, or defending against any litigation, commenced or threatened, or any claim whatsoever, and any and all reasonable amounts paid in settlement of any claim or litigation) (collectively "Losses") to which they or any of them may become subject to under the Securities Act of 1933, the Securities Exchange Act of 1934 or otherwise insofar as such Losses arise out of or are based on any untrue statement of material fact concerning HealthSouth and contained in the Preliminary and/or the Final Offering Memorandum, or in any supplement or amendment thereof, or arise out of or are based upon the omission or alleged omission to state therein a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. (*See* September 20, 2000 PA at 6(a); January 25, 2001 PA at 6(a); September 24, 2001 PA at 6(a); May 17, 2002 PA at 6(a).)

33.    In direct reliance on HealthSouth's customary representations and warranties in the Purchase Agreements, and HealthSouth's indemnification, UBS purchased the

notes from HealthSouth in the respective HealthSouth Private Placements in which they participated and then resold those notes to QIBs pursuant to the Final Offering Memoranda.

### C.    HealthSouth's False Representations and Breaches of Contract for Which the Company is Liable

34.    Notwithstanding HealthSouth's specific representations and warranties to the Initial Purchasers, HealthSouth knew, or was recklessly indifferent to the fact, that the Offering Memoranda for the HealthSouth Private Placements were replete with material misstatements and omissions.

35.    If UBS had known the truth about the HealthSouth fraud, it plainly would not have participated in the HealthSouth Private Placements. UBS reasonably relied on HealthSouth's representations concerning its financial condition, because as investment banks and not auditors, they legally were entitled to – and did – rely on HealthSouth's audited financials and HealthSouth's representations concerning their accuracy.

36.    Specifically, HealthSouth knew, or had reckless disregard for the fact, that the Incorporated Financial Statements for each of the HealthSouth Private Placements fraudulently and materially overstated HealthSouth's revenue, assets and cash flow and understated operating costs for the period of 1996 to 2002. As set forth above, HealthSouth has publicly acknowledged that its audited financials for this period fraudulently overstated HealthSouth's earnings for this period by more than $2.7 billion.

37.    For each of the HealthSouth Private Placements, the Incorporated Financial Statements consisted of HealthSouth's most recent annual financial statements, as well as any quarterly financial statements that HealthSouth had filed in the year in which the HealthSouth Private Placement was conducted. Specifically, the following audited financials