IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

(HEALTHSOUTH CORPORATION 2002 DERIVATIVE LITIGATION)

| | | |
|---|---|---|
| WADE TUCKER, derivatively for the Benefit of and on behalf of the Nominal Defendant HealthSouth Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. CV-02-5212 |
| -vs- | ) ) | |
| RICHARD M. SCRUSHY, *et al.*, | ) ) | |
| Defendants. | ) | |

## UBS SECURITIES LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT, OR ALTERNATIVELY, TO STAY THE ACTION

W. Stancil Starnes
Jay M. Ezelle
Robin H. Jones
STARNES & ATCHISON LLP
P.O. Box 598512
Birmingham, Alabama 35259-8512
(205) 868-6000

*Attorneys for Defendant*
*UBS Securities LLC*

July 16, 2004

7|16|04

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.     PLAINTIFF FAILS TO ESTABLISH DEMAND FUTILITY OR EXCUSE. .......... 4

      A.     HealthSouth's Answer Does Not Excuse Demand. ................................. 4

      B.     Plaintiff Fails to Show that a Majority of the Board is Independence-
           Impaired. ................................................................................................. 5

      C.     HealthSouth's Appointment of the SLC on an Unrelated Matter Does
           Not Concede Demand Futility. ............................................................. 11

      D.     The Decisions by the Delaware Court of Chancery are Irrelevant to
           Demand Futility. .................................................................................. 12

      E.     UBS's Position in the Teachers' Litigation is Not Inconsistent with its
           Argument in this Case. ......................................................................... 13

II.    PLAINTIFF'S NON-CONTRACT CLAIMS AGAINST UBS BASED ON
      EVENTS PRIOR TO AUGUST 8, 2001 ARE TIME-BARRED .......................... 14

III.   THE CONTRACT ACTION AGAINST UBS IS BARRED BY THE
      FORUM SELECTION CLAUSE IN THE GOVERNING AGREEMENTS. .......... 14

      A.     UBS is Not Estopped from Raising its Forum Selection Argument ...... 14

      B.     UBS Did Not Waive its Forum Selection Argument. ............................ 15

      C.     The Forum Selection Clause is Enforceable. ....................................... 16

CONCLUSION .............................................................................................................. 18

i

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Angell* v. *Shannon,*
    455 So.2d 823 (Ala. 1984)..................................................................................................14

*Aronson* v. *Lewis,*
    473 A.2d 805 (Del. 1984), *overruled on other grounds by*
    *Brehm* v. *Eisner,*
    746 A.2d 244 (Del. 2000) ...................................................................................................7

*Ash* v. *McCall,*
    No. Civ. A. 17132, 2000 WL 1370341
    (Del. Ch. Sept. 15, 2000) ...................................................................................................6

*Bell Constructors, Inc.* v. *Evergreen Caissons, Inc.,*
    654 N.Y.S.2d 80 (App. Div. 1997)....................................................................................17

*Biondi* v. *Scrushy,*
    820 A.2d 1148 (Del. Ch. 2003).......................................................................................8, 9

*Brehm* v. *Eisner,*
    746 A.2d 244 (Del. 2000) .............................................................................................7, 10

*British W. Indies Guar. Trust Co.* v. *Banque Internationale a Luxembourg,*
    567 N.Y.S.2d 731 (App. Div. 1991) .................................................................................18

*Brophy* v. *Cities Serv. Co.,*
    70 A.2d 5 (Del. Ch. 1949)..................................................................................................10

*Donoghue* v. *Am. Nat'l Ins. Co.,*
    838 So.2d 1032 (Ala. 2002)................................................................................................2

*e4e, Inc.* v. *Sircar,*
    No. Civ. A. 20366-NC, 2003 WL 22455847
    (Del. Ch. Oct. 9, 2003)........................................................................................................6

*Ex parte First Ala. Bank,*
    No. 1020855, 2003 WL 22113920
    (Ala. Sept. 12, 2003)..........................................................................................................13

*Guttman* v. *Huang,*
    823 A.2d 492 (Del. Ch. 2003)..............................................................................................7

*Haines* v. *Tonning,*
　　579 So.2d 1308 (Ala. 1991)............................................................................14

*Hale* v. *Hale,*
　　Nos. 2020637, 2020638, 2003 WL 22463866
　　(Ala. Civ. App. Oct. 31, 2003)......................................................................15

*Int'l Equity Capital Growth Fund, L.P.* v. *Clegg,*
　　No. Civ. A. 14995, 1997 WL 208955
　　(Del. Ch. Apr. 22, 1997) ..................................................................................6

*Kaplan* v. *Peat, Marwick, Mitchell & Co.,*
　　540 A.2d 726 (Del. 1988) ........................................................................2, 4, 5

*Manchester Knitted Fashions, Inc.* v. *Amalgamated Cotton Garment & Allied Indus.*
　　*Fund,*
　　967 F.2d 688 (1st Cir. 1992).........................................................................16

*New Hampshire* v. *Maine,*
　　532 U.S. 742 (2001).................................................................................13, 15

*Orman* v. *Cullman,*
　　794 A.2d 5 (Del. Ch. 2002).........................................................................11

*Rales* v. *Blasband,*
　　634 A.2d 927 (Del. 1993) ........................................................................6, 8, 9

*Seminaris* v. *Landa,*
　　662 A.2d 1350 (Del. Ch. 1995).....................................................................12

*Smith* v. *Nat'l Sec. Ins. Co.,*
　　860 So.2d 343 (Ala. 2003)............................................................................14

*Spiegel* v. *Buntrock,*
　　571 A.2d 767 (Del. 1990) ............................................................................12

*Ex parte Starr,*
　　419 So.2d 222 (Ala. 1982)............................................................................16

*Steiner* v. *Meyerson,*
　　Civ. A. No. 13139, 1995 WL 441999
　　(Del. Ch. July 19, 1995)..................................................................................9

