**Frank P. DiPrima**
**Counselor at Law**
**41 Constitution Way**
**Convent Station, NJ 07960**
-----
**Phone (973) 656-0251**
**Fax (973) 656-0252**
e-mail: diprimalaw@aol.com

October 29, 2004

The Honorable Allwin E. Horn, III
Circuit Court, 10th Judicial Circuit
716 North 21st Street
Birmingham AL 35263

Subject:    *Tucker v. Scrushy et al.*, CV – 02 – 5212
            Plaintiff's Response to the UBS Parties' Motion to Dismiss

Dear Judge Horn:

Please accept this letter brief, which opposes the motion to dismiss filed by defendant UBS Securities LLC ("UBS").[1]

## INTRODUCTION – Background and Status of UBS Dismissal Motion

### A.    The Complaint.

To summarize Tucker's claims against UBS, we must first recap the complaint's basic claims as to false accounting. From 1996 through 2002, Scrushy and others issued financials that vastly overstated HealthSouth's revenues and earnings so as to artificially inflate its stock price. Compl.,

---

[1] Besides the Order of August 17, 2004, which gave both sides the opportunity to make new simultaneous submissions on pending dismissal motions, Your Honor indicated at oral argument on July 16, 2004, that he would allow plaintiffs to show why choice of forum provisions in certain contracts that the UBS parties submitted to this Court should not result in these claims being tried in the courts of New York rather than this Court. This submission responds to both opportunities.

1

¶¶29-48.[2] The other directors were knowingly indifferent to this, breaching their fiduciary duties. Compl., ¶¶29-48, 151, 155. Scrushy and other directors profited from insider trades. Compl., ¶¶72-78, 138-147. As one of many damage categories, HealthSouth repurchased its shares in the market at inflated prices, costing hundreds of millions. Compl., ¶¶235-244, 248.[3]

UBS supported this scheme *from 1998 through 2002* (Compl., ¶21), by board attendance and participation (Id., ¶83), by assuming the role of inside adviser on a wide array of financial matters (Id., ¶¶21, 83-85), by superior access to secret inside information (Id., ¶21, 83), and by falsely touting HealthSouth stock, the price of which was the false-accounting's endgame. Id., ¶¶83-90. UBS placed a "strong buy" rating on the stock *starting in 1999.* Compl., ¶¶85-87. UBS knew that HealthSouth was not doing as well as the financials portrayed but trumpeted a "strong buy" rating *between 1999 and 2002* for reasons of its own – to aid and abet Scrushy in his scheme to inflate earnings so as to inflate the stock and to improve UBS's prospects of getting lucrative banking business. Compl., ¶¶84, 88. The legal basis for the complaint's claims against UBS may be summarized as follows:

---

[2] As the Third Amended Complaint and the Fourth Amended (Supplemental) Complaint are together the operative complaint herein, and the paragraph numbers in the latter take up where those of the former leave off, "Compl. ¶___ " followed by the paragraph number refers to the these two complaints.

[3] The worst of these open-market repurchase damages *were in 1999* (Compl., ¶¶238-240). That is the year – *1999* – that UBS started falsely touting the stock publicly (Compl., ¶85) while trashing it privately. Compl., ¶¶86-87. Even the Starnes Affidavit submits, as Ex. 4, a UBS tout sheet from *2000.*

*First*, we allege that UBS aided and abetted breaches of fiduciary duty of HealthSouth's directors and officers. This is a separately cognizable and well-established tort under Delaware law. It is not a contract theory, and may but doesn't necessarily involve fraud. Aiding and abetting sounds in tort, is by extension a breach of fiduciary duty, and is sometimes referred to as "civil conspiracy."[4] Compl. ¶83-90, 166, 168, 170, 197-198, and 248.

*Second*, we allege that UBS put itself in the position of a fiduciary, and quite apart from aiding and abetting someone else's breaches, committed direct breaches of fiduciary duty in its own right. Compl. ¶¶83, 165-166.

