TuckervHealthsouth11-10-04.txt

1

1                    IN THE CIRCUIT COURT FOR

2                    JEFFERSON COUNTY, ALABAMA

3

4    CIVIL ACTION NUMBER:

5    CV-02-5212

6

7    WADE TUCKER, et al.,

8         Plaintiff(s),

9    vs.

10   HEALTHSOUTH CORPORATION, et al.,

11        Defendant(s).

12

13              TRANSCRIPT OF PROCEEDINGS

14

15

16   DATE:      November 10, 2004

17   TIME:      1:45 p.m.

18   PLACE:     Birmingham, Alabama

19   BEFORE:    Hon. Allwin E. Horn, III

20

21

22

23   REPORTED BY:  Stephanie Burton

24

25

2

1                 A P P E A R A N C E S

2

```
                    TuckervHealthsouth11-10-04.txt
 3      FOR WADE TUCKER:
 4                    Frank P. DiPrima, Esq.
 5                    ATTORNEY AT LAW
 6                    41 Constitution Way
 7                    Convent Station, New Jersey 07960
 8
 9                    Ralph D. Cook, Esq.
10                    John W. Haley, Esq.
11                    HARE, WYNN, NEWELL AND NEWTON
12                    2025 Third Avenue North
13                    Suite 800
14                    Birmingham, Alabama 35203
15
16                    John Q. Somerville, Esq.
17                    GALLOWAY & SOMERVILLE
18                    11 Oak Street
19                    Birmingham, Alabama 35213
20
21      FOR UBS:
22                    W. Stancil Starnes, Esq.
23                    STARNES & ATCHISON
24                    100 Brookwood Place, 7th Floor
25                    Birmingham, Alabama 35209
                                                              3


 1                    A P P E A R A N C E S
 2                         (Cont'd)
 3
 4      FOR ERNST & YOUNG:
 5                    Henry Simpson
 6                    ADAMS and REESE
                              Page 2
```

TuckervHealthsouth11-10-04.txt

```
 7              2100 3rd Avenue North, Suite 1100
 8              Birmingham, Alabama 35203
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                    4


```
 1                   P R O C E E D I N G S
 2
 3              THE COURT:  I think we have all the
 4     interested parties present now with regard to the
 5     hearing of the motions to dismiss of two of the
 6     defendants, Ernst & Young and UBS.  I have
 7     previously ruled that the claims against
 8     Ernst & Young will go to arbitration, and I have
 9     ruled that the proper plaintiffs are the proper
10     plaintiffs to prosecute the case.  And I have
```
                              Page 3

TuckervHealthsouth11-10-04.txt

11    denied HealthSouth's motion to intervene, to file

12    an amended complaint and to take over and

13    prosecute the claim against E&Y.  Have I not done

14    all that?

15              MR. SIMPSON:  You did all that with

16    the exception of you cannot -- if it's

17    arbitrable, you can rule them versus HealthSouth,

18    you cannot decide who is to sit on anything the

19    plaintiffs vis-à-vis Ernst & Young.

20              THE COURT:  I'm not quite

21    understanding, Henry.

22              MR. SIMPSON:  Okay.  If a matter is

23    arbitrable and under Alabama law, this Court can

24    decide, is there an arbitration contract.

25              THE COURT:  Correct.

                                               5


1              MR. SIMPSON:  And does it affect

2    interstate commerce.  That ends your inquiry,

3    your jurisdiction.

4              THE COURT:  Don't I have to decide who

5    has the right to prosecute the claim?

6              MR. SIMPSON:  Well, you did decide

7    that with them, vis-à-vis HealthSouth.

8              THE COURT:  Correct.

9              MR. SIMPSON:  There were two competing

10    orders to compel arbitration, but all you can do

11    now is compel arbitration.  You can't decide --

12    For instance, you can't decide the claims are

13    barred by the statute of limitations or half of

14    them are barred.  You can't decide anything.

                        Page 4

TuckervHealthsouth11-10-04.txt

15    That's just the law.  And as I've told my friend

16    John Somerville, I don't think that's going to be

17    a big issue at arbitration.  But if the Court

18    were to overstep its authority, then, of course,

19    you have a question of mandamus, et cetera.  So

20    you just send it to arbitration.  Actually, it

21    has to go to mediation first.  That doesn't

22    involve Your Honor.  That's just a contract

23    between the parties.

24          MR. DIPRIMA:  Your Honor, that's

25    exactly the opposite of the position E&Y has

                                                    6


1    taken for about a year and a half in this case.

2    Ernst & Young has not only participated in Your

3    Honor's ruling on demand and on control of the

4    case, but indeed it urged Your Honor to rule on

5    these things, and Your Honor did indeed rule on

6    them.  So I assume there's going to be -- that's

7    one of the things we're going to be arguing about

8    today.

9          But I did want to -- Let me just quote

10    from Mr. Starnes' -- excuse me -- Mr. Simpson's

11    brief of July 16 on the demand and suppression

12    issues both.  "Thus as a threshold matter

13    concerning the arbitrability issue, this Court

14    must decide whether it is appropriate to allow

15    Mr. Tucker to proceed with the claims against

16    E&Y."

17          THE COURT:  I have done that.

18          MR. SIMPSON:  Then that's all you can

                          Page 5

TuckervHealthsouth11-10-04.txt

19    decide.  And from the -- what I asked for is that
20    you grant Ernst & Young's motion to compel
21    arbitration, either denominating HealthSouth as a
22    proper party, which you didn't do, or
23    specifically reserving to the arbitration panel
24    the issue of standing, which Alabama law says you
25    have to.  For instance, as I said in my letter --

                                                    7

1                THE COURT:  Maybe I'm not
2     understanding the context in which you're using
3     the word "standing."
4                MR. SIMPSON:  What they're trying to
5     get you to do is to say -- so they can say to the
6     arbitrators everything's been decided.  Tucker is
7     the appropriate person.  Suppose in discovery I
8     determine Tucker is not even a stockholder.
9     Then, obviously, you didn't mean to preclude me
10    from that.  All you have decided is that Tucker
11    can proceed without HealthSouth.  That's what you
12    have decided.
13               MR. HALEY:  It's HealthSouth
14    proceeding, not Tucker.  It's HealthSouth.
15               MR. SIMPSON:  But you said that these
16    guys can be the lawyers and not --
17               THE COURT:  Not HealthSouth.
18               MR. SIMPSON:  Not HealthSouth.  That's
19    all you can decide.
20               THE COURT:  Well, is there some issue
21    as to whether Tucker, in fact, was and is a
22    stockholder?
                        Page 6

TuckervHealthsouth11-10-04.txt

23          MR. SOMERVILLE:  No, sir.

24          MR. SIMPSON:  I have no idea, because

25    there's been no discovery.

                                                    8


1           MR. DIPRIMA:  Your Honor, that's the

2     first time I've ever heard that issue in this

3     case.

4           MR. SIMPSON:  Well, it's not proper to

5     raise it here.  That's what I'm saying.  That's

6     the import of the two cases which I have cited.

7     One of them says specifically the issue of

8     standing is for the arbitrators.

9           THE COURT:  You are raising the issue

10    of standing in the context of whether Tucker is a

11    stockholder, not whether he is the proper party

12    to pursue the claim.

13          MR. SIMPSON:  Suppose I found out in

14    discovery that he has a criminal record or that

15    his lawyers have been disbarred or something like

16    that.  Then, yes, that's something I can raise.

17    And I don't think that's going to come up, Judge.

18    I've known John Somerville.  He's been in jail,

19    but I don't think it was for a felony.  I don't

20    think it's going to come up, but all I'm saying

21    is that's for the arbitrator.

22          MR. SOMERVILLE:  Henry, that was my

23    brother that you're talking about.

24          Judge, here is the brief that he filed

25    in July.  And I have marked -- this is my

                                                    9

Page 7

TuckervHealthsouth11-10-04.txt

1    notes -- but I've marked the place where he asked
2    this Court to decide the threshold issue of
3    Tucker and whether Tucker can proceed with those
4    claims.
5                   MR. SIMPSON:  Tucker or HealthSouth.
6                   MR. DIPRIMA:  Your Honor, it's much
7    more extensive than that.  May I briefly state
8    the chronology of this whole thing, because what
9    Ernst & Young has done is willingly participate
10   in this motion for 15 or 18 months.  They lost
11   and now they're looking for another forum.  The
12   one thing -- one of the many things that's
13   characterized in this case as unique -- and I've
14   been at this for eleven decades now --
15                  THE COURT:  Here's where I'm --
16                  MR. STARNES:  Unless you're a hundred
17   years old.
18                  THE COURT:  -- sort of up in the air.
19   There's no evidence before me, nothing has been
20   presented that invalidates Tucker being a proper
21   party to pursue the --
22                  MR. SIMPSON:  Because it's not an
23   issue before you.  You have said that Tucker may
24   proceed vis-à-vis HealthSouth.
25                  THE COURT:  Correct.
                                                          10


1                   MR. SIMPSON:  As John Haley says.
2    That's all you can decide.  You can't say that
                        Page 8

TuckervHealthsouth11-10-04.txt

3    Tucker is an appropriate party.  That's for the

4    arbitrators.

5              MR. DIPRIMA:  That's not true, Your

6    Honor.  In every derivative case, the Court

7    decides the issue of standing.  The Court decides

8    the issues of the proper party to pursue a case.

9    The Court decides whether the counsel for the

10   derivative plaintiff is adequate to pursue it.

11   The point is --

12             MR. SIMPSON:  But he's cited you no

13   case that says that.

14             MR. DIPRIMA:  Please, sir, you'll get

15   your chance.

16             The point is this Court did decide it,

17   and E&Y sat by, participated, filed briefs on

18   these very issues, and the Court did decide.

19   It's not a question -- if Mr. Simpson had come

20   along in March of last year when we first filed

21   the Second Amended Complaint and said, look, Your

22   Honor, all these issues including demand, Rule

23   23.1, appropriate party to prosecute the case,

24   all these issues should be decided by the

25   arbitrator, then Your Honor might or might not

                                             11


1    have a substantial issue before him.  But the

2    point is that E&Y let you decide them, encouraged

3    you to decide them.  They participated in that

4    process, and Your Honor did decide them.

5              As far back as May of '03, two months

6    after we filed the Second Amended Complaint, they

TuckervHealthsouth11-10-04.txt

```
 7    filed a motion to dismiss.  They stated in the
 8    motion to dismiss at page 5, paragraph 17 that we
 9    have, "failed to comply with Rule 23.1 of the
10    Alabama Rules of Civil Procedure by failing to
11    make a demand."  All right.  Then some time went
12    by.  We engaged in various motion practice.
13    There was heavy briefing on the demand issue
14    beginning in March.  In March, the plaintiffs
15    wrote a motion to expedite the demand issue.
16    Ernst & Young didn't even file a response to that
17    motion.  Your Honor essentially granted that
18    motion by your May 10th order, which required
19    briefing on the demand issue.  So then we filed
20    another brief on the substance of the demand
21    issue.  Ernst & Young filed a letter with Your
22    Honor, promising to provide a brief by July 16th,
23    because that was the day for briefing on the
24    issue of substitution.  All right.  So that went
25    by.  They did file a brief.  What did that brief
```

12

