IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
(HEALTHSOUTH CORPORATION 2002 DERIVATIVE LITIGATION)

WADE TUCKER, derivatively for the )
Benefit of and on behalf of the Nominal )
Defendant HealthSouth Corporation, )
    Plaintiff, )
 )
-vs- )
 )
RICHARD M. SCRUSHY, *et al.*, )
    Defendants. )   CIVIL ACTION NO. CV-02-5212
 )
_____ )
 )
UBS SECURITIES LLC, )
    Counterclaim Plaintiff, )
 )
-vs- )
 )
HEALTHSOUTH CORPORATION, )
    Counterclaim Defendant. )

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO
STRIKE UBS SECURITIES LLC'S AMENDED ANSWER TO THE THIRD AMENDED
COMPLAINT AND THE SUPPLEMENTAL AND FOURTH AMENDED COMPLAINT**

    Plaintiff, Wade Tucker ("Tucker"), derivatively, for the benefit of, and on behalf of the Nominal Defendant, HealthSouth Corporation ("HealthSouth"), hereby submits this brief in support of his Motion to Strike UBS Securities LLC's Amended Answer to the Third Amended Complaint and the Supplemental and Fourth Amended Complaint ("Plaintiff's Motion").

**INTRODUCTION**

    In its Amended Answer, UBS Securities LLC has attempted to retract a representation that it made to this Court and to Tucker more than two years ago. Specifically, and despite its previous express admission to the contrary, UBS Securities LLC now contends that UBS AG, Stamford Branch ("UBS AG"), and not UBS Securities LLC, loaned $20 million to a defendant in the instant litigation, MedCenterDirect.com ("MCDC"). UBS Securities LLC has contrived to

withdraw its previous admission because it has taken an inconsistent position in a case it filed in New York. In September 2007, the same attorneys that represent UBS Securities LLC, here filed a lawsuit against HealthSouth in the Supreme Court of the State of New York (the "New York action") on behalf of another UBS entity, UBS AG. In that lawsuit, UBS AG seeks to recover on HealthSouth's alleged guarantee of the $20 million MCDC loan. HealthSouth has opposed UBS AG's loan default claim in the New York action, arguing that it is a compulsory counterclaim in this prior pending Alabama action and that, in any event, the guarantee is invalid on fraud-in-the-inception and agency grounds.

This Court should strike UBS Securities LLC's Amended Answer for several reasons. First, Tucker relied on UBS Securities LLC's representations that (a) the proper UBS entity had been sued in this action, and (b) UBS Securities LLC made the $20 million MCDC loan. Had UBS Securities LLC not made these affirmative representations, Tucker would have endeavored to immediately locate and name as a defendant in this litigation the appropriate UBS entities (including the UBS entity that did, in fact, make the MCDC loan, assuming it was not UBS Securities LLC). Second, permitting UBS Securities LLC to retract its previous MCDC-based admission would facilitate UBS Securities LLC's transparent attempt to: (i) assert through a related UBS entity a claim in New York which cannot credibly be considered anything other than a compulsory counterclaim in this action; (ii) circumvent this Court's express ruling that it would be seriously inconvenient and unreasonable to try some claims in New York while concurrently trying other claims in Alabama; and (iii) gain an unjustified tactical advantage in this litigation and in the New York action. For all of these reasons, UBS Securities LLC's Amended Answer should be stricken.

## ARGUMENT

I. **UBS SECURITIES LLC'S AMENDMENT IS INCONSISTENT WITH AND CONTRARY TO ITS PRIOR REPRESENTATIONS IN THIS LITIGATION.**

**a. UBS Securities LLC affirmatively represented that it was the proper UBS defendant and Tucker relied on that representation.**

