**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**(HEALTHSOUTH CORPORATION 2002 DERIVATIVE LITIGATION)**

| | | |
|---|---|---|
| **WADE TUCKER, derivatively for the Benefit of and on behalf of the Nominal Defendant HealthSouth Corporation,** | ) ) ) | |
| | ) | **CIVIL ACTION NO. CV-02-5212** |
| **Plaintiff,** | ) | |
| | ) | |
| **-v.-** | ) | |
| | ) | |
| **RICHARD M. SCRUSHY, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **UBS Securities LLC,** | ) | |
| | ) | |
| **Counterclaim Plaintiff,** | ) | |
| | ) | |
| **-v.-** | ) | |
| | ) | |
| **HealthSouth Corporation,** | ) | |
| | ) | |
| **Counterclaim Defendant.** | ) | |

## RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND <u>REQUEST FOR PRODUCTION TO UBS WARBURG</u>

Pursuant to Rules 26 and 33 of the Alabama Rules of Civil Procedure, UBS Securities LLC (formerly UBS Warburg LLC) ("UBS") hereby responds and objects to Plaintiff's First Set of Interrogatories and Request for Production to UBS Warburg, dated November 28, 2007 (the "Interrogatories"), as follows:

## GENERAL OBJECTIONS

The following General Objections apply to each specific interrogatory set forth in the Interrogatories.  These General Objections shall have the same force and effect as if set forth in full in response to each specific interrogatory. These Responses and Objections by UBS are not, and shall not be construed as, an admission of relevance or admissibility into evidence of any such Response, or the propriety of any Interrogatory.

1.    Without waiving any objection herein, UBS is willing to meet and confer in good faith with Plaintiff regarding the Interrogatories and the responses and objections herein to resolve any matters in dispute with respect thereto.  In particular, where an objection is made on the ground that a specific interrogatory is vague or ambiguous, UBS is willing to meet and confer regarding the meaning of the interrogatory, and where an objection is made on the ground that a specific interrogatory is overbroad or unduly burdensome or seeks documents or information that are neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence ("Irrelevant Information"), UBS is willing to meet and confer regarding reasonable limitations on the scope of the interrogatory.

2.    UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they are

vague, ambiguous, overbroad, unduly burdensome, and seek Irrelevant Information.

3.     UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they purport to impose burdens or obligations on UBS that exceed those imposed by the Alabama Rules of Civil Procedure or other applicable law.

4.     UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege or any other applicable privilege, protection, immunity, law or rule.  Further, by responding to the Interrogatories, UBS does not waive the attorney-client privilege, the work product doctrine, or any other applicable privilege as to any specific interrogatory or any other future discovery request.  The inadvertent disclosure or production of any information covered by such privileges or protections shall not constitute a waiver of such privileges or protections.

5.     UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they purport to require UBS to produce information that cannot be located by means of a reasonably diligent, good faith review of files having an identifiable relationship

to, and inquiries to personnel reasonably likely to have knowledge concerning, the subject matter of each specific interrogatory, on the ground that requiring UBS to provide any such information and to search the electronic and paper files of every UBS employee would be unreasonably burdensome. In responding to these Interrogatories and Request for Production, UBS will conduct a reasonably diligent, good faith review of files and make inquiries to personnel located at its principal places of business in Stamford, Connecticut and New York, New York who were substantively involved in work on matters related to HealthSouth during the Applicable Time Period (as defined below).

6.    UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they seek Irrelevant Information and/or supersede any written agreement by the parties or order of the Court concerning discovery in this action.

7.    UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they seek confidential or proprietary information of UBS, its customers, clients or counterparties, or its current or former affiliates, employees, officers or directors. UBS's production of information in response to the Interrogatories, or any other interrogatories, is subject to the stipulated protective order entered by the Court governing the exchange and production of confidential material or information.

8. UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they purport to require UBS to reach legal conclusions about any document, thing or event, or contain erroneous or argumentative factual allegations or legal assertions. By responding to the Interrogatories, UBS does not admit or waive its right to contest such allegations or assertions elsewhere, including at trial.

9. UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they seek information that is not presently in UBS's possession, custody, or control, or to the extent they seek information that is publicly available or equally available to Plaintiff as to UBS.

10. UBS objects to the Interrogatories to the extent that the answers thereto can be ascertained from documents that UBS has produced in this action. *See* Ala. R. Civ. P. 33(c).

11. UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that Plaintiff has failed to undertake reasonable steps to avoid imposing undue burden or expense on UBS. In particular, UBS objects to the Interrogatories, to each specific interrogatory, to the Definitions and Instructions to the extent that they are unduly burdensome and oppressive and unreasonably cumulative or duplicative, and that

they seek, inter alia, information contained or reflected in documents or testimony that has been or will be provided to Plaintiff in this action.

12.    UBS objects to each specific interrogatory to the extent each interrogatory contains multiple sub-parts that constitute multiple interrogatories.

13.    UBS objects to Definition No. 1 ("Employee") and to any specific interrogatory incorporating this Definition on the grounds that such definition and any such interrogatories are vague, ambiguous, overbroad and unduly burdensome, and that application of Definition No. 1 to the Interrogatories seeks to impose duties or obligations on UBS beyond those permitted by the Alabama Rules of Civil Procedure, particularly insofar as Definition No. 1 seeks to include within the term "employee" undefined "accountants," "agents," "independent contractors," "advisors," and "consultants of such entity, person or persons."

14.    UBS objects to Definition No. 3 ("HealthSouth-related entity(ies)" and to any specific interrogatory incorporating this Definition on the grounds that such definition and any such interrogatories are vague, ambiguous, and overbroad and unduly burdensome, particularly insofar as Definition No. 3 purports to include any entity, not specifically listed in Definition No. 3, in which HealthSouth or Richard Scrushy held any equity interest or to which HealthSouth "loaned money by any means."

15. UBS objects to Definition Nos. 4 ("March 1998 Offering"), 5 ("June 1998 Offering"), 6 ("September 2000 Offering"), 7 ("February 2001 Offering"), 8 ("September 2001 Offering"), 9 ("May 2002 Offering"), and 10 ("Offerings"), and to any specific interrogatories incorporating them, on the grounds that such "definitions" and any such interrogatories are predicated on erroneous and argumentative factual allegations or legal assertions. HealthSouth's initial issuance of unregistered debt securities was a distinct transaction from HealthSouth's subsequent preparation and filing of its "Registration Statements," as defined in Definition No. 14, and the subsequent exchange by HealthSouth of unregistered debt securities for Registered Notes, as defined in Definition No. 13, related to an "Exxon Capital" exchange offer conducted by HealthSouth without any participation by UBS or any underwriter.

16. UBS objects to Definition Nos. 15 and 16, to the extent that they purport to define "UBS Defendants," "You," or "Your" to include (or to otherwise require the provision of information from) persons other than UBS Securities LLC and its officers and employees on the grounds that UBS Securities LLC's corporate parent UBS AG is not a party to this lawsuit, that application of the definition to the individual requests causes them to be overly broad, unduly burdensome, and to seek Irrelevant Information, and that the Definitions and Instructions purport to impose burdens or obligations on UBS (as defined herein)

that exceed the scope of reasonable and permissible discovery under the Alabama Rules of Civil Procedure. UBS further objects to Definitions Nos. 15 and 16 to the extent they purport to include non-parties Benjamin Lorello, William McGahan, or Howard Capek. UBS will only provide information relating to non-parties UBS AG and Messrs. Lorello, McGahan and Capek to the extent such information is within its possession, custody or control.

Notwithstanding the foregoing General Objection, in order to avoid any dispute, UBS has provided in response to the Specific Requests below information regarding UBS AG's business dealings with or relating to HealthSouth. By doing so, UBS does not concede that any information in the possession of UBS AG is relevant or discoverable in the matter, that UBS AG is subject to jurisdiction or discovery in this action, or that the separate corporate existences of UBS and UBS AG can be ignored.

17.    UBS objects to Instruction Nos. 17, 18 and 19 to the extent that they purport to expand UBS's discovery obligations beyond those imposed by the Alabama Rules of Civil Procedure. UBS will provide a privilege log, if, as and when appropriate, in accordance with the Alabama Rules of Civil Procedure, the Court's direction, or the parties' agreement.

18.    UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that any of them

seek information without regard to any time period on the ground that they are overly broad, unduly burdensome and seek Irrelevant Information.

19.    UBS objects to the Interrogatories, to each specific interrogatory and to the Definitions and Instructions to the extent that they purport to demand information relating to any period that exceeds the period from March 1, 1999 through March 19, 2003, on the ground that the application of a broader time period would render any specific interrogatory overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Except as to UBS's response to Interrogatory No. 9 or as otherwise explicitly stated, UBS's responses, and any production of information herein, are limited to the time period beginning on March 1, 1999 and ending on March 19, 2003 (the "Applicable Time Period").

20.    No objection, or lack thereof, made in the General Objections or in the responses to the specific interrogatories, shall be deemed either an admission by UBS that such information is relevant, material or admissible, or a waiver of UBS's rights to raise further objections to these Interrogatories.  UBS's responses to the Interrogatories are based on its investigation to date of those sources within UBS where UBS reasonably believes responsive documents and information may exist.  UBS's responses to the Interrogatories are therefore limited by present recollection and records and information that can be ascertained

with reasonable diligence. Accordingly, these Responses and Objections are subject to and without waiver of: (a) UBS's right to object to other interrogatories directed to the subject matter of the Interrogatories; (b) UBS's right to make additional or supplemental objections to the Interrogatories or other interrogatories; or (c) UBS's right to revise, correct, supplement or clarify these responses or objections. Without in any way obligating itself to do so, UBS reserves the right to amend, supplement, correct or modify its responses and objections, and to rely on such supplemented, corrected, amended or modified responses and objections in any proceeding in this action.

21.    UBS reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissiblity of any information or documents produced. The production of documents or provision of information does not constitute an admission by UBS that such material or information is relevant to this action or admissible in evidence.

## SPECIFIC OBJECTIONS AND RESPONSES

<u>INTERROGATORY NO. 1</u>:

      Identify all financial transactions or business relationships since January 1, 1996 involving HealthSouth or any of its directors or Officers (including any member of his or her family and every family or business entity in which such director or Officer holds a direct or indirect interest) in which You played a role as an underwriter, initial purchaser, financial advisor, lender or in any other capacity.

RESPONSE:

      UBS objects to Interrogatory No. 1 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous.  In particular, Plaintiff has not defined the terms "financial transactions," "business relationships," "underwriter," "initial purchaser," and "financial advisor."  UBS further objects to Interrogatory No. 1 on the ground that this Interrogatory is overbroad in that this Interrogatory asks UBS to identify all "financial transactions" and "business relationships" in which UBS played a role in "any . . . capacity."

      UBS additionally objects to Interrogatory No. 1 to the extent that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, UBS objects to this request to the extent that this Interrogatory purports to request UBS to identify routine trading activities involving HealthSouth securities or any business relationships involving any

HealthSouth director or Officer or any business related to HealthSouth in which such directors or Officers may have had some financial interest, or the business activities of any non-party to this action, including non-party UBS AG.

Subject to and without waiving the General Objections, the specific objections set forth in response to this specific interrogatory, or UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to **APPENDIX A** for a listing of (a) transactions in which HealthSouth retained or used the services of the Investment Banking Department of UBS during the Applicable Time Period; (b) credit facilities that non-party UBS AG made available to HealthSouth or that were guaranteed by HealthSouth during the Applicable Time Period; and (c) credit facilities, or the amendment thereof, that were requested from non-party UBS AG by HealthSouth during the Applicable Time Period.

