UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UBS AG, STAMFORD BRANCH,   :
            :
    Plaintiff,    :
            :  Civil Action No. 07 CV 8490 (LAP)
   - v -     :  ECF Case
            :
            :
HEALTHSOUTH CORP.,    :
            :
    Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**UBS'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO HEALTHSOUTH'S MOTION TO DISMISS OR STAY**

Robert J. Giuffra, Jr. (RJ-9969)
Marc De Leeuw (MD-2166)
William H. Wagener (WW-9089)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for UBS AG, Stamford Branch*

February 19, 2008

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT..............................................................................................................4

I.     UNDER SETTLED NEW YORK LAW, UBS IS ENTITLED TO ENFORCE HEALTHSOUTH'S "ABSOLUTE AND UNCONDITIONAL" GUARANTEE. ......................................................................................................5

     A.     The Credit Agreement, Including the "Absolute and Unconditional" Guarantee, Is a Binding Obligation of HealthSouth. ................................................5

     B.     On the Undisputed Facts, *Plapinger* Plainly Applies Here. ....................................7

         1.     Under the Terms of Its "Absolute and Unconditional" Loan Guarantee, HealthSouth Has Waived Any Claim That UBS Defrauded HealthSouth or Its Board Into Executing the Guarantee...........7

         2.     HealthSouth May Not Rely on a Defense It Specifically Waived. .............8

         3.     Unlike *Motheral* and *Liberty Mutual*, UBS Did Not Conceal From HealthSouth's Board the Nature of Its Commercial Loan..........................10

         4.     HealthSouth's Own SEC Filings Bar HealthSouth's Claim That the Guarantee Was Void *Ab Initio*.................................................................12

         5.     HealthSouth Cannot Avoid Summary Judgment by Raising Conclusory Claims of Misconduct Unrelated to the Guarantee. ...............13

II.     NO DISCOVERY IS NEEDED TO DECIDE THIS MOTION. ...............................15

     A.     HealthSouth's "Absolute and Unconditional" Guarantee Eliminates Any Need for Discovery. ...............................................................................15

     B.     There Is No *Genuine* Dispute Whether UBS Extended the MedCenter Loan. ......................................................................................................16

     C.     In Any Event, Whether UBS Loaned Money to MedCenter Is Immaterial, Because UBS Has Standing to Sue as Administrative Agent............................17

     D.     HealthSouth's Claimed Need for Discovery Is a Delaying Tactic. .......................18

III.     THIS COURT SHOULD NOT ABSTAIN FROM HEARING THIS ACTION. ................................................................................................................19

i

A.    New York Law Obligates New York Courts to Enforce Choice-of-Law
      and  Forum-Selection Clauses. ................................................................20

B.    Abstention Is Also Inappropriate Under Federal Common Law. ..........................22

      1.    UBS Has Not Been Sued in the Alabama Action, and the Alabama
            Complaint Does Not Seek to Invalidate the Loan Guarantee. ...................22

      2.    HealthSouth Cannot Satisfy the Other *Colorado River* Factors. ...............25

C.    HealthSouth's Speculative Claim That UBS Securities *Might* Be a Lender
      Who *Might* Have a "Compulsory Counterclaim" in Alabama Does Not
      Change the Analysis. .............................................................................27

D.    This Court, Like Judge Hellerstein in *Gateway*, Should Decide UBS's
      Motion for Summary Judgment. ...............................................................29

CONCLUSION.............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Adam* v. *Jacobs*,
 950 F.2d 89 (2d Cir. 1991)..................................................................................26

*Alliance of Am. Insurers* v. *Cuomo*,
 854 F.2d 591 (2d Cir. 1988).............................................................................23

*Anderson* v. *Docuport, Inc.*,
 No. 06 Civ. 3769, 2007 U.S. Dist. LEXIS 10106 (S.D.N.Y. Feb. 13, 2007) ...................30

*Bell Atl. Corp.* v. *Twombly*,
 127 S. Ct. 1955 (2007) ................................................................................24

*Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*,
 800 F.2d 325 (2d Cir. 1986)...........................................................................26

*Borden, Inc.* v. *Meiji Milk Prods., Inc.*,
 919 F.2d 822 (2d Cir. 1990)...........................................................................21

*Burlington Coat Factory Warehouse Corp.* v. *Esprit De Corp.*,
 769 F.2d 919 (2d Cir. 1985)...........................................................................18

*Clarke* v. *Max Advisors*,
 235 F. Supp. 2d 130 (N.D.N.Y. 2002) ...............................................................11

*Colorado River Water Conserv. Dist.* v. *United States*,
 424 U.S. 800 (1976)..........................................................22, 23, 24, 25, 27, 28

*Commer. Money Ctr., Inc.* v. *Ill. Union Ins. Co.*,
 508 F.3d 327 (6th Cir. 2007) .........................................................................11

*Donovan* v. *Dallas*,
 377 U.S. 408 (1964)................................................................................27, 28

*FDIC* v. *Four Star Holding Co.*,
 178 F.3d 97 (2d Cir. 1999)............................................................................25

*Firemen's Ins. Co.* v. *Keating*,
 753 F. Supp. 1137 (S.D.N.Y. 1990)..........................................................3, 24, 25

*Gateway Cos.* v. *Vitech Am., Inc.*,
 No. 01 Civ. 2171, 2001 U.S. Dist. LEXIS 25154 (S.D.N.Y. Aug. 23, 2001) ..................30

*Gateway, Inc.* v. *Vitech Am., Inc.*,
143 F. Supp. 2d 391 (S.D.N.Y. 2001).......................................................................*passim*

*Gateway, Inc.* v. *Vitech Am., Inc.*,
33 Fed. Appx. 578 (2d Cir. 2002).........................................................................3, 26, 30

*JP Morgan Chase Bank* v. *Liberty Mutual Ins. Co.*,
189 F. Supp. 2d 24 (S.D.N.Y. 2002).....................................................................10, 11, 12

*Karl Koch Erecting Co., Inc.* v. *N.Y. Convention Ctr. Dev. Corp.*,
838 F.2d 656 (2d Cir. 1989)..........................................................................................25

*Kerotest Mfg. Co.* v. *C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952)......................................................................................................26

*Klaxon Co.* v. *Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)................................................................................................21, 22

*Lehman Bros. Commercial Corp.* v. *Minmetals Int'l Non-Ferrous Metals Trading Co.*,
179 F. Supp. 2d 118 (S.D.N.Y. 2000)..........................................................20, 21, 27

*Manuf. Hanover Trust Co.* v. *Yanakas*,
7 F.3d 310 (2d Cir. 1993)..............................................................................................10

*Martin* v. *Wilks*,
490 U.S. 755 (1989)................................................................................................23, 28

*MBIA Ins. Corp.* v. *Royal Indem. Co.*,
426 F.3d 204 (3d Cir. 2005)..........................................................................................11

*McClelland* v. *Carland*,
217 U.S. 268 (1910)......................................................................................................22

*MLP U.S.A.* v. *Motheral*,
No. 05 Civ. 10796, 2006 U.S. Dist. LEXIS 58589 (S.D.N.Y. Aug. 18, 2006) ...........10, 11

*Monahan* v. *N.Y. City Dep't of Corrections*,
214 F.3d 275 (2d Cir. 2000)..........................................................................................15

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
460 U.S. 1 (1983)..........................................................................................................29

*Nat'l Union Fire Ins. Co.* v. *Stroh Cos.*,
265 F.3d 97 (2d Cir. 2001)......................................................................................18, 19

*Norex Petroleum, Ltd.* v. *Access Indus.*,
416 F.3d 146 (2d Cir. 2005)..........................................................................................22

*Paddington Partners* v. *Bouchard*,
  34 F.3d 1132 (2d. Cir. 1994) .......................................................................................18

*Piper Aircraft Co.* v. *Reyno*,
  454 U.S. 235 (1981) ...................................................................................................21

*Radioactive, J.V.* v. *Manson*,
  153 F. Supp. 2d 462 (S.D.N.Y. 2001) .......................................................................26

*Relational Investors LLC* v. *Sovereign Bancorp, Inc.*,
  No. 05 Civ. 10394, 2006 U.S. Dist. LEXIS 9415 (S.D.N.Y. Mar. 3, 2006).....................13

*Richards* v. *Jefferson County*,
  517 U.S. 793 (1996).............................................................................................23, 28

*SEC* v. *Milan Capital Group, Inc.*,
  No. 00 Civ. 108, 2000 U.S. Dist. LEXIS 16204 (S.D.N.Y. Nov. 9, 2000) ......................19

*Sheerbonnet, Ltd.* v. *Am. Express Bank*,
  17 F.3d 46 (2d Cir. 1994).............................................................................22, 23, 24, 28

*The Bremen* v. *Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)........................................................................................................25

*Trans-Orient Marine Corp.* v. *Star Trading & Marine, Inc.*,
  925 F.2d 566 (2d Cir. 1991).......................................................................................13

*United States* v. *Mendoza-Acuna*,
  764 F.2d 699 (9th Cir. 1985) .....................................................................................6, 7

*Wells Fargo Northwest N.A.* v. *Taca Int'l Airlines*,
  247 F. Supp. 2d 352 (S.D.N.Y. 2002)........................................................................16

*Woodford* v. *Cmty. Action Agency of Greene County*,
  239 F.3d 517 (2d Cir. 2001).......................................................................................25