*Teachers' Ret. Sys. of La.* v. *Scrushy,*
　　No. Civ. A. 20529, 2004 WL 423122
　　(Del. Ch. Mar. 2, 2004)................................................................................12

iii

*Yaw* v. *Talley*,
    Civ. A. No. 12882, 1994 WL 89019
    (Del. Ch. Mar. 2, 1994) ........................................................................................6

### Statutes and Rules

ALA.CODE § 6-2-38(l) (1975) ....................................................................................14

ALA.R.CIV.P. 9(b) ..............................................................................................1, 2, 14

ALA.R.CIV.P. 23.1 .................................................................................................10, 11

### Other Authorities

Pat K. Chew, *Futility of Demand*,
    2001 PLI Dir. & Off. Liab. § 3:4.3 ....................................................................9-10

iv

Defendant UBS Securities LLC ("UBS") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Fourth Amended Complaint ("Amended Complaint").

## PRELIMINARY STATEMENT

As confirmed by Plaintiff's opposition briefs,[1] the Amended Complaint fails to show that UBS was anything other than a victim of the HealthSouth fraud. In fact, Plaintiff's briefs are dedicated in their virtual entirety to opposing the arguments of insider defendants, and only superficially address the many reasons that the claims against UBS must be dismissed. Unable to defeat the arguments raised in UBS's Opening Brief,[2] Plaintiff all but ignores most of them and instead elects, as he puts it, to "paint with broad brushstrokes," summarily asserting that "he opposes all arguments of all defendants in all pending motions to dismiss." (Obj. & Resp. Br. at 5 n.2.) Plaintiff's failure to address — let alone refute — many of the core arguments in UBS's Opening Brief requires dismissal here.

For example, Plaintiff entirely ignores the doctrines of *in pari delicto* and "unclean hands," which preclude all of Plaintiff's claims against UBS. (*See* UBS's Opening Br. Part V.) And although Plaintiff concedes that ALA.R.CIV.P. 9(b) requires that claims alleging fraud must be pled with particularity, he ignores its application to his claims against UBS. (Obj. & Resp. Br. at 9.) Plaintiff repeatedly alleges that UBS "falsely touted" HealthSouth stock (Am. Compl. ¶¶ 84-88, 168, 248), conspired with HealthSouth executives to "defraud HealthSouth

---

[1]    *See* Derivative Plaintiff Tucker's Answering Brief Opposing All Defendants' Motions to Dismiss Based on Demand Requirements under Rule 23.1 ("Demand Brief"); Plaintiff's Consolidated Objections and Responses to Defendants' Motions to Dismiss Pursuant to Rules 9(b) and 12(b)(6) ("Objections and Responses Brief").

[2]    *See* UBS Securities LLC's Memorandum of Law in Support of its Motion to Dismiss the Fourth Amended Complaint, or Alternatively, to Stay the Action, filed on May 27, 2004 ("UBS's Opening Brief").

into granting the UBS Parties investment-banking business" (Am. Compl. ¶ 89), and induced, aided and abetted, and conspired to commit "broad accounting misstatements." (Am. Compl. ¶¶ 90, 166, 197-98.) Yet, neither Plaintiff's Amended Complaint, nor his submissions, specify the time, location or content of the facts supposedly misrepresented, as required by ALA.R.CIV.P. 9(b). (*See* UBS's Opening Br. Part III.)

Rather than confront the arguments in UBS's Opening Brief demonstrating why his claims fail as a matter of law, Plaintiff argues generally that "[t]he standard for dismissal under Rule 12(b)(6) is very high" and then pronounces — with no support or reference to the specific claims against UBS — that "this standard has not been met." (Obj. & Resp. Br. at 9.) As shown in UBS's Opening Brief, even under the most liberal reading of the facts pled in the Amended Complaint, Plaintiff has failed entirely to state a viable claim against UBS for aiding and abetting a breach of fiduciary duty, civil conspiracy, suppression, breach of contract and unjust enrichment under settled law. (*See* UBS's Opening Br. Part IV.)[3]

Plaintiff only addresses three of UBS's arguments with any specificity, all to no avail:

**First,** Plaintiff contends that demand on the HealthSouth Board was excused or would have been futile because the HealthSouth Board supposedly has proclaimed its indifference to the prosecution of this action, relying on *Kaplan* v. *Peat, Marwick, Mitchell & Co.,* 540 A.2d 726 (Del. 1988). Plaintiff's reliance on *Kaplan* is misplaced because HealthSouth has not asserted a position of neutrality with respect to *demand on the claims against UBS.* Nor has Plaintiff shown that a majority of the HealthSouth Board would have been unable to

---

[3]    The Court may properly consider UBS's exhibits, attached to the Starnes Affidavit dated May 27, 2004, on a 12(b)(6) motion, without conversion to a motion for summary judgment, because "the exhibits in question are referred to in, and are central to, the plaintiff's complaint." *Donoghue* v. *Am. Nat'l Ins. Co.,* 838 So.2d 1032, 1035 (Ala. 2002).

disinterestedly and independently assess a demand *on the claims against UBS*. Furthermore, HealthSouth's appointment of a Special Litigation Committee ("SLC") on the issue of Scrushy's alleged insider trading, and the Delaware Court of Chancery's decisions concerning the SLC's independence, have no relevance to the independence of the HealthSouth Board with respect to claims against UBS, which were not raised until *after* the SLC was disbanded. Finally, UBS has not waived its argument concerning the requirement of demand in its motion for a stay in the *Teachers'* litigation.

   **Second,** Plaintiff argues that the two-year statute of limitations that applies to actions in fraud should be tolled. Plaintiff fails, however, to satisfy his burden of detailing the timing and circumstances of his discovery of UBS's allegedly fraudulent conduct, as is required to invoke tolling, and has failed to allege any fraudulent concealment by UBS. Thus, all non-contract claims predicated on conduct prior to August 8, 2001 must be dismissed.