*Third*, we have pled the tort of suppression. Compl., ¶¶165, 167-169.

*Fourth*, we have pled unjust enrichment. Compl., ¶¶188-190, 249.

*Fifth*, we have pled that UBS breached its contracts to provide HealthSouth with investment banking services diligently and honestly. Compl., ¶193. It is this contract claim that UBS argues should be litigated in New York. See RB at 14-17.

The *First* and *Second* claims are our most basic claims against UBS and are not contract claims. All five claims, *First* through *Fifth*, are based on one core of operative facts. Compl., ¶21, 29-48, 72-78, 83-90, 164-172, 235-244, 248-249. These five claims are inextricably intertwined with each other and with other issues of law and fact regarding other defendants in Tucker. UBS now pushes to send its contract claims (the *Fifth* claim) to New York,

---

[4] As to the Delaware tort of aiding and abetting, please see our letter submission dated September 10, 2004, given in connection with the dismissal motion brought by defendants Capstone and Source, and served on all parties herein, including UBS.

based on choice of forum provisions first appearing in a contract dated May 17, 2002, long after the complained of conduct began and just before it ended.

B.   UBS's Motion

UBS filed its dismissal motion with an Opening Brief and transmittal affidavit ("Starnes Affidavit") on May 27, 2004, and a Reply Brief on July 16. UBS devotes most of the two briefs to the demand issue, since decided. As its fifth or sixth argument, UBS devotes a page of its opening brief to the choice-of-forum clause in the two contracts. OB at 20-21. The Reply Brief clarifies that UBS is seeking dismissal in favor of New York of just Tucker's contract claims, and instead relies on other arguments, notably a time-bar argument, as regards breach of fiduciary duty and other non-contract claims. RB 14-18.

The Starnes Affidavit submits four documents. The first two are the contracts between HealthSouth and UBS with choice-of-forum provisions that UBS wants enforced, dated *May 17, 2002* and *August 7, 2002.* Both were prepared by UBS.[5] The other two documents are (i) a phone transcript, and (ii) a UBS research report from *February 2000* touting HealthSouth stock.

We turn to UBS's arguments, starting with choice-of-forum issue.

I.   **OUTBOUND CHOICE-OF-FORUM PROVISIONS**

A.   **Choice of Law in Enforcement of a Choice-of-Forum Provision.**
The Alabama Supreme Court has repeatedly applied the law of the forum rather than (as UBS argues) the law of the outbound state, in deciding

---

[5] The second contract is on a UBS form. The first one bears a marking at the lower left on each page, bearing what is apparently a UBS code number.

4

whether to enforce an outbound choice-of-forum clause. *E.g.*, Ex Parte Leasecomm Corp. v. Kelleher,[6] 879 So.2d 1156, 1157-1158 (Ala. 2003); Ex Parte Procom Services, Inc., 2003 WL 23027621 *3-4 (Ala. 2003). This stands to reason, as a choice-of-forum clause "implicates the venue of a court rather than its jurisdiction." Kelleher, 879 S. 2d at 1158 (citations omitted).

  B. **This Court's Discretion and the Standard of Review**.  The decision as to whether or not to apply an outbound choice-of-forum provision is within the discretion of the trial court, reviewable only for abuse of discretion. O'Brien Engineering Company, Inc., 738 So.2d 844, 846 (Ala. 2000).  The challenge to the court's discretion can be made only through a writ of mandamus, a "drastic and extraordinary writ." Kelleher at 1158. "We apply the abuse-of-discretion standard when considering a mandamus petition challenging a venue ruling, and we will not issue the writ unless the trial court exercised its discretion in an arbitrary and capricious manner." Ex Parte DaimlerChrysler, 2004 WL 2091405 *3-4 (Ala. Sept. 17, 2004).

  Where (as here) the side trying to enforce the outbound forum selection clause is the contract's drafter, the clause is "most strictly" construed against the drafter. Ex Parte CTB, v. CTB, Inc., 782 So. 2d 188, 191 (Ala. 2000).