```
 1    say?  The brief said, as John Somerville pointed
 2    out, that the Court must decide if Tucker is the
 3    proper party.  It encouraged the Court to decide
 4    the demands issue.  It encouraged the Court to
 5    decide the suppression issue.  We must know, said
 6    Ernst & Young, who the party against us was.
 7            Then, at the end of that, the morning
 8    session on July 16th, extensive oral arguments
 9    three hours in length, Ernst and Young got up
10    through Mr. Simpson and said, you know, we'd like
```

Page 10

TuckervHealthsouth11-10-04.txt

11    another chance to argue about that.  Your Honor's
12    order of July 29th said, okay, I decide demand
13    against -- in favor of the plaintiff.  Demand is
14    excused as to all parties including Ernst & Young
15    and UBS.  Demand is excused as to --
16                   THE COURT:  I didn't --
17                   MR. DIPRIMA:  Yes, you did, Your
18    Honor.
19                   THE COURT:   -- by order decide against
20    E&Y and UBS.  I reserved their right to brief
21    that issue.
22                   MR. DIPRIMA:  Yes, sir, Your Honor.
23    But if I may, the order stated that they may
24    brief it in the nature of reargument with
25    non-redundant information and that they must do

                                                      13


1    so in connection to the motions -- in connection
2    with the schedules on the motions to dismiss.
3    Guess what?  Those schedules have come and gone
4    and we're here to argue the motions to dismiss.
5    So the order of the 29th which applied to all
6    defendants, all claims and, incidentally, found
7    that ten of the Directors who were by far the
8    majority of the board on every relevant day, were
9    either independence impaired or not
10   disinterested.
11                   THE COURT:  Let me try to shortcut
12   this.  I don't consider, based upon my litany of
13   reasoning that I cited in the July 24 hearing --
14   Was that when it was?

TuckervHealthsouth11-10-04.txt
```
15                MR. DIPRIMA:  26th, sir.
16                THE COURT:  Whatever it was -- that
17     demand futility excusal, or whatever you want to
18     call it, is really the issue.
19                MR. SIMPSON:  It's --
20                THE COURT:  In my mind it's not an
21     issue.  Maybe it is in y'all's minds.
22                MR. SIMPSON:  Judge, I would think
23     you'd probably grant my motion to dismiss on the
24     statute of limitations, but you don't reach that.
25     That's my point.
```
                                                    14


```
 1                THE COURT:  Do either one of you
 2     intend to argue the issue of demand?
 3                MR. STARNES:  I do, because you
 4     expressly accepted that as to UBS at the hearing.
 5                THE COURT:  I'm saying --
 6                MR. STARNES:  You said you weren't
 7     going to consider that issue as to UBS in July.
 8     We didn't argue it.  We put it forward to today.
 9     And indeed, you couldn't have considered it at
10     that time because you considered nothing about
11     UBS.  As to certain defendants, you have
12     considered that issue.  But it is a separate
13     determination as to UBS to be decided without
14     regard as to any other defendant.
15                MR. SIMPSON:  And if the Court -- I
16     mean, my motion to dismiss was a motion to compel
17     arbitration or, in the alternative, to dismiss.
18     I mean, there's no -- and I have not -- in that
```
                              Page 12

TuckervHealthsouth11-10-04.txt

19    three-hour hearing, I didn't open my mouth

20    because it was not an issue until you reached the

21    issue of arbitrability.  At that time,

22    HealthSouth maintained they had the right to come

23    in.  In fact, they also contested in one pleading

24    the arbitrability issue at least on part of the

25    years.  Now, that's gone away.  You ruled that

15

1    Tucker could proceed to arbitration.  Then all

2    you should and, respectfully, can do is to grant

3    the motion compelling arbitration.  You know,

4    they can cite your ruling.  They can cite the

5    same evidence if that becomes an issue at

6    arbitration.  I don't know whether it's going to

7    become an issue at arbitration.  They haven't

8    filed a complaint.

9             THE COURT:  All right.  Let's do it

10    this way.  Let's first entertain the argument

11    about demand futility, demand excusal from

12    Ernst & Young and UBS, and the plaintiff's will

13    respond.  Then we will go into the issue of the

14    contracts selection clause.  You have already

15    submitted proposed orders with regard to

16    arbitration, and the plaintiffs have submitted a

17    proposed order.  Now then, I'll ask if any one of

18    you want to submit an additional proposed order.

19    If not, then I'll make a decision about that.

20             All right.  With that, who wants to go

21    first?  Mr. Starnes.

22             MR. SIMPSON:  Let me -- I've already

Page 13

TuckervHealthsouth11-10-04.txt
23    made my argument.  This is an issue for the

24    arbitrator.

25              THE COURT:  Okay.

                                        16


1              MR. STARNES:  Your Honor, on behalf of

2    UBS, there are a number of elements of the motion

3    to dismiss filed by UBS to be argued today.  But

4    for the moment, I'll confine --

5              THE COURT:  I've read your letters and

6    your brief.

7              MR. STARNES:  I'll confine my initial

8    remarks to the demand futility issue and consider

9    the other aspects of the motion to dismiss later

10    in the hearing.  With respect to demand futility,

11    there's one date and one date of the utmost

12    significance to Your Honor.  That date is August

13    8, 2003.  It was on that date that UBS was first

14    added as a defendant in this case.  And it is as

15    of that date, August 8, 2003, that Your Honor

16    must decide whether the plaintiffs have complied

17    with Rule 23.1 of the Alabama Rules of Civil

18    Procedure in instituting this action on that date

19    against UBS without making demands on

20    HealthSouth.  Now, that's a question you have

21    never answered as to any other defendant in this

22    case because, as to all the other defendants, you

23    were dealing with an earlier date in time.  But

24    as to UBS, the date is August 8, 2003, a date

25    that is vastly different in many respects than

                                        17


                    Page 14

TuckervHealthsouth11-10-04.txt

1    the date you had under consideration with respect
2    to the other defendants.
3            Alabama Rule of Civil Procedure 23.1
4    requires that, as to UBS, the plaintiffs make the
5    particularized pleading as to why demand was not
6    made.  The language of the rule says the
7    complaint shall also allege with particularity
8    the efforts, if any, made by the plaintiff to
9    obtain the action the plaintiff desires from the
10   Directors or comparable authority and, if
11   necessary, from the shareholders or members and
12   the reason for the plaintiff's failure to obtain
13   the action or for not making the effort.  Now
14   where in this complaint as to UBS on August 8,
15   2003 is there a particularized statement as to
16   why that effort was not made?  There is not one
17   anywhere in the complaint, and demand was not
18   excused of that date.  And, in fact, if you go
19   further, you'll see that demand would not have
20   been futile, and there's ample evidence of that.
21           First of all, the plaintiff relies and
22   says, well, HealthSouth has taken a position of
23   neutrality with respect to demand.  But if you
24   look at the position HealthSouth has taken,
25   unlike the cases the plaintiff cites to you,

                                              18


1    HealthSouth says it was neutral as of the date
2    this case was initiated, long before August 8,
3    2003.  Yet we know as a matter of fact in this

TuckervHealthsouth11-10-04.txt

4      case and as a matter of record in this case that

5      HealthSouth has specifically stated that it is

6      prepared to pursue the action against UBS and was

7      as of that date, because much happened between

8      the time of the initiation of the first complaint

9      in this case that did not involve UBS and August

10     8, 2003, which changed the structure of

11     HealthSouth and the decision-making process of

12     HealthSouth.  And while the demand might have

13     been futile as to the other defendants when the

14     complaint was initiated against them, that is no

15     basis for concluding that demand would have been

16     futile at the time this case was instituted

17     against UBS on August 8, 2003.

18              Indeed, since April of 2003, a number

19     of months before the filing of this complaint

20     against UBS, decision making at HealthSouth was

21     done by the Special Committee of which Mr.

22     Scrushy was not a member, did not participate and

23     could not have influenced the claims. HealthSouth

24     in the pleadings and on the record before this

25     Court -- and there is nothing in the complaint to

                                                      19


1      refute this -- HealthSouth says it has a

2      disinterested, independent Board capable of

3      making these decisions.  That is the state of the

4      record in this case, and there is nothing in the

5      complaint of the plaintiff to contradict that.

6      And indeed, the plaintiff HealthSouth has offered

7      to the Court to pursue the very claims that are

TuckervHealthsouth11-10-04.txt

8      at issue here.  So where, given that context, is

9      this particularized pleading as why on August 8,

10     2003, demand would have been futile?  It does not

11     exist.

12             The plaintiff seeks to lump all the

13     defendants together, those in the original

14     complaint and those added by amendment years

15     later, and say we have shown you demand will be

16     futile.  That's not what Rule 23.1 requires.

17     That's not what the law of Alabama requires.

18     That's not what the law of Delaware requires.

19     You have to distinguish between each transaction

20     and a necessity between each defendant.  When you

21     do that, you come to different decisions

22     altogether.

23             THE COURT:  Without going back and

24     looking through my notes, it's my recollection

25     that when the complaint adding UBS was filed,

                                                    20


1      there were eleven members of the board, seven of

2      whom were defendants in the case and two of those

3      seven hadn't even been found impaired as a matter

4      of law by Judge Strine.  That was the Board

5      makeup, as my recollection.

6             MR. STARNES:  I don't recall that

7      Strine made a specific finding they were impaired

8      as to UBS.  He may have made a finding that they

9      were impaired as to HealthSouth commencing an

10     action against Officers and Directors.

11             THE COURT:  when was the date of
                          Page 17

TuckervHealthsouth11-10-04.txt

12    Strine's decision in the Biondi case?

13              MR. DIPRIMA:  January 16th, 2003.

14              THE COURT:  All right.

15              MR. STARNES:  UBS wasn't even a

16    defendant in that case at that time.

17              THE COURT:  Do what, now?

18              MR. STARNES:  UBS was not a defendant

19    in the Biondi case, and he couldn't have made a

20    decision as to UBS.

21              THE COURT:  When did HealthSouth file

22    its answer?  In May of 2004; is that correct?

23    May the 28th?

24              MR. DIPRIMA:  Yes, Your Honor.

25              THE COURT:  Go ahead, Stan.

                                              21


1              MR. STARNES:  August 2003 is when UBS

2    was added.  All of this illustrates the

3    extraordinary importance of distinguishing very

4    carefully among transactions because you reach

5    entirely different results.  HealthSouth has

6    said -- and there's nothing in the record to

7    contradict this.

8              THE COURT:  Would the manner in which

9    all of these claims, transactions, occurrences

10    are alleged to be intertwined with each other, if

11    two had been found to have been impaired as a

12    matter of law at one time, how did they relieve

13    themselves of that status a year down the road?

14              MR. STARNES:  First of all, there's

15    never been any finding by any judge that they

TuckervHealthsouth11-10-04.txt

16    were impaired as to making the decision as to

17    whether HealthSouth should prosecute a claim

18    against UBS.  That's the decision before Your

19    Honor this morning.  There could well be some

20    sort of impairment or reticence on the part of

21    the Director to prosecute a claim against the

22    Officers of the company or the Directors of the

23    company, but you can't conclude or presume that

24    the impairment carries over as to a third party

25    such as UBS.  So there's never been any

                                                    22


1     determination that would be applicable to UBS in

2     that regard.

3                 THE COURT:  How do you get around the

4     May 28 answer?

5                 MR. STARNES:  Because the May 28 --

6     about the neutrality?

7                 THE COURT:  Yes.

8                 MR. STARNES:  Because that says at the

9     time the case was initiated, long before UBS was

10    added, their demand futility issue at that point

11    in time.  But HealthSouth in that same record

12    says that there was an independent Board.

13                THE COURT:  At the time the answer was

14    filed, the complaint had been amended through the

15    Fourth amendment, and there have been no

16    subsequent amendments.

17                MR. STARNES:  But if you look at what

18    they say in that answer, HealthSouth says in that

19    answer that the neutrality position they express

TuckervHealthsouth11-10-04.txt

20    is applied to the excusal of demand "prior to the
21    initiation of this action."  So they are taking a
22    neutral position as to whether the demand would
23    have been futile back all those years ago.  But
24    they also say that all of the decisions made
25    subsequent to April 2003 by the Special Committee

                                                    23


1    were being made by a disinterested and
2    independent body as to which Scrushy and nobody
3    else had any cause.  That's all months before UBS
4    was added in this case.  The fact you and I are
5    having this discussion illustrates that there is
6    no particularized pleading before Your Honor
7    excusing demand as to UBS.  There ought to be a
8    place in this complaint where you can go and
9    where the plaintiff says to you that, as of the
10   date UBS was added, August 8, 2003, demand would
11   have been futile because of these particularized
12   reasons.  Particularized as to UBS, not as to
13   anybody else.  That's not in this complaint.  And
14   indeed, it can't be in the complaint because the
15   record illustrates that, for months, HealthSouth
16   decision making had been invested an independent
17   group who were not the hold into these people.
18            But it's not my burden to prove to you
19   that demand would be futile.  The burden is on
20   the plaintiff to comply with Rule 23.1, and they
21   simply take a pass on it.  There's no effort in
22   here with respect to UBS to provide Your Honor
23   with a particularized sort of statement.  This is
                          Page 20

TuckervHealthsouth11-10-04.txt

24    a threshold question.  This litigation cannot and
25    should not be permitted to continue for another

                                                        24


1    hour until they provide that to Your Honor and
2    they haven't.  And for that reason and that
3    reason alone, the complaint is due to be
4    dismissed.  Indeed, if we go into the allegations
5    of the complaint and you assume for a moment that
6    those are somehow particularized as to UBS, we
7    see that they haven't shown the absence of a
8    disinterested, independent Board.
9              Take what they say about Director
10    Strong, for example.  They say he was on the
11    Audit Committee.  They want to say that fact
12    somehow would make him reluctant to proceed
13    against UBS.  I would suggest to Your Honor that
14    if that fact raises any presumption, it raises
15    the opposite presumption, that somebody on the
16    Audit Committee has a self-interest in going
17    after the alleged wrongdoing by a third party if,
18    in fact, there's been any such wrongdoing.  They
19    don't relate that to UBS in the least.  There is
20    not a word uttered in that complaint that says
21    Strong was not independent insofar as UBS was
22    concerned because of this, somehow related to
23    UBS.  It's not there.  It's not there as to any
24    Director.  They seek just to say because they
25    were on the Board, because they were on the Audit
                                                        25

TuckervHealthsouth11-10-04.txt