Tucker commenced this shareholder derivative action on August 28, 2002, alleging, among other things, that HealthSouth's former Chairman and Chief Executive Officer Richard M. Scrushy ("Scrushy") had engaged in a fraudulent scheme to improperly divert the Company's monies to himself and others and had caused HealthSouth to improperly repurchase millions of shares of stock at an artificially inflated price. See Compl. at ¶¶ 10-45. After a March 18, 2003 FBI raid on HealthSouth's corporate offices exposed one of the largest, longest running accounting frauds in American corporate history, Tucker amended his complaint to allege that HealthSouth had been the victim of a massive accounting fraud perpetrated by Scrushy, by other corrupt and disloyal officers and directors, and by UBS and Ernst & Young. See Third Am. V. Compl. ("Third Amended Complaint"). As pled, the purpose of the fraud was to overstate HealthSouth's financial health so as to artificially inflate the stock, enabling Scrushy and others to profit on sale of their stock, through illicit bonuses, and through off-the-books, self-dealing entities like MCDC. Tucker alleges that UBS was a willing accomplice.

On October 17, 2003, UBS moved to dismiss Tucker's Third Amended Complaint. See UBS Securities LLC's Mot. to Dismiss the Third Am. Compl., or Alternatively, to Stay the Action at 1 ("Motion to Dismiss"). In its motion, UBS represented to Tucker and to this Court that the "true and correct name" of the UBS "entities identified in the Third Amended Complaint

. . . [wa]s UBS Securities LLC ('UBS Securities'), formerly known as UBS Warburg LLC."[1] Id. Based on this express representation, Tucker added UBS Securities LLC as a defendant in this action on March 25, 2004. Supplemental Compl. and Fourth Am. V. Compl. at ¶ 234 (confirming that the complaint was amended "to include UBS Securities LLC" because "Defendants UBS Group and UBS Investment Bank ha[d] advised the Court and the parties herein that the correct name of their affiliated party defendant is UBS Securities LLC").

The parties and this Court devoted a substantial amount of time and energy towards resolving the issue of which UBS entity was the appropriate defendant in this litigation. After this Court initially denied UBS's Motion to Dismiss, for example, UBS moved the Court to reconsider certain aspects of that order. UBS Securities LLC's Mot. to Reconsider. In particular, UBS requested the Court to "dismiss the complaint with respect to [the] non-existent legal entities" UBS Group and UBS Investment Bank. Id. at ¶ 2. In response, Tucker argued that it "would be imprudent to dismiss [UBS Group and UBS Investment Bank] prior to discovery, as Tucker lacks information as to the precise names of UBS's entities other than the less-than-confidence-inspiring statements of its outside counsel as to what the correct legal entity is." Tucker's Objections and Resps. in Opp'n to Def. UBS Securities LLC's Mot. to Reconsider Order of March 3, 2005 Den. Dismissal Mot. at 5 ("Tucker's Objections to UBS's Motion to Reconsider"). Although this Court did eventually dismiss both UBS Group and UBS Investment Bank, it made clear that, in "the event discovery reveals that either UBS Group or UBS Investment Bank is a legal entity, . . . plaintiff's right to seek leave for their readdition as

---

[1] The UBS defendants also stated that "'UBS Group' and 'UBS Investment Bank' are non-existent legal entities and, as such, were not parties to any investment banking contract or relationship with HealthSouth . . . ." Motion to Dismiss at 1.

4

defendants is hereby reserved." Modified Order Den. Mot. to Dismiss Brought by UBS at ¶ 7 ("Modified Order").

Tucker relied on UBS Securities LLC's representations that the proper UBS entity had been sued in this dispute. Had UBS Securities LLC not affirmatively represented that it was the proper UBS defendant, Tucker would have endeavored to immediately locate and name as a defendant any other appropriate UBS entity.[2]

### b. UBS Securities LLC affirmatively represented that it made the $20 million MCDC loan and Tucker relied on that representation.

In this action, Tucker alleges, among other things, that UBS Securities LLC aided and abetted the former disloyal executives' breaches of fiduciary duty, conspired with said executives, and generally helped perpetuate the disloyal executives' fraudulent accounting scheme. See, e.g., Third Amended Complaint at ¶¶ 1, 21, 83-90, 105-13, 130-34, 165-72, 195-200, 204-11, Prayer for Relief. Among numerous other bad acts, Tucker alleges that HealthSouth's disloyal former executives created entities to serve as suppliers to HealthSouth for

---

[2] If UBS AG is, in fact, the UBS entity that made the MCDC loan, it is clear that: (1) UBS Group was properly named as a defendant in this action and should be reinstated as a defendant; and (2) UBS AG can be substituted based upon this recent revelation by UBS Securities, LLC.