In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG have produced to the Document Depository.

INTERROGATORY NO. 2:

Identify, by transaction or business relationship, each of Your current or former employees (excluding clerical staff) who performed services in connection with any of the transactions or business relationships referenced in Interrogatory No. 1, including such employee's (a) title at the time of the transaction, (b) description of duties and responsibilities in connection with such

transactions, and (c) amount of time spent in connection with their work on these transactions.

RESPONSE:

UBS objects to Interrogatory No. 2 on the grounds set forth above in the General Objections and incorporates by reference the entirety of its response to Interrogatory No. 1, including all objections thereto. UBS further objects to Interrogatory No. 2 on the grounds that this Interrogatory is vague and ambiguous, In particular, Plaintiff has not defined the terms "services" and "duties and responsibilities."

UBS further objects to Interrogatory No. 2 on the grounds that this Interrogatory is unreasonable, unduly burdensome and incapable of response to the extent that this Interrogatory purports to seek the identification of each and every current and former UBS and UBS AG employee, with the exception of clerical staff, who "performed services in connection with any of the transactions," and to identify the "amount of time spent in connection with their work on these transactions" for each such employee.

Subject to and without waiving the General Objections or the objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to the "**Project Group List**" column of the table attached hereto as **APPENDIX A** for a listing of individuals identified at this time

as having worked on the transactions listed therein.  In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository, including, but not limited to, the documents identified in **APPENDIX B**.

In response to subpart (b) of Interrogatory No. 2, UBS refers Plaintiff to the title and department of each individual whose name appears in **APPENDIX A** hereto, as that information reflects each such individual's duties and responsibilities in connection with each such transaction.  In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS refers Plaintiff to the documents that UBS and UBS AG have produced to the Document Depository, including the documents identified in **APPENDIX B**.

In response to subpart (c) of Interrogatory No. 2, UBS responds that during the Applicable Period, UBS and UBS AG employees were not required to record the amount of time spent in connection with the type of transactions at issue.  While UBS has, to date, located one document that attempts to track days (or portions thereof) spent upon particular engagements and has produced that document to Plaintiff at control numbers UBS/HS 617575 - UBS/HS 617610, UBS does not believe that the document is a reliable indication of the time spent on each engagement by all UBS and UBS AG employees who were involved in the transactions referenced in **APPENDIX A**.  Because the requested information

otherwise was not contemporaneously recorded by UBS or UBS AG and concerns transactions that occurred several ago, subpart (c) of Interrogatory No. 2 is unreasonable and incapable of response without speculation.

INTERROGATORY NO. 3:

Identify all potential or proposed transactions or business relationships since January 1, 1996 involving HealthSouth or any of its directors or officers (including any member of his or her family or business entity in which such director or officer holds a direct or indirect interest) in which you played a role as an underwriter, initial purchaser, financial advisor or in any other capacity.

RESPONSE:

UBS objects to Interrogatory No. 3 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory is vague and ambiguous. In particular, Plaintiff has not defined the terms "potential or proposed transactions," "business relationships," "underwriter," "initial purchaser," and "financial advisor." UBS further objects to Interrogatory No. 3 on the ground that this Interrogatory is overbroad in that asks UBS to identify all "potential or proposed transactions" and "business relationships" in which UBS played a role in "any capacity."

UBS additionally objects to Interrogatory No. 3 to the extent that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. In particular, UBS objects to the extent that this

Interrogatory purports to request UBS to identify any proposed trading activities involving HealthSouth securities or any business relationships involving any HealthSouth director or Officer or any business related to HealthSouth in which such directors or officers may have had some financial interest.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to **APPENDIX A** for a listing of (a) contemplated transactions in which HealthSouth retained or used the services of the Investment Banking Department of UBS during the Applicable Time Period; and (b) credit facilities, or the amendment thereof, that were requested from non-party UBS AG by HealthSouth during the Applicable Time Period.

In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository.

INTERROGATORY NO. 4:

Identify with respect to each potential or proposed transactions or business relationships each of your current or former employees (excluding clerical staff) who performed services in connection with any of the transactions or business relationships referenced in Interrogatory No. 1, including such employee's (a) title at the time of the transaction, (b) description of duties and responsibilities in connection with such transactions, and (c) amount of time spent in connection with their work on these transactions.

RESPONSE:

UBS objects to Interrogatory No. 4 on the grounds set forth above in the General Objections and incorporates by reference the entirety of its response to Interrogatory No. 3, including all objections thereto.   UBS further objects to Interrogatory No. 4 on the grounds that this Interrogatory is vague and ambiguous. In particular, Plaintiff has not defined the  terms "services" and "duties and responsibilities."

UBS further objects to Interrogatory No. 4 as nonsensical, because it refers both to "potential or proposed transactions or business relationships" and the "transactions or business relationships referenced in Interrogatory No. 1."

UBS further objects to Interrogatory No. 4 on the grounds that this Interrogatory is unreasonable, unduly burdensome and incapable of response to the extent that this Interrogatory purports to seek the identification of each and every current and former UBS and UBS AG employee, with the exception of clerical staff, who "performed services in connection with any of the transactions or

business relationships," and to identify the "amount of time spent in connection with their work on these transactions" for each such employee.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to the "**Project Group List**" column of the table attached hereto as **APPENDIX A** for a listing of individuals identified at this time as having worked on the proposed transactions listed therein. In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository, including, but not limited to, the documents identified in **APPENDIX B**.

In response to subpart (b) of Interrogatory No. 4, UBS refers Plaintiff to the title and department of each individual whose name appears in **APPENDIX B** hereto, as that information reflects each such individuals duties and responsibilities in connection with each such transaction. In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS refers Plaintiff to the documents that UBS and UBS AG have produced to the Document Depository, including the documents identified in **APPENDIX B**.

In response to subpart (c) of Interrogatory No. 4, UBS responds that during the Applicable Period, UBS and UBS AG employees were not required to

record the amount of time spent in connection with the type of transactions at issue. While UBS has, to date, located one document that attempts to track days (or portions thereof) spent upon particular engagements and has produced that document to Plaintiff at control numbers UBS/HS 617575 – UBS/HS 617610, UBS does not believe that the document is a reliable indication of the time spent on each engagement by all UBS or UBS AG employees who were involved in the proposed transactions referenced in **APPENDIX A**. Because the requested information otherwise was not contemporaneously recorded by UBS or UBS AG and concerns transactions that occurred from four to eight years ago, subpart (c) of Interrogatory No. 4 is unreasonable and incapable of response without speculation.

<u>INTERROGATORY NO. 5</u>:

Identify, by Offering, each Person who was responsible for conducting any due diligence investigation or review on your behalf in connection with any of the Offerings.

RESPONSE:

UBS objects to Interrogatory No. 5 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory is overly broad, and that the phrases "responsible," "due diligence investigation" and "review" and "in connection with" are vague and ambiguous. UBS additionally objects that Interrogatory No. 5 calls for a legal conclusion as "due diligence," may, in some instances, be an affirmative defense to liability under certain provisions of the

securities laws.  UBS additionally objects to this Interrogatory to the extent that this Interrogatory implies that UBS had a duty to perform "due diligence investigation or review" with respect to any offering of securities in which UBS did not participate.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, and without characterizing the actions taken with respect to each of these individuals as "due diligence," UBS refers Plaintiff to the "**Project Group List**" column of the table attached hereto as **APPENDIX A** for a listing of individuals who performed reviews, participated in due diligence or otherwise performed work on behalf of UBS in connection with the private placement of:  (a) $350 million of 10 ¾% senior subordinated HealthSouth notes due 2008 in September 2000 (the "September 2000 Private Placement"); (b) $375 million of 8 ½% senior HealthSouth notes due 2008 in February 2001 (the "February 2001 Private Placement"); (c) $200 million of 7 3/8% senior HealthSouth notes due 2006 and $400 million of 8 3/8% senior HealthSouth notes due 2011 in September 2001 (the "September 2001 Private Placement"), and (d) $1 billion of 7 5/8% senior unsecured HealthSouth notes due 2012 in May 2002 (the "May 2002 Private Placement") (collectively, the "Private Placements").

In addition, other initial purchasers in the Private Placements conducted due diligence, including, but not limited to, joint-lead managers Deutsche Bank (in September 2000, September 2001 and May 2002) and Bank of America (in May 2002).   Moreover, the initial purchasers, including UBS, retained outside counsel – Pillsbury, Madison & Sutro LLP (later Pillsbury Winthrop LLP) (hereinafter "Pillsbury") – in connection with each of the Private Placements.  On behalf of the Initial Purchasers, Pillsbury conducted due diligence in each of the Private Placements.  UBS refers Plaintiff to the documents produced by Pillsbury for information relating to those individuals from Pillsbury who worked on each of the Private Placements, including documents bearing control numbers PWSP 005155 – PWSP 005164; PWSP 012339 – PWSP 012350; and PWSP 017604 – PWSP 017611.   In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository, including, but not limited to: UBS/HS 188799 – UBS/HS 188814; UBS/HS 245642 – UBS/HS 245679; UBS/HS 284832 – UBS/HS 284880; and UBS/HS 544276 – UBS/HS 544294.

Finally, in addition to the due diligence, reviews and other work performed in connection with the Private Placements, members of UBS's project groups, during the Applicable Time Period, also relied on or referred to due

diligence, reviews and/or work that was performed by the individuals identified as having worked on the other transactions identified in **APPENDIX A**.

In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository, including, but not limited to: UBS/HS 590906 – UBS/HS 590912; UBS/HS 240051 – UBS/HS 240052; UBS/HS 487443 – UBS/HS 487516; UBS/HS 577399 – UBS/HS 577340; UBS/HS 590916 – UBS/HS 590917; UBS/HS 559937 – UBS/HS 559963; UBS/HS 590918 – UBS/HS 590920; UBS/HS 577336; UBS/HS 584939 – UBS/HS 584944; UBS/HS 590921 – UBS/HS 590927; UBS/HS 577337 – UBS/HS 577338; UBS/HS 527082 – UBS/HS 527084; UBS/HS 583253; UBS/HS 239474 – UBS/HS 239475; UBS/HS 577341 – UBS/HS 577343; UBS/HS 617611; UBS/HS 565981; UBS/HS 568399; UBS/HS 486006; UBS/HS 590936 – UBS/HS 590937; UBS/HS 277440 – UBS/HS 277442; UBS/HS 590942 – UBS/HS 590943; UBS/HS 590944 – UBS/HS 590947; UBS/HS 241343 – UBS/HS 241344; UBS/HS 555257 – UBS/HS 555258 (September 2000 Private Placement); UBS/HS 589708 – UBS/HS 589709; UBS/HS 363036 – UBS/HS 363046 (February 2001 Private Placement); UBS/HS 617612 – UBS/HS 617615; UBS/HS 617616 – UBS/HS 617617; UBS/HS 248580 – UBS/HS 248585; UBS/HS 248579 (September 2001 Private Placement); and UBS/HS 511286; UBS/HS 538869 – UBS/HS 538894;

UBS/HS 511789; UBS/HS 511791 – UBS/HS 511794; UBS/HS 516532 –

UBS/HS 516535; UBS/HS 409415 – UBS/HS 409477; UBS/HS 293943 –

UBS/HS 293959; UBS/HS 409478; UBS/HS 516466 – UBS/HS 516476; UBS/HS

516532 – UBS/HS 516535; UBS/HS 511821; UBS/HS 517046; UBS/HS 472479 –

UBS/HS 472480; and UBS/HS 376503 (May 2002 Private Placement).