*Ying Jing Gan* v. *City of New York*,
  996 F.2d 522 (2d Cir. 1993).......................................................................................16

### STATE CASES

*Banco do Commercio de Sao Paolo, S.A.* v. *Esusa Engenharia e Construcoes, S.A.*,
  569 N.Y.S.2d 708, 173 A.D.2d 340 (1st Dep't 1991) .......................................................21

*Banco do Estado de Sao Paolo S.A.* v. *Mendes Junior Int'l Co.*,
  249 A.D.2d 137, 682 N.Y.S.2d 28 (1st Dep't 1998) ..................................................16, 26

*Brehm* v. *Eisner*,
  906 A.2d 27 (Del. 2006) .............................................................................................6

v

*Citibank, N.A.* v. *Plapinger*,
    66 N.Y.2d 90, 485 N.E.2d 974 (1985) ........................................................................ *passim*

*Cofield* v. *McDonald's Corp.*,
    514 So.2d 953 (Ala. 1987) ....................................................................................................23

*Corona* v. *S. Guaranty Ins. Co.*,
    314 So.2d 61 (Ala. 1975) ......................................................................................................23

*Credit Francais Int'l, S.A.* v. *Sociedad Financiera de Comercio, C.A.*,
    490 N.Y.S.2d 670 (Sup. Ct. 1985) ......................................................................................20

*Danann Realty Corp.* v. *Harris*,
    5 N.Y.2d 317, 157 N.E.2d 597 (1959) ..................................................................................8

*Ehrlich-Bober & Co.* v. *Univ. of Houston*,
    49 N.Y.2d 574, 404 N.E.2d 726 (1980) ..............................................................................20

*European Am. Bank* v. *Lofrese*,
    182 A.D.2d 67, 586 N.Y.S.2d 816 (2d Dep't 1992) ..........................................................10

*Ex parte Pate*,
    673 So.2d 427 (Ala. 1995) ....................................................................................................23

*Fleet Nat'l Bank, N.A.* v. *Liag Argentina, S.A.*,
    798 N.Y.S.2d 344 (Sup. Ct. 2004) ......................................................................................21

*Gannett Co.* v. *Tesler*,
    177 A.D.2d 353, 577 N.Y.S.2d 248 (1st Dep't 1991) ...............................................15, 16

*Gen. Trading Co.* v. *A & D Food Corp.*,
    292 A.D.2d 266, 738 N.Y.S.2d 845 (1st Dep't 2002) ......................................................16

*In re Walt Disney Co. Deriv. Litig.*,
    825 A.2d 275 (Del. Ch. 2003) ...............................................................................................6

*In re Walt Disney Co. Deriv. Litig.*,
    907 A.2d 693 (Del. Ch. 2005) ...............................................................................................6

*Italo-Petroleum Corp.* v. *Hannigan*,
    14 A.2d 401 (Del. 1940) ........................................................................................................6

*Kornfeld* v. *NRX Techs., Inc.*,
    93 A.D.2d 772, 461 N.Y.S.2d 342 (1st Dep't 1983) ........................................................12

*Kornfeld* v. *NRX Techs., Inc.*,
    62 N.Y.2d 686, 465 N.E.2d 30 (1984) .......................................................................3, 12, 13

*McConnell* v. *Commonwealth Pictures Corp.*,
    7 N.Y.2d 465, 166 N.E.2d 494 (1960) ............................................................14

*Mulco Prods., Inc.* v. *Black*,
    127 A.2d. 851 (Del. 1956) ..............................................................................14

*Nat'l Union Fire Ins. Co.* v. *Robert Christopher Assocs.*,
    257 A.D.2d 1, 691 N.Y.S.2d 35 (1st Dep't 1999) ...........................................14

*Nat'l Union Fire Ins. Co.* v. *Worley*,
    690 N.Y.S.2d 57, 257 A.D.2d 228 (1st Dep't 1999) ........................................21

*Petition of Mulco Prods., Inc.*,
    123 A.2d 95 (Del. Super. 1956) .......................................................................6

*Quickturn Design Sys.* v. *Shapiro*,
    721 A.2d 1281 (Del. 1998) ...............................................................................6

*Raven Elevator Corp.* v. *Finkelstein*,
    223 A.D.2d 378, 636 N.Y.S.2d 292 (1st Dep't 1996) .....................................10

*Red Tulip, LLC* v. *Neiva*,
    44 A.D.3d 204, 842 N.Y.S.2d 1 (1st Dep't 2007) ...........................................10

*Simpson* v. *Jones*,
    460 So.2d 1282 (Ala. 1984) ............................................................................24

*Sterling Nat'l Bank* v. *Biaggi*,
    No. 604015/04, 2008 N.Y. App. Div. LEXIS 129
    (App. Div. 1st Dep't Jan. 10, 2008) ................................................1, 5, 10, 16

### STATUTES & RULES

Ala. R. Civ. P. 13 .........................................................................................................28

8 Del. C. § 141 ................................................................................................................6

Fed. R. Civ. P. 56 .........................................................................................................18

Local Rule 56.1 ........................................................................................................1, 15

N.Y.C.P.L.R. § 327 ......................................................................................................21

N.Y. Gen. Oblig. L. § 5-1401 ......................................................................................20

N.Y. Gen. Oblig. L. § 5-1402 ......................................................................................21

**OTHER AUTHORITIES**

18B Am. Jur. 2d *Corporations* § 1318 ............................................................................6

Restatement (Third) of Agency § 3.03 ...........................................................................6

## PRELIMINARY STATEMENT

In this action, Plaintiff UBS AG, Stamford Branch ("UBS") asks this Court to enforce an "absolute and unconditional" guarantee by Defendant HealthSouth Corporation ("HealthSouth"), unanimously approved by HealthSouth's Board of Directors, of a $20 million loan to MedCenterDirect.com ("MedCenter"). As the First Department held just a few weeks ago, under New York's *Plapinger* rule, an "absolute and unconditional" guarantee constitutes "a valid waiver of the right to plead defenses." *Sterling Nat'l Bank* v. *Biaggi*, No. 604015/04, 2008 N.Y. App. Div. LEXIS 129, at *1-2 (1st Dep't Jan. 10, 2008). Under *Plapinger* and its progeny, HealthSouth simply has *no valid defenses* to enforcement of its "absolute and unconditional" guarantee of UBS's loan to MedCenter.

To avoid this Court's application of *Plapinger*, HealthSouth raises a series of diversionary smokescreens, charges and claims. But HealthSouth tellingly waits until page 24 of its 30-page response brief ("HS Br.") to address *Plapinger*. In fact, HealthSouth's Local Rule 56.1 Statement ("HS 56.1 St.") concedes (or fails to dispute) every factual allegation supporting this Court's grant of UBS's motion for summary judgment to enforce HealthSouth's "absolute and unconditional" loan guarantee:

- The documents submitted by UBS as comprising the Credit Agreement between UBS, HealthSouth and MedCenter, including the guarantee (Kalal Decl. Exs. A, F, H), are authentic (*see* HS 56.1 St. at ¶¶ 4-18);

- HealthSouth's Board repeatedly voted to authorize the Credit Agreement (*see* HS 56.1 St. at ¶¶ 5, 15);

- HealthSouth's General Counsel repeatedly issued Secretary's Certificates and legal opinions certifying the Board's approval of the Credit Agreement and guarantee (*see* HS 56.1 St. at ¶¶ 5-6, 12-13, 15-16);

- A HealthSouth officer signed the Credit Agreement and its Amendments (*see* HS 56.1 St. at ¶¶ 4, 11, 14);

- HealthSouth's SEC filings — both before and after the disclosure of the HealthSouth accounting fraud — repeatedly disclosed the existence of the Credit Agreement and HealthSouth's guarantee of UBS's loan to MedCenter (*see* HS 56.1 St. at ¶¶ 25-29); and

- Neither MedCenter nor HealthSouth has ever repaid MedCenter's debts (*see* HS 56.1 St. at ¶ 30).

Instead of contesting these facts, HealthSouth ignores the language of the Credit Agreement, raises irrelevant issues having nothing to do with MedCenter, the Credit Agreement or *Plapinger*, and demands that this Court abstain in favor of an Alabama state-court action in which UBS is not a party. None of these arguments has merit.

Under New York's *Plapinger* rule, which serves to promote and to protect New York's role as the Nation's financial center, guarantors may not assert "fraudulent inducement" — or virtually *any* defense — when asked to honor an "absolute and unconditional" guarantee. HealthSouth's "agency" defense, *i.e.*, that the Credit Agreement was "unauthorized" because this agreement was signed by a "disloyal" officer, fails under *Plapinger*, because (among other reasons) HealthSouth expressly waived any defenses based on the "*validity, regularity or enforceability*" of HealthSouth's guarantee. As *Plapinger* makes clear, HealthSouth cannot rely on a defense that HealthSouth specifically waived in the Credit Agreement.

HealthSouth also cannot evade the incontrovertible facts demonstrating that its Board of Directors expressly authorized HealthSouth to enter into the Credit Agreement. In fact, HealthSouth's Board of Directors twice voted to approve the Credit Agreement in resolutions certified by HealthSouth's General Counsel. Under settled corporate law, those resolutions conveyed *actual authority* to HealthSouth officers to sign the Credit Agreement. HealthSouth offers no authority for the curious proposition that "disloyalty" by whichever officer happens to sign a contract approved by the Board — a purely ministerial act — permits the Board to void that contract years after the counterparty has fully performed its end of the bargain.