   **Finally,** as to his contract claims, Plaintiff argues that UBS has waived its right to enforce the forum selection clause agreed to by HealthSouth and UBS. This argument fails because UBS never waived its argument, nor did it take a position inconsistent with enforcement of the forum selection clause, and Plaintiff offers no argument as to why the forum selection agreement should not be enforced according to its terms.

3

## ARGUMENT

I.    **Plaintiff Fails to Establish Demand Futility or Excuse.**[4]

A.    **HealthSouth's Answer Does Not Excuse Demand.**

Plaintiff relies on *Kaplan* v. *Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988) for the proposition that HealthSouth's assertion, as nominal defendant, in its Answer to the Fourth Amended Complaint that it will "remain neutral" on the issue of demand futility excuses demand for purposes of this motion. (*See* Demand Br. at 2.)    This argument fails for the following reasons.

*Kaplan's* holding is limited to the "unique facts" of that case, where the company and its officers no longer faced claims in the action and the company changed its prior position of hostility to the derivative suit against the defendant. *Kaplan*, 540 A.2d at 731. The company there set forth its position of neutrality in an affidavit *in response to the defendant's motion to dismiss* for failure to make demand. *See id.* at 729.    Explaining the policy behind the demand rule, the court stated: "if the demand rule requires deference to the prerogative of management, its invocation must advance management's position, *vis-à-vis*, the *claims in question*, otherwise, the rule serves no function." *Id.* at 731 (emphasis added).    Because the company in *Kaplan* "asserted a position of neutrality concerning both the derivative litigation and [defendant's] motion to dismiss" the claims against it, demand was excused as to those claims. *Id.* at 732.

Here, unlike in *Kaplan*, HealthSouth stated its position of neutrality in its own answer as nominal defendant. As the company and officers continue to face claims raised in the suit, the company's neutrality is aimed at demand *on the specific claims against it*.    HealthSouth

---

[4]    Plaintiff concedes that the relevant Board of Directors for determining demand futility or excuse is the Board that was in existence when UBS was added to the action in the Third Amended Complaint, filed on August 8, 2003. (*See* Demand Br. at 11; UBS's Opening Br. at 8 n.8.)

4

did not "take a position in regards to a derivative action on its behalf" *against UBS*, and therefore had no obligation to "affirmatively object to or support the continuation of the litigation" against UBS under *Kaplan*. *Id.* at 731. HealthSouth's neutrality on this issue simply cannot be construed to imply that it conceded demand futility with respect to a possible claim against UBS. Because demand futility must be determined with respect to each challenged transaction and defendant, *see infra* note 5, HealthSouth's statement of neutrality on the issue of demand concerning the claims against the company should not "be viewed as tacit approval for the continuation of the litigation" against UBS. *Kaplan*, 540 A.2d at 731.

In addition, the court in *Kaplan* found that the rationale underlying the demand requirement — i.e., "that the decision to pursue claims belonging to the corporation falls within the scope of the directors' power to manage the business and affairs of the corporation" — was not implicated where the company and its board acquiesced in an action against the defendants to which the company board was not a party. *Id.* Here, however, six of the HealthSouth Directors at the relevant time (August 8, 2003) are defendants in this case and have moved to dismiss for failure to make a demand (*see* Director & Officer Demand Br., dated May 27, 2004). Thus, the policy of recognizing these directors' power to manage the business and affairs of the corporation clearly *is* implicated, and the then-existing Board plainly has not evidenced indifference to the suit.

**B.    Plaintiff Fails to Show that a Majority of the Board is Independence-Impaired.**

Plaintiff has failed to demonstrate that demand on the board of directors was futile as of August 8, 2003, because he has not made "particularized factual allegations" that "create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand" concerning the claims against

UBS. *Rales* v. *Blasband*, 634 A.2d 927, 934 (Del. 1993). Where, as here, "the board *that would be addressing the demand* can impartially consider its merits without being influenced by improper considerations," then demand is not futile, and the action should be dismissed. *Id.* (emphasis added).

        At the outset, Plaintiff wrongly lumps the various defendants and claims together, claiming in conclusory fashion that demand is excused for all. The law is clear, however, that Plaintiff must demonstrate a legally disabling conflict with respect to the claims against each defendant.[5] Here, Plaintiff has plainly failed — as he must — to make *particularized* factual allegations showing that at least five[6] of those directors (in addition to Scrushy) were interested or independence-impaired *with regard to claims against UBS.*

---

[5]     *See, e.g., Ash* v. *McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *6 (Del. Ch. Sept. 15, 2000) (demand is only excused "[i]f a plaintiff can raise a reasonable doubt that a majority of directors was disinterested or capable of exercising independent business judgment *with respect to the transaction in question*") (emphasis added); *Int'l Equity Capital Growth Fund, L.P.* v. *Clegg*, No. Civ. A. 14995, 1997 WL 208955, at *4 (Del. Ch. Apr. 22, 1997) (where "[t]he complaint involves a number of separate transactions occurring over several years and involving different persons in different capacities . . . the appropriate approach to board independence is to review each board's independence *with respect to each transaction alleged to give rise to a claim*") (emphasis added); *Yaw* v. *Talley*, Civ. A. No. 12882, 1994 WL 89019, at *9 (Del. Ch. Mar. 2, 1994) ("plaintiff must . . . demonstrate that a demand would have been futile as to each remaining claim").