  C. **The Substantive Standard**. In Alabama, an outbound choice-of-forum provision is generally upheld unless it would be ***either*** unfair ***or*** unreasonable.  Fairness goes to fraud in the inducement as to the clause

---

[6] We note that the similarly named Ex Parte Leasecomm v. Galaxy Mall, 2003 WL 22753454 (Ala. Nov. 21, 2003, *Rehearing Denied* February 20, 2004), which we cite rely on *infra*, is a separate and different suit with different parties.

itself, and we need not rely on it here.  Unreasonableness sufficient to void a choice-of-forum provision is shown where the "chosen . . . forum is seriously inconvenient for the trial of the action."  <u>Ex Parte Leasecomm Corp. v. Galaxy Mall</u>, 2003 WL 22753454, *3 (Ala. Nov. 21, 2003, *Rehearing Denied* Feb. 20, 2004).  It is "seriously inconvenient" for these purposes if enforcement of the forum selection clause results in two trials of "inextricably intertwined" matters in different fora.  <u>Galaxy Mall</u> at *6.  Furthermore, "a forum-selection clause is unreasonable if its enforcement would contravene a strong public policy of the forum in which the suit has been brought" (<u>Galaxy Mall</u> at *3 [citation omitted]); there is a strong public policy in Alabama and elsewhere against splitting causes of action.  <u>Galaxy Mall</u> at *4, 5, 8.[7]

D.   <u>The Choice-of-Forum Clause Should Not be Enforced</u>.

Any one of the following arguments defeats UBS's motion to enforce the forum selection clause:

1.   <u>First Argument</u>:   <u>The contracts were dated after almost all of the complained-of conduct took place and are not retroactive</u>.  UBS has not presented any choice-of-forum clauses dated before May 17, 2002.  The two it

---

[7] <u>Galaxy Mall</u> involved two defendants, a parent and its subsidiary, relying on two forum selection clauses in two related transactions with the same plaintiff, one in favor of Utah and the other Massachusetts.  The Alabama Supreme Court denied mandamus petitions, holding that enforcement would be "seriously inconvenient" as it would result in "inextricably intertwined" issues being tried in more than one suit.  It ruled that the same result obtains whether or not there are two competing forum selection provisions, holding "that distinction is not significant." <u>Galaxy Mall</u> at *5-6.  The Court approvingly cited cases where there was only one choice-of-forum clause, but where enforcement would result in splitting a cause of action, e.g., <u>Personalized Marketing Services, Inc. v. Stolter & Co.</u>, 447 N.W.2d 447 (Minn.Ct.App.1989).

6

submitted are not retroactive. The complained of conduct began in 1998 (Compl., ¶¶21, 83, 86-87), was most palpable in 1999 and early 2000 with UBS's touting the stock publicly while trashing it in private (Id. at 86-87 and Starnes Aff., Ex. 4), and all but ended in August 2002. Compl., ¶47. Thus this Court need not even reach the threshold question of whether to enforce choice-of-forum provisions. During almost all the relevant period, there were no choice-of-forum provisions.

As the choice-of-forum provisions presented are most strictly construed against the drafter UBS (Ex Parte CTB, 782 So. 2d at 192), it cannot argue that there is some hidden meaning extending their intent beyond contract claims or to eras predating the contracts in which they appear.

2. **Second Argument: The Claims against UBS Are "Inextricably Intertwined" with Tucker's Claims against Other Parties.** All the claims against UBS, including the contract claims, arise out of the same nucleus of facts regarding the false accounting, on which Tucker is pursuing claims against 18 other defendants.[8] Indeed, plaintiff's most basic claim against UBS, that of aiding and abetting the breach of fiduciary duty of the defendant directors and officers, including Scrushy, is "inextricably intertwined" with claims against 18 other defendants. Galaxy Mall at *6. The Supreme Court of Delaware has defined aiding and abetting as follows:

---

[8] The 18 are defendants Scrushy, Martin, Smith, Owens, Givens, Newhall, Strong, Chamberlin, Gordon, Striplin, Watkins, Taylor, Foster, Riviere, Beam, McVay, Harris, and Livesay.