```
 1   Committee, because there was a threat of maybe
 2   some insider trading action against them, all of
 3   which may go as to why they were not independent
 4   as the Officers and Directors.  But it doesn't
 5   tell Your Honor a thing with respect to their
 6   claim against UBS.
 7            You're simply being asked to take a
 8   leap of faith that, because they have convinced
 9   you back when the original complaint was filed
10   demand would have been futile, that it still
11   would have been futile all those years later in
12   August of 2003 when everything had changed at
13   HealthSouth.  And, in fact, the record before
14   Your Honor indicates just the contrary, just the
15   contrary.  And they have not made a
16   particularized showing that's required as to each
17   one of those Directors to indicate the majority
18   was something other than independent.  It simply
19   does not exist.
20            Gordon, for example, another Director,
21   they want to say Gordon was not disinterested
22   insofar as UBS is concerned.  Gordon is on the
23   Board now and has authorized HealthSouth to
24   proceed against UBS.
25            THE COURT:  Is he one of the six that
                                                      26


 1   are going to resign as a result of the Teachers'
 2   settlement?
 3            MR. STARNES:  I have no idea.  The
```

Page 22

TuckervHealthsouth11-10-04.txt

4    only thing I know is he's on the Board and

5    authorized HealthSouth to proceed against UBS,

6    but yet, they ask you to find that he never would

7    have authorized that in August of 2003.  How can

8    you conclude that?  Where is there some

9    particularized statement that affords you that

10   opportunity?  The point of all this, Judge, is

11   they want you simply not to look at UBS

12   separately from everybody else, but the law

13   requires that you look at it separately from

14   everybody else.  Where is the particularized

15   statement as to UBS that, in August of 2003, when

16   this case was first instituted against UBS, that

17   demand would have been futile?  You can't find it

18   anywhere in those plethora of pages in this

19   complaint.  It doesn't exist.  If one looks at it

20   in an intellectually honest fashion, it is simply

21   not there as to UBS.  And for that reason, 23.1

22   hasn't been complied with, and this motion to

23   dismiss is due to be granted.

24              THE COURT:  Henry.

25              MR. SIMPSON:  Again, Judge, I'm simply

                                                    27


1    saying the issue is for the arbitrator under

2    Alabama law and federal law, and that it must go

3    to the arbitrators.

4              THE COURT:  All right.  Frank.

5              MR. DIPRIMA:  Yes, Your Honor.  Mr.

6    Starnes makes two or three points that I think

7    are factually wrong.  One is he seeks to

                        Page 23

TuckervHealthsouth11-10-04.txt

8    distinguish the date of the Third Amended

9    Complaint, which indeed is when we first named

10   UBS from the earlier dates.  As we demonstrated

11   in our brief filed on June 17th or 18th on the

12   demand issue, the Board as of August 8th, 2003,

13   when we filed that Third Amended Complaint, was

14   ten members:  Scrushy, Owens, Gordon, Strong,

15   Striplin, Chamberlin, Newhall, Givens, Hanson and

16   May.  This Court found in its order of July 29

17   that as a separate and independent reason that's

18   independent of the Caplan case, which I'm going

19   to get to in a minute, for the said denial with

20   prejudice that's of all of the defendants'

21   motions to dismiss based on demand, the Tucker

22   amended complaints adequately plead that the

23   following directors were independence impaired

24   and/or not disinterested:  Director Scrushy,

25   Owens, Striplin, Gordon, Chamberlin, Newhall,

                                               28


1    Givens, Watkins, May and Hanson, the same ten

2    people.

3              If our complaint pleads anything

4    vis-à-vis the defendants in this case, it pleads

5    that there was a single conspiracy, a single

6    breach of fiduciary duty aiding and abetting in

7    the case of UBS to falsely account for

8    HealthSouth's financial results.  We certainly do

9    plead in paragraph 87 of our complaint that UBS

10   knew that the accounting materially overstated

11   HealthSouth's financial health.  We plead with

                        Page 24

TuckervHealthsouth11-10-04.txt
12    great specificity that UBS knew, was part of the
13    end game of that conspiracy which was to boost
14    the stock.  We plead with specificity that their
15    top analyst KPEC was touting the stock on one
16    hand and trashing it in private in e-mails to his
17    friends and other investment bankers on the other
18    hand.  The point is that UBS was a joint
19    tortfeasor with Scrushy and the others.
20          We haven't amended this complaint, as
21    you noted, Your Honor.  We haven't amended it
22    every time the evidentiary facts change.  We
23    don't think we have to.  We didn't amend it to
24    plead the meeting at the lake between Martin and
25    UBS officials involving Scrushy.  We don't think

29

1    we need to.  We think there's plenty of
2    specificity in this complaint.  But the point is
3    that these Directors, these same ten Directors
4    that Your Honor already ruled were either
5    independence impaired or not disinterested or
6    both as regard all the other torts in this
7    complaint, as to all claims and all defendants.
8    How they can rule independently on a demand to
9    sue UBS is beyond me.  I don't think there's any
10   way they can.
11          Let's put it another way.  You go to
12   the Board and you say, we demand you sue UBS
13   based on this set of facts, based on these torts,
14   based on this conspiracy.  A decision to sue UBS
15   by eight of these ten people who are defendants

TuckervHealthsouth11-10-04.txt

16    in this case, everybody but May and Hanson, a

17    decision to sue UBS brings each one of them one

18    step closer to liability, because they're being

19    accused of the same tort as UBS is being accused

20    of.

21              Next, as far as the Caplan case is

22    concerned, there's no question that the Caplan

23    case precludes this suit.  Mr. Starnes says, no,

24    it's different because the neutrality that the

25    corporation pled only relates to the initial

                                                    30


1    complaint.  Well, that's absolutely incorrect.

2    In the preface to the complaint -- rather, to the

3    answer -- the Corporation states the following.

4    This is at page three of HealthSouth's

5    corporation's answer.  "In answering the

6    complaint" -- and this a quote -- "In answering

7    the complaint, unless otherwise indicated herein,

8    HealthSouth has assumed that any reference to its

9    Board of Directors refers to HealthSouth Board of

10    Directors as it was then constituted as of April

11    8th" -- I'm sorry.  I misspoke -- "as it was then

12    constituted as of August 8th, 2003."  Then

13    sixteen times in this, including the provisions

14    that specifically refer to UBS, what does the

15    Corporation say?  They said we're neutral.

16              THE COURT:  What are you reading from?

17              MR. DIPRIMA:  I'm sorry, Your Honor.

18    I'm talking too fast.  I'm reading from the

19    Corporation's pleading dated May 28th, 2004, the

                        Page 26

TuckervHealthsouth11-10-04.txt
20    same pleading in which --

21              THE COURT:  They filed in this case?

22              MR. DIPRIMA:  They filed in this case.

23              MR. SOMERVILLE:  That is the answer.

24              MR. DIPRIMA:  It's their answer and

25    it's the same --

                                                  31


1               THE COURT:  Let me see that, because I

2    was looking for that and I don't have it.  I

3    don't know the exact language.

4               MR. DIPRIMA:  May I, Your Honor?

5               THE COURT:  Please.

6               MR. DIPRIMA:  I'm sorry.  It's printed

7    on both sides of the page so I don't have to

8    carry too much stuff.

9               THE COURT:  When was the Fourth

10   Amended Pleading filed?

11              MR. DIPRIMA:  The Fourth Amended

12   Pleading --

13              THE COURT:  In March of '04?

14              MR. DIPRIMA:  March of '04, Your

15   Honor, before this.

16              THE COURT:  But that did not add

17   either UBS or Ernst & Young?

18              MR. SOMERVILLE:  That's right.

19              MR. DIPRIMA:  It extended the basis

20   for damages against UBS and E&Y.

21              THE COURT:  Okay.  Where is the

22   particular answer where they stress they remain

23   neutral?

                    Page 27

TuckervHealthsouth11-10-04.txt
24                MR. DIPRIMA:  It occurs in at least
25      sixteen places.  I'd have to scramble, but it's

                                                            32


1       in --
2                 THE COURT:  Further HealthSouth
3       admits -- I'm reading from page 43, subparagraph
4       F, the last sentence.  "Further, HealthSouth
5       admits that it will remain neutral on the issue
6       of whether the demand was futile as of August 8,
7       2003 and not filed a motion to dismiss pursuant
8       to Alabama Rule 23.1."  I assume that is
9       referencing a specific claim in the case.
10                MR. DIPRIMA:  They do it again and
11      again, Your Honor, in connection with the demand
12      excusal provisions of the -- They do it for
13      specific demand excusal allegations, and then
14      they do at the end, at the very end of the answer
15      or in summary as to those.  I can help you on
16      that if I had another copy.
17                THE COURT:  Okay.  Thank you.  I
18      appreciate it.
19                MR. DIPRIMA:  But there's no doubt
20      that the statements of neutrality apply to every
21      demand excusal allegation in every claim in the
22      complaint.  And if I'm wrong about that, I'm sure
23      Ms. Cooper will correct me.
24                MR. STARNES:  Would you like for me to
25      correct you as opposed to Ms. Cooper?

                                                            33


                          Page 28

TuckervHealthsouth11-10-04.txt