First, an internal UBS document produced during discovery makes clear that "UBS Group includes **UBS AG Branches** and Agencies, Warburg Dillon Read LLC, UBS Brinson Inc., and UBS Capital, LLC." Exhibit 1 (emphasis added). If UBS AG did, in fact, make the $20 million MCDC loan, this definition makes clear that UBS Group was, notwithstanding UBS's previous representations to the contrary, properly named as a defendant in this litigation.

Second, and in any event, it is clear that if UBS AG made the $20 million MCDC loan, it can be substituted for a fictitious party defendant under Alabama's fictitious party practice. See ALA. R. CIV. P. 9(h); Third Amended Complaint at ¶ 26 (naming as fictitious defendants "those other individuals and/or business entities that joined in and/or conspired and/or committed the wrongdoing alleged in this Complaint" as well as "those individuals and businesses that provided investment banking and financial analysis services that joined in, aided, abetted and/or conspired and/or committed the wrongdoing identified in this Complaint"); Tucker's Objections to UBS's Motion to Reconsider at 5 (making clear that, if "yet another now unnamed UBS entity perpetrated the torts alleged, then it is a defendant under Alabama's fictitious party practice").

5

the purpose of siphoning off money from the Company. See, e.g., id. at ¶¶ 35-39. Several of these shell suppliers – including MCDC – were named as defendants in this derivative action. Id. at ¶¶ 5, 35-39.

As specifically relevant here, Tucker alleges that the MCDC loan was arranged and secured by UBS employees who, with knowledge of the fraudulent accounting practices at HealthSouth, conspired with and aided and abetted HealthSouth's disloyal officers in breaching their fiduciary duties and using MCDC for their own personal financial benefit. See, e.g. id. at ¶ 134(e) (alleging that MCDC was "central to the allegations herein[,]" that one of HealthSouth's disloyal corporate officers served on MCDC's board, and that that disloyal corporate officer did "many transactions with the UBS Parties," including a transaction whereby "**UBS funded and raised investment capital for MCDC**") (emphasis added); see also id. at ¶¶ 105-113 (alleging MCDC fraud); Prayer for Relief ¶ VIII (seeking "[r]epayment of . . . other loans made, and monies owed with respect to Defendants").

More than two years ago – in August 2005 – UBS Securities LLC answered the Third and Fourth Amended Complaints. UBS Securities LLC's Answer to the Third Am. Compl. and the Supplemental and Fourth Am. Compl. and Countercls ("Answer"). In its Answer, UBS Securities LLC specifically "**admit[ted] that [it] provided a loan to MCDC** . . . ." Id. at ¶ 134 (emphasis added). At the same time, UBS Securities LLC asserted several counterclaims against HealthSouth.[3]

In addition to representing that it made the MCDC loan, UBS Securities LLC's own internal documents seem to support that proposition. Specifically, minutes from UBS's March

---

[3] Among other things, UBS Securities LLC sought a "judgment declaring that HealthSouth is liable for any and all losses, damages, judgments, and/or fees and costs incurred by UBS or its affiliates in connection with this action or any other action arising out of or relating to the services provided by UBS to HealthSouth." Answer at Demand for Judgment ¶ h.

6

2002 Finance Commitments Committee Meeting confirm that UBS Warburg – now supposedly, according to UBS, known as UBS Securities LLC – made the $20 million MCDC loan. See Exhibit 2 (documenting that approval had been sought at the meeting "to increase the amount and extend the maturity of **UBS Warburg's** existing $15 million term loan to MedCenterDirect.Com, Inc. HealthSouth Corporate Finance Department is requesting approval of a $20 million (a $5 million upsizing) 12-month term loan facility.") (emphasis supplied); see also Motion to Dismiss at 1 (making clear that "UBS Securities LLC" was "formerly known as UBS Warburg LLC").