INTERROGATORY NO. 6:

        Identify, by Offering, each Person who was involved in pricing, marketing and/or distribution of the Unregistered Notes.

RESPONSE:

        UBS objects to Interrogatory No. 6 on the grounds set forth above in

the General Objections and on the ground that this Interrogatory is overbroad and

unduly burdensome, and seeks information that is neither relevant to the claims or

defenses of any party to this action nor reasonably calculated to lead to the

discovery of admissible evidence.  UBS additionally objects to Interrogatory No. 6

on the grounds that this Interrogatory is vague and ambiguous to the extent that the

terms "pricing," "marketing," and "distribution" are undefined and unclear.  UBS

further objects to Interrogatory No. 6 on the grounds that this Interrogatory

contains erroneous or argumentative factual allegations or legal assertions and

purports to require UBS to reach legal conclusions about any document, thing or

event.

        Subject to and without waiving the General Objections or the specific

objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that the following current and former employees of UBS or non-party UBS AG were involved in the pricing, marketing and/or distribution of the unregistered notes in the Private Placements: (i) David Barth, Ray Garson, Alex Geier, Michael Leder, Swee-Ching Lim, and Ed Massaro (September 2000 Private Placement); (ii) David Barth, Alex Geier, Frank Hoener, Michael Leder, and Ed Massaro (February 2001 Private Placement); (iii) David Barth, Ray Garson, Suneel Kamlani, Todd Mahoney, Ed Massaro, Tom McErlean, J.J. McKoan, Rosemary Sisson, Tim Steele, and Christian Stewart (September 2001 Private Placement); and (iv) Rob Dishner, Ray Garson, Alex Geier, Michael Leder, Brett Matkins, Ed Massaro, Todd Mahoney, Tom McErlean, J.J. McKoan, Christian Stewart and Andreas Wyler (May 2002 Private Placement).

In addition, pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS further refers Plaintiff to the documents that UBS and UBS AG produced to the Document Depository.

INTERROGATORY NO. 7:

Identify, by Offering, each Person (including counsel or other representative) who participated on your behalf in preparation or review of the Registration Statements or in any other aspect of the exchange process, including, but not limited to, pricing, marketing and/or distribution of the Registered Notes.

RESPONSE:

UBS objects to Interrogatory No. 7 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous. In particular, Plaintiff has not defined the terms "counsel," "preparation," "review," "exchange process," "pricing," "marketing," and "distribution." UBS further objects to Interrogatory No. 7 on the grounds that this Interrogatory contains erroneous or argumentative factual allegations or legal assertions and purports to require UBS to reach legal conclusions about any document, thing or event.

Subject to and without waiving the General Objections or specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that HealthSouth prepared and filed the Registration Statements for the Exxon Capital Exchanges that followed the Private Placements without any involvement by UBS or UBS AG in that process.

UBS further responds that UBS (or UBS AG) was not involved in the pricing, marketing and/or distribution of the Registered Notes issued by

HealthSouth in connection with any Exxon Capital Exchange. UBS additionally responds that plaintiffs in the putative class action pending in the Northern District of Alabama have indicated that they intend to depose Pillsbury, who served as outside counsel to the initial purchasers in the Private Placements. During such deposition, Plaintiff can inquire as whether Pillsbury had any involvement in "the preparation or review of Registration Statements or in any other aspect of the exchange process." As stated above, UBS had no such involvement, and UBS did not direct Pillsbury to have any such involvement.

INTERROGATORY NO. 8:

Identify, by Offering, the members of Your commitment committees (or any other body charged with the authority to review and/or approve investment banking transactions at UBS) who reviewed and/or approved your participation in any of the Offerings, or other transactions involving HealthSouth or any of its employees, directors or Officers.

RESPONSE:

UBS objects to Interrogatory No. 8 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous. Among other things, Plaintiff has not defined the terms "commitment committees," "transactions," "reviewed and/or approved," and "participation." UBS further objects to this Interrogatory on the grounds that this Interrogatory contains erroneous or argumentative factual allegations or legal assertions and purports to require UBS to reach legal conclusions about any

document, thing or event.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS states that some or all of the transactions identified in **APPENDIX A** were reviewed and/or approved by the following committees:  High Yield Capital Markets ("High Yield"), Credit Risk Management Americas ("CRM"), the New Business Commitments Committee ("NBCC"), the Global Syndicated Finance Commitments Committee ("GSFCC"), the Leveraged Finance Commitments Committee ("LFCC"), the Business Review Group ("BRG"), Credit Risk Control ("CRC"), the UBS Management Committee and the UBS Management Reputation Committee.  Pursuant to Rule 33(c) of the Alabama Rules of Civil Procedure, UBS refers Plaintiff to the table attached as **APPENDIX C** hereto for a listing of documents that identify the specific committees, and the members thereof, that reviewed or approved the transactions identified in **APPENDIX A**.

INTERROGATORY NO. 9:

Identify, by Offering, any of your directors, officers, employees or representatives who provided information in any civil, criminal, regulatory or governmental inquiry, investigation or proceeding concerning HealthSouth.

RESPONSE:

UBS objects to Interrogatory No. 9 on the grounds set forth above in

the General Objections and on the grounds that this Interrogatory is vague and ambiguous to the extent this Interrogatory purports to seek information regarding every individual who may have "provided information" in such inquiries, and "by Offering."

UBS additionally objects to Interrogatory No. 9 on the grounds that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. UBS further objects to this Interrogatory to the extent that this Interrogatory seeks information that is not within the control of UBS.

Subject to, as limited by, and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that UBS is aware that the following current and former employees of UBS provided testimony in various proceedings or investigations concerning HealthSouth (other than the consolidated civil securities litigation pending in the Northern District of Alabama before Judge Bowdre and this action): Austin Burkett, Howard Capek, Alexander Geier, Michael Farah, Michael Leder, Benjamin Lorello, Peggy Fay McMahon, William McGahan, Roderick O'Neill, Nicholas Pepe, John Wagner, and Scott Wollard. UBS further

responds that Andreas Wyler, employed by non-party UBS AG, also provided such prior testimony.  UBS previously identified the custodians of all documents produced in any governmental inquiry concerning HealthSouth.

INTERROGATORY NO. 10:

Provide an itemization, including date, amount, source, and nature of work done or service provided, of all fees, commissions, interest income, capital and non-capital gains, expense reimbursements, or other income or revenues of any type, kind or description earned or received by or paid to UBS or any UBS affiliated entity, whether paid by HealthSouth or any other entity or person, in connection with each and every:

a.    purchase or sale of HealthSouth or HealthSouth-related entity securities;

b.    debt or equity offering or financing by or for HealthSouth or HealthSouth-related entity;

c.    loan or credit facility to or for HealthSouth, a HealthSouth-related entity, or an officer or director of HealthSouth or a HealthSouth-related entity;

d.    merger, acquisition, asset sale, stock sale or spin off involving HealthSouth or a HealthSouth-related entity on any side of the transaction;

e.    transaction in connection with which UBS or any UBS affiliated entity represented both HealthSouth or a HealthSouth-related entity or another party to the transaction;

f.    investment banking service for HealthSouth, a HealthSouth-related entity, or any officer or director of HealthSouth or a HealthSouth-related entity;

g.    fairness opinion issued to, for, or at the request of HealthSouth, a HealthSouth-related entity, or an officer or director of HealthSouth or a HealthSouth-related entity;

       h.     re-purchase or "buy back" of stock by HealthSouth or a HealthSouth-related entity;

       i.     equity research report issued by an equity analyst relating to HealthSouth or a HealthSouth related entity;

       j.     other consulting, service, transaction, or work of every kind and nature for, on behalf of, or at the request of HealthSouth, a HealthSouth-related entity, or any officer or director of HealthSouth or a HealthSouth-related entity.

RESPONSE:

UBS objects to Interrogatory No. 10 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory is vague and ambiguous. Among other things, Plaintiff has not defined the terms "service", "affiliated entity," "consulting", "transaction" and "work." UBS further objects to Interrogatory No. 10 on the ground that this Interrogatory is overbroad and unduly burdensome in that this Interrogatory asks UBS to identify: (a) any "income or revenue of any type, kind or description earned or received by or paid to … any UBS affiliated entity"; (b) monies paid by "any other entity or person" other than HealthSouth; (c) all "purchase[s] or sale[]s of HealthSouth or HealthSouth-related entity securities"; and (d) monies paid in connection with any "consulting, service, transaction, or work" involving "any officer or director of HealthSouth or a HealthSouth-related entity."

UBS additionally objects to Interrogatory No. 10 on the grounds that this Interrogatory seeks information that is neither relevant to the claims or

defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, UBS objects to this request to the extent that this Interrogatory purports to request information regarding monies paid to or earned by UBS in connection with (a) routine trading activities involving HealthSouth or HealthSouth-related securities; (b) any transaction (or other service) requested by or provided to any HealthSouth-related entity or HealthSouth director or officer; (c) services or transactions done at the request of any entity other than HealthSouth; or (d) interest or income earned by UBS on monies paid to it by HealthSouth.

Subject to, as limited by, and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that, through March 2003:

1. UBS received a $300,000 fee for advising HealthSouth in connection with HealthSouth's acquisition of American Rehability Services acquisition, which closed on or about June 29, 1999;

2. UBS received $5,299,506 in gross revenues, plus $861,735 in expense reimbursements, in connection with the September 2000 Private Placement;

3. UBS and UBS AG received gross revenues of $5,760,000 in aggregate arrangement and commitment fees, gross revenues of $2,230,000 in aggregate interest payments, plus $674,078 in expense reimbursements (excluding $3,010,000 in losses

associated with secondary trading, hedging activities, and mark-to-market from holding HealthSouth exposure), in connection with HealthSouth's $400 million 2000 short-term credit facility, $187 million in TROLS, and a subsequent $1.25 billion 2002 revolving credit agreement;

4.    UBS received $3,543,485 in gross revenues, plus $288,026 in expense reimbursements, in connection with the February 2001 Private Placement;

5.    Non-party UBS AG received $216,094, inclusive of interest, fees, and hedging costs, in connection with a loan to MedCenterDirect.com that was guaranteed by HealthSouth. To date, neither MedCenterDirect.com nor HealthSouth has repaid the $20 million in principal and nearly $10 million in interest now owed to UBS AG under that loan;

6.    UBS received $1,650,771 in gross revenues, plus expense reimbursements of $314,943, in connection with the September 2001 Private Placement;

7.    Non-party UBS AG received $131,000 in net fees and interest, in connection with a $6 million loan extended to Parking Deck L.L.C. that was guaranteed by HealthSouth;

8.    On May 14, 2002, UBS purchased 5,275,360 shares of HealthSouth stock at $14.05 per share from Richard Scrushy and resold that stock in a series of block trades at a price of $14.10 per share, resulting in gross revenues of $263,768; UBS was also reimbursed for $1,953 in expense reimbursements;

9.    UBS received $5,793,150 in gross revenues, plus $257,709 in expense reimbursements, in connection with the May 2002 Private Placement, which amount includes a $382,500 fee for facilitating the buy-back of certain of these bonds in September 2002;

10.    UBS received a $1,500,000 fee, plus $22,084 in expense

reimbursements, in 2002 for providing an opinion to HealthSouth as to the fairness, from a financial point of view, of Richard Scrushy's repayment of a HealthSouth loan with of 2,506,770 shares of HealthSouth common stock;

11.    UBS received expense reimbursements of $33,341 and $58,985, in connection with proposed sales or spin-offs of HealthSouth's diagnostic and surgery businesses, respectively;

12.    Non-party UBS AG received $1,119,092, inclusive of interest, fees, and hedging costs, in connection with an $82.5 million loan to First Cambridge HCI Acquisitions, LLC that was guaranteed by HealthSouth;

13.    UBS further refers Plaintiff to the documents produced to the Document Depository bearing production numbers UBS/HS 00612476 – 00613324, UBS/HS N002_00000533 – 1000, UBSHS-N002A_00000001 – 360, and UBS_HS-N004_0000001 – 112 (reflecting bond trading in HealthSouth securities executed by or through UBS); and UBS/HS 00612476 – 00613324 (reflecting daily profit and loss figures and net positions for trading in HealthSouth stock by the UBS U.S. Equities Division).