2

Nor can HealthSouth ignore its own SEC filings, which consistently describe the Credit Agreement, including the guarantee, as valid and binding obligations of HealthSouth. As the New York Court of Appeals has squarely held, a guarantor may not avoid summary judgment by denying the authenticity or binding effect of a guarantee disclosed in corporate SEC filings. *See generally Kornfeld* v. *NRX Techs., Inc.*, 62 N.Y.2d 686, 465 N.E.2d 30 (1984).

To escape this Court's prompt application of *Plapinger*, HealthSouth claims a need for discovery into which UBS entities have standing to bring this action. But the loan documents (and the declaration submitted by UBS in support of this motion) clearly identify UBS as "Administrative Agent" and as "***Lender***." Moreover, even if HealthSouth *genuinely* could dispute that UBS loaned $20 million to MedCenter at HealthSouth's request, that dispute would be immaterial; HealthSouth does not — and cannot — dispute that UBS may enforce the Credit Agreement on behalf of all Lenders (whoever they may be) as "Administrative Agent."

Finally, HealthSouth's request that this Court abstain from hearing this case ignores HealthSouth's covenant in the Credit Agreement "not to do exactly what [it is] now doing: that is, argue that the United States District Court for the Southern District of New York is an inconvenient forum." *Firemen's Ins. Co.* v. *Keating*, 753 F. Supp. 1137, 1145 (S.D.N.Y. 1990). While Alabama state courts may be hostile to New York forum-selection clauses, both New York state and federal common law — which bind *this* Court — consistently enforce such clauses in commercial contracts. As Judge Hellerstein recognized in *Gateway, Inc.* v. *Vitech America, Inc.*, 143 F. Supp. 2d 391 (S.D.N.Y.), *aff'd*, 33 Fed. Appx. 578 (2d Cir. 2002), this Court can and should resolve a motion for summary judgment to enforce an absolute and unconditional guarantee, *even if* similar matters are being litigated elsewhere. *Id.* at 397.

\*　　　　\*　　　　\*

3

In seeking to end-run *Plapinger*, HealthSouth asks this Court to ignore the undisputed documents submitted in support of UBS's motion, including: (i) the terms of HealthSouth's "absolute and unconditional" guarantee; (ii) HealthSouth's representations and warranties in the Credit Agreement; (iii) HealthSouth's Board of Directors' resolutions; (iv) HealthSouth's own SEC filings (both before and after the disclosure of the HealthSouth accounting fraud); (v) HealthSouth's consent to this Court's jurisdiction; and (vi) HealthSouth's agreement that UBS could enforce the Credit Agreement as its Administrative Agent.

Under settled New York law, the fact that HealthSouth was engaged in accounting fraud when the Credit Agreement was signed, even accompanied by allegations that one banker employed by an affiliate of UBS knew about the fraud, does not permit HealthSouth to avoid its "absolute and unconditional" guarantee. New York requires the swift enforcement of "absolute and unconditional" guarantees, and guarantors may not raise fraud in the inducement (or indeed, virtually *any* defense) as a basis for evading payment of such a guarantee. Accordingly, discovery is unnecessary, and this Court should grant UBS's motion.

## ARGUMENT

UBS's motion raises a single question of New York contract law: Can HealthSouth avoid summary enforcement of its "absolute and unconditional" guarantee of MedCenter's debt, which was unanimously approved by HealthSouth's Board of Directors, by arguing that the guarantee was "conceived in fraud" — as was the *Plapinger* guarantee — and allegedly "entered into by a faithless agent who [lacked] authority to bind HealthSouth" (HS Br. at 1)? This issue of law raises no genuine dispute of material fact or need for further discovery. And, HealthSouth's abstention arguments fail to honor the Credit Agreement's forum-selection clause, which must be enforced under both New York state and federal common law.

I.    **UNDER SETTLED NEW YORK LAW, UBS IS ENTITLED TO ENFORCE HEALTHSOUTH'S "ABSOLUTE AND UNCONDITIONAL" GUARANTEE.**

HealthSouth does not dispute that the Credit Agreement states unequivocally that HealthSouth provided an "absolute and unconditional guarantee" of UBS's $20 million loan to MedCenter's debts.  Under settled New York law, this contractual promise "constitute[s] a valid waiver of [HealthSouth's] right to plead defenses" to an action to enforce that guarantee. *Biaggi*, 2008 N.Y. App. Div. LEXIS 129, at *1-2; *see also Citibank, N.A.* v. *Plapinger*, 66 N.Y.2d 90, 93, 485 N.E.2d 974, 975 (1985).

In opposing UBS's motion, HealthSouth asks this Court to create a new exception to *Plapinger*, claiming that this established rule does not apply if the guarantee was signed by a "faithless agent" or if the guarantee was "itself procured by fraud."  (HS Br. at 23.)  HealthSouth is wrong, both on the undisputed facts and the law.

A.    **The Credit Agreement, Including the "Absolute and Unconditional" Guarantee, Is a Binding Obligation of HealthSouth.**

HealthSouth's "agency" argument entirely ignores that the Credit Agreement, including the guarantee, was repeatedly authorized by HealthSouth's Board.  Because the Credit Agreement was executed pursuant to *actual authority* — *i.e.*, multiple Board resolutions authorizing HealthSouth officers to perform the ministerial act of signing on the company's behalf (*see* Kalal Decl. Exs. C, I) — HealthSouth's arguments regarding finance officer Jason Brown's "disloyalty" or "apparent authority" to sign those documents are beside the point.[1]

---

[1]    Whatever merit HealthSouth's argument could have on the hypothetical posited in its brief — a contract to which the Court's name was signed by an embezzling law clerk (*see* HS Br. at 1)  — that hypothetical does not fit the undisputed facts.  HealthSouth acknowledges that its Board "resolved to authorize HealthSouth to enter into the Credit Agreement."  (HS 56.1 St. at ¶ 5.)  Perhaps the more apt analogy would be a clerk who signed the Court's name to a contract after being authorized by the Court in writing.

In Delaware, where HealthSouth is incorporated, "the board of directors has the ultimate responsibility for managing the business and affairs of a corporation." *Quickturn Design Sys.* v. *Shapiro*, 721 A.2d 1281, 1291 (Del. 1998); *see also* 8 Del. C. § 141(a). But because directors "cannot themselves manage the operations of the firm . . . [Delaware law] expressly permits a board of directors to delegate managerial duties to officers of the corporation." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 761 & n.490 (Del. Ch.) (internal quotation omitted), *aff'd sub nom. Brehm* v. *Eisner*, 906 A.2d 27, 69 (Del. 2006) (board may empower managers by "express delegation of authority"). Indeed, corporate officers "may not act in a manner contrary to the express desires of the board of directors." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 775 & n.570 (Del. Ch. 2005).

A board of directors may delegate to corporate officers the authority to sign contracts on the corporation's behalf. *See, e.g., Italo-Petroleum Corp.* v. *Hannigan*, 14 A.2d 401, 406 (Del. 1940); *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 281-82 (Del. Ch. 2003). Thus, an officer signing a contract expressly authorized by the Board of Directors has *actual* authority to bind the corporation. *See, e.g., Petition of Mulco Prods., Inc.*, 123 A.2d 95, 103 (Del. Super. 1956) (actual authority of corporate employee "may consist of express authority granted the agent [by] corporate action by the . . . Board of Directors"); Restatement (Third) of Agency § 3.03 cmt. c. (same); 18B Am. Jur. 2d *Corporations* § 1318 (same).

On March 27, 2001, HealthSouth's Board expressly authorized *seven* HealthSouth officers, including Jason Brown, to sign the Credit Agreement on behalf of HealthSouth. (Kalal Decl. Ex. C, at Ex. A.) So Mr. Brown's signature was a purely "***ministerial act*** necessary to carry into execution the order of the board of directors," pursuant to *actual* authority to bind HealthSouth. *Hannigan*, 14 A.2d at 406 (emphasis added); *see also, e.g., United States* v. *Mendoza-Acuna*, 764 F.2d 699, 702 (9th Cir. 1985) ("Among the ministerial acts which may be

delegated by an agent are the execution and signature of notes and documents binding the principal where the agent has determined the propriety of the act.").

**B.      On the Undisputed Facts, *Plapinger* Plainly Applies Here.**

Apparently recognizing that HealthSouth cannot dispute the binding nature of the Credit Agreement and guarantee, HealthSouth argues that, under New York law, "the role of the UBS entities in the fraud at HealthSouth and the attendant question of whether UBS could supposedly rely on [the signatory's] authority as agent (or that of others defrauded into assent) raise genuine issues of material fact that preclude summary judgment" (HS Br. at 22), as do questions regarding "the scope and nature of the fraud [allegedly] giving rise to the Credit Agreement and Guarantee" (*id.* at 3).    For several independent reasons discussed below, HealthSouth misstates the governing New York law.