[6]     While it is besides the point, given his failure to show any cognizable Board conflict with respect to a possible claim against UBS, Plaintiff's assertion that demand would be excused if five directors — including Scrushy — were deemed interested or independence-impaired (*see* Demand Br. at 19 n.18) is incorrect. Plaintiff admits that Scrushy was fired at least by March 31, 2003. (Demand Br. at 3.) Because Scrushy was excluded from all HealthSouth Board business long before August 8, 2003, there were only nine members of the HealthSouth Board of Directors who would have addressed a demand concerning UBS at the relevant time. *See e4e, Inc.* v. *Sircar*, No. Civ. A. 20366-NC, 2003 WL 22455847, at *2 (Del. Ch. Oct. 9, 2003) (demand futility is only established by "an appropriate showing of interest or lack of independence on the part of a majority of *the directors who would be charged with evaluating a shareholder demand* for board action") (emphasis added).

Plaintiff also does not even contend that the handicaps alleged in the Amended Complaint rise to the level of a disabling conflict under settled law. Plaintiff contends only that a judgment in favor of the Company against UBS might "bring" some — but not all — directors "closer to being held liable." (*See* Demand Br. at 19-22.) Yet, such conclusory assertions that a director may be "closer" to possible liability are not enough: Plaintiff must plead particularized facts that demonstrate a "substantial likelihood" of liability. *See Aronson* v. *Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000).

Finally, Plaintiffs' various other futile attempts to manufacture some disabling conflict in no way suggests that the majority of directors labored under some conflict that made him or her incapable of evaluating a possible claim against UBS:

**1)** *Director Strong.* Apart from his irrelevant arguments of the "closeness" of Strong to possible liability, Plaintiff's only arguments concerning Strong's independence relate to his membership on the Audit Committee and his stock sales. But Plaintiff nowhere explains how Audit Committee membership made any director unable to objectively rule on a demand concerning a possible claim against UBS, HealthSouth's investment bankers. A finding of liability against UBS would not imply liability for the Audit Committee, and Plaintiff does not contend otherwise. Furthermore, that Strong sold stock in June 2002 bears no relevance whatsoever to his potential liability in respect of the claims against UBS, and is in any event insufficient to support the conclusion that he faced a "real threat" of liability for insider trading given that Plaintiff has pled no particularized facts "detailing the precise role that [Strong] played at the company, the information that would have come to [his] attention in [that] role[], and any indication as to why [he] would have perceived the" impact of the CMS policy clarification on the value of his shares. *Guttman* v. *Huang*, 823 A.2d 492, 503 (Del. Ch. 2003).

7

**2)**    *Director Striplin.*  Plaintiff's reliance on the decision in *Biondi* v. *Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) (*see* Demand Br. at 19) to attack Striplin's independence is severely misplaced, because the court there merely found questionable Striplin's ability, as a member of the HealthSouth SLC, independently to investigate the *insider trading claims against Scrushy.* *Biondi*, 820 A.2d at 1165.  A director's ability to "properly exercise[] [his] independent and disinterested business judgment in responding to demand" must be determined with respect to the challenged conduct of *each* defendant because a demand would detail "the nature of the alleged wrongdoing and the identities of the alleged wrongdoers." *Rales*, 634 A.2d at 934, 935. Thus, Striplin's alleged independence-impairment with regard to claims of Scrushy's insider trading, even if true, is irrelevant to his independence with regard to the claims *against UBS.* His alleged interests concerning E&Y, Source Medical Solutions and Scrushy are equally irrelevant to a determination of his ability to independently respond to a demand concerning UBS.

**3)**    *Director May.*   Plaintiff's sole allegation concerning May's ability to independently assess a demand concerns his statement as Chairman of the then-existent SLC, in October of 2002, that a review by outside counsel Fullbright & Jaworski exonerated Scrushy of the allegations of insider trading against him.  (*See* Am. Compl. ¶ 134(j); Demand Br. at 21.) That the court in *Biondi* found May to be unable to independently investigate the claims of insider trading against Scrushy is irrelevant to May's ability to disinterestedly and independently assess an unrelated demand concerning claims against UBS.  In fact, Vice Chancellor Strine specifically distinguished the case here from the one in *Biondi* and limited his holding on that ground: "Because the Tucker Complaint is a wide-ranging attack on many years of Scrushy's conduct, May's exonerating statement goes only to one small and incidental set of the issues in that case.  By contrast, it goes to the heart of the matter in this one."  820 A.2d at 1166 n.44.

8

Plaintiff has made no allegations concerning May's ability to assess a demand concerning the allegations of financial and accounting fraud that make up the heart of the Amended Complaint, or any conduct by UBS, and thus has not shown that a demand detailing "the nature of the alleged wrongdoing and the identities of the alleged wrongdoers" would have been futile. *Rales*, 634 A.2d at 935.

    **4)**    *Director Hanson.* In *Biondi*, the court found that the allegations of Hanson's inability to independently investigate claims of Scrushy's insider trading as a member of the SLC — the same facts Plaintiff has pled to show Hanson's independence-impairment here (*see* Am. Compl. ¶ 134(k)) — were, standing alone, *insufficient* to deny a stay pending resolution of the SLC's investigation. *Biondi*, 820 A.2d at 1165. It follows that these same allegations are even less sufficient to demonstrate independence-impairment with regard to the unrelated claims against UBS in this case.