7

> The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in a breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary

Gotham Partners L.P. v. Hallwood Realty Partners, 817 A.2d 160, 172 (Del.Supr. 2002)(citation omitted).[9] To belabor the obvious, there cannot be "aiding and abetting the breach of fiduciary duty by another" if there is no breach of fiduciary duty by that other. Elements 1, 2 and 4 (as stated in Gotham Partners) of our aiding and abetting claim against UBS are identical to what we need to prove in our claims against the 18 individual defendant fiduciaries.[10] Accordingly, under the rule in Galaxy Mall, it would be "seriously inconvenient," and thus unreasonable, to send part of this case to New York for one trial, when there is going to be another trial in Alabama regarding 18 other defendants. It is against the strong public policy of Alabama so split causes of action. Galaxy Mall at *4. Galaxy Mall is the law of the jurisdiction, controls this case, and mandates denial of UBS's motion.

The Alabama Supreme Court in Galaxy Mall also noted approvingly that courts have held that

---

[9] We note, in Gilbert v. El Paso Co., 490 A.2d 1050, 1057 (Del.Ch. 1984), the almost identical formulation of a cause of action for a civil conspiracy, a near-synonym for aiding and abetting, which we have also pled against UBS. Compl., ¶¶197-198.

[10] On an even more practical level, regardless of the disposition of UBS's motion, plaintiff, in his suit against Scrushy and other fiduciaries, will have to prove in Alabama extensive facts involving the false accounting. There will be numerous depositions and extensive document discovery, some of which will involve UBS's involvement, and this is true whether or not UBS is a party.

> . . . where a plaintiff's suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable. (Citations and internal quotations omitted.)

Galaxy Mall at *5. No one could allege that the Tucker complaint's claims against UBS are an attempt to avoid the forum selection clause. Indeed, UBS was not named as a defendant until the Third Amended Complaint, one year after this suit was filed, and then only after it was discovered through a highly publicized scandal that UBS had ravaged HealthSouth's stock privately while touting it publicly. Thus, for this additional policy reason embraced by the Alabama Supreme Court in Galaxy Mall, enforcement of the forum selection provision must be denied.

   3. **Third Argument: The Contract Claims against UBS Are "Inextricably Intertwined" with the Other Claims Against UBS.** As UBS's Reply Brief virtually concedes, it is only the contract claims that can be dismissed or stayed based on the choice-of-forum provision. Our aiding and abetting claim, fiduciary duty claims, and other non-contract claims would be the same whether or not there ever was a contract. Yet all five sets of claims against UBS outlined above are based on the same factual nucleus – that the accounting was false, and that UBS aided the scheme to inflate the stock price. It is in this way that UBS breached its contracts with HealthSouth, including an implied covenant to provide HealthSouth with investment

banking services in a forthright and professional manner and an implied covenant of good faith and fair dealing. Compl., ¶¶89, 193.

Once again, Galaxy Mall controls. The same issues of fact will support the contract claims and the non-contract claims. The facts are "inextricably intertwined." This makes trying some claims in New York and others in Alabama "seriously inconvenient." In the context of this suit it would indeed be chaotic. It violates Alabama's strong public policy against splitting claims.