```
1                MR. DIPRIMA:  The very last numbered
2      allegation in the answer, Your Honor.
3      HealthSouth lacks knowledge or information
4      sufficient to form a belief, blah, blah.  Except
5      that HealthSouth admits that it will remain
6      neutral on the issue of whether demand was futile
7      as of August 8th, 2003 and not file a motion to
8      dismiss pursuant to Alabama Rule 23.1.  Now, that
9      was about the sixteenth or seventeenth time in
10     the complaint that they declared neutrality,
11     including as paragraphs where we specifically
12     allege against -- I'm not done --
13               MR. STARNES:  I thought you sat down.
14               MR. DIPRIMA:  -- against UBS.
15               THE COURT:  Did I not read some
16     Delaware cases that maybe one or both of you
17     submitted that held such an answer was applicable
18     not only to the Officers and Directors of the
19     company, but was also applicable to third parties
20     to which claims have been filed?
21               MR. DIPRIMA:  Absolutely, Your Honor.
22     The leading case that makes this black letter
23     law, neutrality means demand -- corporation
24     neutrality means demand is excused.  That case
25     did not -- That case is encaptioned Caplan versus
                                                        34


1      Pete Morwick.
2                THE COURT:  There's cases -- I don't
3      remember them all.
4                MR. DIPRIMA:  I'm sorry.  In Caplan, a
```
                              Page 29

TuckervHealthsouth11-10-04.txt

```
 5    derivative action was defended against by Pete
 6    Morwick, the company's accounting firm, saying
 7    lack of demand.  The plaintiff said, you have no
 8    standing to raise the demand issue.  Only the
 9    corporation has standing.  And the plaintiffs won
10    on the lower level.  On appeal, the Delaware --
11              THE COURT:  So it is Delaware law, as
12    I understand it, that third parties against whom
13    claims are asserted can raise the demand of
14    futility.
15              MR. DIPRIMA:  They can raise it.  But
16    as far as the corporation pleads neutrality --
17    and I see Ms. Cooper is in the unaccustomed
18    position of agreeing with me on some things.  As
19    soon as they declare neutrality, that's the end
20    of it as a matter of law.
21              THE COURT:  In other words, third
22    parties can enjoy the benefit of demand, but they
23    are bound by the acts of the Board of Directors.
24              MR. DIPRIMA:  Exactly.  And once they
25    declare neutrality, that's it.  And that was a
                                                      35


 1    case -- That case, the motion was brought by the
 2    third party; namely, the company's accounting
 3    firm.
 4              THE COURT:  All right.
 5              MR. DIPRIMA:  Now, just one final
 6    point.  I have two responses to Mr. Starnes'
 7    comment that, by August 8th, 2003, the company
 8    was being run by a Special Committee.  I have
```
                    Page 30

TuckervHealthsouth11-10-04.txt

9    seen that allegation before and I've heard it
10   argued about the last time we were arguing about
11   demand.  The two answers to that are, one, it's
12   irrelevant under Delaware law.  There's a very
13   clear-cut way of calculating it.  There must be a
14   majority that can act independently.  If there
15   are ten, impairing five is enough to excuse
16   demand.  There's no exception for Special
17   Committees in Delaware law.  I think we're here
18   to apply Delaware law, and I think everybody's
19   conceded that.
20          The second thing is who was on that
21   Special Committee.  Guess what?  It was everybody
22   but Scrushy.  It was a committee of the Board
23   comprising the entire Board except Scrushy.  I
24   don't even get to whether or not that's properly
25   constituted.  I don't know.  I don't know enough

                                              36


1    facts.  But that means that the people that you
2    have already held to be independence impaired are
3    not disinterested had not only majority, but a
4    unanimous one on that Special Committee that
5    they're relying on.
6           And finally, I want to make one other
7    point, and that is what -- I believe that there's
8    a disagreement between Mr. Starnes and me about
9    what this Court already ordered.  There may not
10   be -- If you agree with me on substance, it may
11   not be relevant.  But this Court ordered that the
12   Corporation's pleading of neutrality on the
                    Page 31

TuckervHealthsouth11-10-04.txt

13    demand issue, demand is excused as a matter of

14    law as to all defendants herein, one of the

15    principles of Caplan v. Pete Morwick.  All

16    defendants here includes UBS and Ernst & Young.

17    There's a reservation that I'll get to.  Then the

18    Court held or Your Honor held, "As a separate and

19    independent reason for said denial with

20    prejudice, Tucker's amended complaints adequately

21    plead that the following Directors were

22    independence impaired and/or not disinterested,"

23    and it names the ten of them.  "And thus, demand

24    is excused as to all claims pled to date against

25    all defendants."  And that's all these claims to

                                                     37


1    which we allege UBS is a joint tortfeasor.

2           Then Your Honor goes on and says,

3    "Notwithstanding the above, under a schedule to

4    be set by this Court for consideration of motions

5    to dismiss, defendants E&Y and UBS and only those

6    defendants will be given the opportunity to

7    submit non-redundant briefs in the nature of

8    reargument."  In other words, tell me something

9    new.  I continue to quote, "On issue of demand,

10   covering those arguments that they have not

11   already made in submissions," et cetera, "UBS and

12   E&Y's new briefs, if any, in response to this

13   item four shall been submitted in connection with

14   the motion to dismiss on other issues with a

15   schedule to be set by this Court."  And except

16   for those letters, there have been no such

TuckervHealthsouth11-10-04.txt

17    submissions.  So I submit to Your Honor
18    respectfully that Your Honor has already decided
19    the motion to -- the demand motion as against E&Y
20    and UBS subject only to your acceptance of briefs
21    in the nature of reargument, if they have
22    something new to say.  I haven't heard anything
23    new today, Your Honor.  Thank you.
24            THE COURT:  Okay.
25            MR. SIMPSON:  Just briefly on the E&Y

                                        38


1    argument.  What happened, what was at a pose here
2    was HealthSouth's position, one, agreeing --
3    finally agreeing that all the claims were
4    arbitrable and then filing its complaint against
5    E&Y.
6            THE COURT:  Let me ask a question.  My
7    practice in all of these contested matters is to
8    have a hearing and then either request the
9    parties to submit proposed orders or, if I have
10    made a ruling, request the parties to send me an
11    agreed upon order.  That's been my practice in
12    this case.  I announced my rulings, as I recall,
13    at the conclusion of the July 26 hearing, did I
14    not?  I think it's a matter of record that I
15    announced by ruling.  My recollection is, without
16    going back and reading that transcript, I asked
17    the parties to send me an agreed upon order
18    consistent with my rulings on the record.  Did I
19    not do that?
20            MR. SOMERVILLE:  Your Honor, as I
                     Page 33

TuckervHealthsouth11-10-04.txt

21     recall, we submitted one order and the other side
22     submitted another order.  That's my recollection
23     with respect to your ruling on that demand issue.
24                    THE COURT:  Demand futility?
25                    MR. SOMERVILLE:  Yes, sir.  I don't

                                                    39


1     think we tried to agree upon an order with the
2     other side.
3                    MR. STARNES:  And we never submitted
4     anything, because that wasn't part of it.  On
5     that day --
6                    THE COURT:  All right, all right.
7                    MR. STARNES:  On that day, you said
8     you were going to hear --
9                    THE COURT:  I just wanted y'all to
10     refresh my recollection about that, because I
11     didn't actually remember.  It's on the record.  I
12     know that.
13                    MR. STARNES:  Neither Henry nor I
14     submitted anything, and we didn't take place in
15     the argument that morning.  I've got the
16     transcript.
17                    THE COURT:  I think the plaintiff
18     concedes that, that y'all did not participate in
19     sending the order that I entered.
20                    MR. SOMERVILLE:  We sent a copy of it
21     to them, and I believe that -- I could be
22     mistaken about this, but I believe that Henry
23     wrote a letter to Your Honor about that proposed
24     order, but I could be mistaken about that.  We

TuckervHealthsouth11-10-04.txt

25     sent it to them and gave them full opportunity to

40

1     submit something themselves.

2                     MR. DIPRIMA:  Your Honor, I believe --

3                     MR. STARNES:  Excuse me.  You accepted

4     from what you were hearing that morning the

5     motions to dismiss of UBS and E&Y.  One reason

6     you accepted that is because you had before you

7     the HealthSouth motion for realignment in which

8     HealthSouth --

9                     THE COURT:  That was argued that

10    afternoon.

11                    MR. STARNES:  It was argued that

12    afternoon after that motion was argued, in which

13    you said -- in which HealthSouth said they wanted

14    to prosecute the claims against UBS.  We said

15    that morning that it made no sense for you to

16    consider UBS's motion, because if you granted the

17    realignment motion, the demand futility would

18    have a totally different cast than it otherwise

19    had.  That's why Henry and I didn't come back

20    that afternoon, or at least I didn't, because we

21    agreed to set the motions to dismiss for E&Y and

22    UBS over to a later date.  And you accepted the

23    motion to dismiss in the order you entered.

24                    THE COURT:  All of this is in the

25    transcript.

41

TuckervHealthsouth11-10-04.txt
```
 1              MR. STARNES:  Yes, sir.  If you go
 2     through that entire transcript --
 3              THE COURT:  I have it.
 4              MR. STARNES:  In all of the arguments
 5     that the plaintiff presented to you that morning
 6     and the other defendants, UBS wasn't an issue.
 7     E&Y wasn't an issue that morning.  The demand
 8     futility was based on the demand futility at the
 9     time the original complaint was filed, because
10     those were the defendants making the arguments
11     before you that morning.  I mean, this is sort
12     of -- Frankly, I don't believe anybody other than
13     Mr. DiParma -- and maybe I'm wrong.
14              MR. DIPRIMA:  DiPrima, sir.
15              MR. STARNES:  I'm sorry.  Mr.
16     DiPrima thought that UBS motions for dismiss were
17     being argued that morning.  I certainly didn't.
18     Henry certainly didn't.  We were here and we
19     never argued.  The reason we didn't argue is
20     because the HealthSouth motion to realign could
21     have changed everything, and you weren't going to
22     decide that until the afternoon.
23              THE COURT:  I had to go back and read
24     all that material before.
25              MR. STARNES:  That's right.
                                                    42