Tucker relied on UBS Securities LLC's representation that UBS Securities LLC made the $20 million MCDC loan and UBS is estopped from taking an inconsistent position. Had UBS Securities LLC not affirmatively admitted that it made that loan, Tucker would have endeavored to immediately locate and name as a defendant the UBS entity that did, in fact, make that loan. In any event, and because an internal document that UBS has produced in this litigation suggests that UBS Securities LLC, and not UBS AG, made the $20 million MCDC loan, UBS Securities LLC's Amended Answer is incorrect. For all of these reasons, UBS's Amended Answer should be stricken.

## II. UBS Securities LLC's amendment violates this Court's express ruling that it would be seriously inconvenient and unreasonable to try UBS-related claims in New York.

If it is not stricken, UBS Securities LLC's Amended Answer will facilitate a related UBS entity's unfounded attempt to assert what is a compulsory counterclaim against HealthSouth in this case as an independent claim in New York despite the fact that this Court has already expressly forbidden UBS from litigating in that forum. For that reason, UBS Securities LLC's Amended Answer should be stricken.

7

### a. UBS AG's New York action.

As recently as September 2007, UBS Securities LLC and HealthSouth were actively litigating UBS's claims within the context of the Tucker lawsuit. However, on September 6, 2007,[4] in New York State, UBS AG filed suit to recover on HealthSouth's alleged guarantee of the $20 million MCDC loan. The same lawyers represent both UBS Securities LLC and UBS AG. They filed the claim in New York despite the facts that (1) this Court had expressly prohibited UBS from litigating in New York,[5] (2) the MCDC loan was already at issue in the Alabama litigation, and (3) UBS had already sued HealthSouth in Alabama.

Notwithstanding UBS Securities LLC's unequivocal representation in this litigation in 2005 that *it* "provided a loan to MCDC," UBS AG now alleges in the New York action that *it*, in fact, was the UBS entity that "loaned $20 million to MedCenterDirect.com ("MedCenter")." Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. at 1, attached hereto as Exhibit 3 (Exhibits to the UBS Memorandum of Law are so voluminous that they have not been attached.)

### b. This Court has already forbidden UBS from litigating in New York.

UBS AG's current lawsuit in New York is not the first time that UBS has improperly attempted to litigate against HealthSouth in that inconvenient and unreasonable forum. To the contrary, UBS Securities LLC tried to litigate its contract-based claims in New York instead of Alabama several years ago by pointing to a New York forum selection clause in its engagement letters. UBS Securities LLC's Mem. of Law in Supp. of its Mot. to Dismiss the Fourth Am.

---

[4] Rather than filing a complaint, UBS AG served HealthSouth with a summons, a notice of motion for summary judgment in lieu of complaint pursuant to New York Civil Practice Law and Rules § 3213, a memorandum of law in support of that motion, and the declaration of David J. Kalal.

[5] See infra at 8 to 10.

Compl., or Alternatively, to Stay the Action at 20; UBS Securities LLC's Reply Mem. of Law in Further Supp. of its Mot. to Dismiss the Fourth Am. Compl., or Alternatively, to Stay the Action at 18.

Tucker (on HealthSouth's behalf), however, vehemently denied that he was required to litigate its contract-based claims in New York. Specifically, Tucker argued that his derivative claims against UBS were "inextricably intertwined" with (1) his claims against the other defendants, and (2) his non-contract claims against UBS. Pl.'s Resp. to the UBS Parties' Mot. to Dismiss at 7-10, attached hereto as Exhibit 4. As specifically relevant here, Tucker argued that:

> All the claims against UBS, including the contract claims, arise out of the same nucleus of facts regarding the false accounting, on which Tucker is pursuing claims against 18 other defendants. Indeed, plaintiff's most basic claim against UBS, that of aiding and abetting the breach of fiduciary duty of the defendant directors and officers, including Scrushy, is "inextricably intertwined" with claims against 18 other defendants. . . . Accordingly, under the rule in Galaxy Mall, it would be "seriously inconvenient," and thus unreasonable, to send part of this case to New York for one trial, when there is going to be another trial in Alabama regarding 18 other defendants. It is against the strong public policy of Alabama [to] so split causes of action.