<u>INTERROGATORY NO. 11</u>:

If UBS contends that it lost money in connection with any HealthSouth transaction or HealthSouth-related transaction, provide the following:

a.    a description of the transaction, including the parties involved and the date of the transaction; and

b.    the amount of the loss.

RESPONSE:

UBS objects to Interrogatory No. 11 on the grounds set forth above in the General Objections on the additional grounds that this Interrogatory is vague

and ambiguous.  In particular, Plaintiff has not defined the terms "transaction" or "HealthSouth-related transaction."

UBS further objects to Interrogatory No. 11 on the grounds that it is premature at this stage of the litigation.  UBS additionally objects to this Interrogatory to the extent it seeks information regarding trading gains or losses in HealthSouth securities held in any customer accounts.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving  UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to the documents produced to the Document Depository bearing  production  numbers  UBS/HS  N002_00000533  –  1000,  UBSHS-N002A_00000001 – 360, and UBS_HS-N004_0000001 – 112,  reflecting trading in HealthSouth debt securities.  UBS's proprietary debt trading of HealthSouth debt was primarily conducted by a desk whose trades were executed under book numbers 715, 714, 713, 882A, 591A, 666, 841A, 879A, and 766A; the purpose of other trades was to facilitate and execute client orders, although other trading desks may have taken a position in HealthSouth debt to accommodate client orders. Those transactions delineated with an "ADP Code" that begins with "001" indicate an internal transfer and are not actual transactions.

In addition, UBS also refers Plaintiff to the documents produced to the

Document Depository bearing production numbers UBS/HS 00612476 – 00613324, reflecting the daily profit and loss figures and net positions for trading in HealthSouth stock for the period March 1, 1999 through March 31, 2003 for each trading desk in the UBS Securities U.S. Equities Division.  UBS's proprietary equity trading was conducted by the following trading desks:  IDA; BSK; ELEC_MM;   ELEC_MM2;   ELEC_MMEFP;   HSP;   PCE;   PRG_EVNT; PRG_INDX; PRG_PROG; PTE; RA; RES; SET; STAT; USB; AND USCH-L. Trades executed by UBS's other trading desks were to execute client orders, although those trading desks may have taken a position in HealthSouth stock to facilitate those orders.

UBS further responds that UBS that HealthSouth agreed to indemnify UBS against expenses or losses incurred by UBS in connection with the services provided by UBS to HealthSouth in various indemnification agreements. Pursuant to those agreements, UBS is entitled to recover from HealthSouth: (1) all legal fees and costs expended by UBS to respond to government investigations of HealthSouth's fraud and UBS's business dealings with HealthSouth; (2) all legal fees and costs expended by UBS to defend lawsuits brought against UBS (including this derivative action on HealthSouth's behalf), based on UBS's business dealings with HealthSouth; (3) any fines or judgments imposed upon UBS as a result of UBS's business dealings with HealthSouth; and (4) any interest to

which UBS may be entitled, to the maximum extent permitted by those contracts and applicable law.  At present, UBS has incurred more than $72 million in legal fees and costs, to respond to government investigations and defend these actions. The final amounts of UBS's legal fees and costs, fines, and judgments are unknown at present.

UBS further avers that non-party UBS AG loaned MedCenterDirect.com a total of $20 million, in reliance on HealthSouth's "absolute and unconditional" guarantee of that loan.  UBS AG has sued HealthSouth in *UBS AG, Stamford Branch* v. *HealthSouth Corp.*, No. 07-CV-8490 (S.D.N.Y.) to collect the amount owed by HealthSouth under that guarantee, which as of December 17, 2007 amounted to $29,348,336.04, and which continues to accrue interest daily under the terms of that agreement.

<u>INTERROGATORY NO. 12</u>:

From 1999 until 2003, provide the following information:

a.    the total revenue of UBS's healthcare investment banking group;

b.    the percentage of that revenue that was derived from work for HealthSouth or HealthSouth-related transactions; and

c.    a listing of where HealthSouth and HealthSouth-related entities ranked as compared with other clients of UBS's healthcare investment banking group in terms of revenue generated.

RESPONSE:

UBS objects to Interrogatory No. 12 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous.   In particular, Plaintiff has not defined the term "HealthSouth-related transactions."

UBS additionally objects to Interrogatory No. 12 to the extent that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, UBS objects to this request to the extent that this Interrogatory purports to request information regarding any company other than HealthSouth.

Subject to, and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS states:  (a) the total gross revenue and net revenue of UBS's Investment Banking Division's Healthcare Group ("Healthcare Group") from January 1, 1999 to December 31, 2003 was $834,700,000 and $526,400,000, respectively; and (b) the total gross revenue and net revenue of the UBS Healthcare Group from January 1, 1999 to December 31, 2003 in connection with HealthSouth transactions was $23,800,000 and $11,800,000, respectively.   As a result, HealthSouth accounted

for less than 2.9% of total gross healthcare sector revenues, and 2.2% of total net healthcare sector revenues.

As to subpart (c), UBS is determining whether it can determine the ranking of HealthSouth as compared with other clients of the UBS Healthcare Group based on revenue generation without undue burden or expense. If such information may be assembled without undue burden or expense, UBS will supplement this response.

<u>INTERROGATORY NO. 13</u>:

With respect to any involvement UBS had with any HealthSouth-related entity, including investment banking services, consultation, issuance of fairness opinions, loans, equity or debt financing transactions, IPO's or any other services or work of any kind, provide the following information:

  a. the nature of the involvement;

  b. the UBS employees who had any involvement with the HealthSouth-related entity;

  c. the fees, income or compensation of any type received by UBS related to involvement with the HealthSouth-related entity; and

  d. any profit or loss UBS attributes to its involvement with the HealthSouth-related entity.

RESPONSE:

UBS objects to Interrogatory No. 13 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous. In particular, Plaintiff has not defined the terms

"involvement",  "consultation", "services" and "work."

UBS additionally objects to Interrogatory No. 13 to the extent that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, UBS objects to the extent this Interrogatory purports to request information regarding any entity in which HealthSouth or Richard Scrushy held, acquired, or sold an equity interest or to which HealthSouth loaned money by any means.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to its responses to Interrogatories Nos. 1, 2, 3, 4, and 10, including **APPENDIX A** hereto.

<u>INTERROGATORY NO. 14</u>:

Identify by year the total salary, bonus, severance, if applicable, and compensation of any type, separately identifying the amounts and/or value, the year paid, and the basis for such payment, as well as the dates of employment for the following individuals:

a.    Ben Lorello;

b.    William McGahan;

c.    Rod O'Neill;

d.    Geoff Harris; and

e.    Howard Capek.

RESPONSE:

UBS objects to Interrogatory No. 14 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory is vague and ambiguous.   In particular, Plaintiff has not defined the phrase "basis for such payment."

UBS further objects to Interrogatory No. 14 on the ground that this Interrogatory is overbroad and seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the General Objections or  the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that:

a.    Benjamin Lorello was hired by UBS in March 1999 as the Head of the firm's Global HealthCare Investment Banking Group to develop, build, and manage that group.  Mr. Lorello's compensation was based on that role, and was not tied to or based upon work performed for HealthSouth or any other specific client of that Group; during 2003, Mr. Lorello also served as a Vice Chairman and member of the 14-person Investment Banking Executive Committee for the

Americas, which during 2003 oversaw approximately 600 bankers.  Virtually all (approximately 94 percent) of the compensation Mr. Lorello received during 1999 through 2003 was guaranteed under his employment contract.  Between 1999 and 2003, Mr. Lorello's salary and bonuses totaled $12 million in 1999, $13.8 million in 2000, $12 million in 2001, and $11.41 million in 2002, plus "stay put" payments of $12 million and $5 million and a forgiveable loan of $3 million in 2002, and $10.82 million in 2003.  Mr. Lorello also received a grant of UBS AG registered stock upon joining UBS, as a replacement for accrued but deferred compensation from Mr. Lorello's previous employer.  Mr. Lorello remains employed by UBS to this day.

       b.      William McGahan was hired by UBS in March 1999 as the Deputy Head of the firm's Global Healthcare Investment Banking Group; in 2002, Mr. McGahan became the Co-Head of that group.  Mr. McGahan's compensation was not tied to or based upon work performed for HealthSouth or any other specific client of that group.  Mr. McGahan has also served as a Vice Chairman and a member of the 14-person Investment Banking Executive Committee for the Americas.  Virtually all (approximately 93 percent) of the compensation Mr. McGahan received between 1999 and 2002 was guaranteed under his employment contract.  Between 1999 and 2002, Mr. McGahan's salary and bonuses totaled $7 million in 1999, $7 million in 2000 plus a $1.2 million EOP grant, $7 million in

2001, and 7 million in 2002 plus "stay put" payments in 2002 of $7 million and $5 million, plus a forgiveable loan of $2 million ($1 million of which Mr. McGahan agreed to repay).   Mr. McGahan also received a grant of UBS AG registered stock upon joining UBS, as a replacement for accrued but deferred compensation from Mr. McGahan's previous employer.   Mr. McGahan left UBS in May 2003.   Mr. McGahan's compensation during 2003 was a prorated portion of a $200,000 annual salary.

c.     Rod O'Neill was hired by UBS in March 1999 as a banker in the firm's Global Healthcare Investment Banking Group.   Between 1999 and 2003, Mr. O'Neill's salary and bonuses totaled $750,000 in 1999, $1 million in 2000, $925,000 in 2001 (plus a grant of 10,000 stock options and a $200,000 "stay put" payment), $800,000 in 2002 (plus a $1.5 million "stay put" payment), and $500,000 in 2003.   Mr. O'Neill left UBS on or about June 1, 2004.

d.     Geoff Harris was hired by UBS in March 1999 as Head of the Global Healthcare Research Group for the Equity Research Division.   Virtually all (approximately 96 percent) of the compensation Mr. Harris received between 1999 and 2002 was guaranteed under his employment contract.   Between 1999 and 2002, Mr. Harris received salary and bonuses totaling $5 million in 1999, $5.95 million in 2000, $4.25 million in 2001, and a prorated portion of a $200,000 annual salary in 2002, plus two "stay put" payments of $5 million in 2002.   Mr. Harris

also received a grant of UBS AG registered stock upon joining UBS, as a replacement for accrued but deferred compensation from Mr. Harris' previous employer.  Mr. Harris left UBS in April 2002.

e.    Howard Capek was hired by UBS in May 1999 as a Research Analyst in UBS's Equity Research Department.  Between 1999 and 2002, Mr. Capek received salary and bonuses totaling $1.1 million in 1999, $1.25 million in 2000, $1.71 million in 2001, and $1.335 million in 2002.  Mr. Capek's compensation for 2003 was a prorated portion of a $175,000 annual salary.  Mr. Capek left UBS in July 2003.