**1.      Under the Terms of Its "Absolute and Unconditional" Loan Guarantee, HealthSouth Has Waived Any Claim That UBS Defrauded HealthSouth or Its Board Into Executing the Guarantee.**

To evade this Court's application of *Plapinger*, HealthSouth contends that the Guarantee was "void[] in its inception under New York law," because the Credit Agreement was "conceived in fraud, and entered into by a faithless agent who had no actual or apparent authority" to bind HealthSouth.   (HS Br. at 19.)   Specifically, HealthSouth asserts that "the faithless fiduciary who purported to bind the Company . . . lacked both actual and apparent authority and procured the Guarantee by fraud, and that UBS executives were well aware of this at the time."   (*Id.* at 24.)   But HealthSouth's argument simply rehashes the "fraud in the inducement" defense that the New York Court of Appeals squarely rejected in *Plapinger*.

In *Plapinger*, a guarantor's "absolute and unconditional" guarantee barred the guarantor from arguing that the guarantor had relied on a specific statement by the lender, because the contract disclaimed reliance on the lender's statement.   Accordingly, evidence

adequate to show that the lender had *knowingly* lied to the guarantor to obtain the guarantee was rejected by the Court of Appeals, because "the substance of defendants' guarantee forecloses their reliance on the claim that they were fraudulently induced to sign the guarantee by the banks' oral [representation that] an additional line of credit [had been established]. [To rule otherwise] would in effect condone defendants' own fraud in 'deliberately misrepresenting [their] true intention,' when putting their signatures to their 'absolute and unconditional' guarantee." 66 N.Y.2d at 95, 485 N.E.2d at 977 (quoting *Danann Realty Corp.* v. *Harris*, 5 N.Y.2d 317, 323, 157 N.E.2d 597, 600 (1959)).

As did the *Plapinger* guarantor, HealthSouth in the Credit Agreement absolutely and unconditionally disclaimed reliance on anything that UBS did or said to obtain the guarantee. Thus, HealthSouth's newly minted allegation that UBS fraudulently induced HealthSouth's Board into extending the guarantee (indirectly, with the help of a disloyal HealthSouth insider) is indistinguishable from the *Plapinger* lenders' direct fraudulent inducement of the *Plapinger* guarantee.

### 2. HealthSouth May Not Rely on a Defense It Specifically Waived.

*Plapinger* also does not allow HealthSouth to ignore the express terms of the Credit Agreement and guarantee. HealthSouth expressly represented and warranted that the Credit Agreement was a "legal, valid and binding obligation or agreement" of the company (Kalal Decl. Ex. A, at § 6.1(d)), and that "the Credit Agreement had been "duly authorized by all requisite corporate actions . . . required for the lawful execution, delivery and performance thereof" (*id.* at § 6.2(a)). HealthSouth's General Counsel opined to UBS that the Credit Agreement had been "duly authorized by all requisite corporate action of the Guarantor" (Kalal

Decl. Ex. B, at ¶ 4),[2] and certified that finance officer Jason Brown, who signed the Credit Agreement, was "a duly elected, qualified and acting officer of the Borrower." (Kalal Decl. Ex. C.)  And, to "induce" UBS to lend millions of dollars to MedCenter, the Credit Agreement contained a "continuing absolute and unconditional guarantee of payment without regard to the *validity, regularity or enforceability* of the Agreement or any Note or guarantee thereof . . . and without regard to any defense, set-off or counterclaim" of HealthSouth. (Kalal Decl. Ex. A, § 11.4 (emphasis added).)

To avoid enforcement of its "absolute and unconditional" guarantee, HealthSouth must renege on *all* of its representations, warranties, and covenants that the Credit Agreement was duly executed and authorized. *Plapinger* flatly prohibits this tactic. Allowing HealthSouth to avoid its obligations — whether based on an "agency" argument or otherwise — "would in effect condone defendants' own fraud in deliberately misrepresenting [their] true intention, when putting their signatures to their 'absolute and unconditional' guarantee." *Plapinger*, 66 N.Y.2d at 95, 485 N.E.2d at 977 (internal quotations omitted).[3]

---

[2]    HealthSouth asserts, without explanation, analysis or citation to admissible evidence, that HealthSouth General Counsel Bill Horton's opinion was "invalid" *regardless* of whether Mr. Horton knew about the fraud. (HS 56.1 St. ¶ 6.)  This claim makes no sense whatsoever and, in any event, is irrelevant because the Credit Agreement was indisputably authorized by HealthSouth's Board of Directors.  In HealthSouth's view, a company can freely disclaim, in its discretion, a contract authorized by its board of directors simply by claiming that the counterparty knew about misconduct at the company.  Such a rule would undermine basic principles of corporate and contract law.

[3]    HealthSouth has no response to the decisions cited in UBS's opening brief holding that guarantors may waive virtually any contractual defense.  (*See* UBS Br. at 15-16.)  Instead, HealthSouth formulates a slightly different theory that has yet to be squarely rejected:  "UBS AG does not cite a single case in which the guarantee was entered into by a faithless agent in the course of perpetrating a fraud on the guarantor." (HS Br., at 24 & n.2.)  Of course, HealthSouth cites no case that *recognizes* such an exception.

The law is clear: HealthSouth's absolute and unconditional waiver of *all* defenses to its guarantee's enforceability presents an "insurmountable obstacle" to its attempt to avoid that guarantee. *Red Tulip, LLC* v. *Neiva*, 44 A.D.3d 204, 209, 842 N.Y.S.2d 1, 5 (1st Dep't 2007). As the First Department recently reaffirmed, such an absolute and unconditional guarantee "constitute[s] a valid waiver of the right to plead defenses." *Biaggi*, 2008 N.Y. App. Div. LEXIS 129, at *1-2; *see also, e.g., Red Tulip*, 44 A.D.3d at 209, 842 N.Y.S.2d at 5 (guarantee "waived all defenses and counterclaims" except champerty); *Raven Elevator Corp.* v. *Finkelstein*, 223 A.D.2d 378, 378, 636 N.Y.S.2d 292, 293 (1st Dep't 1996) (guarantees may "specifically preclude[] the guarantor from raising any defenses or counterclaims"); *European Am. Bank* v. *Lofrese*, 182 A.D.2d 67, 73, 586 N.Y.S.2d 816, 819 (2d Dep't 1992) ("Having undertaken such a broad guarantee 'absolutely and unconditionally,' [guarantor] waived any defenses and/or counterclaims he might have had.").

Because "the touchstone is specificity" when deciding whether a guarantee bars contractual defenses, *Manufacturers Hanover Trust Co.* v. *Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993), HealthSouth's "absolute and unconditional" guarantee, *specifically* waiving all defenses relating to the "validity, regularity, or enforceability" of the guarantee, bars HealthSouth's argument that the guarantee was "invalid," "irregular" or "unenforceable."

### 3.    Unlike *Motheral* and *Liberty Mutual*, UBS Did Not Conceal From HealthSouth's Board the Nature of Its Commercial Loan.

HealthSouth cites two federal decisions that declined to apply *Plapinger* on the basis that the lender concealed the nature of the contract from the guarantor — *i.e.*, that the documents did not accurately describe the matter being guaranteed. (*See* HS Br. at 23-26 (citing *MLP U.S.A.* v. *Motheral*, No. 05 Civ. 10796, 2006 U.S. Dist. LEXIS 58589 (S.D.N.Y. Aug. 18, 2006) (equipment lessor concealed from guarantor that leased equipment was defective); *JP*

*Morgan Chase Bank* v. *Liberty Mutual Ins. Co.*, 189 F. Supp. 2d 24 (S.D.N.Y. 2002) (lender concealed from guarantor that commodity forward contracts were actually illegal "disguised loans")).) HealthSouth does not cite a single New York state-court case recognizing any such exception to *Plapinger*.

In any event, to the extent that *Motheral* and *Liberty Mutual* recognize a "concealment" exception to *Plapinger*, that exception could not apply here. HealthSouth does not argue that HealthSouth's Board did not understand what HealthSouth was guaranteeing: as disclosed on the face of the Credit Agreement, the repayment of a commercial loan to MedCenter. Rather, HealthSouth's chief complaint is that "corrupt [HealthSouth] executives awarded [MedCenter] an exclusive agreement with HealthSouth" that (allegedly) was "highly unfavorable to HealthSouth but lucrative to the executives." (HS Br. at 4.) That allegation has nothing to do with "the nature of the transactions covered" by HealthSouth's guarantee, and cannot preclude application of *Plapinger*.[4] *MBIA Ins. Corp.* v. *Royal Indem. Co.*, 426 F.3d 204, 217-18 (3d Cir. 2005) (distinguishing *Liberty Mutual*); *see also Commer. Money Ctr., Inc.* v. *Ill. Union Ins. Co.*, 508 F.3d 327, 344 (6th Cir. 2007) (same).

Because the Credit Agreement *indisputably* was exactly what it purported to be — a commercial loan — HealthSouth cannot show that the Credit Agreement was a "total sham

---

[4]    In any event, HealthSouth's Board *was* aware of these matters. Within days of the Credit Agreement's execution, HealthSouth's entire Board signed a Form 10-K disclosing that MedCenter was "a development-stage healthcare e-procurement company," in which HealthSouth and "various of the Company's Directors and executive officers" had invested. (Declaration of William H. Wagener, Ex. A, at 64, 88.) That 10-K stated that HealthSouth would "enter into a definitive long-term exclusive agreement under which [MedCenter] will be the Company's exclusive e-procurement vendor of medical products and supplies." (*Id.* at 64.) "[O]rdinarily there can be no finding of fraud" where, as here, "the matter in question was readily verifiable by the [contracting party] through ordinary means." *Clarke* v. *Max Advisors*, 235 F. Supp. 2d 130, 142 (N.D.N.Y. 2002).

whose reality was totally concealed." *Liberty Mutual*, 189 F. Supp. 2d at 28. As a result, New York's *Plapinger* rule clearly applies here.