    **5)**    *Director Newhall.* Plaintiff's allegations concerning Newhall's service on the Board of Directors of MedCenterDirect and Caremark are irrelevant to his ability to disinterestedly and independently consider a demand to bring claims against UBS. Plaintiff's allegation that UBS, as an outside investment bank, funded and raised investment capital for MedCenterDirect in the past (Am. Compl. ¶ 134(e)) does not raise a reasonable doubt that Newhall would be unable to independently assess a demand for HealthSouth to bring claims against UBS that are unrelated to MedCenterDirect, as Plaintiff has not alleged current control or domination over Newhall by UBS.[7] Furthermore, as with Strong, Plaintiff's allegation that

---

[7]    *See Steiner* v. *Meyerson*, Civ. A. No. 13139, 1995 WL 441999, at *10 (Del. Ch. July 19, 1995) (under *Rales*, "an officer/director would be considered to lack independence if, *at the time demand would have been made*, the party benefiting from the transaction is in a position 'to exert considerable influence' over the officer/director") (emphasis added); *see also* Pat K. Chew, *Futility of Demand*, 2001 PLI Dir. & Off. Liab. § 3:4.3 ("in contrast to *Aronson* where the focus

9

Newhall's "insider trade" brought him "several steps closer to liability" is insufficient to demonstrate a "substantial likelihood" of potential liability in connection with potential claims against UBS, and Plaintiff in any event failed to allege with particularity that Newhall had any *inside* information, (*see* Am. Compl. ¶ 75; UBS's Opening Br. at 13) as required for liability for insider trading. *See, e.g., Brophy* v. *Cities Serv. Co.*, 70 A.2d 5, 8 (Del. Ch. 1949).

      6)    *Director Givens.* Plaintiff's demand futility allegations concerning Givens are based upon alleged connections with other defendants in this action and her inability to act independently with respect to a demand concerning claims against those defendants. Plaintiff's only allegation that relates to UBS is that "on information and belief, Givens and her firm, Acacia, have done several transactions with the UBS Parties." (Am. Compl. ¶ 134(f).) Plaintiff has failed to plead Givens' lack of disinterestedness or independence with particularity, as required by ALA.R.CIV.P. 23.1, because he has alleged no specific facts concerning the type or timing of the "several transactions" supposedly entered into between Acacia and UBS, or why those transactions conceivably might have impaired Givens' ability to disinterestedly and independently address a demand regarding UBS. *See Brehm* v. *Eisner*, 746 A.2d 244, 255 (Del. 2000) ("[R]ule [23.1] does not permit a stockholder to cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation"). And, as with Newhall, Plaintiff's allegation that Givens' "insider trade" brought her "closer to being held liable" (Demand Br. at 20) is insufficient because Plaintiff has not shown that she had any inside information or how that might relate to claims against UBS. *See supra.*

---

appeared to be whether the directors in the challenged transaction could have been independent at the time of the challenged transaction, *Rales* focused on the independence of the directors at the time the complaint was filed"). Plaintiff concedes that the operative legal standard here is provided by *Rales*. (Demand Br. at 18.)

7)   *Director Gordon.*   Plaintiff's contention that Gordon has been a paid consultant to HealthSouth for his "entire professional life" and "has been extremely well compensated" by HealthSouth (Am. Compl. ¶ 134(d)) says nothing about his independence and fails completely to create a reasonable doubt that Gordon could independently and disinterestedly assess a demand concerning the claims against UBS.

8)   *Director Chamberlin.*   Plaintiff's allegations of Chamberlin's acceptance of Scrushy's favors, including investments in the "self-dealing entities" (Demand Br. at 21), are not particularized and do not raise a reasonable doubt that he would have been interested or independence-impaired with respect to claims against UBS.

Finally, Plaintiff's allegations that each of the directors were "beholden" to or controlled by Scrushy cannot stand because, by August 8, 2003, Scrushy was no longer CEO or Chairman of the Board (Am. Compl. ¶ 5), and thus no longer had the power to unilaterally "decide whether the challenged director continues to receive a benefit . . . the threatened loss of [which] might create a reason to question whether the controlled director is able to consider the corporate merits" of the demand. *Orman* v. *Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002).

In sum, Plaintiff has failed to allege particularized facts raising a reasonable doubt that eight of the nine directors that would have addressed a demand on the claims against UBS on August 8, 2003 could have done so independently and disinterestedly, as required by ALA.R.CIV.P. 23.1. As a result, Plaintiff lacks standing to raise his claims against UBS, and the Amended Complaint should be dismissed for failure to make a demand.

C.   **HealthSouth's Appointment of the SLC on an Unrelated Matter Does Not Concede Demand Futility.**

Plaintiff's contention that HealthSouth conceded demand futility with regard to the claims against UBS by appointing an SLC in September 2002 — which was disbanded in

11

May 2003, three months *before* any claims against UBS were raised — fails as a matter of law. "To demonstrate that the [HealthSouth] Board conceded demand futility, plaintiff must allege particularized facts to support a factual determination that the board *intended* to concede demand." *Seminaris* v. *Landa*, 662 A.2d 1350, 1353 (Del. Ch. 1995) (emphasis added). The facts here do not support Plaintiff's claim that the HealthSouth Board intended to concede demand on claims against UBS by appointing the SLC, given that the SLC was appointed *and* *disbanded* well before any claims were raised against UBS, and the SLC was never charged to investigate the facts at issue here. (*See* Am. Compl. ¶ 136; Demand Br. at 25.) *See Seminaris*, 662 A.2d at 1353 (finding that board did not concede demand futility when it appointed an SLC to investigate certain conduct *before* plaintiff filed his complaint, and later delegated decisional authority over plaintiff's derivative claims to the SLC that was already investigating the problem).[8]  It defies logic to find that in appointing an SLC, which was never empowered to investigate the present claims against UBS, HealthSouth intended to concede demand futility with regard to these claims.

### D.   The Decisions by the Delaware Court of Chancery are Irrelevant to Demand Futility.

As discussed above, the court's findings in *Biondi* are irrelevant to the assessment of demand futility with respect to UBS here, as the alleged financial and accounting fraud at the heart of this complaint, and the claims against UBS, were not at issue in *Biondi*. *See supra* pp. 8-9. In addition, the court's finding in *Teachers' Retirement System of Louisiana* v. *Scrushy*, No. Civ. A. 20529, 2004 WL 423122, at *9 (Del. Ch. Mar. 2, 2004), that the Amended Complaint

---

[8]      *See also Spiegel* v. *Buntrock*, 571 A.2d 767, 777 (Del. 1990) ("the Court of Chancery properly rejected Spiegel's argument that *Abbey* stands for the proposition that a board of directors, *ipso facto*, waives its right to challenge a shareholder plaintiff's allegation that demand is excused by the act of appointing a special litigation committee and delegating to that committee the authority to act on the demand").

here is "a substantial, fact-laden document that also reflects a good deal of work" does not speak to the merits of Plaintiff's demand futility allegations, and therefore is of no relevance to the issue of demand futility.