3.   **Fourth Argument: UBS Has Waived the Forum Selection Provisions and Are Also Judicially Estopped from Raising Them Now.** As shown, *supra*, application of a choice of forum provision implicates a court's venue, not its jurisdiction. Ex Parte CTB, Inc., 782 So.2d at 190. Therefore, it can be waived. Ex Parte Children's Hospital of Alabama, 721 So. 2d 184, 191 n. 10 (Ala. 1998)("Of course, the right to challenge venue . . . may be waived"). As argued in our brief dated June 18, 2004, UBS waived the forum selection clause by arguing in Teachers' Retirement System v. Scrushy, 2004 WL 423122 (Del.Ch. Mar. 2004), a me-too action similar to Tucker, that the derivative case against UBS and all related matters should be tried in one forum, Alabama. Citing co-ordination orders of three courts, UBS argued:

> Moreover, this Court's August 28 Order expressly recognizes that the orderly administration of justice requires that the "non-buyback" *claims such as those raised against UBS should be litigated in the Tucker action.* . . . If this court were to allow this action to go forward as plaintiff requests, it would completely undermine the orderly and efficient administration of justice that this Court's August 28 Order and the order issued by Judge

10

> Bowdre sought to achieve, allowing duplicate actions to proceed in this court and the Alabama state court. [Emphasis added.]

UBS Reply Brief at 2, Dec. 22, 2003, Re Motion to Dismiss or Stay, Teachers'.[11]

The UBS argument in Teachers', based on judicial economy arising from trial in a single forum, and further based on the co-ordination orders of three courts, is clearly inconsistent with the one they are making here.[12] In Teachers', UBS won. UBS now argues that it did not waive anything, that "UBS merely advocated that the issues raised in this motion be adjudicated in a single forum, in order to avoid duplicative litigations." That is what we are advocating too, and there is no way to achieve judicial economy if an inextricably intertwined piece of this case sails off on a slow boat to New York. If UBS intended to move to bring its case to New York, it had a duty to tell the Court in Teachers' because it would have undercut the very argument UBS made, and prevailed on, in Teachers'. Failure to do so while arguing judicial economy is cynical and not praiseworthy. If the Teachers' Court had thought that its decision to follow the co-ordination orders in Tucker would result in fractionalizing the derivative cases and sending pieces of them to New York, then Teachers' might have been decided differently. UBS has waived the forum selection clauses and is judicially estopped from raising them here. *Ex Parte* First Alabama Bank, 2003 WL 22113920 (Ala. 2003).

---

[11] We previously submitted to this Court, in connection with UBS's present motion, the UBS Reply Brief in Teachers' quoted here.

[12] There is one consistency – wherever UBS is arguing, it wants to be someplace else.

Additionally, UBS consented to the co-ordination orders of this Court wherein it was decided, with all parties having the chance to object but without objection from any party, that in the interests of judicial economy all the derivative claims involving HealthSouth, save the "Buyback," would proceed in one action in this Court.

## II. TIME BAR ARGUMENTS

UBS's argues that Tucker's claims are time-barred, but we have dealt adequately with this issue in our brief filed June 18. Suffice it to say that –

(a)   The statutory period for claims based on fiduciary duty does not begin to run until the fiduciary relationship ends. <u>McCormick v. Amsouth Bank, N.A.</u>, 759 So. 2d 538, 541 (Ala. 1999); <u>Jefferson County Truck Growers Ass'm v. Tanner</u>, 341 So. 2d 485, 487-488 (Ala. 1977). This Alabama doctrine extends not only to corporate directors, but also to those in an analogous position of responsibility. <u>Murray v. Sevier</u>, 993 F.Supp. 1394 (M.D.Ala. 1997). Most of the individual defendant fiduciaries did not leave HealthSouth until the scandal broke in 2003, and Scrushy, whose fiduciary breaches UBS aided and abetted, is still on the board. UBS's involvement continued at least through August 7, 2002 when it signed a new engagement contract (Starnes Aff., Ex. 2), or more to the point, until that same month when it reduced its false and disingenuous "strong buy" rating on the stock to a "buy." <u>Compl.</u>, ¶86. The statute of limitations did not begin to run against Tucker's aiding and abetting or fiduciary duty claims before mid 2003.