 1              THE COURT:  Okay.  I'm ready to move
 2     on, then.
 3              MR. STARNES:  Let me just respond
 4     briefly to the points that Mr. DiPrima made.
```
                          Page 36

TuckervHealthsouth11-10-04.txt

 5    First of all, he said it was beyond him how
 6    anybody could find that demand would have been
 7    anything other than futile.  Well, it may be
 8    beyond Mr. DiPrima, but that's not the test under
 9    the rule.  The test under the rule is you don't
10    come in and say it's beyond me as to how it could
11    be anything but futile.  You have to as to this
12    defendant plead particularized facts as to why it
13    would have been futile.  And you have to make
14    that particularized pleading directly as to UBS
15    as of the date they were added, which was a much
16    later date, August of 2003.  The Caplan case that
17    they cite is very different from this case.  That
18    was a case in which the Corporation came in and
19    filed a position --
20              THE COURT:  What I got out of that
21    case when I read it, which was some months ago,
22    was that a filing of neutrality by the corporate
23    defendant was binding upon the issue of demand as
24    to Officers and Directors and any third party
25    defendants.

                                                    43


 1              MR. STARNES:  It was in that case
 2    because it was specifically filed; that is, the
 3    position of neutrality was specifically filed as
 4    to the motion to dismiss which had been filed by
 5    the third parity.
 6              THE COURT:  But in their answer filed
 7    in this case, they specifically state that they
 8    are taking the position of neutrality as of as

                         Page 37

TuckervHealthsouth11-10-04.txt
9    late as August 8, 2003, which was the time that
10   the amendment was filed adding both UBS and E&Y.
11            MR. STARNES:  They do not say at any
12   point that they're taking a position of
13   neutrality as to the motion to dismiss filed by
14   UBS, which is what was the case in Caplan.  So
15   that distinguishes Caplan in its entirety.  And
16   at the time HealthSouth filed that answer that
17   you're talking about in this case, there were
18   still claims pending against HealthSouth Officers
19   and Directors, not the situation in Caplan, and
20   there were claims pending and HealthSouth itself
21   was a defendant.  So the neutrality issue
22   HealthSouth was expressing then is totally
23   different.  And nowhere that I recall does UBS
24   say at any point that they're taking a position
25   on neutrality with respect to a demand against

                                                44


1    UBS.
2            And indeed, if you look at what else
3    HealthSouth filed, you see that in the
4    realignment motion, they say, quote -- this is
5    HealthSouth -- "It is beyond question that a
6    clear majority of the current Board and the
7    Special Committee through which the Board has
8    operated since April 2003 is independent and
9    disinterested with respect to the prosecution of
10   the claims against E&Y and UBS".  Now, how can
11   you be expected to ignore that, because that
12   clearly -- that statement by HealthSouth clearly

                    Page 38

TuckervHealthsouth11-10-04.txt
13    informs the Court as to what their position on
14    demand neutrality was.  And what I think it was
15    is what HealthSouth said it was in that same
16    motion where they said HealthSouth took a neutral
17    position as to whether demand on the company's --
18              THE COURT:  What specific motion are
19    you referring to?
20              MR. STARNES:  Their realignment
21    motion, where they came in and said, let us
22    prosecute the claims.
23              THE COURT:  I'm referring to the
24    answer.
25              MR. STARNES:  Right.  And if you look
                                                   45


 1    at the answer when you say they're neutral, I
 2    don't recall anywhere in that answer where it
 3    says, we're neutral on the question of demand
 4    futility insofar as UBS is concerned.
 5              THE COURT:  It didn't by any
 6    defendants.
 7              MR. STARNES:  That's right.  And they
 8    were themselves a defendant at that point in
 9    time.  There were claims being made against
10    Officers and Directors of HealthSouth at that
11    point in time.
12              THE COURT:  I understand the
13    arguments.  I believe I understand the arguments
14    that the parties are making on demand.  Frankly,
15    I'm really ready to move on to something else.
16              MR. DIPRIMA:  May I just add one
                        Page 39

TuckervHealthsouth11-10-04.txt

17    thing?  I do want to add one more thing, John.

18    Excuse me.  That is I think Mr. Starnes misstated

19    one very crucial fact, and that is time and time

20    again in our demand futility allegations that

21    begin on paragraph 130 of the complaint and

22    continue through paragraph 137 --

23              THE COURT:  Hold on a minute.  137?

24              MR. DIPRIMA:  130 to 137 are our

25    demand futility allegations, Your Honor.

                                                    46


1              THE COURT:  I don't have my notes

2     about those paragraphs.

3              MR. DIPRIMA:  May I just read it?  In

4     paragraph 133, which is kind of a long paragraph,

5     "Any independence impairment pled herein excuses

6     demand as relates to the claims against E&Y and

7     the UBS parties and fictitious defendants as

8     their alleged conduct is inextricably interwoven

9     with or at least closely related with Scrushy and

10    Director defendants," et cetera.  "The finding

11    that E&Y is liable or that UBS and fictitious

12    defendants W through Z are liable based on the

13    facts alleged herein would make it more likely

14    that Scrushy and the Director defendants would be

15    held liable."  We say this about six or eight

16    times in that series of paragraphs.  What does

17    the Company say?  Paragraph 133, we're neutral.

18    So they say it again and again.  Only if one

19    doesn't read this complaint could he buy into Mr.

20    Starnes' argument that we failed to plead

TuckervHealthsouth11-10-04.txt
21    specifically demand as to UBS.

22                THE COURT:  Okay.

23                MR. STARNES:  One brief point on that.

24    That eviscerates the rule, because all that means

25    is you come in and say the conduct of one

47

1    defendant is inextricably linked with the conduct

2    of another as to who demand is excused and,

3    therefore, it's excused as to that.  That was to

4    take the rule and ruling it null.  It's

5    meaningless.

6                THE COURT:  We could spend the rest of

7    the year going back and forth.  Let's move on to

8    greener pastures.  All right.  We've got your

9    argument with regard to the forum selection

10    clause.

11                MR. STARNES:  That's one of them.  We

12    have got fraud arguments.  I mean, there's a

13    whole host of different things, and we'll go

14    through them however Your Honor wants to.

15                THE COURT:  I'd like to address the

16    forum selection clause first, then we will get to

17    the others together.  At the time of the last

18    hearing, I don't believe I had read the various

19    Alabama Supreme Court decisions, and I don't know

20    that the eBay decision was out, the eBay decision

21    in Delaware was out.  Maybe it was, but I don't

22    remember y'all giving it to me.

23                MR. DIPRIMA:  If we didn't, it was an

24    oversight for which I apologize.  I thought it

Page 41

TuckervHealthsouth11-10-04.txt
25    was in the packet of decisions that we did give

48

1    you.

2                THE COURT:  As I understand it, the

3    decisions issued written by Woodall -- and did

4    Harwood write another one that dealt with -- and

5    these are my words -- the claims being so

6    intertwined such that if you split the cases and

7    sent one up to New York and one stayed here, you

8    would have unfairness to both parties.  You would

9    have lack of judicial economy, and those are all

10    factors which the Trial Court should take into

11    consideration in determining whether to send part

12    of the case to another court under the forum

13    selection clause.  Have I misstated that?

14                MR. STARNES:  I think you've stated it

15    right.  I think you have to -- Clearly, none of

16    that applies in this case because the plaintiff

17    and E&Y have agreed that those claims are due to

18    go off to arbitration to another forum.

19                THE COURT:  But you're asserting the

20    contract claims against you are due to go to New

21    York?

22                MR. STARNES:  To another forum.

23    That's right.  That's exactly right.  And the

24    plaintiff has agreed that the E&Y claims are due

25    to go off to another forum, and those are at

49

1    least as inextricably --

TuckervHealthsouth11-10-04.txt

2               THE COURT:  That's arbitration.

3    That's not a forum selection clause.

4               MR. STARNES:  It's not a forum

5    selection clause, but it's a different forum

6    altogether.  You're taking one set of claims in

7    this case and sending them off somewhere else.

8               THE COURT:  But arbitration is lost.

9               MR. STARNES:  So it's a forum

10   selection clause.

11              THE COURT:  That's an agreement

12   between the parties.

13              MR. STARNES:  You had two mature

14   corporations say if there's going to be a breach

15   of contract case, it's going to be in New York.

16              THE COURT:  The only issue I'm

17   addressing, that issue relates to UBS and not

18   E&Y.

19              MR. STARNES:  That's right.  The only

20   point I'm making is when the plaintiff says that

21   we're happy with these arbitration provisions to

22   be enforced and this set of claims will go off

23   somewhere else --

24              THE COURT:  If I, as the Court,

25   determine as a matter of law that those claims

                                              50


1    are arbitrable, the plaintiff can object all he

2    wants to.

3               MR. STARNES:  Sure.

4               THE COURT:  But I make that

5    determination as a matter of law.
                     Page 43

TuckervHealthsouth11-10-04.txt

6           MR. STARNES:  That's right.

7           THE COURT:  Plaintiff has no

8     discretion in that matter.

9           MR. STARNES:  That is true.  As I

10    understand it here, the plaintiff agreed the

11    arbitration clause applied, didn't ask you to

12    rule.

13          THE COURT:  I think the parties agreed

14    that it was subject.

15          MR. HALEY:  I mean, we didn't like it,

16    but that's what the contract says.

17          MR. STARNES:  Sure.  And the contract

18    also says it's forum selection clause.  The

19    arbitration clause doesn't have any higher

20    meaning than the forum selection clause.

21          THE COURT:  Address to me, Stan, how

22    it would not be unfair and it would not be

23    contrary to judicial economy in the interest of

24    the parties to send the contract claim to New

25    York and keep the rest of them here, if that's

                                               51


1     what I decided.

2           MR. STARNES:  It would not be unfair

3     for one simple reason.  You had two sophisticated

4     people in the marketplace, two very, very large

5     concerns that when they sat down to tailor their

6     relationship, they said and agreed, if there is a

7     breach of contract claim, it will be decided in

8     New York.  For that simple reason alone, the

9     Court should enforce it.  The parties agreed to

                        Page 44

TuckervHealthsouth11-10-04.txt

10      it.  This isn't a case where you've got a
11      consumer and a huge corporation imposing the will
12      of the latter on the forum.  This is a case in
13      which two sophisticated commercial entities said,
14      this is our deal, we know what we're doing.  They
15      agreed to it.
16              The question, I think, is why should
17      you undo their deal.  They knew when they entered
18      this agreement that there might be related claims
19      that perhaps weren't covered by the forum
20      selection clause.  But knowing that, they still
21      entered it.  Why is it unfair to hold two
22      sophisticated commercial entities to the bargain
23      they paid for and agreed to?  Because if you say
24      that I'm not going to enforce a forum selection
25      clause among sophisticated people under these

                                            52


1       circumstances, then that renders them all
2       unenforceable, because the person wanting to
3       avoid the forum selection clause will simply put
4       some other claim in or some other defendant in
5       and say they're inextricably linked, let's move
6       on.  So it's just a back-door nullification of
7       forum selection clauses.  There may be some
8       reasoning to do that if you have people of
9       disparate bargaining positions.  But there is no
10      reason to do that when you've got two
11      sophisticated commercial entities that go into
12      the marketplace and say, here is our deal.
13              THE COURT:  Suppose I decide that the
                    Page 45

TuckervHealthsouth11-10-04.txt

14          tort claims asserted against UBS are not due to
15          be dismissed at this time, but then I decide to
16          send the contract claim against UBS up to New
17          York.  Why would that not be unfair to UBS to
18          require them to litigate the same factual
19          circumstances in two separate forums?
20                    MR. STARNES:  Because it's what they
21          agreed to do.  You know, they're big guys.  They
22          understand what they're doing.  You can't --
23          Judge, you can't come in after the fact behind
24          every contract when you're talking about
25          commercial entities that are big sophisticated

                                                          53


1           entities and say is this fair or unfair.  It's
2           what they agreed to do.  The contracts are
3           enforceable.  There's nothing against public
4           policy, and the Supreme Court has specifically
5           said they're enforceable.  And if you accept the
6           interpretation that's being urged on you, you are
7           nullifying the contracts.  What is the harm --
8                     THE COURT:  I'm just reading Woodall's
9           case and the other cases.  That's all I'm doing.
10                    MR. STARNES:  Right.  What I'm saying
11          is you didn't have two sophisticated entities
12          like you do here.  What I'm saying is if you
13          could get around the forum selection clause by
14          simply joining other defendants or claims that
15          allegedly weren't covered by the clause and
16          saying they're inextricably linked, which
17          everybody always would, then you're nullifying

TuckervHealthsouth11-10-04.txt

18    the clause.  Tell me what is wrong with letting

19    two commercial entities bargain with each other

20    and, when they reach an agreement, as everybody

21    admits they reached, saying I'm going to leave

22    you where you find it.

23            THE COURT:  I'm sure Frank is going to

24    answer that.

25            MR. STARNES:  What is wrong with

                                              54


1    saying to these two entities, I'm going to leave

2    you to the deal you made.  You bargained for it,

3    you made it, stick with it.  People proceed in a

4    different forum all the time with the same

5    claims.  Maybe it's not fair.  Maybe it's not

6    efficient.  But it's what they agreed to do.

7    Frankly, I think the Court has lots of reasons,

8    because in circumstances like this where you've

9    got sophisticated entities, so leave them exactly

10    where you find them.  They made this deal.  Now

11    they need to keep their word and not seek to have

12    you undo it because of alleged unfairness.  There

13    are other parts of that I can address, but I'm

14    just answering your questions.

15            MR. DIPRIMA:  Your Honor, to begin

16    with, this Court has the broadest discretion

17    permissible under the Constitution to decide

18    whether or not to enforce this forum selection

19    clause.  Based on cases we've cited, it's a

20    matter of venue, not of jurisdiction.  Matters of

21    venue in the Daimler Chrysler case, which we also

                            Page 47

TuckervHealthsouth11-10-04.txt

22    cited, are appealable only under a writ of
23    mandamus, and the standard then is, is it
24    arbitrary and capricious.  So you have the
25    broadest discretion, Your Honor, conceivable

55

1    under the Constitution.
2         Next, the question is, does it make
3    sense to enforce this forum selection clause,
4    given the fact that you have that kind of
5    discretion.
6         THE COURT:  Why should it not be
7    binding upon you because you're the derivative
8    plaintiff rather than HealthSouth?  Why should it
9    not be binding upon you?
10        MR. DIPRIMA:  I don't argue it's not.
11   I think that if Ms. Cooper were bringing this
12   claim, I'd be making the same arguments.  The
13   sophisticated commercial entities, that didn't
14   apply into the Galaxy decision.  It may be that
15   there was disparate power.  But the Galaxy
16   decision that we cited and relied on in our brief
17   is not a case of unconscionability.  It's not a
18   case of a contract of adhesion or anything of the
19   kind.  That case went off on one very simple
20   principle, that the facts were -- and it's a
21   phrase that's used again and again in the case --
22   inextricably intertwined.  Had the forum
23   selection clause been enforced in Galaxy Mall,
24   part of the case would have gone to Utah and part
25   of the case would have gone to Massachusetts.
              Page 48

TuckervHealthsouth11-10-04.txt

56