Id. at 7-8 (citing Ex parte Leasecomm Corp. v. Galaxy Mall, 2003 WL 22753454 (Ala. Nov. 21, 2003)).

The forum selection clause issue was a heated one and everyone – Tucker, HealthSouth, UBS, *and* this Court – devoted a substantial amount of time and energy towards its resolution. See, e.g., Exhibit 5 at 2-3 (November 5, 2004 letter from UBS's counsel to Judge Horn addressing the New York forum selection clause); Exhibit 6 at 47-65 (transcript of the November 10, 2004 hearing on UBS's Motion to Dismiss). Ultimately, this Court agreed with Tucker and ruled: (1) that "the contract claims herein against UBS are inextricably intertwined with the other claims against UBS as well as other claims against other parties, being based on the same nucleus of operative facts"; and (2) that "it would be seriously inconvenient and unreasonable to

9

send off one smaller part of this case to New York while retaining most of it here." Modified Order at ¶ 3(a) and (b) (citing the "strong policy of the State of Alabama against splitting causes of action"). Additionally, this Court made clear that enforcing the New York forum selection clause "would upset the carefully crafted co-ordination orders in effect in three jurisdictions regarding the case management of these complex derivative suits, including the Co-ordination Order of July 14, 2003 herein, and would result in duplicative discovery and trial." Id. at ¶ 3(c). Accordingly, this Court denied UBS's "motion to enforce [its] outbound choice-of-forum provision." Id. at ¶ 3.

### c. UBS AG's loan default claim is a compulsory counterclaim that must be asserted here.

The MCDC loan at issue in the New York action is one of the principal, perfidious transactions that is being actively litigated here. Accordingly, it cannot be credibly disputed that UBS AG's claim in the New York action is a compulsory counterclaim that must be asserted in this action.

Alabama Rule of Civil Procedure 13(a) requires that a "pleading **shall** state as a counterclaim any claim" that "arises out of the transaction[6] or occurrence that is the subject matter of the opposing party's claim . . . ." ALA. R. CIV. P. 13(a). In Alabama, "a counterclaim is compulsory rather than permissive when there is **any logical relationship to the original claims**." Ex parte Town of Citronelle, 428 So. 2d 600, 603 (Ala. 1983) (emphasis added). That is, a counterclaim is compulsory if "(1) its trial in the original action would avoid a substantial

---

[6] "*Transaction* imports a pliable meaning and may encompass a series of occurrences, and depends in application, not so much upon the immediacy of connection, as upon logical relationship . . . . Thus, the term *transaction* extends to include . . . 'all of the facts and circumstances which constitute the foundation of a claim . . . [and] '*all the facts and circumstances out of which the injury complained of arose.*'" JJ's Heating & Air Conditioning, Inc. v. Gobble-Fite Lumber Co., 572 So. 2d 1243, 1244-45 (Ala. 1990) (emphasis in original; internal citations omitted).

duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts." Ex parte Cincinnati Ins. Cos., 806 So. 2d 376, 380 (Ala. 2001) (internal quotations and citations omitted).

Both prongs of this test are satisfied here. It cannot be credibly disputed, for example, that the MCDC fraud – including UBS's $20 million loan – is one of the transactions at the heart of this dispute. See, e.g. Third Amended Complaint at ¶¶ 105-113, 134(e), Prayer for Relief ¶ VIII; UBS's Answer at ¶ 134. Additionally, HealthSouth's affirmative defenses in the New York action – namely that the agents who purported to bind HealthSouth by executing the guarantee lacked the actual and apparent authority to do so – are hopelessly intertwined with the agency issues already being actively litigated here. For all of these reasons, UBS AG's loan default claim in the New York action is not merely "logically related" to the claims asserted against UBS here. Rather, the MCDC loan, an essential part of the MCDC fraud, lies at the core of the allegations of wrongdoing against UBS and the Company's former disloyal officers. Moreover, this Court has already expressly ruled that the contract claims asserted against UBS Securities LLC here (1) are "inextricably intertwined with the . . . other claims against other parties" and are "based on the same nucleus of operative facts," and (2) that "it would be seriously inconvenient and unreasonable" to try some UBS-related claims in New York while concurrently trying other UBS-related claims in Alabama. See Modified Order at ¶ 3(a), (b). This rationale holds equally true for contract claims asserted by UBS.