INTERROGATORY NO. 15:

Please state the name, address, and telephone number of all persons known or believed by you, or to persons acting on behalf of or under the direction of you, including legal counsel, to have knowledge of any of the facts or matters at issue in this lawsuit, and state their relationship, if any, to the Corporation, its officers or employees.

RESPONSE:

UBS objects to Interrogatory No. 15 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory seeks information protected by the attorney-client privilege or work product doctrine. UBS additionally objects to this Interrogatory on the grounds that it is vague and ambiguous.  In particular, Plaintiff has failed to define the terms or phrases  "facts or matters at issue in this lawsuit," "relationship," and "Corporation."  UBS further

objects to this Interrogatory as premature at this stage of the litigation.

UBS additionally objects to this Interrogatory to the extent it purports to request information that is equally available to Plaintiff and HealthSouth, or that is not within the control of UBS, including, but not limited to, information regarding the addresses and telephone numbers of each of the individuals identified below.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS identifies the following persons and categories of persons as potentially possessing information relevant to some aspect of this case:

1.    Individuals and entities identified by plaintiffs in *In re HealthSouth Corp. Sec. Litigation*, No. 03-CV-BE-1500-S (N.D. Ala.) (the "Federal Action") as potentially having knowledge regarding the claims and defenses at issue in that case:  Richard Scrushy, Angela Ayers, Aaron Beam, Richard Botts, Jason Brown, Cathy Edwards, Catherine Fowler, Emery Harris, Will Hicks, Kenneth Livesay, Michael Martin, Malcolm "Tadd" McVay, Rebecca Kay Morgan, William Owens, Weston Smith, Virginia Valentine, Christopher Arrigo, Derrick Battle, P. Daryl Brown, Charles Brooks Buchanan, Thomas Carman, Richard Celeste, John Chamberlin, Rick Chambers, Edwin Crawford, Hannibal "Sonny" Crumpler, Kelly Cullison, Richard Davis, Jean Davis, Henry Duke, Mary Esclavon, Lynn Flemming, Patrick Foster, Robert Garner, Sage Givens, Joel Gordon, Brandon "Brad" Hale, Jon Hanson, Jack Hawkins, Diane Henze, William Horton, Larry House, Jan Jones, Susan

Jones-Smith, Dick Kampa, Russell Maddox, Robert May, Dr. McKinney, Leif Murphy, Charles Newhall III, Marca Pearson, Randy Platt, Daniel Riviere, Teresa Sanders, Steve Schlatter, Rick Schmitt, Gerald Scrushy, Greg Smith, Larry Striplin, George Strong, David Tanner, Anthony Tanner, Larry Taylor, Robert Thomson, Leanne Tyler, Michael Vines, Michael Waldheim, Philip C. Watkins, Brandy White, James Whitten, Bill Wittig, William Curtis Miller, Tom Hough, James Conley, Wayne "Snoop" Dunn, Karol Lloyd, Richard Dandurand, James Lamphron, G. Marcus Neas, Steve Alcauskas, David Barth, Conrad Bringsford, David Bawden, Francois Berthelot, Jenny Bertolosky, Austin Burkett, Michael Clulow, Mark Connelly, Dan Corkery, C.J. Corradino, John Crockett, N. Michael Farah, Douglas Fawell, Craig Fitt, Iain Franks, Raymond Garson, Alexander Geier, Victoria Gleason, Glen Goggins, Michael Gorelick, Geoffrey Harris, Gail Hawking, Frank Hoener, Margaret Holdampf, Vladimira Holeckova, Renata Jacobson, David Juge, David Kalal, David Kelly, Kristin Kusmierz, Sam Kwon, Dan Ladd, Rick Leaman, Michael Leder, Susan Lee, Todd Mahoney, Ed Massaro, Tom McErlean, Colleen McGee, Peggy Fay McMahon, Joseph Meisner, Lauren Mullen, Rose Munoz, Angela Muzzarelli, Hugh O'Hare, Roderick O'Neill, Nicholas Pepe, Phillip Pucciarelli, Mike Ravenesi, Gary Riddell, Christopher Ryan, Tom Salzano, Annette Spencer, John Wagner, Colleen Stewart, William Timmerman, Ken Weakley, Scott Wollard, Andreas Wyler, and Harvey Kelly; Howard Capek, Benjamin Lorello, and William McGahan; Alix Partners; and Ernst & Young.

2.  Each person named as a party to, or otherwise cited in the pleadings filed in, this action or the Federal Action;

3.  Each person already deposed or proposed to be deposed in this action or in the Federal Action, including each of the individuals or entities named in the initial deponent list provided by UBS to Plaintiff on May 18, 2007;

4.     Each current or former UBS employee identified in UBS's response to these interrogatories;

5.     Each person who testified at the jury trial in *United States* v. *Scrushy*, No. 03-CR-BE-530-S (N.D. Ala.);

6.     Each past and present member of HealthSouth's Board of Directors and subcommittees thereof, including the members of the Special Audit Review Committee of HealthSouth's Board;

7.     Each past and present member of HealthSouth's management (including, but not limited to, Chief Executive Officers, Presidents, General Counsels, Chief Financial Officers, and Treasurers);

8.     Each past and present member of HealthSouth's accounting department (including, but not limited to, each HealthSouth employee who participated in the HealthSouth accounting fraud or who made accounting entries which were later restated by HealthSouth);

9.     Representatives of the following entities, most knowledgeable about the services provided by each such entity to HealthSouth: Ernst & Young LLP, Balch & Bingham, Fulbright & Jaworski, Haskell Slaughter, Skadden Arps, Alvarez & Marsal, AlixPartners, Grant Thornton, KPMG, PricewaterhouseCoopers, and any consultant or adviser to HealthSouth in connection with whose services HealthSouth seeks to recover damages in this action from UBS;

10.    Representatives of the law firm Pillsbury Winthrop, most knowledgeable about the services provided by that firm to the initial purchasers of debt securities issued by HealthSouth between 1999 and 2003;

11.    Representatives of any credit-rating agencies that covered HealthSouth (*i.e.*, Moody's, Standard & Poor's, or Fitch), most knowledgeable about any credit ratings assigned to

HealthSouth;

12.     Each equity analyst who covered HealthSouth common stock;

13.     Representatives of the financial institutions that lent money to HealthSouth, was an initial purchaser of HealthSouth debt securities, or provided investment banking services to HealthSouth, including but not limited to the Bank of America, Deutsche Bank, JP Morgan Chase Bank, and Wachovia Bank; and

14.     Each of the following persons, to the extent not encompassed within the above categories:  James Bennett, Herbert Denton of Providence Capital, United States Attorney for the Northern District of Alabama Alice Martin, and Susan Zeeb.

INTERROGATORY NO. 16:

If you expect to call or may call a witness as an expert witness in the trial of the case, state with respect to each such expert witness the following:

a.     His name, occupation, business address, and employer;

b.     The subject matter on which he is expected to testify, the substance of the facts and opinions to which he is expected to testify, and a summary of the grounds for each such opinion; and

c.     His education or experience or other background which you contend qualifies such person to testify as an expert witness in this case.

RESPONSE:

UBS objects to Interrogatory No. 16 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory seeks information protected from disclosure by the attorney work product doctrine and is premature at this stage of the litigation.  UBS will disclose information regarding any experts who will or may testify on behalf of UBS at trial at such time and

manner, as prescribed by the Court in this case.

<u>INTERROGATORY NO. 17</u>:

Identify any and all dates during which Howard Capek was restricted from publishing any report relating to any HealthSouth Securities, and identify the reasons for such restriction and the date it was removed.

RESPONSE:

UBS objects to Interrogatory No. 17 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and ambiguous. In particular, Plaintiff fails to define "restricted" and 'HealthSouth Securities."

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS responds that:

1.   UBS's records (produced to the Document Depository at UBS/HS 00481536-89) reflect that HealthSouth was on UBS's "restricted list" from June 15, 1999 to September 14, 1999 in connection with a potential transaction involving HealthSouth. Mr. Capek was brought "over the wall" in June 1999 to provide advice on appropriate valuation parameters on individual HealthSouth business units;

2.   HealthSouth was placed on UBS's "grey list" from September 21, 1999 through December 27, 2000 in connection with a possible sale of assets by HealthSouth. Mr. Capek considered himself to be restricted from publishing on HealthSouth from September 14, 1999 to early December 1999 or early January

2000.  UBS refers Plaintiff to the deposition transcript of Mr.
Capek for the reasons for that belief, and further identifies an e-
mail written by Mr. Capek and produced to the Document
Depository at UBS/HS 00124536 reflecting that Mr. Capek
held that belief as of January 21, 2000, and "Analyzers" for
October and November 1999 listing UBS's rating of
HealthSouth as "NA" with an asterisk indicating that
HealthSouth was "Restricted," produced to the Document
Depository at UBS/HS 00480720, at 834 and at UBS/HS
00480892, at 481015;

3.  HealthSouth was placed on UBS's "grey list" from May 6,
2002 through May 14, 2002 in connection with a block trade of
HealthSouth stock by Richard Scrushy.  Mr. Capek reviewed
documents prepared by UBS in connection with this trade, and
provided the UBS Equity Capital Markets Committee with an
update regarding the status of the health care sector,
HealthSouth's recent stock performance, and recent earnings
results, and accordingly was restricted from publishing
regarding HealthSouth on May 13 and 14, 2002;

4.  HealthSouth was placed on UBS's "grey list" from August 12,
2002 through August 27, 2002, in connection with a potential
sale or spin-off of HealthSouth's surgery centers and sale of
HealthSouth's diagnostic business.  HealthSouth was moved to
UBS's "restricted list" from August 27, 2002 through
December 2, 2002 in connection with this same deal.  Mr.
Capek was asked after the August 27 announcement to advise
on appropriate valuation parameters for the individual business
units relative to comparable publicly traded companies, and
thus became restricted until HealthSouth canceled the spin-off
in September 2002;

5.  HealthSouth was placed on UBS's "restricted list" from March
19, 2003 through March 21, 2003 as a result of a suspension of
trading in HealthSouth securities; and

6.     HealthSouth was placed on UBS's "restricted list" for one day, March 21, 2003, in connection with a downgrade of HealthSouth stock and suspension of research coverage.

INTERROGATORY NO. 18:

Identify all UBS transactions in HealthSouth Securities and identify the reasons and/or circumstances for entering into such transactions.

RESPONSE:

UBS objects to Interrogatory No. 18 on the grounds set forth above in the General Objections and on the additional grounds that this Interrogatory is vague and   ambiguous.   In particular, Plaintiff has not defined the terms "HealthSouth Securities," "transactions," "reasons" and "circumstances."

UBS further objects to Interrogatory No. 18 on the ground that this Interrogatory is overbroad, unreasonable, unduly burdensome and incapable of response to the extent that this Interrogatory asks UBS to identify "all UBS transactions in HealthSouth Securities" and "the reasons and/or circumstances for entering into such transactions."

UBS additionally objects to Interrogatory No. 18 to the extent that this Interrogatory seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  In particular, UBS objects to this request to the extent that this Interrogatory purports to request UBS to identify routine trading activities involving HealthSouth Securities.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS refers Plaintiff to the documents produced to the Document Depository bearing production numbers UBS/HS N002_00000533 – 1000, UBSHS-N002A_00000001 – 360, and UBS_HS-N004_0000001 – 112, reflecting trading in HealthSouth debt securities. UBS's proprietary debt trading of HealthSouth debt was primarily conducted by a desk whose trades were executed under book numbers 715, 714, 713, 882A, 591A, 666, 841A, 879A, and 766A; the purpose of other trades was to facilitate and execute client orders, although other trading desks may have taken a position in HealthSouth debt to accommodate client orders. Those transactions delineated with an "ADP Code" that begins with "001" indicate an internal transfer and are not actual transactions.