### 4. HealthSouth's Own SEC Filings Bar HealthSouth's Claim That the Guarantee Was Void *Ab Initio*.

A guarantor may not defeat summary judgment without "assembl[ing] and lay[ing] bare its affirmative proof to demonstrate that genuine triable issues of fact exist," because "reliance on mere suspicion and surmise is insufficient." *Kornfeld* v. *NRX Techs., Inc.*, 93 A.D.2d 772, 773, 461 N.Y.S.2d 342, 343 (1st Dep't), *aff'd* 62 N.Y.2d 686, 465 N.E.2d 30 (1984). Thus, guarantors may not avoid summary judgment by asserting that a guarantee is *invalid*, when such guarantee was previously disclosed in SEC filings as a *valid* obligation of the guarantor. *See id.* (defense is "feigned," a "sham," and "frivolous").

HealthSouth relegates *Kornfeld* to a footnote (HS Br. at 28 n.3), arguing that HealthSouth's accountants' accrual of a liability "has no bearing on HealthSouth's legal liability . . . under the Guarantee, and is fully consistent with HealthSouth's position that the Guarantee was entered into by a faithless agent and is void" (*id.* at 26-27). But UBS's argument does not depend on accounting judgments, but on the fact that HealthSouth's own SEC filings state that HealthSouth "provided a guaranty . . . of indebtedness,"[5] and that HealthSouth had not "paid the amounts *due under the terms of the guarantee.*"[6]

---

[5] Kalal Decl. Ex. D, at 64; *see also* Ex. E, at 152 ("We also provided a guarantee for $20 million of [MedCenter's] debt"); Ex. L, at 144 ("In 2001, we provided a guarantee of MCD's debt.").

[6] Kalal Decl. Ex. L, at 144; *see also* Ex. M, at F-40 ("We . . . have not paid the amounts *due under the terms of the guarantee.*"); Ex. N, at F-21 ("*[W]e . . . were liable for guarantees of indebtedness* owed by third parties.") (emphases added).

HealthSouth's disclosures in its SEC filings, signed by the Company's Board and filed with the SEC under a legal obligation to be truthful, squarely contradict HealthSouth's denial "that any amount was 'due' because . . . the Credit Agreement was void *ab initio*." (HS 56.1 St. ¶ 19.) Just as "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony," *Trans-Orient Marine Corp.* v. *Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991), so too a corporation may not avoid summary judgment by disavowing its prior SEC filings. *See Relational Investors LLC* v. *Sovereign Bancorp, Inc.*, No. 05 Civ. 10394, 2006 U.S. Dist. LEXIS 9415, at *28 (S.D.N.Y. Mar. 3, 2006) (SEC filings are "a significant admission contradicting the interpretation [of corporate charter that the corporation] now finds convenient to proffer"); *Kornfeld*, 62 N.Y.2d at 688, 465 N.E.2d at 31 (affirming grant of summary judgment where SEC filings "strongly suggest" that guarantor's defense lacked merit).

### 5. HealthSouth Cannot Avoid Summary Judgment by Raising Conclusory Claims of Misconduct Unrelated to the Guarantee.

To avoid repayment under its "absolute and unconditional" guarantee, HealthSouth vaguely claims that the officer who signed the Credit Agreement was "steeped in the fraud at HealthSouth" (HS Br. at 9), that "the Guarantee and the underlying loan to MCDC were formed in the course of the massive HealthSouth fraud, and that the UBS entities were well aware of this" (*id.* at 5). These conclusory claims are nothing more than diversions intended to slow this Court's enforcement of HealthSouth's "absolute and unconditional" guarantee.

Thus, HealthSouth consistently fails to describe what "fraud" it is talking about, and articulates no connection between the Credit Agreement (or guarantee) and the alleged misconduct. In fact:

- Jason Brown, who performed the ministerial act of signing the Credit Agreement, did not join any criminal conspiracy until the summer of 2002 — *more than a year after* he signed the Credit Agreement;[7]

- The supposed awareness by one investment banker employed by UBS Securities LLC ("UBS Securities," an affiliate of UBS) of a "fraudulent earnings scheme" at HealthSouth (HS Br. at 5, 9-10) is not alleged to relate to the MedCenter loan;

- E-mails from a UBS Securities research analyst characterizing HealthSouth's stock as a "mess" or as a "pig" (*id.*) were sent a year and a half *before* the Credit Agreement was signed, and these e-mails had nothing to do with MedCenter; and

- MedCenter's "exclusive agreement with HealthSouth" — disclosed in HealthSouth's SEC filings — that (allegedly) was "highly unfavorable to HealthSouth" (*id.* at 4), had nothing to do with HealthSouth's guarantee.

Even accepting these conclusory allegations as true, the alleged awareness of HealthSouth's earnings manipulations does not entitle HealthSouth to void, in its discretion, contracts with UBS unrelated to the accounting fraud, where (a) UBS fully performed its obligations, *i.e.*, loaned $20 million, and (b) HealthSouth expressly waived its defenses. *See, e.g., McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 471, 166 N.E.2d 494, 497 (1960) (illegality defense requires "direct connection between the illegal transaction and the obligation sued upon"); *Nat'l Union Fire Ins. Co. v. Robert Christopher Assocs.*, 257 A.D.2d 1, 9, 691 N.Y.S.2d 35, 41 (1st Dep't 1999) (dismissing fraud defense for failure to "establish[] any connection between the alleged fraud and [contractual] obligation"); *Mulco Prods., Inc. v. Black*, 127 A.2d. 851, 856 (Del. 1956) (corporation may ratify unauthorized loan by retaining proceeds).

---

[7]     Mr. Brown admitted that he "learned of, and knowingly and voluntarily joined in" a criminal conspiracy at HealthSouth "*in or about the summer of 2002*." (Hymer Decl. Ex. 3, at 37-38 (emphasis added).)   The object of this conspiracy was to "defraud investors by artificially inflating HealthSouth's earnings and earnings per share, make false entries in HealthSouth's books and records, file false statements with the SEC and commit mail and wire fraud." (*Id.* at 35-36.) Mr. Brown's role in the conspiracy had nothing to do with MedCenter. (*See id.* at 38-40 (describing Brown's overt acts).)

## II.    NO DISCOVERY IS NEEDED TO DECIDE THIS MOTION.

New York public policy "favor[s] the enforcement of loan agreements swiftly and according to their express terms." *Gateway*, 143 F. Supp. 2d at 397.  New York gives "greater presumptive merit" to lawsuits "based on instruments for the payment of money" by providing procedures that "bypass[] pleading, motion, and discovery delays."  *Schultz* v. *Barrows*, 94 N.Y.2d 624, 628, 730 N.E.2d 946, 948 (2000); *see also Weissman* v. *Sinorm Deli*, 88 N.Y.2d 437, 443, 669 N.E.2d 242, 245 (1996) (same).  Yet now that HealthSouth has removed this action to federal court, HealthSouth insists that it must depose *twenty-one people* to establish its defenses. (*See* Hymer Decl. Ex. ¶¶ 34-35.)  No such discovery is necessary.

HealthSouth admits nearly every factual assertion underlying UBS's motion for summary judgment, but disagrees about the legal effect of those admitted facts.[8]  HealthSouth's only *factual* argument is that UBS Securities (the Alabama derivative action defendant) rather than UBS (the plaintiff here) served as "Lender" under the Credit Agreement.  (HS 56.1 St. ¶¶ 10, 19.)  That is neither a *genuine* nor a material dispute precluding summary judgment, because UBS has standing to sue in its capacity as Administrative Agent on behalf of any Lenders.

### A.    HealthSouth's "Absolute and Unconditional" Guarantee Eliminates Any Need for Discovery.

Courts regularly enforce "absolute and unconditional" guarantees without considering extraneous evidence.  If a guarantee "waive[s] all defenses to the underlying transaction . . ., disclosure can produce no relevant information." *Gannett Co.* v. *Tesler*, 177

---

[8]    This Court should not consider those portions of HealthSouth's Local Rule 56.1 statement that purport to distinguish undisputed facts by referring to matters "being litigated in the Alabama Action." *See Monahan* v. *N.Y. City Dep't of Corrections*, 214 F.3d 275, 291-92 (2d Cir. 2000) (affirming grant of summary judgment against party who provided complaint rather than statement citing admissible evidence).

A.D.2d 353, 354, 577 N.Y.S.2d 248, 249 (1st Dep't 1991); *see also, e.g., Biaggi*, 2008 N.Y. App. Div. LEXIS 129, at *2 (affirming summary judgment as to liability on guarantee); *Gen. Trading Co.* v. *A & D Food Corp.*, 292 A.D.2d 266, 267, 738 N.Y.S.2d 845, 846 (1st Dep't 2002) (same). Where, as here, "the fraud defense is precluded" by *Plapinger*, "discovery [will not] reveal[] anything material with respect to plaintiff's action." *Banco do Estado de Sao Paolo S.A.* v. *Mendes Junior Int'l Co.*, 249 A.D.2d 137, 138, 682 N.Y.S.2d 28, 29 (1st Dep't 1998).