**E.    UBS's Position in the *Teachers'* Litigation is Not Inconsistent with its Argument in this Case.**

Plaintiff suggests that UBS should be estopped from contesting demand futility because UBS argued, in the *Teachers'* litigation, that the common issues in the derivative actions arising from the financial and accounting fraud at HealthSouth should be litigated in an organized and coordinated way so that the same issues would not be addressed simultaneously in multiple jurisdictions. UBS never stated or even suggested that Plaintiff's complaint here was legally sufficient or had met his burden of demonstrating demand futility, but argued only that all of the issues in the co-pending derivative actions — including demand futility — should be addressed once. UBS did not take a position "clearly inconsistent" with this Motion such as might permit a finding of judicial estoppel. *Ex parte First Ala. Bank*, No. 1020855, 2003 WL 22113920, at *7 (Ala. Sept. 12, 2003) (embracing the factors set forth in *New Hampshire* v. *Maine*, 532 U.S. 742 (2001)). To the contrary, UBS argued in favor of allowing this Court to proceed ahead of the competing actions precisely so that this Court would have the opportunity to decide the viability of Plaintiff's claims, including his failure to demonstrate demand futility. Similarly, UBS receives no unfair advantage and imposes no unfair detriment to Plaintiff by contesting demand futility such as might warrant the invocation of judicial estoppel. *Id.* The issue of demand was not litigated in the *Teachers'* case, but instead was stayed pending resolution of that and other issues in this case. The very purpose of the *Teachers'* stay motion was to afford this Court the opportunity to rule on the merits on Plaintiff's claims without the distraction of potentially inconsistent rulings on the same issues in competing actions.

II.    **Plaintiff's Non-Contract Claims Against UBS Based on Events Prior to August 8, 2001 Are Time-Barred.**

As all of Plaintiff's non-contract claims against UBS arise out of allegedly fraudulent conduct,[9] they are governed by a two-year statute of limitations that applies to claims "not arising from contract." ALA.CODE § 6-2-38(l) (1975). Under Alabama law, fraud claims accrue "when the plaintiff, in the exercise of ordinary care, *should have* discovered" the allegedly fraudulent conduct. *Haines* v. *Tonning*, 579 So.2d 1308, 1310 (Ala. 1991). The "complaint must contain the time and circumstances of discovery of the alleged fraud to toll the running of the limitations period and thereby entitle a plaintiff to relief from the bar of the limitations period." *Smith* v. *Nat'l Sec. Ins. Co.*, 860 So.2d 343, 345 (Ala. 2003) (citing *Angell* v. *Shannon*, 455 So.2d 823 (Ala. 1984); ALA.R.CIV.P. 9(b)). Because the Amended Complaint fails to describe the time and circumstances of Plaintiff's discovery of UBS's allegedly fraudulent conduct, and has not alleged that UBS fraudulently concealed any of its challenged conduct, Plaintiff is not entitled to toll the running of the statute of limitations, as he contends. (*See* Obj. & Resp. Br. Part III.D.) Therefore, all non-contract claims against UBS based on events prior to August 8, 2001 are barred by the applicable two-year statute of limitations and must be dismissed.

III.    **The Contract Action Against UBS Is Barred by the Forum Selection Clause in the Governing Agreements.**

A.    **UBS is Not Estopped from Raising its Forum Selection Argument.**

Plaintiff contends that because UBS filed a brief in a parallel proceeding in Delaware Chancery Court advocating that the issues raised first in this Court, and later in

---

[9]    Because it is undisputed that HealthSouth and UBS expressly agreed that UBS was not a fiduciary (*see* UBS's Opening Br. Part IV.D.3), Plaintiff's argument concerning accrual of a breach of fiduciary duty claim for statute of limitations purposes (Obj. & Resp. Br. at 11-14) does not apply to the claims against UBS.

14

Delaware, be first decided in this Court estops UBS from raising its forum selection argument here. (Obj. & Resp. Br. at 18-19.) This argument borders on the frivolous.

UBS's forum selection argument is not clearly inconsistent with its position in the *Teachers'* case, and thus the doctrine of judicial estoppel cannot apply. *See New Hampshire* v. *Maine*, 532 U.S. at 750; *see also Hale* v. *Hale*, Nos. 2020637, 2020638, 2003 WL 22463866, at *6 (Ala. Civ. App. Oct. 31, 2003). In *Teachers'*, UBS merely advocated that the issues raised in this motion be adjudicated in a single forum, in order to avoid duplicative litigations. Among the issues to be adjudicated is the proper forum for disputes arising out of UBS's contractual relationship with HealthSouth. Had the Teachers' case proceeded, UBS would have been forced to repeat the same contractual choice of forum arguments in multiple courts. By advocating for the coordinated disposition of these issues before this Court, UBS has not conceded the merits of Plaintiff's case or his choice of forum.

Adjudication of the contract claims in New York is also not clearly inconsistent with "the orderly and efficient administration of justice," because the merits of these claims against UBS would be adjudicated once, in the forum selected by both parties to the contracts, which is most competent to apply New York law. (*See* UBS's Opening Br. at 20 n.20.) The same result would pertain whether there were one or one hundred derivative suits: the contract claims in them all must be litigated in the parties' agreed-upon forum.