(b)     While the existence of the tort or injury is knowingly concealed by the defendant, the statute of limitations does not begin to run. As we demonstrated in our brief filed on June 18, this rule does not apply only to fraud claims, but rather it applies to all tort claims a defendant fraudulently conceals, whether or not the original claim sounds in fraud. Here, it is obvious that the matter remained concealed by all its participants until public disclosures of the false accounting in March 2003. We submit that this matter is adequately covered by our brief on dismissal motions filed June 18, 2004 at 14-18, and it would be superfluous to dilate on it again.

### III.  SPECIFICITY ARGUMENTS

There is no non-frivolous argument that, under any standard, the Tucker complaint fails to make its allegations against UBS with sufficient specificity. The court in Teachers' found the Tucker complaint "a substantial, fact-laden document." 2004 WL 423122 at *9. No one can read the Tucker complaint without understanding the nature of the accounting fraud alleged (Compl., ¶¶29-48), or the breach of fiduciary duty alleged (Id., ¶¶29-48, 72-82, 118-122, 138-156) or the role of UBS in aiding and abetting it, participating in it, and suppressing it (Id., ¶¶21, 83-90, 133, 135, 164-172).

Under the oft-repeated rule, "dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that plaintiff can prove no set of facts entitling him to relief. Stated another way, if under a provable set of facts, under any cognizable theory of law, the complaint states a claim

upon which relief could be granted, the complaint should not be dismissed." Newson v. Protective Industrial Ins. Co., 2003 WL 22463336, *4 (Ala. 2003). Clearly, Tucker's complaint passes this test as to aiding and abetting the breach of fiduciary duty of another, as to direct fiduciary breaches, as to suppression, as to unjust enrichment, and as to breach of contract.

For a recent case wherein a claim alleging the Delaware tort of aiding and abetting a breach of fiduciary duty was asserted against a corporation's investment banker and financial advisor, and was upheld over a motion to dismiss, please see In re eBay S'holders Litig., 2004 WL 253521 *5 (Del.Ch.).

## IV. SUBMISSION OF DOCUMENTS CONVERTS UBS's MOTION TO A MOTION FOR SUMMARY JUDGMENT.

The Starnes Affidavit submits two documents besides those containing the forum selection clauses. Any consideration of such documents converts UBS's dismissal motion into a motion for summary judgment. Rule 12(b)(6), Ala.R.Civ.P. A motion for summary judgment should await merits discovery, which is stayed pending the Scrushy's criminal trial and the sentencing of the pleading defendants. For example, we will be entitled to discovery of not only all contracts between UBS and HealthSouth, but other documents as well.

*    *    *

We herewith provide copies of all decisions cited above, except Teachers, which we have previously provided to this Court.

Respectfully submitted,

Derivative Plaintiff Wade Tucker
For and on Behalf of HealthSouth Corporation
By One of His Attorneys,

John W. Haley, Esq.
Ralph D. Cook, Esq.
Bruce J. McKee, Esq.
HARE WYNN NEWTON & NEWELL
2025 Third Avenue
Birmingham, AL 35203
(205) 328-5330

*/s/ Frank P. DiPrima*                                   Date: October 29, 2004

Frank P. DiPrima
LAW OFFICE OF FRANK DiPRIMA
41 Constitution Way
Convent Station, NJ 07960
(973) 656-0251

| | |
|---|---|
| John Q. Somerville, Esq.<br>GALLOWAY & SOMERVILLE<br>11 Oak Street<br>Birmingham, AL 35213<br>(205) 871-2183 | Ronald A. Brown, Jr. Esq.<br>PRICKETT JONES & ELLIOTT, P.A.<br>1310 King Street<br>Wilmington, DE 19801<br>(302) 888-6500 |
| Edward F. Haber, Esq.<br>Thomas G. Shapiro, Esq.<br>SHAPIRO HABER & URMY LLP<br>75 State Street<br>Boston, MA 02109<br>(617) 439-3939 | Robert C. Schubert, Esq.<br>Juden Justice Reed, Esq.<br>SCHUBERT & REED, LLP<br>Two Embarcadero Center<br>San Francisco, CA 94111<br>(415) 788-4220 |
| David R. Scott, Esq.<br>Arthur L. Shingler III, Esq.<br>SCOTT+SCOTT LLC<br>401 B Street, Suite 1600<br>San Diego, CA 92101<br>(619) 744-4907 | Steven Gregory, Esq.<br>DICE & GREGORY, L.L.C.<br>2824 Seventh Street<br>Tuscaloosa, AL 35401<br>(205) 758-2824 |