```
 1    And some of the fact finding that was --
 2              THE COURT:  Let me interrupt you and
 3    let me address this question to both of you.  I
 4    read in, I think, Stan's letter and affidavits
 5    that you filed, you assert a forum selection
 6    clause in a 2002 contract, and then Frank takes
 7    issue and says it was August of 2000.  I'm not
 8    sure I understand all that.  But am I correct in
 9    understanding that the first document executed by
10    UBS and HealthSouth which does, in fact, contain
11    a forum selection clause is a 2002 document?
12              MR. DIPRIMA:  May of 2002, Your Honor.
13              THE COURT:  Am I correct about that?
14              MR. STARNES:  Here's the answer to
15    that.  I don't know and here's why I don't know.
16    The plaintiff never has told us what contract
17    HealthSouth alleges we breached.  That's nowhere
18    in this complaint.
19              THE COURT:  Well, in the complaint,
20    they are alleging actions that go back to 1998.
21              MR. STARNES:  Right.  But they never
22    allege -- they have never said the contract that
23    we breached.  I put in that first affidavit this
24    is an exemplar of the types of contracts that
25    HealthSouth and UBS entered.  This one's got the
```

57

```
 1    forum selection clause.  In none of their papers
```

Page 49

TuckervHealthsouth11-10-04.txt
2  do they say that the earlier contracts don't have
3  forum selection clauses.
4            THE COURT:  I understand that.
5            MR. STARNES:  But I can't tell you
6  that I can give you copies of the contracts that
7  they are alleging that are a breach here because
8  I don't know which ones they're alleging were
9  breached.  But my understanding is --
10            THE COURT:  Is that a point that
11  should be significant to me?
12            MR. STARNES:  I don't think so.
13            THE COURT:  As the Court?
14            MR. STARNES:  I don't think so.  Even
15  if you go back to the earlier contracts, I've not
16  heard them deny that those contracts contain
17  forum selection clauses.
18            MR. DIPRIMA:  Well, that's a little
19  unfair.  We're going to find out in discovery,
20  Stan, what those forums -- what contracts there
21  were and what forum selection clauses there were.
22  Mr. Starnes can't stand here and tell you to send
23  some claims up to New York based on contracts
24  that he hasn't produced.
25            THE COURT:  In my mind, if the
                                           58


1  earliest contract that contains such a clause is
2  in 2002, that impacts how all these issues are
3  intertwined with each other.
4            MR. STARNES:  Well, then I think that
5  the only way in fairness to answer that is for us

TuckervHealthsouth11-10-04.txt
```
 6    to get all the contracts.  We don't have them,
 7    and I gather they don't have them.
 8              MR. DIPRIMA:  This is a motion to
 9    dismiss.
10              MR. STARNES:  I understand.  But your
11    obligation in the complaint is to tell me what
12    contract I breached and you don't do that.  So I
13    went and got the clause that was in a contract
14    that I could get my hands on that was executed
15    and has this clause is it.  I am told that they
16    all have it in it, but I can't represent that to
17    the Court because I don't know.  But the
18    plaintiff has come forward and said, you breached
19    the contract, but they didn't say which one we
20    breached.  And if they think there's a contract
21    that doesn't have a forum selection clause that
22    we breached, they ought to allege that.  They
23    don't.
24              THE COURT:  All right.  Go ahead,
25    Frank.
```
                                                 59


```
 1              MR. DIPRIMA:  Your Honor, that's all
 2    the more reason for discovery.  I understand that
 3    discovery for the time being is on hold.  The
 4    nature of our contract claims in this action,
 5    which I grant you were secondary, to the breach
 6    of fiduciary duty, aiding and abetting the breach
 7    of fiduciary duty and suppression of claims.  The
 8    contract claims are of lesser order in centrality
 9    and magnitude.  There were a lot of contracts.
```
                          Page 51

TuckervHealthsouth11-10-04.txt

10    They represented HealthSouth.  They are always
11    engagement letters.  To the extent they were --
12    that Mr. Starnes' clients were paid big fees for
13    all this misfeasance and all this aiding and
14    abetting financial fraud, they ought to pay those
15    fees back.  Now, do I know the dates of those
16    contracts?  No.  Do the public statements of
17    HealthSouth say what the dates were?  No.
18              Mr. Starnes was good enough to provide
19    a couple of them, but they're both based on 2002.
20    I don't think Mr. Starnes can stand here and ask
21    you to dismiss or ship up to New York claims
22    against other contracts that he didn't provide
23    with his dismissal motion.
24              THE COURT:  Okay.
25              MR. STARNES:  He still hasn't answered
                                                    60


1    the question.  Why is it unfair to these
2    commercial entities to require them to abide by
3    the agreement?  Mr. DiPrima did not answer that
4    question.  The reason he didn't answer the
5    question is because he knows, as we all know,
6    that in the real world, companies like this ought
7    to be held to what they agreed to and not have
8    you come in after the fact and try to extricate
9    themselves from what they agreed to.  But the
10    real reason is that if you permit anybody that
11    comes up here that has two sophisticated
12    commercial entities that have entered a forum
13    selection clause and they can nullify that clause
                          Page 52

TuckervHealthsouth11-10-04.txt

14    by adding other defendants or other claims, then

15    you might as well just say they're not any good.

16    They're against public policy.  That will be the

17    course of every time they brought it up.

18              THE COURT:  Let me -- This may not be

19    a pertinent question at this stage.  How many

20    direct players up at UBS are involved in this?

21              MR. STARNES:  Individuals?

22              THE COURT:  Yes.

23              MR. STARNES:  I don't have a clue.

24              THE COURT:  Okay.  All right.

25    Anything else, Frank, on that issue?

                                                    61


1              MR. DIPRIMA:  Only that this Court is

2    going to have a big trial involving the

3    accounting fraud, involving the end game of the

4    accounting claim.

5              THE COURT:  I hope y'all are going to

6    come to your senses.  Go ahead.

7              MR. DIPRIMA:  Sorry, Your Honor.  But

8    this Court is going to have a big trial involving

9    all of the issues, and UBS is going to be central

10   to those issues.  If it turns out there was no

11   accounting fraud -- Let's take an extreme

12   example.  If it turns out there was none and

13   we're totally wrong about that, they're going to

14   want to take advantage of that.  UBS is not going

15   to be liable if there was no accounting fraud at

16   all.  The conspiracy we allege, the civil

17   conspiracy we allege, the aiding and abetting we

Page 53

TuckervHealthsouth11-10-04.txt

18    allege wherein UBS knew, which we allege in

19    paragraph 87 of our complaint, knew the

20    financials overstated the financial fraud.  These

21    very same issues that are critical here are going

22    to be critical in the contract case if there's a

23    separate contract case.

24              The elements of aiding and abetting,

25    which a Delaware tort and this Court, I submit,

                                                    62


1    will be applying Delaware law, the first element

2    of that is was there a breach of fiduciary duty

3    by the named fiduciary; namely, the Directors and

4    Officers.  There's going to be a big trial on

5    that.  Why have two trials, one here and one in

6    New York?  No one could have foreseen when these

7    contracts were entered into -- and by the way,

8    drafted by UBS, as we allege in our papers -- no

9    one could have foreseen a case of this size and

10   this magnitude.  Furthermore --

11              THE COURT:  I tell you, what Stan is

12   arguing is the tort claims versus the D & O's may

13   not be an issue in New York under the breach of

14   contract claim.

15              MR. DIPRIMA:  Oh, I think they will.

16              THE COURT:  Why?

17              MR. DIPRIMA:  Why?  Because I think

18   the basis on the breach of contract claim is as

19   we allege in the complaint, that UBS did not

20   faithfully uphold its contractual duty to provide

21   fair investment banking services to the

                        Page 54

TuckervHealthsouth11-10-04.txt
22    Corporation.  And therefore, they ought to pay
23    all the fees back.  We allege that both in our
24    contract and our unjust enrichment counts.  So
25    it's really all part of the very same intertwined

63

1    factual basis.  And whether Mr. Starnes agrees
2    with it or not, Galaxy Mall is the law of the
3    jurisdiction.  Galaxy Mall holds that where the
4    enforcement of a forum selection clause results
5    in --
6                THE COURT:  Is that Woodall or
7    Hardwood's case?
8                MR. STARNES:  Woodall.
9                MR. DIPRIMA:  Results in splitting
10    causes of action, then it's not enforced.  Then
11    it's unreasonable and not enforced.  Galaxy Mall
12    holds that where the complaint is not a
13    subterfuge to avoid a forum selection clause and,
14    in this context, is not enforced.  And it holds
15    that where it violates the strong public policy,
16    it's not enforced.  And here, there's a strong
17    public policy in the State of Alabama against
18    splitting causes of action.  Galaxy Mall simply
19    controls this case as far as forum selection is
20    concerned.
21                MR. STARNES:  First of all, Galaxy
22    Mall has not been released for publication,
23    whatever impact that has on Your Honor.
24                THE COURT:  It used to be that that
25    would be a valid point and I should not consider

Page 55

TuckervHealthsouth11-10-04.txt

64

1    it as good law.
2              MR. STARNES:  I don't say that.
3              THE COURT:  That rule has been
4    changed.
5              MR. STARNES:  But it hasn't been
6    released for publication and is still within the
7    breast of the Court.  Let's assume it has been
8    released for publication and let's assume it is
9    good law, and I don't suggest to you that you
10   should consider anything other than good law.
11   What it says was, in order for these things that
12   he's talking about, splitting the cause of
13   actions, the inextricable linking of the claims,
14   in order for that to cause you not to enforce the
15   forum selection clause, you would have to
16   conclude in the words of the Supreme Court -- and
17   I'm quoting but for the use of the parties' names
18   in this case -- that a trial in New York would be
19   so gravely difficult and inconvenient as to
20   deprive HealthSouth of its day in court.  Now,
21   nobody can suggest to you that's the case.  And
22   the Supreme Court said only if that's the case do
23   these things like splitting causes of action and
24   inextricable linking should that apply.  You've
25   got to find that a trial in New York would be so

65

1    gravely difficult and inconvenient as to deprive
2    HealthSouth of its day in court.  This trial

TuckervHealthsouth11-10-04.txt