In the New York action, a UBS entity has asserted a claim which cannot credibly be considered anything other than a compulsory counterclaim in this action. To the extent UBS Securities LLC's Amended Answer helps it circumvent this Court's express ruling that UBS may

11

not litigate some claims in New York while concurrently litigating other claims in Alabama, it should be stricken.

## Conclusion

The timing of UBS AG's New York action – six years after the MCDC loan was made, and two years after UBS Securities LLC admitted that it made the MCDC loan – irrefutably suggests that the New York action was filed at the behest of UBS Securities LLC's counsel to gain a tactical advantage here in Alabama. UBS Securities LLC cannot credibly dispute that the proper forum for a determination of HealthSouth's liability on the MCDC guarantee is here, where the complex agency and fraud considerations that will determine the validity of that guarantee are already being actively litigated. For all of these reasons, this Court should strike UBS Securities LLC's Amended Answer.

Done this 21st day of December, 2007.

/s/ John Q. Somerville
One of the attorneys for Plaintiff, Wade Tucker

**OF COUNSEL FOR PLAINTIFF**:

John Q. Somerville, Esq.
GALLOWAY & SOMERVILLE, LLC
11 Oak Street
Birmingham, Alabama 35213
(205) 871-2183

John W. Haley, Esq.
Ralph D. Cook, Esq.
Bruce J. McKee, Esq.
HARE, WYNN, NEWELL & NEWTON, LLP
2025 Third Avenue North, Suite 800
Birmingham, Alabama 35203
(205) 238-5330

Frank DiPrima, Esq.
3 Carriage Hill Drive
Morristown, NJ 07960
Tel: (973) 656-0251

Ronald A. "Chip" Brown, Esq.
Prickett Jones & Elliot
1310 King Street, Box 1328
Wilmington, DE 19899
Tel:    (302) 888-6500

Edward F. Haber, Esq.
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
Tel: (617) 439-3939

Robert C. Schubert, Esq.
Juden Justice Reed, Esq.
Willem F. Jonckheer, Esq.
Schubert & Reed LLP
3 Embarcadero Center
Suite 1650
San Francisco, CA. 94111
Tel:    (415) 788-4220

Steven P. Gregory, Esq.
Gregory Law Firm, P.C.
46 Mt. Laurel Ave. #A
Birmingham, AL 35242-1801
Tel:    (205) 799-0380

Arthur L. Shingler, III
Scott & Scott LLC
108 Norwich Avenue
Colchester, CT 06418
Voice: (860) 537-5537

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on this the 21st day of December, 2007 by electronic means to the attorneys listed on Appendix 3 (shown below) pursuant to the Court's Order and by U.S. mail, postage prepaid, and properly addressed to the following:

**Appendix 3:**
**All Counsel in *Tucker v. Scrushy***
**Pending Before The Honorable Allwin E. Horn III**

| Party | Name of Person to Serve | Email Address |
|---|---|---|
| Tucker, Wade | John Q. Somerville, Esq. | jqs@gallowaysomerville.com |
|  | Ralph D. Cook, Esq. | ralph@hwnn.com |
|  | John W. Haley, Esq. | haley@hwnn.com |
|  | Bruce J. McKee, Esq. | bruce@hwnn.com |
|  | Steve P. Gregory, Esq. | steve@gregorylawfirm.us |
|  | Frank DiPrima, Esq. | diprimalaw@aol.com |
|  | Ronald A. Brown, Esq. | rabrown@prickett.com |
|  | Edward F. Haber, Esq. | ehaber@shulaw.com |
|  | Robert C. Schubert, Esq. | rschubert@schubert-reed.com |
|  | Juden Justice Reed, Esq. | jreed@schubert-reed.com |
|  | Arthur L. Schingler, Esq. | ashingler@scott-scott.com |
|  | Michael D. Ermert | mike@hwnn.com |
| Peters, Tim | Eric J. Belfi, Esq. | ebelfi@murrayfrank.com |
| Scrushy, Richard M. | Richard M. Adams | adams@parkmanlawfirm.com |
|  | Jack McNamee | mwoods@mmattorney.net |
| Scrushy, Gerald P. | Tom E. Ellis, Esq. | tee@teelaw.com |
| MedCenterDirect.com | MedCenterDirect.Com, Inc., *pro se* 3500 Peachtree Road, Suite 1610 Atlanta, GA  30326 |  |
| Source Medical Solutions, Inc. | James C. Huckaby Jr., Esq. | jch@hsdpc.com |
|  | John W. Scott Esq. | jws@hsdpc.com |
| Capstone Capital Corporation | James L. Goyer, Esq. | jgoyer@maynardcooper.com |
|  | Alan F. Enslen, Esq. | aenslen@maynardcooper.com |
| G G Enterprises | G G Enterprises, *pro se* c/o Gary Gussing 865 Woodmere Creek Loop Birmingham, AL  35226 |  |

| | | |
|---|---|---|
| HealthSouth Corporation | Peyton D. Bibb, Esq. | pdb@hsy.com |
| | Julia Boaz Cooper, Esq. | jbcooper@bradleyarant.com |
| | Edward P. Welch, Esq. | ewelch@skadden.com |
| | Stephen Dargitz, Esq. | sdargitz@skadden.com |
| | Edward B. Micheletti, Esq. | emich@skadden.com |
| | Marc Ayers, Esq. | mayers@bradleyarant.com |
| | Benjamin Moncrief, Esq. | bmoncrief@bradleyarant.com |
| | Hope Cannon, Esq. | hcannon@bradleyarant.com |
| Martin, Michael D. | John H. Cooper, Esq. | jcooper@sirote.com |
| | C. Lee Reeves, Esq. | lreeves@sirote.com |
| | Robert W. Fleishman, Esq. | rfleishman@steptoe.com |
| Givens, C. Sage | J. Mark Hart, Esq. | jmh@hsy.com |
| Strong, George H. | Paul C. Gluckow, Esq. | pgluckow@stblaw.com |
| Newhall, Charles W. III | Allison R. Kimmel, Esq. | akimmel@stblaw.com |
| Chamberlin, John S. | | |
| Gordon, Joel C. | | |
| Striplin, Larry D. Jr. | | |
| Owens, William T. | *pro se* | hrcwto@bellsouth.net |
| Watkins, Phillip C. | N. Lee Cooper, Esq. | lcooper@maynardcooper.com |
| Foster, Patrick A. | James L. Goyer III, Esq. | jgoyer@maynardcooper.com |
| Taylor, Larry D. | Patrick Cooper, Esq. | pcooper@maynardcooper.com |
| | Carl Burkhalter, Esq. | cburkhalter@maynardcooper.com |
| | James R. Bussian, Esq. | jbussian@maynardcooper.com |
| | Champ Lyons III, Esq. | cl@lyonshorn.com |
| | Peter Q. Bassett, Esq. | pbassett@alston.com |
| | Betsy Collins, Esq. | bcollins@alston.com |
| | Susan Hurd, Esq. | shurd@alston.com |
| | Scott Brown, Esq. | scottbrown@maynardcooper.com |
| Smith, Weston L. | Charles A. Dauphin, Esq. | cdauphin@bddmc.com |
| | David McKnight, Esq. | dmcknight@bddmc.com |
| Ernst & Young LLP | Henry Simpson, Esq. | henry.simpson@arlaw.com |
| | Steven M. Farina, Esq. | sfarina@wc.com |
| | Enu Mainigi, Esq. | emainigi@wc.com |
| | Victoria Radd Rollins, Esq. | vrollins@wc.com |
| UBS Warburg LLC | W. Michael Atchison | wma@starneslaw.com |
| UBS Group | Jay M. Ezelle, Esq. | jme@starneslaw.com |
| UBS Investment Bank | Robin H. Jones, Esq. | rhj@starneslaw.com |
| | Robert J. Giuffra, Esq. | giuffrar@sullcrom.com |
| | Brian T. Frawley, Esq. | frawleyb@sullcrom.com |
| | Julia M. Jordan, Esq. | jordanjm@sullcrom.com |
| | Jeffrey R. Scott, Esq. | scottj@sullcrom.com |
| | Laurent S. Wiesel, Esq. | wiesell@sullcrom.com |
| Beam, Aaron Jr., *pro se* | Aaron Beam 24135-001 | |
| | Mobile Unit/C-Wing | |
| | Federal Prison Camp | |
| | Montgomery, AL 36112 | |