In addition, UBS also refers Plaintiff to the documents produced to the Document Depository bearing production numbers UBS/HS 00612476 – 00613324, reflecting the daily profit and loss figures and net positions for trading in HealthSouth stock for the period March 1, 1999 through March 31, 2003 for each trading desk in the UBS Securities U.S. Equities Division. UBS's proprietary equity trading was conducted by the following trading desks: IDA; BSK; ELEC_MM; ELEC_MM2; ELEC_MMEFP; HSP; PCE; PRG_EVNT;

PRG_INDX; PRG_PROG; PTE; RA; RES; SET; STAT; USB; AND USCH-L.

Trades executed by UBS's other trading desks were to execute client orders, although those trading desks may have taken a position in HealthSouth stock to facilitate those orders.

INTERROGATORY NO. 19:

Identify all investigations, inquiries and/or Wells inquiries of UBS by any governmental entity, including, without limitation, the Securities and Exchange Commission, the United States Department of Justice, and the New York Stock Exchange, from January 1, 1999 to the time of the response to these Interrogatories, including in your answer the current status and results of same.

RESPONSE:

UBS objects to Interrogatory No. 19 on the grounds set forth above in the General Objections and on the grounds that this Interrogatory is vague and ambiguous.  In particular, Plaintiff has not defined the terms "investigations," "inquiries" or "Wells inquiries."

UBS further objects to Interrogatory No. 19 on the grounds that it is overly broad and seeks information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.   In particular, UBS objects to this request to the extent that this Interrogatory purports to request information that is not related to HealthSouth.

UBS additionally objects to Interrogatory No. 19 on the grounds that

it seeks information not within the control of UBS or is protected from disclosure by the attorney work product doctrine.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS (a) refers Plaintiff to a letter from the SEC to Sullivan & Cromwell LLP dated December 20, 2004 (the "Wells Notice"); and (b) states that UBS has provided information and documents to the United States Department of Justice, New York Stock Exchange and United States House of Representatives Committee on Energy and Commerce relating to HealthSouth, but to its knowledge,  UBS presently is not the subject of any investigation by those entities relating to HealthSouth.

INTERROGATORY NO. 20:

State and describe the status and disposition by the SEC, specifically of the inquiry that was the subject of a Wells Notice that UBS received in or about December 2004 in connection with UBS's work for HealthSouth, including in your response the following:

a.      State in particular whether the said inquiry is ongoing or has been closed; and

b.      Identify all documents and correspondence advising UBS of the status of said inquiry, and of the proposed regulatory action that the Wells Notice advised UBS that SEC staff had recommended.

RESPONSE:

UBS objects to Interrogatory No. 20 on the grounds set forth above in

the General Objections and on the grounds that this Interrogatory seeks information that is not within the control of UBS or is protected from disclosure by the attorney work product doctrine.

Subject to and without waiving the General Objections or UBS's right to present additional evidence during the pendency of this case, UBS responds that, to the best of UBS's knowledge, the SEC's inquiry of UBS has not yet been closed and refers Plaintiff to the Wells Notice.

INTERROGATORY NO. 21:

Please state the name, address, telephone number and expected testimony of any witnesses (other than those identified in Interrogatory 15) you expect to testify at the trial of this matter.

RESPONSE:

UBS objects to Interrogatory No. 21 on the grounds set forth above in the General Objections and on the grounds that it is premature at this stage of the litigation.  UBS will provide the identify of its witnesses who may or will be called to testify at trial at such time and in such manner as may be prescribed by the Court in this case.

## **RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**

REQUEST NO. 1:

Provide copies of any and all documents, reports, analysis or things identified and/or referenced in your responses to the Interrogatories herein.

RESPONSE:

UBS objects to Request No. 1 on the grounds set forth above in the General Objections and on the grounds that it is vague and ambiguous. In particular, Plaintiff has not defined the term "things." UBS further objects to this Request to the extent it seeks information that is protected from discovery by the attorney work product doctrine.

Subject to and without waiving the General Objections or the specific objections set forth in response to this specific Interrogatory, and without limiting or waiving UBS's right to present additional evidence during the pendency of this case, UBS states that it has produced to the Document Depository the documents specifically identified or referenced in the responses to the Interrogatories provided herein, with the exception of the Wells Notice, which will be produced.

Dated:  January 16, 2008

*AS TO OBJECTIONS AND*
*LIMITATIONS:*

*Of Counsel:*

Robert J. Giuffra, Jr.
Brian T. Frawley
Julia M. Jordan
Jeffrey T. Scott
Laurent S. Wiesel
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for UBS Securities LLC*

_____ **s/ W. Michael Atchison** _____
W. Michael Atchison (ATC003)
Jay M. Ezelle (EZE002)
Robin H. Jones (JON143)
STARNES & ATCHISON LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
(205) 868-6000

*Counsel for UBS Securities LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be served on the following counsel pursuant to the Court's prior Order regarding electronic service on this the 16th day of January, 2008.

**All Counsel in *Tucker v. Scrushy***
**Pending Before The Honorable Allwin E. Horn III**

| Party | Name of Person to Serve | Email Address |
|---|---|---|
| Tucker, Wade | John Q. Somerville, Esq. | jqs@gallowaysomerville.com |
| | Ralph D. Cook, Esq. | ralph@hwnn.com |
| | John W. Haley, Esq. | haley@hwnn.com |
| | Bruce J. McKee, Esq. | bruce@hwnn.com |
| | Steve P. Gregory, Esq. | steve@gregorylawfirm.us |
| | Frank DiPrima, Esq. | diprimalaw@aol.com |
| | Ronald A. Brown, Esq. | rabrown@prickett.com |
| | Edward F. Haber, Esq. | ehaber@shulaw.com |
| | Robert C. Schubert, Esq. | rschubert@schubert-reed.com |
| | Juden Justice Reed, Esq. | jreed@schubert-reed.com |
| | Arthur L. Schingler, Esq. | ashingler@scott-scott.com |
| | Michael J. Chepiga, Esq | mchepiga@stblaw.com |
| Scrushy, Richard M. | R. Martin Adams, Esq. | madams@graceba.net |
| | James W. Parkman, III Esq. | jimmyp1900@yahoo.com |
| MedCenterDirect.com (*pro se*) | MedCenterDirect.Com, Inc. 3500 Peachtree Road, Suite 1610 Atlanta, GA 30326 | |
| Capstone Capital Corporation | James L. Goyer, Esq. | jgoyer@maynardcooper.com |
| | Alan F. Enslen, Esq. | aenslen@maynardcooper.com |
| | Jessica S. Grover, Esq. | jgrover@maynardcooper.com |
| G G Enterprises (*pro se*) | G G Enterprises c/o Gary Gussing 865 Woodmere Creek Loop Birmingham, Alabama 35226 | |
| HealthSouth Corporation | Julia Boaz Cooper, Esq. | jbcooper@bradleyarant.com |
| | Anne Marie Seibel, Esq. | aseibel@bradleyarant.com |
| | Kim Ferguson | kferguson@bradleyarant.com |
| | Stephen D. Dargitz, Esq | sdargitz@skadden.com |
| | Edward B. Micheletti, Esq. | emich@skadden.com |
| | Benjamin Moncrief, Esq. | bmoncrief@bradleyarant.com |
| | Hope Cannon, Esq. | hcannon@bradleyarant.com |
| Martin, Michael D. | C. Lee Reeves, Esq. | lreeves@sirote.com |
| | Robert W. Fleishman, Esq. | rfleishman@steptoe.com |
| Owens, William T. (*pro se*) | William T. Owens 118 Highlands View Drive Birmingham, Alabama 35242 | |

| | | |
|---|---|---|
| Smith, Weston L. | Charles A. Dauphin, Esq.<br>David McKnight, Esq. | cdauphin@bddmc.com<br>dmcknight@bddmc.com |
| Ernst & Young LLP | Henry Simpson, Esq.<br>Steven M. Farina, Esq.<br>Enu Mainigi, Esq.<br>Victoria Radd Rollins, Esq. | henry.simpson@arlaw.com<br>sfarina@wc.com<br>emainigi@wc.com<br>vrollins@wc.com |
| UBS Securities LLC | W. Michael Atchison, Esq.<br>Jay M. Ezelle, Esq.<br>Robin H. Jones, Esq.<br>Robert J. Giuffra, Esq.<br>Brian T. Frawley, Esq.<br>Thomas L. Leuba, Esq.<br>Julia M. Jordan, Esq.<br>Jeffrey T. Scott, Esq.<br>Laurent S. Wiesel, Esq.<br>William H. Wagener, Esq. | wma@starneslaw.com<br>jme@starneslaw.com<br>rhj@starneslaw.com<br>giuffrar@sullcrom.com<br>frawleyb@sullcrom.com<br>leubat@sullcrom.com<br>jordanjm@sullcrom.com<br>scottj@sullcrom.com<br>wiesell@sullcrom.com<br>wagenerw@sullcrom.com |
| Beam, Aaron Jr.<br>(*pro se*) | Mr. Aaron Beam, Jr.<br>16848 Black Devine Rd.<br>Loxley, Alabama  36551 | beamlsu@Gulftel.com |
| McVay, Malcolm E. | J. Don Foster, Esq. | jdf@jacksonfosterlaw.com |
| Livesay, Kenneth K.<br>McVay, Malcolm E. | Joseph A. Fawal, Esq. | jfawal@bellsouth.net |
| Harris, Emery W.<br>(*pro se*) | Mr. Emery W. Harris<br>290 Eagle Crest Court<br>Birmingham, Alabama 35242 | |

**_____ s/ Robin H. Jones_____**
**OF COUNSEL**

**APPENDIX A**

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 1999 - 2002 | Beginning in 1999, and continuing from time to time, UBS Securities LLC (f/k/a UBS Warburg LLC) ("UBSW") acted as financial advisor to HealthSouth ("HS") in its potential merger with HCR/Manor Care. | Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); Rick Leaman (UBSW Managing Director, Corporate Finance – Mergers & Acquisitions); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare; Hugh O'Hare (UBSW Managing Director, UBS Mergers & Acquisitions); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); and Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare). |
| 06/15/99 – 9/14/99 | UBSW acted as financial advisor to HS in evaluating a proposal to divide HS into two separate public companies through the spin-off of HS's inpatient operations. | Howard Capek (UBSW Managing Director, Equity Research); Rick Leaman (UBSW Managing Director, Corporate Finance – Mergers & Acquisitions); Karen Mayrose (UBS AG Associate Director, Credit Risk Management ("CRM")); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare). |
| 06/21/99 | Non-party UBS AG committed $250 million to HS's $500 million short-term credit facility ("1998 Short-Term Credit Facility"). | Leo Baltz (UBSW Banking Finance); Karen Mayrose (UBS AG Associate Director, CRM); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Ernst Schirmer (UBS AG, CRM). |

---

[*]     "Date" refers to, as appropriate, the approximate closing date of an acquisition, the offering date of a private placement, or the date of a trade, fairness opinion, credit agreement, participation agreement or UBSW's or non-party UBS AG's engagement in connection with an unconsummated transaction.