Because "[w]hat is in dispute . . . are the legal inferences to be drawn from undisputed terms" of a contract, "the absence of discovery does not present an obstacle to the granting of . . . summary judgment." *Wells Fargo Northwest N.A.* v. *Taca Int'l Airlines*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002). The logical course of action is to rule on this motion and decide, as a matter of New York contract law, "whether any factual issues" *could* bar summary judgment, before ordering discovery. *Gateway*, 143 F. Supp. 2d at 398.

**B.    There Is No *Genuine* Dispute Whether UBS Extended the MedCenter Loan.**

HealthSouth's claimed need for discovery into the identity of the "Lender" on the Credit Agreement is an obvious façade to force this matter into Alabama court, or at least to delay judgment for the duration of the Alabama state-court litigation involving UBS Securities but not UBS. HealthSouth's claims that it needs discovery into who acted as "Lender" under the Credit Agreement simply ignore the undisputed record:

- The sworn statement of a UBS AG officer that UBS AG, Stamford Branch lent money to MedCenter (*see* Kalal Decl. ¶¶ 5, 13), and HealthSouth offers no evidence contradicting that sworn statement;[9]

---

[9]    *See Ying Jing Gan* v. *City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (summary judgment may not be defeated by simply stating that movant's affidavit is not credible).

- The execution of the 2001 Credit Agreement by UBS AG, Stamford Branch as "Administrative Agent," because the loan had not yet been made (*id.* at Ex. A);

- The execution by UBS AG, Stamford Branch as "Administrative Agent *and Lender*" of both amendments to the Credit Agreement (executed in 2001 and 2002, after the loan had been made and the "Lender" therefore determined (*id.* at Exs. F, H (emphasis added));

- The sending of five invoices and one letter by UBS AG, Stamford Branch to HealthSouth's Chief Financial Officer and General Counsel, demanding payment to UBS AG, Stamford Branch, some of which were on letterhead bearing brand names (*id.* at Exs. O, P, Q, R, S, T); and

- The disclosures in HealthSouth Form 8-K filings of four credit agreements executed by HealthSouth, describing the MedCenter guarantee as having been made "in favor of UBS AG, Stamford Branch with respect to UBS AG, Stamford Branch's . . . loan to medcenterdirect.com, Inc."[10] (Declaration of Robert J. Giuffra, Jr. ("Giuffra Decl."), Exs. E, F, G, H.)

Because UBS has submitted competent *evidence* — including a sworn declaration — that the legal entity UBS AG, Stamford Branch extended the MedCenter loan, HealthSouth cannot defeat summary judgment by pointing to *brand names*, such as "UBS," "UBS Group," "UBS Warburg," or "UBS Investment Bank," that appear on letterhead.

### C.    In Any Event, Whether UBS Loaned Money to MedCenter Is Immaterial, Because UBS Has Standing to Sue as Administrative Agent.

The Credit Agreement provides that UBS may sue in its capacity either as a "Lender" or as "Administrative Agent." (*See* Kalal Decl. Ex. A, at § 10.4.)  Under the Credit Agreement, the Administrative Agent may sue "to protect and enforce [Lenders'] rights and remedies . . . to enforce the payment of the Obligations." (Kalal Decl. Ex. A, § 9.2.)

---

[10]    The fact that some of HealthSouth's SEC filings inconsistently identify the legal entity who extended the MedCenter loan as "UBS Warburg" (*see* Kalal Decl. Ex. E, at 152, Ex. L, at 144, Ex. M, at F-40) does not bar summary judgment. UBS relies on its Declaration and the loan documents — not HealthSouth's SEC filings — to establish that UBS acted as Lender. HealthSouth's argument that HealthSouth needs discovery into *its own* SEC filings and "accounting for the guarantee" (HS Br. at 28) is absurd.

UBS brought this action both "in its capacities as Administrative Agent and as Lender." (UBS Br. at 4.) Therefore, even if HealthSouth *were* correct that UBS was not the Lender on the Credit Agreement, UBS could enforce the Credit Agreement in its capacity as Administrative Agent, because "[n]o failure or delay on the part of the Administrative Agent [or] any Lender . . . in the exercise of any right, power or privilege hereunder shall operate as a waiver of any such right, power or privilege nor shall any such failure or delay preclude any other or further exercise thereof. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law." (Kalal Decl. Ex. A, at § 12.3.)[11]

### D.    HealthSouth's Claimed Need for Discovery Is a Delaying Tactic.

To avoid summary judgment under Rule 56(f), the non-moving party must explain "what facts are sought and how they are to be obtained; . . . what efforts the affiant has made to obtain those facts; and . . . why those efforts were unsuccessful." *Nat'l Union Fire Ins. Co.* v. *Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (quoting *Burlington Coat Factory Warehouse Corp.* v. *Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985)). But discovery is not necessary if the non-moving party relies on mere "speculation as to what potentially could be discovered." *See id.* (quoting *Paddington Partners* v. *Bouchard*, 34 F.3d 1132, 1138 (2d. Cir. 1994)).

HealthSouth already has access to millions of documents (*see* Giuffra Decl. ¶¶ 22-25), more than 17,000 of which relate to MedCenter (*see* Hymer Decl. ¶ 28). HealthSouth virtually ignores this record, demanding instead to depose twenty-one witnesses regarding a wide

---

[11]    HealthSouth concedes that UBS AG, Stamford Branch has contractual standing to bring this breach-of-contract claim in this Court as Administrative Agent, but complains that counsel for UBS have engaged in litigation tactics in Alabama that somehow require that this action be dismissed (*see id.* at 2-3). Those baseless and irrelevant accusations are addressed in the annexed Declaration of Robert J. Giuffra, Jr., counsel for UBS in this action and for UBS Securities in the Alabama state court action.

array of topics (*see* Hymer Decl. ¶ 35) that are, at best, tangentially relevant to the hard evidence already presented by UBS. HealthSouth's plea for wide-ranging discovery into matters having nothing to do with the Credit Agreement "is a mere device intended to delay judgment." *SEC* v. *Milan Capital Group, Inc.*, No. 00 Civ. 108, 2000 U.S. Dist. LEXIS 16204, at *21 (S.D.N.Y. Nov. 9, 2000); *see also Stroh Cos.*, 265 F.3d at 117 (denying request for depositions where 17-month investigation and document discovery "failed to produce any evidence" supporting non-moving party).

## III.    THIS COURT SHOULD NOT ABSTAIN FROM HEARING THIS ACTION.

HealthSouth expressly agreed that the Credit Agreement (and its guarantee) would be "governed by, and construed and interpreted in accordance with, the law of the State of New York." (Kalal Decl. Ex. A, § 12.11(a).) HealthSouth also agreed that any lawsuit regarding this agreement could be brought in New York state or federal courts, and expressly "waive[d] any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same." (*Id.* at § 12.11(b).)

Nevertheless, HealthSouth — which seeks to avoid its "absolute and unconditional" guarantee — now seeks to breach this covenant as well. Because the forum-selection clause is enforceable under both New York state law and federal common law, this action may not be transferred out of New York. Indeed, HealthSouth's reliance on an Alabama state judge's refusal to enforce forum-selection clauses in other HealthSouth contracts with UBS Securities (*see* HS Br. at 6) confirms *precisely* why commercial contracts select New York courts and law, as illustrated by Judge Hellerstein's decision (affirmed by the Second Circuit) enforcing a guarantee agreement in this Court where the parties "have contracted in favor of a New York forum." *Gateway*, 143 F. Supp. 2d at 397.

A.    **New York Law Obligates New York Courts to Enforce Choice-of-Law and Forum-Selection Clauses.**

New York has a "recognized interest in maintaining and fostering its undisputed status as the pre-eminent commercial and financial nerve center of the Nation and the world," served by providing "access to a convenient forum which dispassionately administers a known, stable, and commercially sophisticated body of law." *Ehrlich-Bober & Co.* v. *Univ. of Houston*, 49 N.Y.2d 574, 581, 404 N.E.2d 726, 731 (1980). "In 1984, New York modified its common-law approach to choice of law clauses and embraced party autonomy" in commercial contracts. *Lehman Bros. Commercial Corp.* v. *Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 136 (S.D.N.Y. 2000). Specifically, the New York Legislature simultaneously enacted three statutes that "declared as a matter of public policy that [New York courts] must permit parties to maintain an action pursuant to a contractual agreement providing for a choice of New York law and forum in cases involving a million dollars or more." *Credit Francais Int'l, S.A.* v. *Sociedad Financiera de Comercio, C.A.*, 490 N.Y.S.2d 670, 678 (Sup. Ct. 1985).

The first statute provides that parties to large contracts may choose New York substantive law to "govern their rights and duties in whole or in part." N.Y. Gen. Oblig. L. § 5-1401. The second statute guarantees a New York forum to adjudicate such contracts, if the parties consent to the jurisdiction of New York courts. *See* N.Y. Gen. Oblig. L. § 5-1402. And the third statute bars courts from "stay[ing] or dismiss[ing]" on *forum non conveniens* grounds, any case relating to a contract governed by the second statute:

> [T]he court shall not stay or dismiss any action on the ground of inconvenient forum, where the action arises out of or relates to a contract . . . to which Section 5-1402 of the general obligations law applies, and the parties to the contract have agreed that the law of this state shall govern their rights or duties in whole or in part.