**B.    UBS Did Not Waive its Forum Selection Argument.**

Plaintiff's claim that UBS waived its forum selection argument through delay or submission to the Court's jurisdiction is premised upon a wholesale distortion of the record. Plaintiff's contention that UBS first raised the argument "on May 27, 2004, over 21 months after being added to the lawsuit" (Obj. & Resp. Br. at 18), is flatly incorrect and is contradicted by his own submissions. UBS was added as a defendant in this action on August 8, 2003. (*See* **Third**

15

Am. Compl.; Demand Br. at 11.)  On October 17, 2003, just over *two months* after being added as a defendant in this action, UBS filed a Motion to Dismiss the Third Amended Complaint — its first responsive pleading — asserting, among other things, that this action is barred by the agreements governing UBS's investment banking relationship with HealthSouth, in which HealthSouth agreed "to bring any claims relating to financial advisory services performed by HealthSouth in certain specified New York courts." (*See* UBS's Mot. to Dismiss, dated Oct. 17, 2003, ¶ 9(c).)

Apart from its Motion to Dismiss the Third Amended Complaint, filed on October 17, 2003, and its pending Motion to Dismiss the Fourth Amended Complaint, filed on May 27, 2004, UBS has not submitted to this Court's jurisdiction in any way.  Thus, Plaintiff's argument that "the extreme passage of time (nearly two years), coupled with all the activity UBS has voluntarily participated in, creates waiver in this case" (*see* Obj. & Resp. Br. at 20), is entirely unfounded.[10]

### C.    The Forum Selection Clause is Enforceable.

Under New York law, which governs the contractual relationship between UBS and HealthSouth and the enforceability of the agreements governing that relationship, forum selection clauses are prima facie valid.  The forum selection clause agreed to by UBS and

---

[10]    The cases cited by Plaintiff are inapposite, as those courts found waiver only because the defendants there had lulled the Court and the parties into a belief that they would not raise the forum issue or sought affirmative relief from the Court inconsistent with their challenge to the appropriateness of the forum.  For example, in *Ex parte Starr*, 419 So.2d 222 (Ala. 1982), defendant filed a motion for relief from default judgment, attended a hearing on the motion, and the motion was granted by the court before he objected to venue.  The Court found that his objection was untimely.  Similarly, in *Manchester Knitted Fashions, Inc.* v. *Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688, 692 (1st Cir. 1992), the court found that the defendant's objection to venue was waived because the defendant had submitted to the court's jurisdiction several times before raising his objection to the venue, by moving for hearings on the plaintiff's motions for a temporary restraining order and a preliminary injunction.

HealthSouth may only be set aside if Plaintiff could "show that enforcement would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, i.e., a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." *Bell Constructors, Inc.* v. *Evergreen Caissons, Inc.*, 654 N.Y.S.2d 80, 81 (App. Div. 1997) (internal quotation omitted). Plaintiff has made no such showing.

Plaintiff's claim that "[i]t would violate judicial economy and be seriously inconvenient to sever out UBS and send the claims against it only to New York, when those UBS claims are closely intertwined with the claims and parties that would remain here in Alabama, where most of the evidence and witnesses are located" (Obj. & Resp. Br. at 23) provides no grounds for overriding the parties' written agreement. Even if Plaintiff were correct — which plainly he is not given that most UBS witnesses are in New York — "inconvenience" provides no basis whatsoever to ignore the clear agreement of the parties to require any disputes arising out of a contract to be resolved in a chosen forum. *See Bell Constructors, Inc.*, 654 N.Y.S.2d at 80-81 (contractor's allegations of considerable economic hardship, loss of business time, and inconvenience if compelled to defend action in New York pursuant to forum selection clause in contract are insufficient to show that enforcement of clause would be unreasonable or unjust, and thus, clause had to be enforced). Furthermore, that the subject-matter of *other* claims in the litigation involve "fraud" is irrelevant (*see* Obj. & Resp. Br. at 25), given that there is no allegation that the forum selection clause was procured through fraud. *See British W. Indies Guar. Trust Co.* v. *Banque Internationale a Luxembourg*, 567 N.Y.S.2d 731, 732 (App. Div. 1991) (forum selection clause not procured through fraud enforceable).

17

Finally, even if relevant to the analysis — and it is not — there is nothing "inconvenient" or uneconomical about enforcing the forum selection agreed to by the parties. The contract claims are not inextricably linked with the claims against other defendants to this action. Unlike the other claims in this action, the contract claims are governed by the bargained-for agreement between the parties, interpreted in accordance with New York law.

Because Plaintiff has failed to meet the high standard for setting aside a contractual forum selection clause, this court must dismiss the contract claims against UBS.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in UBS's Opening Brief, the claims against UBS must be dismissed, or alternatively, this action must be stayed.

Respectfully submitted,

W. Stancil Starnes
Jay M. Ezelle
Robin H. Jones
STARNES & ATCHISON LLP
P.O. Box 598512
Birmingham, Alabama  35259-8512
(205) 868-6000

Attorneys for UBS Securities LLC

July 16, 2004

**ORAL ARGUMENT REQUESTED**

18

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading upon all attorneys of record by electronic mail pursuant to the Court's April 19, 2004 Order requiring the same, on this the 16th day of July, 2004.