## Certificate of Service

      I, Frank P. DiPrima, one of the attorneys for derivative plaintiff Wade Tucker, hereby certify that a true and exact copy of the foregoing letter brief, dated this day, has been served on this 29th day of October 2004, by electronic means to the attorneys listed on Appendix 3 (attached) to the e-mail addresses shown in the attachment, pursuant to the Order of the Court of May 27, 2004.

_Frank P. DiPrima_
Frank P. DiPrima

**Appendix 3:**
**All Counsel in *Tucker v. Scrushy***
**Pending Before The Honorable Allwin E. Horn III**

| Party | Name of Person to Serve | Email Address |
|---|---|---|
| Tucker, Wade | John Q. Somerville, Esq.<br>Ralph D. Cook, Esq.<br>John W. Haley, Esq.<br>Bruce J. McKee, Esq.<br>Steve P. Gregory, Esq.<br>Frank DiPrima, Esq.<br>Ronald A. Brown, Esq.<br>Edward F. Haber, Esq.<br>Robert C. Schubert, Esq.<br>Juden Justice Reed, Esq.<br>Arthur L. Shingler, Esq. | jqs@gallowaysomerville.com<br>ralph@hwnn.com<br>haley@hwnn.com<br>bruce@hwnn.com<br>sgregory@diceandgregory.com<br>diprimalaw@aol.com<br>rabrown@prickett.com<br>ehaber@shulaw.com<br>rschubert@schubert-reed.com<br>jreed@schubert-reed.com<br>ashingler@scott-scott.com |
| Peters, Tim | Eric J. Belfi, Esq. | ebelfi@murrayfrank.com |
| Scrushy, Richard M. | H. Lewis Gillis, Esq.<br>April D. Williams, Esq.<br>Donald V. Watkins, Esq.<br>Thomas V. Sjoblom, Esq.<br>Scott Balber, Esq.<br>Thomas J. Hall, Esq. | hlgillis@tmgpc.com<br>adwilliams@tmgpc.com<br>donaldvwatkinspc@aol.com<br>tsjoblom@chadbourne.com<br>sbalber@chadbourne.com<br>thall@chadbourne.com |
| Scrushy, Gerald P. | Tom E. Ellis, Esq. | teelaw@teelaw.com |
| MedCenterDirect.com | MedCenterDirect.Com, Inc., *pro se*<br>3500 Peachtree Road, Suite 1610<br>Atlanta, GA  30326 | |
| Source Medical Solutions, Inc. | James C. Huckaby Jr., Esq.<br>John W. Scott Esq. | jch@hsdpc.com<br>jws@hsdpc.com |
| Capstone Capital Corporation | James L. Goyer, Esq.<br>Alan F. Enslen, Esq. | jgoyer@mcglaw.com<br>aenslen@mcglaw.com |
| G G Enterprises | G G Enterprises, *pro se*<br>c/o Gary Gussing<br>865 Woodmere Creek Loop<br>Birmingham, AL  35226 | |