```
3     would be about, I think, 30 miles from Mr.
4     DiPrima's office in New York.
5                THE COURT:  All right.  We've got some
6     other issues.  We've got the motion to dismiss,
7     Stan, that you wanted to argue.
8                MR. STARNES:  Yes, sir.
9                THE COURT:  Okay.
10               MR. STARNES:  I'll just take these by
11    discrete claims, that way it will be easy for us
12    to deal with, if that suits Your Honor as well.
13    I mentioned to you earlier the plaintiffs
14    perceive license to ignore Rule 23.1 of the
15    Alabama Rules, and that's not the only rules they
16    perceive license to ignore.  They've ignored Rule
17    9 as well.
18               THE COURT:  The statute of
19    limitations.
20               MR. STARNES:  Stating a fraud claim
21    against a defendant, you have to -- in the words
22    of the Rule -- with specificity allege the fraud.
23    The Supreme Court has said over and over and over
24    again that means time, who did it, who said what,
25    who omitted what, what the contents of the
```

66

```
1     representation were or the omission were, what
2     were the facts of the fraud, date, time, place,
3     who, where and when.
4                THE COURT:  But that really becomes
5     relevant, does it not, only if at this stage of
6     the game a determination is made that they knew
```

Page 57

TuckervHealthsouth11-10-04.txt

7    or should have known of the alleged wrongdoing

8    between HealthSouth and UBS.

9              MR. STARNES:  No.  There's a fraud

10    claim.  There's a straight up fraud claim against

11    UBS.  If I have misread the complaint about there

12    being a fraud claim, I'll sit down.  But I

13    perceive in that complaint there's a straight up

14    fraud claim against UBS.

15              THE COURT:  I read the complaint as

16    asserting four years of activity.  That's the way

17    I read the complaint.

18              MR. STARNES:  I'll just ask the

19    plaintiffs.  Does the plaintiff make a claim for

20    fraud against UBS in this case?

21              MR. DIPRIMA:  Fraud is more than

22    enough to support a claim of aiding and abetting,

23    but it is not necessary to support a claim of

24    aiding and abetting.

25              MR. STARNES:  I read the complaint as

                                                    67


1    stating a fraud claim.  If there is a fraud claim

2    and if they intend to pursue fraud, intend to

3    pursue discovery of fraud, then they have to

4    allege it with specificity who, when, what,

5    where.  They didn't do it anywhere in the

6    complaint.  They don't allege the specific facts.

7    The same thing is true with their suppression

8    claim.

9              THE COURT:  In Frank's brief of

10    October 29, he says there are five basic claims

TuckervHealthsouth11-10-04.txt

11    alleged against UBS -- aided and abetted breaches

12    of fiduciary duty by HealthSouth D & O's, that

13    UBS owed a fiduciary duty and breached same, tort

14    of suppression, unjust enrichment and UBS

15    breached its contracts.  Now, that's in the

16    brief.

17            MR. STARNES:  And the motion to

18    dismiss, of course, is directed to the various

19    separate and several counts of the complaint.

20    There is a count, Count 11.  I'm looking now at

21    the August 8 complaint to which the motion was

22    filed.  There's a complaint in Count 11 for

23    intentional reckless and innocent

24    misrepresentation and suppression.  That's Count

25    11.

                                              68


1            THE COURT:  Is that specifically

2    against UBS?

3            MR. STARNES:  It says defendants

4    including Director defendants, individual

5    defendants, fictitious defendants as well as E&Y

6    and UBS are liable to HealthSouth based upon

7    intentional reckless and/or innocent

8    misrepresentation and suppression of material

9    facts.  I'm quoting from the complaint.  That's a

10    fraud count.

11            THE COURT:  All right.

12            MR. STARNES:  Now, for that count to

13    stand under Rule 9, they have to say who, what,

14    when and where.  What was the misrepresentation?

TuckervHealthsouth11-10-04.txt

15    What was the fact suppressed?  They have to with
16    respect to the suppression plead with specificity
17    that details the relationship that gives rise to
18    the duty to speak.
19                THE COURT:  Do you deny that you have
20    a fiduciary duty to HealthSouth?
21                MR. STARNES:  Absolutely deny it.
22                THE COURT:  Does the plaintiff
23    contend --
24                MR. SOMERVILLE:  Yes.
25                MR. DIPRIMA:  Yes, we contend.

                                                      69


1                THE COURT:  I want to hear on what
2     basis.
3                MR. DIPRIMA:  We contend that we do
4     plead with specificity UBS attended Board
5     meetings.  They had a special relationship.
6                THE COURT:  I'm not really interested
7     in the minutia about the specifics of the
8     allegations.  I want to hear about the fiduciary
9     duty claim.
10                MR. DIPRIMA:  We plead that -- Well,
11    do you mean separate and apart from the aiding
12    and abetting?
13                THE COURT:  Right.
14                MR. DIPRIMA:  Yes, we do plead that
15    because of the special relationship that UBS had
16    with --
17                THE COURT:  What is the special
18    relationship?  You've got an investment banker
                        Page 60

TuckervHealthsouth11-10-04.txt

19    with a client.
20              MR. DIPRIMA:  You have an investment
21    banker with a client, but with a very close tie
22    to the Board of Directors that attended Board
23    meetings.  They advised the Board on a very close
24    basis.  They had in their possession a lot of
25    intimate financial information about the company.

70

1               THE COURT:  Do you really think that's
2    a good claim?
3               MR. DIPRIMA:  I think it's a good
4    claim, Your Honor.
5               MR. SOMERVILLE:  Judge, we have
6    documents that were produced, a conference by UBS
7    talking about the special relationship that they
8    have enjoyed for years.  We have those documents
9    where Scrushy is trying to exert pressure on UBS
10    to make special loans.  We know from earlier that
11    UBS was involved in strategic planning of the
12    corporation in the Fall -- Summer and Fall of
13    2002 relating to going private and things like
14    that.  We know from previously that Mr. Scrushy
15    had a special relationship with Ben Lauriello
16    that was an underlying factor at Med Partners and
17    at HealthSouth.  This was not the routine
18    run-of-the-mill investment banking relationship.
19    We will be able to show that, we think, with the
20    discovery that we will get in this case.  We have
21    some stuff already there.
22              MR. DIPRIMA:  But what we pled is that
                        Page 61

TuckervHealthsouth11-10-04.txt

23    they obtained secret information and attended

24    Board meetings.  That's in paragraph 21.

25              THE COURT:  Right.  That's in the

                                              71


1    complaint.

2              MR. STARNES:  That doesn't make you a

3    fiduciary.

4              THE COURT:  I understand.

5              MR. DIPRIMA:  Then paragraphs 83 to

6    90.

7              THE COURT:  As a practical matter, is

8    that not an issue to really be decided at summary

9    judgment?

10             MR. STARNES:  From what?

11             THE COURT:  As a practical matter?

12             MR. STARNES:  As a practical matter

13   what?  I didn't hear the rest of it.

14             THE COURT:  Is that really an issue to

15   be decided at summary judgment?

16             MR. STARNES:  Well, I think -- No,

17   because of Rule 9.  Rule 9 says, as a practical

18   matter, that allegations of fraud are to be dealt

19   with with specificity.  All this business about

20   fiduciary, they agreed -- the plaintiff in this

21   case, HealthSouth, and UBS agreed UBS wasn't a

22   fiduciary.  Yes, they had a long relationship,

23   but that doesn't make you a -- They may have

24   attended Board meetings.  They said they did.  I

25   don't know if they did or they didn't.  That

                                              72

TuckervHealthsouth11-10-04.txt

```
 1     doesn't make you a fiduciary.  There's no
 2     allegation here sufficient to give rise to a
 3     fiduciary relationship.  With the suppression,
 4     which is what they say the duty to speak arises
 5     from the fiduciary relationship, with the
 6     suppression count and with the innocent,
 7     reckless, intentional misrepresentation count,
 8     they have to comply with Rule 9.  It's not an
 9     option.  They don't get a buy.  Rule 9 says you
10     have to comply with it.  They've made no effort
11     to comply with Rule 9 as to UBS, specifically the
12     who, what when and where of the fraud, the who,
13     what, where and when of the suppression.  What
14     fact was suppressed and who suppressed it?  They
15     have made no effort to comply with Rule 9 with
16     respect to either of those claims.
17               THE COURT:  All right.  What else,
18     Stan?
19               MR. STARNES:  As Your Honor knows, it
20     appears from the face of the complaint that the
21     claim is barred by the statute of limitations and
22     the motion to dismiss on those claims is due to
23     be granted.  Anything except for contract claims
24     are governed by a two-year statute.  Any
25     complaint that's premised on acts or omissions
```