| | | |
|---|---|---|
| McVay, Malcolm E. | J. Don Foster, Esq. | jdf@jacksonfosterlaw.com |
| Harris, Emery W. | J. Stephen Salter, Esq. | umstakwit@aol.com |
| Livesay, Kenneth K. | Joseph A. Fawal, Esq. | jfawal@bellsouth.net |

**OF COUNSEL:**

/s/ John Q. Somerville
One of the attorneys for Plaintiff, Wade Tucker

# EXHIBIT 2

594

**❀ UBS Warburg**  Tab 16

<u>MINUTES of Leveraged Finance Commitments Committee Meeting</u>
<u>28 March, 2002</u>

page 1 of 1

**Attendees:**
Committee Members: Chris Ryan (Chairman), Brian McBride (GSF), David Juge (Syndication), Bill Glass (CRC), Alex Geier (for Steve Ruggiero), Oliver Trumbo (Counsel) and Christian Rothhardt (Minutes)

Deal Team and others: Rod O'Neill (CFD), Scott Wollard (CFD), Andreas Wyler (CRC), David Goldman (CRC), Renata Jacobson (LPRM)

**TRANSACTION:** MedCenterDirect.Com, Inc.

Approval sought to increase the amount and extend the maturity of UBS Warburg's existing $15 million term loan to MedCenterDirect.Com, Inc. Healthcare Corporate Finance Department is requesting approval of a $20 million (a $5 million upsizing) 12-month term loan facility. HealthSouth Corporation, which owns 23% of MedCenterDirect, will continue to guarantee 100% of the MedCenterDirect loan. In order to make this loan a credit neutral event for UBSW, HealthSouth has agreed to offset the MedCenterDirect loan against UBSW's commitment to the proposed HealthSouth $1.25 billion 5-year revolving credit facility.

HealthSouth is the largest provider of rehabilitative healthcare, outpatient surgery and outpatient services in the United States. The company delivers its services through a national network of more than 1,900 locations in all 50 states, Puerto Rico, the United Kingdom, Canada and Australia. In fiscal year 2001, HealthSouth generated total revenues of $4,380.5 million and EBITDA of $1,127.0 million after minority interest. HealthSouth currently carries $3.0 billion of debt, with senior unsecured ratings of Ba1/BB+.

MedCenterDirect was founded in 1999 (backed by HealthSouth) to develop an online marketplace for hospitals and alternate sites to purchase medical supplies from manufacturers. MedCenterDirect provides an e-procurement solution to healthcare providers for ordering inventory. The Company's software solution is designed to reduce administrative costs, improve inventory turns and ensure purchasing contract compliance. The Company currently provides its e-procurement purchasing solution to approximately 1,700 HealthSouth facilities. MedCenterDirect's only customer is HealthSouth.

**DECISION:** Approved

The committee approved the transaction as presented.

Chris Ryan instructed the deal team to push hard to obtain Sole-Books on the upcoming $500 million senior notes issuance for HealthSouth.

**MATERIAL REDACTED**

CRC assigned an internal credit rating of C6 and approved a final hold of $20 million.

BRG approved an unlimited make-whole payment based on an estimate of $0.5 million on 27 March 2002.

Chris Ryan instructed Loan Syndication to manage down the overall HealthSouth exposure to $100 to $75 million over time through secondary sales or hedging.

CONFIDENTIAL TREATMENT REQUESTED BY UBS

UBS/C 112494