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 6/29/99 | UBSW was the financial advisor to HS in its acquisition of substantially all of the assets of American Rehability Services. | William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); and Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare). |
| 07/1999-07/2002 | Beginning in July 1999, and continuing from time to time, UBSW acted as a financial advisor to HS in its proposed acquisition of Bally's Total Fitness Holdings Corporation. | Clinton Coleman (UBSW Analyst, Corporate Finance – Mergers & Acquisitions); Loy Chia (UBSW Associate Director, Corporate Finance – Mergers & Acquisitions); Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Joseph Meisner, (UBSW Managing Director, Mergers & Acquisitions); Hugh O'Hare (UBSW Managing Director, Mergers & Acquisitions); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare; Varghese Thadathil (UBSW Analyst, Corporate Finance - Healthcare); William Timmerman (UBSW Analyst, Mergers & Acquisitions); and Scott Wollard (UBSW Associate Director, Corporate Finance – Healthcare). |
| 11/1999 | UBSW acted as a financial advisor to HS in connection with HS's strategic alliance with Healtheon/WebMD. | William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); and Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare). |
| 12/1999 | Non-party UBS AG purchased a $23,118,866.73 participation in HS's 1995 $50 million tax retention operating lease (TROL) and committed $76,881,133 to HS's $250 million short-term credit facility ("1999 Short-Term Credit Facility"). | Leo Baltz (UBSW, Banking Finance); Alex Geier (UBSW Executive Director, High Yield Finance); Michael Leung (UBS AG Director, CRM); Karen Mayrose (UBS AG Associate Director, CRM); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); and Robert Riley (UBS AG, Corporate Finance – Investment Grade Loan Origination). |

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 2000-2003 | Beginning in about January 2000, and from time to time, HS would request that UBSW prepare a financial model for a hypothetical leveraged-buyout of HS. | Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare); and William Timmerman (UBSW Analyst, Mergers & Acquisitions). |
| 09/25/00 | UBSW was a joint lead manager and sole bookrunning manager in HS's $350 million private placement of 10 ¾% senior subordinated notes due 2008 (the "September 2000 Private Placement").<br><br>UBSW purchased $148,750,000 million in notes in connection with the September 2000 Private Placement.  Deutsche Bank Securities Inc., Chase Securities Inc., and First Union Securities Inc. were the other initial purchasers in the September 2000 Private Placement. | David Barth (UBSW Director, Leveraged Finance); John Crockett (UBSW Associate Director, Leveraged Finance); Ray Garson (UBSW Associate Director, High Yield Research); Alex Geier (UBSW Executive Director, High Yield Research); David Juge (UBSW Managing Director, Loan Syndications); Michael Leder (UBSW Managing Director, Leveraged Finance); Swee-Ching Lim (UBSW Analyst, Leveraged Finance); Ed Massaro (UBSW Managing Director, High Yield/Fixed Income); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); and Scott Wollard (UBSW Associate, Corporate Finance – Healthcare). |

APPENDIX A

| Date* | Transaction | Project Group List and Titles |
|---|---|---|
| 10/31/00 | UBSW and Deutsche Bank Securities Inc. were joint lead arrangers on HS's $400 million short-term credit facility ("2000 Credit Facility") and HS's refinancing of two tax retention operating leases (TROLs) with an aggregate value of $187 million ("2000 TROLs").<br><br>UBS AG, Stamford Branch, was administrative agent on the 2000 Credit Facility and 2000 TROLs. UBS AG committed $109,870,938 to the 2000 Short-Term Credit Facility and $78,049,405 to the 2000 TROLs.<br><br>Deutsche Bank AG, Chase Manhattan Bank, The Industrial Bank of Japan, First Union National Bank, Malayan Banking Berhard, E-Sun, Commerce Bank, N.A., Taipei Bank and LBS Bank acted as lenders or provided commitments in these transactions. | David Barth (UBSW Director, Leveraged Finance); John Crockett (UBSW Associate Director, Leveraged Finance); Ray Garson (UBSW Associate Director, High Yield Research); Alex Geier (UBSW Executive Director, High Yield Research); Frank Hoener (UBS AG Associate Director, Leveraged Finance); David Juge (UBSW Managing Director, Loan Syndications); Michael Leder (UBSW Managing Director, Leveraged Finance); Swee-Ching Lim (UBSW Analyst, Leveraged Finance); Ed Massaro (UBSW Managing Director, High Yield/Fixed Income); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Senior Analyst, Corporate Finance – Healthcare); and Scott Wollard (UBSW Summer Associate, Corporate Finance – Healthcare). |

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 02/01/01 | UBSW was the sole bookrunning manager and lead manager on HS's $375 million private placement of 8 ½% senior notes due 2008 (the "February 2001 Private Placement").<br><br>UBSW purchased $187.5 million in notes in connection with the February 2001 Private Placement. Deutsche Bank Alex. Brown, Chase Securities Inc., First Union Securities Inc., and Scotia Capital (USA) Inc. were the other initial purchasers in the February 2001 Private Placement. | David Barth (UBSW Director, Leveraged Finance); John Crockett (UBSW Associate Director, Leveraged Finance); Alex Geier (UBSW Director, High Yield Research); Frank Hoener (UBS AG Associate Director, Leveraged Finance); Michael Leder (UBSW Managing Director, Corporate Finance); Ed Massaro (UBSW Managing Director, High Yield/Fixed Income); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Corporate Finance – Healthcare); and Scott Wollard (UBSW Associate, Corporate Finance – Healthcare). |
| 03/31/01 | Non-party UBS AG made a $15 million loan to MedCenterDirect.com, Inc. ("MCD"). On or about March 28, 2002, that loan was increased to $20 million. HS guaranteed the repayment of UBS AG's loan to MCD. | David Barth (UBSW Director, Leveraged Finance); Phillip Catularo (UBS AG, CRM); John Crockett (UBSW Director, Loan Syndication); Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); Alex Geier (UBSW Director, High Yield Research); David Goldman (UBS AG Director, CRM); Frank Hoener (UBS AG Associate Director, Leveraged Finance); Renata Jacobson (UBS AG First Vice President, LPRM); David Juge (UBSW Managing Director, Loan Syndication); Dan Ladd (UBS AG, Legal); Michael Leder (UBSW Managing Director, Corporate Finance –Healthcare); Michael Leung (UBS AG, CRM); William McGahan (UBSW Managing Director, Corporate Finance –Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Associate Director, Corporate Finance –Healthcare); Scott Wollard (UBSW Associate Director, Corporate Finance - Healthcare); and Andreas Wyler (UBS AG Executive Director, CRM). |

# APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 09/24/01 | UBSW was the sole bookrunning manager and joint lead manager on HS's $200 million private placement of 7 3/8% senior notes due 2006 and $400 million private placement of 8 3/8% senior notes due 2011 (the "September 2001 Private Placement").<br><br>UBSW purchased $70 million in notes in connection with the $200 million private placement of 7 3/8% senior notes due 2006 and $205 million in notes in connection with the $400 million private placement of 8 3/8% senior notes due 2011. Deutsche Bank Alex. Brown, First Union Securities Inc., J.P. Morgan Securities, Inc., Lehman Brothers Inc., Scotia Capital (USA) Inc., Jeffries & Company, Inc., BNY Capital Markets, Inc., Fleet Securities, Inc. and NatCity Investments, Inc. were the other initial purchasers in the September 2001 Private Placement. | David Barth (UBSW Director, High Yield Capital Markets); Ray Garson (UBSW Director, Credit Research); Alex Geier (UBSW Executive Director, Credit Research); Glen Goggins (UBS AG Director, Legal Documentation); Suneel Kamlani (UBSW Head of Debt Capital Markets, Debt Capital Markets); Todd Mahoney (UBSW Associate, Debt Capital Markets); Ed Massaro (UBSW Head of High Yield Capital Markets); Tom McErlean (UBSW Director, US Syndicate); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); J.J. McKoan (UBSW Managing Director, US Syndicate); Bryan Murtagh (UBS AG Executive Director, Legal Documentation); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Associate Director, Corporate Finance – Healthcare); Rosemary Sisson (UBSW Executive Director, Credit Research); Tim Steele (UBSW Director, Fixed Income Derivatives); Christian Stewart (UBSW Executive Director, Debt Capital Markets); Varghese Thadathil (UBSW Analyst, Corporate Finance – Healthcare) and Lesley Thompson (UBSW Corporate Finance – Healthcare). |

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---------|-------------|-------------------------------|
| 9/28/01 | Non-party UBS AG made a $6 million loan to Parking Deck L.L.C. that was guaranteed by HS. | David Kelly (UBS AG, Legal); Michael Leder (UBSW Managing Director, Corporate Finance – Healthcare); William McGahan (UBSW Managing Director, Corporate Finance –Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Phillip Pucciarelli (UBSW Associate Director, Corporate Finance – Healthcare); Annette Spencer (UBS AG, Legal); Varghese Thadathil (UBSW Analyst, Corporate Finance – Healthcare); and Oliver Trumbo (UBS AG, Legal). |
| 12/27/01 | Non-party UBS AG made a $82.5 million loan to First Cambridge HCI Acquisitions, LLC that was guaranteed by HS. | C.J. Corradino (UBSW Director, Loan Syndication); John Crockett; (UBSW Associate Director – Leveraged Finance, Loan Syndication); Ray Garson (UBSW Director, High Yield Research); David Juge (UBSW Managing Director, Head of Loan Syndications, Loan Syndication); Kristin Kusmierz (UBSW Analyst, Corporate Finance); Michael Leder (UBSW Managing Director, Corporate Finance); William McGahan (UBSW Managing Director, Corporate Finance - Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance); Philip Pucciarelli (UBSW Associate Director, Corporate Finance); Scott Wollard (UBSW Associate Director, Corporate Finance); and Andreas Wyler (UBS AG Executive Director, CRM). |
| 05/14/02 | UBSW was the bookrunning manager for Richard Scrushy's block trade of $74.1 million in shares of HS common stock. | Chris Antrim (UBSW, Equity Capital Markets); Camilla Brooks (UBSW, Equity Capital Markets); Howard Capek (UBSW Managing Director, Equity Research); Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Brad Miller (UBSW, Equity Capital Markets); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); James Palmer (UBSW, Equity Capital Markets); Annette Spencer (UBS AG, Legal); and Scott Wollard (UBSW Associate Director, Corporate Finance – Healthcare). |

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 05/17/02 | UBSW, together with Deutsche Bank Securities and Banc of America Securities, were joint bookrunning manager and lead managers on HS's $1 billion private placement of 7 5/8% senior unsecured notes due 2012 (the "May 2002 Private Placement").<br><br>UBSW purchased $200,045,139 in notes in connection with the May 2002 Private Placement. Deutsche Bank Securities Inc., Banc of America Securities LLC, Scotia Capital (USA) Inc., First Union Securities Inc., J.P. Morgan Securities, Inc., Fleet Securities, Inc., Salomon Smith Barney, Inc., NatCity Investments, Inc. and Jeffries & Company, Inc. were the other initial purchasers in the May 2002 Private Placement. | C.J. Corradino (UBSW Director, Loan Syndication); John Crockett (UBSW Director, Loan Syndication); Rob Dishner (UBSW Associate Director, High Yield Research); Michael Farah (UBSW Analyst, Corporate Finance - Healthcare); Craig Fitt (UBSW Head, Ratings Advisory); Ray Garson (UBSW Director, High Yield Research); Alex Geier (UBSW Executive Director, High Yield Research); Michael Gorelick (UBSW Associate Director, Ratings Advisory); David Juge (UBSW Managing Director, Loan Syndication); Michael Leder (UBSW Managing Director, Corporate Finance – Healthcare); Brett Matkins (UBSW Director, High Yield/Fixed Income); Ed Massaro (UBSW Managing Director, High Yield/Fixed Income); Todd Mahoney (UBSW Associate Director, Investment Grade/Fixed Income); Tom McErlean (UBSW Executive Director, Fixed Income Syndications); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); J.J. McKoan (UBSW Managing Director, Fixed Income Syndications); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Christian Stewart (UBSW Executive Director, Investment Grade/Fixed Income); Scott Wollard (UBSW Associate Director, Corporate Finance –Healthcare); and Andreas Wyler (UBSW Executive Director, Credit). |