N.Y.C.P.L.R. § 327(b). These statutes contain no "exception for violations of another jurisdiction's public policy." *Minmetals*, 179 F. Supp. 2d at 137.

Read together, these New York statutes prevent contracting parties who select New York law and a New York forum from "argu[ing] that [an] action should be dismissed on the grounds that it is unduly burdensome to the court." *Banco do Commercio de Sao Paolo, S.A. v. Esusa Engenharia e Construcoes, S.A.*, 569 N.Y.S.2d 708, 709, 173 A.D.2d 340, 341 (1st Dep't 1991). These statutes also "preclude a New York court from declining jurisdiction even where the *only* nexus is the contractual agreement." *Nat'l Union Fire Ins. Co. v. Worley*, 690 N.Y.S.2d 57, 59, 257 A.D.2d 228, 230-31 (1st Dep't 1999) (emphasis in original). So when these statutes are satisfied, "New York is a convenient forum as a matter of law." *Fleet Nat'l Bank, N.A. v. Liag Argentina, S.A.*, 798 N.Y.S.2d 344 (Sup. Ct. 2004).

UBS respectfully submits that, as a matter of New York state law, binding upon this Court under the *Erie* doctrine, this Court cannot abstain in favor of the Alabama derivative action. Although federal courts have authority under the federal venue statute to transfer cases to other *federal* courts, the Second Circuit has not decided whether N.Y.C.P.L.R. § 327(b) prevents federal courts from declining jurisdiction in favor of other forums (such as state courts). *See Borden, Inc. v. Meiji Milk Prods., Inc.*, 919 F.2d 822, 826-27 (2d Cir. 1990) (declining to decide issue because contract did not expressly select a New York forum); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981) (federal district courts have "more discretion to transfer under [federal venue statute] than they had to dismiss on grounds of *forum non conveniens*").

As the U.S. Supreme Court has held, the purpose of the *Erie* doctrine, which requires federal courts to adopt (among other things) the conflict-of-laws principles of the forum state, is to prevent "the accident of diversity of citizenship [from] constantly disturb[ing] equal administration of justice in coordinate state and federal courts sitting side by side." *Klaxon Co.*

v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Piper Aircraft*, 454 U.S. at 248 &

n. 13 (declining to address whether *Erie* requires federal courts to apply state *forum non*

*conveniens* law because state and federal law in that case called for same result).  Because New

York state courts would be *required* to enforce the Credit Agreement's forum-selection clause,

HealthSouth cannot drag this action — filed in a New York state court — into an Alabama state

court simply by removing this case to a federal court exercising diversity jurisdiction.

**B.**     **Abstention Is Also Inappropriate Under Federal Common Law.**

Settled principles of federal common law also counsel against dismissing or

staying this case.  "Any review of a *forum non conveniens* motion starts with a 'strong

presumption in favor of the plaintiff's choice of forum.'"  *Norex Petroleum, Ltd.* v. *Access*

*Indus.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft*, 454 U.S. at 255).  Federal

courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."

*Colorado River Water Conserv. Dist.* v. *United States*, 424 U.S. 800, 817 (1976).  Generally,

"the pendency of an action in [a] state court is no bar to proceedings concerning the same matter

in the Federal court having jurisdiction."  *Id.* (quoting *McClelland* v. *Carland*, 217 U.S. 268, 282

(1910)).   Although *Colorado River* allows for federal-court abstention in "exceptional

circumstances," *id.* at 813, such abstention is inappropriate where, as here, "the two proceedings

involve different parties," "different subject matters and different forms of relief."  *Sheerbonnet,*

*Ltd.* v. *Am. Express Bank*, 17 F.3d 46, 50 (2d Cir. 1994) (reversing district court's abstention in

favor of pending state case).

**1.**     **UBS Has Not Been Sued in the Alabama Action, and the Alabama
            Complaint Does Not Seek to Invalidate the Loan Guarantee.**

"The *Colorado River* doctrine is a prudential one.  The mere fact of concurrent

state and federal proceedings 'does not, without more, warrant staying exercise of federal

22

jurisdiction.'" *Alliance of Am. Insurers* v. *Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) (quoting *Colorado River*, 424 U.S. at 816).) But mere "similarity of parties" and "overlap of subject matter" between federal and state actions does not make them "concurrent" for purposes of the *Colorado River* doctrine. *Id.* *Colorado River* abstention is inappropriate here, because (1) UBS is not a party to the Alabama litigation, and (2) the Credit Agreement is not at issue in the Alabama litigation. *See Sheerbonnet*, 17 F.3d at 50.[12]

      *First*, UBS has neither been named nor served in the Alabama action. Regardless of whether Alabama state courts *could* exercise jurisdiction over UBS as a constitutional matter, the fact that UBS has neither been named nor served means that UBS is not a party to the Alabama action as a matter of state law. *See Ex parte Pate*, 673 So.2d 427, 428-29 (Ala. 1995) (in Alabama, "strict compliance with the rules regarding service is required"); *Cofield* v. *McDonald's Corp.*, 514 So.2d 953, 953-54 (Ala. 1987) ("to properly sue an intended defendant, the plaintiff is required to properly name the defendant"); *Corona* v. *S. Guaranty Ins. Co.*, 314 So.2d 61, 63 (Ala. 1975) ("[I]t is the title of the complaint and not the body that establishes the parties who are before the court as litigants.").[13]

---

[12]     It does not matter whether HealthSouth styles its abstention request as seeking a "stay" or "dismissal." *See Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Unless this Court concludes that the state-court litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties[,] . . . it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.*

[13]     UBS was not obligated to intervene in the Alabama action. *See, e.g.*, *Richards* v. *Jefferson County*, 517 U.S. 793, 797 (1996) (Alabama state policy against "piecemeal adjudication" could not require non-parties to intervene in pending lawsuit or forfeit right to later sue); *Martin* v. *Wilks*, 490 U.S. 755, 765 (1989) ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subject to the jurisdiction of the court and bound by a judgment or a decree.").

*Second*, the Alabama pleadings show that the Credit Agreement is *not* at issue in the Alabama derivative litigation. HealthSouth argues that MedCenter "plays a prominent role" in the Alabama litigation, "lies at the core of the allegations of wrongdoing by HealthSouth against UBS," "is one of the principal transactions being litigated," and that "HealthSouth is seeking as relief the proceeds of the MCDC loan." (HS Br., at 1, 11, 14.) To support this argument, HealthSouth's counsel characterizes Paragraph 134(e) of the Alabama derivative complaint as:

> [a]lleg[ing] that the MCDC loan was arranged and secured by UBS employees who, with knowledge of the fraudulent accounting practices at HealthSouth, conspired with and aided and abetted HealthSouth's disloyal officers in breaching their fiduciary duties and using MCDC for their own personal financial benefit.

(Hymer Decl. ¶ 20.) The Alabama derivative complaint says nothing of the sort: The Credit Agreement is mentioned *once* — to allege the futility of derivative plaintiff's demand on one HealthSouth director. (*See* Kalal Decl. Ex. V, at ¶ 134(e); Giuffra Decl. ¶ 9.) The guarantee is not mentioned *at all*, and the prayer for relief seeks neither "the proceeds of the MCDC loan" nor a declaratory judgment invalidating the guarantee. If derivative plaintiff sought to invalidate HealthSouth's guarantee, his complaint utterly failed to provide "fair notice to adverse parties of the claim against them and the grounds upon which it rests." *Simpson* v. *Jones*, 460 So.2d 1282, 1285 (Ala. 1984); *see also Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1964 (2007) (same).

Because UBS is not a party to the Alabama derivative action, and the cases involve "different subject matters and different forms of relief," the Alabama action and this proceeding "are not 'concurrent' in the manner required by the *Colorado River* doctrine." *Sheerbonnet*, 17 F.3d at 49. Therefore, "this is not an appropriate case for . . . *Colorado River* abstention." *Id.* at 50; *see also*, *e.g.*, *Keating*, 753 F. Supp. at 1144 (declining to dismiss on

*forum non conveniens* grounds because "there is no evidence that [federal] plaintiff is actually a party to the [pending state] action.").

### 2.  HealthSouth Cannot Satisfy the Other *Colorado River* Factors.

Courts apply six factors when determining whether to invoke the "extraordinary and narrow" *Colorado River* abstention doctrine:  "(1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *FDIC* v. *Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999).  Although "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it," *Woodford* v. *Cmty. Action Agency of Greene County*, 239 F.3d 517, 522 (2d Cir. 2001), all but one of these factors — "avoidance of piecemeal litigation" (which does not favor either result) — affirmatively counsel *against* abstention here.

*First*, both this action and the Alabama action are *in personam*.  "[T]he absence of a res . . . favor[s] [this Court's] retention of jurisdiction." *Woodford*, 239 F.3d at 523.

*Second*, in the Credit Agreement, HealthSouth expressly waived any objection to this Court's jurisdiction.  (*See* Kalal Decl. Ex. A § 12.11(b).)  This Court should not reward HealthSouth's breach of its agreement "not to do exactly what [it is] now doing: that is, argue that the United States District Court for the Southern District of New York is an inconvenient forum." *Keating*, 753 F. Supp. at 1145; *see also, e.g.*, *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("In the light of present-day commercial realities . . . the forum clause should control absent a strong showing that it should be set aside."); *Karl Koch Erecting Co., Inc.* v. *N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1989) (same); *Gateway*, 143 F. Supp. 2d at 397 ("Courts should enforce the agreements made by the parties, including the parties' express choices as to governing law and venue for suit.").