OF COUNSEL

19

**Appendix 3:**
**All Counsel in *Tucker v. Scrushy***
**Pending Before The Honorable Allwin E. Horn III**

| Party | Name of Person to Serve | Email Address |
|---|---|---|
| Tucker, Wade | John Q. Somerville, Esq.<br>Ralph D. Cook, Esq.<br>John W. Haley, Esq.<br>Bruce J. McKee, Esq.<br>Steve P. Gregory, Esq.<br>Frank DiPrima, Esq.<br>Ronald A. Brown, Esq.<br>Edward F. Haber, Esq.<br>Robert C. Schubert, Esq.<br>Juden Justice Reed, Esq.<br>Arthur L. Schingler, Esq. | jqs@gallowaysomerville.com<br>ralph@hwnn.com<br>haley@hwnn.com<br>bruce@hwnn.com<br>sgregory@diceandgregory.com<br>diprimalaw@aol.com<br>rabrown@prickett.com<br>ehaber@shulaw.com<br>rschubert@schubert-reed.com<br>jreed@schubert-reed.com<br>ashingler@scott-scott.com |
| Scrushy, Richard M. | H. Lewis Gillis, Esq.<br>April D. Williams, Esq.<br>Donald V. Watkins, Esq.<br>Thomas V. Sjoblom, Esq.<br>Scott Balber, Esq.<br>Thomas J. Hall, Esq. | hlgillis@tmgpc.com<br>adwilliams@tmgpc.com<br>donaldvwatkinspc@aol.com<br>tsjoblom@chadbourne.com<br>sbalber@chadbourne.com<br>thall@chadbourne.com |
| Scrushy, Gerald P. | Gerald P. Scrushy, *pro se*<br>3424 Creekwood Drive<br>Birmingham, AL 35203 | |
| MedCenterDirect.com | MedCenterDirect.com, Inc., *pro se*<br>3343 Peachtree Road<br>Suite 1600<br>Atlanta, Georgia 30326 | |
| Source Medical Solutions, Inc. | James C. Huckaby Jr., Esq.<br>John W. Scott Esq. | jch@hsdpc.com<br>jws@hsdpc.com |
| Capstone Capital Corporation a/k/a HealthCare Realty Trust | James L. Goyer, Esq.<br>Alan F. Enslen, Esq. | jgoyer@mcglaw.com<br>aenslen@mcglaw.com |
| G G Enterprises | G G Enterprises, *pro se*<br>c/o Gary Gussing<br>865 Woodmere Creek Loop<br>Birmingham, AL 35226 | |

20

| HealthSouth Corporation | J. Michael Rediker, Esq. | jmr@hsy.com |
| | Thomas L. Krebs, Esq. | tlk@hsy.com |
| | Michael K.K. Choy, Esq. | mkc@hsy.com |
| | F. Lane Finch Jr., Esq. | flf@hsy.com |
| | Patricia C. Diak, Esq. | pcd@hsy.com |
| | Peyton D. Bibb, Esq. | pdb@hsy.com |
| | Lisa M. Rios | lmr@hsy.com |
| | David B. Anderson, Esq. | danderson@walstonwells.com |
| | Julia Boaz Cooper, Esq. | jbcooper@walstonwells.com |
| | Alan M. Warfield, Esq. | awarfield@walstonwells.com |
| | Edward P. Welch, Esq. | ewelch@skadden.com |
| | Stephen Dargitz, Esq. | sdargitz@skadden.com |
| Martin, Michael D. | John H. Cooper, Esq. | jcooper@sirote.com |
| | C. Lee Reeves, Esq. | lreeves@sirote.com |
| | Robert W. Fleishman, Esq. | rfleishman@steptoe.com |
| Givens, C. Sage | J. Mark Hart, Esq. | jmh@hsy.com |
| Strong, George H. | Paul C. Gluckow, Esq. | pgluckow@stblaw.com |
| Newhall, Charles W. III | Allison R. Kimmel, Esq. | akimmel@stblaw.com |
| Chamberlin, John S. | | |
| Gordon, Joel C. | | |
| Striplin, Larry D. Jr. | | |
| Owens, William T. | Frederick Helmsing, Esq. | fgh@helmsinglaw.com |
| | Patrick C. Finnegan, Esq. | pcf@helmsinglaw.com |
| | Carolyn B. Quinn | cbq@helmsinglaw.com |
| | Joy Brewer | mjb@helmsinglaw.com |
| Watkins, Phillip C. | N. Lee Cooper, Esq. | lcooper@mcglaw.com |
| Foster, Patrick A. | James L. Goyer III, Esq. | jgoyer@mcglaw.com |
| Riviere, Daniel J. | Patrick Cooper, Esq. | pcooper@mcglaw.com |
| Taylor, Larry D. | Carl Burkhalter, Esq. | cburkhalter@mcglaw.com |
| | James R. Bussian, Esq. | jbussian@mcglaw.com |
| | Champ Lyons III, Esq. | champ@champlyons.com |
| | Peter Q. Bassett, Esq. | pbassett@alston.com |
| | Betsy Collins, Esq. | bcollins@alston.com |
| | Susan Hurd, Esq. | shurd@alston.com |
| Smith, Weston L. | Charles A. Dauphin, Esq. | cdauphin@bddmc.com |
| | David McKnight, Esq. | dmcknight@bddmc.com |
| Ernst & Young LLP | Henry Simpson, Esq. | henry.simpson@arlaw.com |
| | Steven M. Farina, Esq. | sfarina@wc.com |
| | Enu Mainigi, Esq. | emainigi@wc.com |
| UBS Warburg LLC | W. Stancil Starnes, Esq. | sstarnes@starneslaw.com |
| UBS Group | Jay M. Ezelle, Esq. | jme@starneslaw.com |
| UBS Investment Bank | Robin H. Jones, Esq. | rhj@starneslaw.com |
| | Robert J. Giuffra, Esq. | giuffrar@sullcrom.com |
| | Thomas L. Leuba, Esq. | leubat@sullcrom.com |
| | Julia M. Jordan, Esq. | jordanjm@sullcrom.com |

| Beam, Aaron Jr. | Mack B. Binion, Esq.<br>Jeremy Hazelton, Esq. | mbinion@briskman-binion.com<br>jhazelton@briskman-binion.com |
|---|---|---|
| McVay, Malcolm E. | J. Don Foster, Esq. | jdf@jacksonfosterlaw.com |
| Harris, Emery W. | J. Stephen Salter, Esq. | umstakwit@aol.com |
| Livesay, Kenneth K. | Joseph A. Fawal, Esq. | jfawal@bellsouth.net |