**Appendix 3 Continued**

| | | |
|---|---|---|
| HealthSouth Corporation | J. Michael Rediker, Esq.<br>Thomas L. Krebs, Esq.<br>Michael K.K. Choy, Esq.<br>F. Lane Finch Jr., Esq.<br>Patricia C. Diak, Esq.<br>Peyton D. Bibb, Esq.<br>Lisa M. Rios<br>David B. Anderson, Esq.<br>Julia Boaz Cooper, Esq.<br>Alan M. Warfield, Esq.<br>April S. Rogers, Esq.<br>Edward P. Welch, Esq.<br>Stephen Dargitz, Esq. | jmr@hsy.com<br>tlk@hsy.com<br>mkc@hsy.com<br>flf@hsy.com<br>pcd@hsy.com<br>pdb@hsy.com<br>lmr@hsy.com<br>danderson@walstonwells.com<br>jbcooper@walstonwells.com<br>awarfield@walstonwells.com<br>arogers@walstonwells.com<br>ewelch@skadden.com<br>sdargitz@skadden.com |
| Martin, Michael D. | John H. Cooper, Esq.<br>C. Lee Reeves, Esq.<br>Robert W. Fleishman, Esq. | jcooper@sirote.com<br>lreeves@sirote.com<br>rfleishman@steptoe.com |
| Givens, C. Sage<br>Strong, George H.<br>Newhall, Charles W. III<br>Chamberlin, John S.<br>Gordon, Joel C.<br>Striplin, Larry D. Jr. | J. Mark Hart, Esq.<br>Paul C. Gluckow, Esq.<br>Allison R. Kimmel, Esq. | jmh@hsy.com<br>pgluckow@stblaw.com<br>akimmel@stblaw.com |
| Owens, William T. | Frederick Helmsing, Esq.<br>Patrick C. Finnegan, Esq.<br>Carolyn B. Quinn<br>Joy Brewer | fgh@helmsinglaw.com<br>pcf@helmsinglaw.com<br>cbq@helmsinglaw.com<br>mjb@helmsinglaw.com |
| Watkins, Phillip C.<br>Foster, Patrick A.<br>Riviere, Daniel J.<br>Taylor, Larry D. | N. Lee Cooper, Esq.<br>James L. Goyer III, Esq.<br>Patrick Cooper, Esq.<br>Carl Burkhalter, Esq.<br>James R. Bussian, Esq.<br>Champ Lyons III, Esq.<br>Peter Q. Bassett, Esq.<br>Betsy Collins, Esq.<br>Susan Hurd, Esq. | lcooper@mcglaw.com<br>jgoyer@mcglaw.com<br>pcooper@mcglaw.com<br>cburkhalter@mcglaw.com<br>jbussian@mcglaw.com<br>champ@champlyons.com<br>pbassett@alston.com<br>bcollins@alston.com<br>shurd@alston.com |
| Smith, Weston L. | Charles A. Dauphin, Esq.<br>David McKnight, Esq. | cdauphin@bddmc.com<br>dmcknight@bddmc.com |
| Ernst & Young LLP | Henry Simpson, Esq.<br>Steven M. Farina, Esq.<br>Enu Mainigi, Esq. | henry.simpson@arlaw.com<br>sfarina@wc.com<br>emainigi@wc.com |
| UBS Warburg LLC<br>UBS Group<br>UBS Investment Bank | W. Stancil Starnes, Esq.<br>Jay M. Ezelle, Esq.<br>Robin H. Jones, Esq.<br>Robert J. Giuffra, Esq.<br>Thomas L. Leuba, Esq.<br>Julia M. Jordan, Esq. | sstarnes@starneslaw.com<br>jme@starneslaw.com<br>rhj@starneslaw.com<br>giuffrar@sullcrom.com<br>leubat@sullcrom.com<br>jordanjm@sullcrom.com |

**Appendix 3 Continued**

| Beam, Aaron Jr. | Mack B. Binion, Esq. | mbinion@briskman-binion.com |
| | Jeremy Hazelton, Esq. | jhazelton@briskman-binion.com |
| McVay, Malcolm E. | J. Don Foster, Esq. | jdf@jacksonfosterlaw.com |
| Harris, Emery W. | J. Stephen Salter, Esq. | umstakwit@aol.com |
| Livesay, Kenneth K. | Joseph A. Fawal, Esq. | jfawal@bellsouth.net |