```
 1     prior to August 8, 2001 is barred by the statute.
 2     That appears on the face of the complaint.
```

TuckervHealthsouth11-10-04.txt

3    That's important, now, because of the effect it

4    has on discovery and other things.  They have not

5    alleged anything that would get them around that

6    bar, the two-year bar, August 8, 2001.  The only

7    thing they seek to do is they raise this

8    fiduciary relationship again, which there's no

9    basis for in the allegation.  The only cases that

10   have set a fiduciary relationship withhold the

11   statute involving defendants who are active in

12   the day-to-day management --

13            THE COURT:  The recent eBay case down

14   in New Jersey, as I read it, recognizes the tort

15   against a third party for conspiring or aiding

16   and abetting Officers and Directors to breach

17   their fiduciary duty.  Is that the first Delaware

18   case that reaches that conclusion?

19            MR. DIPRIMA:  I don't know, Your

20   Honor.  It's just a recent one, and I wanted to

21   give Your Honor the benefit of seeing it.

22            THE COURT:  All right.

23            MR. DIPRIMA:  I don't believe so.  I

24   think there are earlier ones similar, but it's

25   the minority rule.

74

1            MR. STARNES:  It's never been adopted

2    in Alabama.  It is the minority rule.  But more

3    importantly --

4            THE COURT:  Was that a decision of the

5    Delaware Supreme Court, wasn't it?

6            MR. SIMPSON:  Yes, I'm saying Delaware

Page 64

TuckervHealthsouth11-10-04.txt

7      is with the minority.  Most states --

8              MR. STARNES:  It's the Chancery Court

9      in Delaware.

10             THE COURT:  It is.  I'm sorry.

11             MR. STARNES:  But that case, even if

12     you assume the law here, this complaint doesn't

13     allege anything other than the provision of

14     investment banking and tries to give those

15     services an evil cast.

16             THE COURT:  It makes a blanket

17     allegation they engaged in activities to suppress

18     and conceal and all that.

19             MR. STARNES:  Exactly.

20             THE COURT:  The usual and standard

21     stuff.

22             MR. STARNES:  Right.  None of which

23     applies to Rule 9, so the motion is due to be

24     granted on that basis.  They can't get around the

25     statute of limitations by claiming fraud because

                                                       75


1      they haven't alleged what the fraud was that kept

2      them from filing a lawsuit insofar as UBS is

3      concerned, assuming that it did.  So the motion

4      to dismiss as to any claims predating August 8,

5      2001 is due to be granted.  That's apparent from

6      the face of the complaint.

7              A couple of other things, Your Honor,

8      about, first of all, their aiding and abetting

9      claim.  They didn't allege participation in that.

10     They allege investment banking services, but they

                            Page 65

TuckervHealthsouth11-10-04.txt

11    don't allege participation with specificity and

12    the requisite particularity.  They don't allege

13    fraud.  They don't allege what the breach of the

14    fiduciary duty was by UBS.  They don't even

15    allege facts sufficient to concluded that the

16    fiduciary duty existed, so that's due to be

17    dismissed.  As you know, a civil conspiracy claim

18    in Alabama can only stand if there's an

19    underlying tort.  There's no underlying tort here

20    to support a civil conspiracy claim.  The other

21    thing --

22              THE COURT:  Isn't there a public

23    policy issue there, Mr. DiPrima?

24              MR. DIPRIMA:  As far as civil

25    conspiracy?

                                            76


1              THE COURT:  Yes.  Well, I'm speaking

2    in terms of it being a tort to engage in a

3    conspiracy or activities to cause D and O's or

4    the Corporation to breach their fiduciary duty

5    when there's no other underlying tort against the

6    parties so engaged in the conspiracy.

7              MR. DIPRIMA:  The underlying tort is

8    the breach of fiduciary duty, which is by the

9    Director fiduciaries.

10              THE COURT:  Isn't that a public policy

11    issue of Alabama law?

12              MR. DIPRIMA:  It's an issue of

13    Delaware law because the tort --

14              THE COURT:  Delaware law recognizes

TuckervHealthsouth11-10-04.txt

15    the tort.  I agree with you about that.  But

16    isn't it a public policy issue in Alabama as to

17    whether Alabama should likewise recognize the

18    Delaware decision?

19            MR. DIPRIMA:  Do you mean as a

20    judicial matter?

21            THE COURT:  As a matter of public

22    policy, is it contrary to Alabama law?

23            MR. DIPRIMA:  I think Alabama should

24    recognize that there's an interest in people

25    doing business in Alabama not aiding and abetting

                                                    77


1    fiduciaries, Directors and Officers in another

2    American jurisdiction to breach their fiduciary

3    duty.  I certainly think that.  But it is -- the

4    tort is a creature of Delaware law, aiding and

5    abetting the breach of a fiduciary duty by an

6    Officer or Director of a Delaware corporation.

7            Now, civil conspiracy is a virtual

8    synonym, and I think we've demonstrated twice in

9    this brief and always when we were arguing about

10    something similar in the Capstone and Source

11    round of dismissal arguments.  I want to address

12    a few of the things that Mr. Starnes touched on.

13    He said we didn't comply with Rule 9, that we

14    didn't plead who, what, when and where.  Maybe

15    we're reading different complaints.

16            THE COURT:  You allege between 1998

17    and 2002 all these activities occurred.

18            MR. DIPRIMA:  Exactly.

Page 67

TuckervHealthsouth11-10-04.txt
19        THE COURT:  I understand that.

20        MR. DIPRIMA:  We allege specifically

21   who.  Capek, the top analyst over at UBS, giving

22   strong buy recommendations.  We allege the

23   specific emails where he told his friends, other

24   investment bankers and just friends that

25   HealthSouth was a mess and he would not own a

                                        78


1    share.  This is when he's telling the public

2    strong buy.  We allege that that strong buy

3    recommendation remained until August 2002 when

4    the first scandal broke, the one involving the

5    Medicare rules.  Then he changed it from strong

6    buy to buy.  We certainly allege that.  We

7    alleged who, what.  When, we alleged as '99 to

8    2002.  Where, Capek was sitting in New York and

9    HealthSouth was sitting in Alabama.  I can't --

10        Again, Mr. Starnes criticized me for

11   using the first person and I won't do that

12   anymore.  But one cannot objectively look at this

13   complaint and say it fails the specificity test

14   even as to fraud.  And these are not allegations

15   of fraud but, even if they were, this complaint

16   is plenty specific.  Now, under a case that Mr.

17   Starnes cited and sent the Court just in this

18   latest round on October 29th, Bethel V. Thorn,

19   Alabama Supreme Court, he sent to the Court

20   regarding fraudulent suppression.

21        THE COURT:  Right.

22        MR. DIPRIMA:  But it goes into the

                    Page 68

TuckervHealthsouth11-10-04.txt
23    pleading requirements under Rule 9 as well.

24              THE COURT:  Right.

25              MR. DIPRIMA:  And it quotes the

79


1     committee regarding Rule 9-B, "The special

2     requirement as to fraud," it says -- and this is

3     a quote -- "does not require every element in

4     such actions to be stated with particularity.  It

5     simply commands the pleader to use more than

6     generalized or conclusory statements to set out

7     the fraud complained of before you must show the

8     time, place and contents and substance of the

9     false representations."  I maintain, Your Honor,

10    respectfully, that this complaint more than

11    satisfied that.  As to UBS's knowledge, we

12    specifically allege that UBS knew that the

13    financials were materially overstating the

14    financial condition of the company.

15              As to aiding and abetting, as far as

16    specificity, there's plenty of specificity about

17    the underlying tort, the underlying tort with

18    Scrushy and the others cooking the books.

19    There's plenty of specificity here.  Civil

20    conspiracy, as they pointed out, is a virtual

21    synonym to aiding and abetting.  And as far as

22    the statute of limitations is concerned, there

23    are a couple or really three different reasons,

24    not just one, why this complaint and no part of

25    it is due to be dismissed as against UBS.  First

80

TuckervHealthsouth11-10-04.txt

1    of all, where the tort is concealed, the statute
2    of limitations does not begin to run.  We cited
3    cases to that effect.  Mr. Somerville did in his
4    earlier brief and we did on this one.
5            THE COURT:  You've got six months to
6    file it after you knew or should have known about
7    it.
8            MR. DIPRIMA:  Yes, sir.  And in this
9    case, since the underlying tort involved false
10   accounting, well, by its very nature that's
11   concealed.
12           THE COURT:  You're saying you beat the
13   March 2003 deadline.
14           MR. DIPRIMA:  We made the March 2003
15   deadline.  We pled the false accounting in
16   paragraphs 29 through 48 of the complaint with
17   great specificity.  We pled that UBS knew the
18   accounting was overstated at paragraph 87.  We
19   pled that UBS continued a strong buy through
20   August of 2002 and then changed that to a buy.
21   Without the word "strong," buy still doesn't mean
22   sell.  We pled a scheme to cover up the material
23   misstatements continuing until March of 2003.  So
24   on that basis alone of concealment -- and that
25   relates to any tort, not just fraud -- the

                                                  81


1    statute didn't begin to run.
2            Second, the statute of limitations
3    does not run on a fiduciary breach as long as the
                        Page 70

TuckervHealthsouth11-10-04.txt

```
 4    fiduciary remains a fiduciary.
 5              THE COURT:  But if, in fact, UBS is
 6    not a fiduciary, that wouldn't be applicable to
 7    UBS, would it?
 8              MR. DIPRIMA:  I believe it would, Your
 9    Honor, for the following reason.  For a tort like
10    a conspiracy to breach somebody else's fiduciary
11    duty, the applicable statute of limitations is
12    the statute of limitations for the underlying
13    tort.  And that one doesn't run until the
14    fiduciaries stop being fiduciaries.
15              THE COURT:  That's true as to the
16    D and O's.
17              MR. DIPRIMA:  Yes, sir.
18              THE COURT:  You're saying it is also
19    true against someone who may be a fiduciary in a
20    fiduciary relationship, but is engaging in a tort
21    with the fiduciary.  Is that what you're telling
22    me?
23              MR. DIPRIMA:  Yes, sir, exactly.  And
24    third, a case that was cited by Mr. Somerville in
25    his earlier, brief Holloway v. Winechick at 690
                                                     82


 1    So.2nd 429, contains the following.  This is
 2    really a separate reason.  The question of when a
 3    party discovered or should have discovered the
 4    fraud which were told the statute of
 5    limitations --
 6              THE COURT:  That's a question for the
 7    jury.
```

Page 71

TuckervHealthsouth11-10-04.txt

 8              MR. DIPRIMA:  It's for the jury.  A
 9    dismissal based on the statute of limitations is
10    proper only if, from the face of the complaint,
11    it is apparent that the tolling provisions do not
12    apply.  Based on this complaint, that test cannot
13    begin to be met.
14              THE COURT:  All right.  Are there any
15    other substantive matters y'all want to talk
16    about?
17              MR. STARNES:  Just this.  Consider
18    this so-called fraud claim in the context of what
19    it is.  He's not here representing the purchaser
20    of a security or a seller of a security.  He's
21    here representing HealthSouth.  And with respect
22    to his fraud claim, assuming somebody at UBS said
23    "buy" publicly when they said "sell" privately,
24    how is that a misrepresentation as to
25    HealthSouth?  Where is that a fraud?  I mean, you
                                              83


 1    throw all this up against the wall, but you've
 2    got to give --
 3              THE COURT:  Some very nice legal
 4    issues involved.
 5              MR. STARNES:  But not here.  There's
 6    not one here.  It is fundamental Alabama law that
 7    to allege fraud, you've got to say what fact was
 8    misrepresented.  What do they say that UBS
 9    misrepresented to HealthSouth?  Where is that
10    allegation in this complaint?
11              THE COURT:  All right, gentlemen.  I
                        Page 72

TuckervHealthsouth11-10-04.txt

12    appreciate your arguments to me this afternoon.

13    Henry and Frank's other partner have already

14    submitted to me their proposed order with regard

15    to the issue of arbitration, and they do not

16    choose to submit any additional proposed order,

17    as I understand it.  So then, we will have a

18    proposed order from Mr. Starnes on behalf of UBS

19    and from the plaintiff on behalf of the

20    plaintiffs with regard to the UBS issue.  Am I

21    leaving out anything?

22           (No response.)

23           THE COURT:  The last thing we've got

24    are the D and O's, and we're scheduled --

25           MR. HALEY:  I think this is it.

                                           84


1           MR. SOMERVILLE:  December 20th, Your

2    Honor.  The Directors and the derivative claims

3    against the Directors.

4           THE COURT:  Okay.  Has anybody new

5    pled or been sentenced?

6           MR. SOMERVILLE:  No, sir.

7           THE COURT:  Ms. Stephanie, you give me

8    a copy of the transcript and charge it to whoever

9    you've been charging it to.

10           MR. SOMERVILLE:  Judge, I have a copy

11    of the transcript from the morning of July 26th,

12    if you want a copy of that.

13           THE COURT:  I've got both transcripts,

14    morning and afternoon.

15           MR. STARNES:  We will get you an order

TuckervHealthsouth11-10-04.txt

16    in a week.  Is that all right?
17                  THE COURT:  That will be fine.  That
18    will be next Wednesday.
19                  MR. STARNES:  We'll exchange orders
20    next Wednesday.
21                  THE COURT:  That'll be fine with me.
22    Whatever is convenient with y'all.
23                  MR. SOMERVILLE:  That's perfect.
24                  MR. HALEY:  Denied would be
25    satisfactory with us.

                                                85


1                  THE COURT:  All right, gentlemen.
2    Have a good afternoon.
3                  (In recess at 3:20 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
                        Page 74

TuckervHealthsouth11-10-04.txt

```
20
21
22
23
24
25
```

                                                        86


```
 1                C E R T I F I C A T E
 2    STATE OF ALABAMA)
 3    JEFFERSON COUNTY)
 4            I hereby certify that the above and
 5    foregoing hearing was taken down by me in
 6    stenotype and transcribed by means of
 7    computer-aided transcription, and that the
 8    foregoing represents a true and correct
 9    transcript of said hearing.
10            I further certify that I am neither of
11    counsel, nor of kin to the parties to the action,
12    nor am I in anywise interested in the result of
13    said cause.
14
15
16                         Stephanie Burton
17                         Notary Public
18
19    My commission expires 9/20/2006
20
21
22
23
```

TuckervHealthsouth11-10-04.txt

24
25