APPENDIX A

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 06/14/02 | UBSW was one of three co-documentation agents, along with ScotiaBanc Inc. and Deutsche Bank AG, New York Branch, for HS's $1.25 billion senior credit facility ("June 2002 Credit Facility"). The senior managing agent was Bank of America, N.A; the joint lead arrangers and bookrunners were J.P. Morgan Securities Inc. and Wachovia Securities; the syndication agent was Wachovia Bank, National Association; and the administrative agent was JPMorgan Chase Bank.<br><br>UBS AG committed $84,166,667 to HS's June 2002 Credit Facility. The other banks that provided commitments were Bank of America, N.A., Deutsche Bank AG, JP Morgan Chase & Co., Scotiabank Inc., Wachovia Bank, National Association, Fleet National Bank, Citicorp USA, Inc., National City Bank of Kentucky, Bank of Tokyo-Mitsubishi, Ltd., Mizuho Corporate Bank, Ltd., U.S. Bank, N.A., Comercia Bank, Commerce Bank, N.A. and Hibernia National Bank. | David Bawden (UBS AG Managing Director, Credit Risk Management ("CRM"); C.J. Corradino (UBSW Director, Loan Syndication); John Crockett (UBSW Director, Loan Syndication); Rob Dishner (UBSW Associate Director, High Yield Research); Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); Craig Fitt (UBSW Head, Ratings Advisory; Ray Garson (UBSW Associate Director, High Yield Research); Alex Geier (UBSW Executive Director, High Yield Research); David Goldman (UBS AG Director, CRM); Michael Gorelick (UBSW Associate Director, Ratings Advisory); David Juge (UBSW Managing Director, Loan Syndications); Michael Leder (UBSW Managing Director, Corporate Finance – Healthcare); Brett Matkins (UBSW Director, High Yield/Fixed Income); Ed Massaro (UBSW Managing Director, High Yield/Fixed Income); Todd Mahoney (UBSW Associate Director, Investment Grade/Fixed Income); Tom McErlean (UBSW Managing Director, Fixed Income Syndications); William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); J.J. McKoan (UBSW Managing Director, Fixed Income Syndications); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); Christian Stewart (UBSW Executive Director, Investment Grade/Fixed Income); Scott Wollard (UBSW Associate Director, Corporate Finance –Healthcare); and Andreas Wyler (UBS AG Executive Director, CRM). |

APPENDIX A

| Date* | Transaction | Project Group List and Titles |
|---|---|---|
| 06/2002 | UBSW acted as a financial advisor to HS in HS's proposed acquisition of Radiologix, Inc. | William McGahan (UBSW Managing Director, Corporate Finance – Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance - Healthcare); and Scott Wollard (UBSW Associate Director, Corporate Finance - Healthcare). |
| 08/2002 | UBSW acted as a financial advisor to HS in HS's proposed spin-off of its surgery centers and sale of its diagnostic imaging business. | Howard Capek (UBSW Managing Director, Equity Research); Loy Chia (UBSW Associate Director, Corporate Finance – Mergers & Acquisitions); Michael Farah (UBSW Analyst, Corporate Finance – Healthcare); Michael Leder (UBSW Managing Director, Corporate Finance – Healthcare); Rick Leaman (UBSW Managing Director, Corporate Finance - Mergers & Acquisitions); William McGahan, (UBSW Managing Director, Corporate Finance – Healthcare); Joseph Meisner (UBSW Associate Director, Corporate Finance – Mergers & Acquisitions); Hugh O'Hare (UBSW Managing Director, Corporate Finance – Mergers & Acquisitions); Roderick O'Neill (UBSW Executive Director, Corporate Finance – Healthcare); William Timmerman (UBSW Analyst, Mergers & Acquisitions); and Scott Wollard (UBSW Associate Director, Corporate Finance – Healthcare). |
| 12/18/02 | To comply with HS's bond indentures, HS retained UBSW to opine on the fairness, from a financial point of view, of Richard Scrushy's July 31, 2002 repayment of a $25,218,114.87 loan from HS with 2,506,700 shares of HS common stock. | Michael Farah (UBSW Analyst, Corporate Finance –Healthcare); Sam Kwon (UBSW Analyst, Mergers & Acquisitions); William McGahan (UBSW Managing Director, Corporate Finance –Healthcare); Joseph Meisner (UBSW Associate Director, Mergers & Acquisitions); Hugh O'Hare (UBSW Managing Director, Mergers & Acquisitions); Roderick O'Neill (UBSW Executive Director, Corporate Finance –Healthcare); William Timmerman (UBSW Analyst, Mergers & Acquisitions); and Scott Wollard (UBSW Associate Director, Mergers & Acquisitions). |

**APPENDIX A**

| Date[*] | Transaction | Project Group List and Titles |
|---|---|---|
| 02/2003 | HealthSouth requested that non-party UBS AG make a $22 million loan to Source Medical Solutions, Inc., that was to be guaranteed by HS; and to agree to the amendment of the June 2002 Credit Facility. | David Bawden (UBS AG Managing Director, Credit Risk Management); C.J. Corradino (UBSW Director, High Yield Debt Capital Markets); Michael Farah (UBSW Analyst, Corporate Finance); Iain Franks (UBS AG Associate Director, Credit Risk Management); Alex Geier (UBSW Executive Director, High Yield Research); David Juge (UBSW Managing Director, High Yield Debt Capital Markets); Michael Leder (UBSW Managing Director, Corporate Finance); Ed Massaro (UBSW Managing Director, High Yield Debt Capital Markets); William McGahan (UBSW Managing Director, Corporate Finance - Healthcare); Roderick O'Neill (UBSW Executive Director, Corporate Finance); Gary Riddell (UBS AG Director, Credit Risk Management); Scott Wollard (UBSW Associate Director, Corporate Finance); and Andreas Wyler (UBSW Executive Director, Credit Risk Management). |

**APPENDIX B**

| Bates Ranges | UBS/HS 104853 – UBS/HS 104856; UBS/HS 104863 – UBS/HS 104870; UBS/HS 105199 – UBS/HS 105202; UBS/HS 105392 – UBS/HS 105428; UBS/HS 105605 – UBS/HS 105606; UBS/HS 107408 – UBS/HS 107434; UBS/HS 110807 – UBS/HS 110814; UBS/HS 118481 – UBS/HS 118482; UBS/HS 149777 – UBS/HS 149816; UBS/HS 169077 – UBS/HS 169143; UBS/HS 170818 – UBS/HS 170833; UBS/HS 022065 – UBS/HS 022256; UBS/HS 233136 – UBS/HS 233202; UBS/HS 293456; UBS/HS 300489 – UBS/HS 300513; UBS/HS 356863 – UBS/HS 356866; UBS/HS 450563 – UBS/HS 450637; UBS/HS 451835; UBS/HS 471147 – UBS/HS 471219; UBS/HS 472438 – UBS/HS 472475; UBS/HS 482384 – UBS/HS 482405; UBS/HS 487443 – UBS/HS 487516; UBS/HS 492699 – UBS/HS 492733; UBS/HS 496896; UBS/HS 500692; UBS/HS 515889 – UBS/HS 515891; UBS/HS 523165 – UBS/HS 523169; UBS/HS 523382 – UBS/HS 523383; UBS/HS 527057 – UBS/HS 527058; UBS/HS 527059 – UBS/HS 527060; UBS/HS 539325 – UBS/HS 539360; UBS/HS 545005; UBS/HS 545689; UBS/HS 545703; UBS/HS 545705 – UBS/HS 545709; UBS/HS 545729 – UBS/HS 545736; UBS/HS 553018; UBS/HS 553024; UBS/HS 558618; UBS/HS 567951 – UBS/HS 567952; UBS/HS 568399 – UBS/HS 568400; UBS/HS 568476 – UBS/HS 568477; UBS/HS 574511; UBS/HS 574512; UBS/HS 580972 – UBS/HS 580973; UBS/HS 587441 – UBS/HS 587442; UBS/HS 587443 – UBS/HS 587444; UBS/HS 598633 – UBS/HS 598646; UBS/HS 599393 – UBS/HS 599394; UBS/HS 605701; and UBS/HS 605702. |
| --- | --- |

**APPENDIX C**

|  | Bates Range |
|---|---|
| **Private Placements** | UBS/HS 110807 – UBS/HS 110814; UBS/HS 170818 – UBS/HS 170833; UBS/HS 233139 – UBS/HS 33202; UBS/HS 487443 – UBS/HS 487516; UBS/HS 492699 – UBS/HS 492733; UBS/HS 539325 – UBS/HS 539360; UBS/HS 545689; UBS/HS 568399 – UBS/HS 568400 (September 2000 Private Placement); and UBS/HS 580972 – UBS/HS 580973 (May 2002 Private Placement). |
| **Other Transactions** | UBS/HS 104853 – UBS/HS 104856; UBS/HS 104863 – UBS/HS 104870; UBS/HS 105199 – UBS/HS 105202; UBS/HS 105392 – UBS/HS 105428; UBS/HS 105605 – UBS/HS 105606; UBS/HS 107408 – UBS/HS 107434; UBS/HS 110807 – UBS/HS 110814; UBS/HS 118481 – UBS/HS 118482; UBS/HS 149777 – UBS/HS 149816; UBS/HS 169077 – UBS/HS 169143; UBS/HS 170818 – UBS/HS 170833; UBS/HS 022065 – UBS/HS 022256; UBS/HS 233136 – UBS/HS 233202; UBS/HS 293456; UBS/HS 300489 – UBS/HS 300513; UBS/HS 356863 – UBS/HS 356866; UBS/HS 450563 – UBS/HS 450637; UBS/HS 451835; UBS/HS 471147 – UBS/HS 471219; UBS/HS 472438 – UBS/HS 472475; UBS/HS 482384 – UBS/HS 482405; UBS/HS 487443 – UBS/HS 487516; UBS/HS 492699 – UBS/HS 492733; UBS/HS 496896; UBS/HS 500692; UBS/HS 515889 – UBS/HS 515891; UBS/HS 523165 – UBS/HS 523169; UBS/HS 523382 – UBS/HS 523383; UBS/HS 527057 – UBS/HS 527058; UBS/HS 527059 – UBS/HS 527060; UBS/HS 539325 – UBS/HS 539360; UBS/HS 545005; UBS/HS 545689; UBS/HS 545703; UBS/HS 545705 – UBS/HS 545709; UBS/HS 545729 – UBS/HS 545736; UBS/HS 553018; UBS/HS 553024; UBS/HS 558618; UBS/HS 567951 – UBS/HS 567952; UBS/HS 568399 – UBS/HS 568400; UBS/HS 568476 – UBS/HS 568477; UBS/HS 574511; UBS/HS 574512; UBS/HS 580972 – UBS/HS 580973; UBS/HS 587441 – UBS/HS 587442; UBS/HS 587443 – UBS/HS 587444; UBS/HS 598633 – UBS/HS 598646; UBS/HS 599393 – UBS/HS 599394; UBS/HS 605701; and UBS/HS 605702. |