*Third*, the order in which these actions were filed[14] and the desire to avoid piecemeal litigation are irrelevant. UBS seeks a ruling that HealthSouth's "absolute and unconditional" guarantee is enforceable under New York contract law, *notwithstanding* any factual defenses HealthSouth might possess. *See Gateway*, 33 Fed. Appx. at 580 (action to enforce guarantee was "easily severable" from similar litigation); *Banco do Estado de Sao Paolo*, 249 A.D.2d at 138-39 (severing claim to enforce "absolute and unconditional guarantee" from counterclaims dismissed on *forum non conveniens* grounds, citing "independence of the loan obligation from the . . . counterclaims"). No discovery is needed to rule on this motion. *See* Section II, *supra*. But if this Court denies UBS's motion for summary judgment, UBS is willing to coordinate discovery with the Alabama action to avoid duplication of efforts.

*Finally*, HealthSouth's argument that abstention is appropriate because "[t]he issues before this Court are exclusively the matter of state law" (HS Br. at 16), gets the analysis backwards. Federal courts need not surrender jurisdiction over contract claims that involve no "novel or unique issues of [state] law." *Bethlehem Contracting Co.* v. *Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986). This Court, which sits in New York, has been asked to interpret *New York*, not Alabama, state law. UBS brought this case in a New York state court; HealthSouth removed it to federal court, and now asks to have a New York contract interpreted in Alabama. Any doubt as to whether the Alabama court would adequately protect UBS's rights under New York law weighs in favor of this Court *exercising* jurisdiction. *See id.*

---

14    HealthSouth's reliance on the "first-to-file" rule of *Adam* v. *Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991), and *Kerotest Mfg. Co.* v. *C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) (*see* HS Br. at 11-12), is misplaced. This doctrine only requires federal courts to defer to an earlier-filed *federal* action, not an earlier-filed *state* action. *See, e.g.*, *Radioactive, J.V.* v. *Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001) ("The first-to-file doctrine applies to concurrent federal litigation — not concurrent state/federal litigation.").

C.   **HealthSouth's Speculative Claim That UBS Securities *Might* Be a Lender Who *Might* Have a "Compulsory Counterclaim" in Alabama Does Not Change the Analysis.**

HealthSouth's assertion that this federal case should be stayed or dismissed because UBS Securities *might* be the Lender under the Credit Agreement, and thus its claim to enforce the guarantee *might* constitute a "compulsory counterclaim" in Alabama state court (HS Br. at 9), fails for at least four reasons. *First*, it cannot *genuinely* be disputed that UBS — not UBS Securities — was the Lender on the Credit Agreement. *See* Section II.B., *supra*. And, as discussed above (*see* Section II.C., *supra*), it is not disputed that UBS has standing to bring this action to enforce the Credit Agreement as Administrative Agent.

*Second*, New York law prohibits courts from abstaining from hearing commercial contract cases. *See* Section III.A., *supra*. Even if Alabama would view an action to enforce the Credit Agreement as a compulsory counterclaim, New York law recognizes no "exception for violations of another jurisdiction's public policy." *Minmetals*, 179 F. Supp. 2d at 137.

*Third*, it is irrelevant under federal common law whether a particular cause of action (1) has been asserted in state court as a claim or counterclaim, (2) has not been asserted in state court but would be a permissive counterclaim, or (3) has not been asserted in state court despite being a compulsory counterclaim. It is well established that state and federal courts concurrently may hear *in personam* causes of action regarding the exact same subject. *See, e.g., Donovan* v. *Dallas*, 377 U.S. 408, 412 (1964). Indeed, federal courts have a "virtually unflagging obligation" to exercise jurisdiction even if a cause of action is pending in state court. *Colorado River*, 424 U.S. at 817. So if a particular cause of action that *has been* asserted in state

court would not justify abstention, a cause of action that *has not* been asserted could not require abstention because it "should have" been asserted.[15]

*Fourth*, abstaining because of the *possibility* that UBS Securities *might* be the Lender would *increase* this Court's workload. This Court may conclusively resolve the rights of *all* Lenders under the Credit Agreement — whoever they may be — by ruling for or against UBS in its capacity as Administrative Agent, whereas the Alabama court has jurisdiction to enter judgment *only* against UBS Securities. If HealthSouth obtained a judgment in Alabama, then HealthSouth would have to petition *this Court* to dismiss UBS's claims. *See Donovan*, 377 U.S. at 412 (once judgment is entered in state court, "whether or not a plea of res judicata in the [federal] suit would be good is a question for the federal court to decide"). But deciding whether a judgment against *UBS Securities* could bar *UBS* from enforcing the Credit Agreement would *require* this Court to conduct the very factual inquiry that is currently irrelevant: whether UBS or UBS Securities was the Lender.[16]

In any event, the claim that UBS Securities *might* be a Lender does not change the substantive question before this Court: whether HealthSouth's "absolute and unconditional"

---

[15]  Arguing that a cause of action asserted in federal court should have been asserted in state court is another way of arguing that the federal and state actions relate to the same subject matter. *Compare* Ala. R. Civ. P. 13(a) (compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction) *with*, *e.g.*, *Sheerbonnet*, 17 F.3d at 49-50 (*Colorado River* abstention looks to whether federal and state actions involve "different subject matters and different forms of relief" and "different parties"). HealthSouth's "compulsory counterclaim" argument is thus a semantic twist on its meritless *Colorado River* abstention argument.

[16]  As noted *supra*, UBS is not a party to the Alabama action, is not subject to the Alabama court's jurisdiction, and cannot constitutionally be obligated to submit to the Alabama court's jurisdiction to protect its contractual rights. *E.g.*, *Richards*, 517 U.S. at 797; *Martin*, 490 U.S. at 765.

guarantee is enforceable as a matter of New York contract law. HealthSouth's request that this Court abstain in favor of an Alabama court is purely a stall tactic. Because there is "substantial doubt" as to whether the state action will be an "adequate vehicle for the complete and prompt resolution of the issues between" HealthSouth and UBS, "it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 28.

**D.     This Court, Like Judge Hellerstein in *Gateway*, Should Decide UBS's Motion for Summary Judgment.**

This Court should follow the decision in *Gateway*, in which Judge Hellerstein decided the lender's motion for summary judgment, notwithstanding the pendency of parallel federal litigation. In that case, a borrower (Vitech) sued a lender (Gateway) in Florida federal court, alleging that Gateway had fraudulently induced Vitech to execute loans on which Vitech had defaulted, as well as other breach-of-contract claims. Gateway then sued both Vitech and the guarantors (the "St. Laurents") in this Court to enforce the guarantee. Vitech and the St. Laurents moved to dismiss Gateway's New York action in favor of the Florida litigation.

Judge Hellerstein denied the motion to dismiss, noting that the loan agreement "agreed that Gateway could take advantage of New York public policy favoring the enforcement of loan agreements swiftly and according to their express terms," and holding that "[c]ourts should enforce the agreements made by the parties, including the parties' express choices as to governing law and venue for suit." 143 F. Supp. 2d. at 397. Although there was "substantial overlap" between the New York and Florida actions, Judge Hellerstein found that "[t]here is . . . severability with respect to Gateway's suit to recover repayment of its loans." *Id.* at 396. Judge Hellerstein allowed the New York litigation to proceed so that Gateway could "ascertain, by motion under New York law, whether any factual issues stand in the way of summary judgment." *Id.* at 398. This procedure would "allow Gateway the opportunity to test whether,

under New York law, Gateway is, indeed, entitled to repayment free of the defenses that defendants seek to assert." *Id.* at 399.

Judge Hellerstein then granted Gateway's motion for summary judgment to enforce the guarantee. *Gateway Cos.* v. *Vitech Am., Inc.*, No. 01 Civ. 2171, 2001 U.S. Dist. LEXIS 25154 (S.D.N.Y. Aug. 23, 2001). The Second Circuit affirmed, noting that "there is a strong policy in favor of enforcing" forum-selection clauses in New York commercial contracts, recognizing that the guarantee was "easily severable" from the Florida action, and citing *Plapinger* with approval. 33 Fed. Appx. at 580. All of this is directly analogous to this case.[17]

## CONCLUSION

For the reasons set forth herein and in UBS's opening memorandum, this Court should grant summary judgment to UBS, ordering HealthSouth to pay all principal and interest now due under the Credit Agreement, plus UBS's reasonable attorneys' fees incurred in enforcing the Credit Agreement, as provided by the Credit Agreement.

Respectfully submitted,

Robert J. Giuffra, Jr. (RJ-9969)
Marc De Leeuw (MD-2166)
William H. Wagener (WW-9089)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for UBS AG, Stamford Branch*

February 19, 2008

---

[17]    HealthSouth's reliance on *Anderson* v. *Docuport, Inc.*, No. 06 Civ. 3769, 2007 U.S. Dist. LEXIS 10106 (S.D.N.Y. Feb. 13, 2007) is misplaced. (*See* HS Br. at 18, 29.) *Anderson* did not involve an "absolute and unconditional" guarantee that waived all defenses and counterclaims to its own validity. Indeed, Judge Lynch did not address *Plapinger* at all.