UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS AG, Stamford Branch, | ) |
| *Plaintiff,* | ) ) ) ) |
| -against- | ) Civil Action No. 07 CV 8490 (LAP) ) ECF Case ) |
| HealthSouth Corporation, | ) ) ) |
| *Defendant.* | ) ) |

### HEALTHSOUTH'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR STAY

**GREGORY P. JOSEPH LAW OFFICES LLC**
Gregory P. Joseph (GJ-1210) (gjoseph@josephnyc.com)
Peter R. Jerdee (PJ-1240) (pjerdee@josephnyc.com)
Sandra M. Lipsman (SL-1220) (slipsman@josephnyc.com)
Jeffrey H. Zaiger (JZ-1208) (jzaiger@josephnyc.com)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: (212) 407-1200
Fax: (212) 407-1280

*Attorneys for Defendant HealthSouth Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

    I.  UBS AG's Reliance on the Forum Selection Clause Is Misplaced ...................... 3

    II.  *Colorado River* Factors Mandate Abstention ........................................................ 6

        A.  The Alabama Action and This One Are Clearly "Concurrent" ...................... 7

        B.  Remaining *Colorado River* Factors Are Favorable to
HealthSouth or Neutral ................................................................................. 9

CONCLUSION.................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Page*

*APA Excelsior III LP v. Premiere Techs.*,
   49 F. Supp. 2d 664 (S.D.N.Y. 1999)..................................................................................3

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
   762 F.2d 205 (2d Cir. 1985)..............................................................................................9, 10

*Bombardier Capital, Inc. v. Solomon*, 00 Civ. 0848 (RMB),
   2000 U.S. Dist. LEXIS 16711 (S.D.N.Y. Nov. 16, 2000)..................................................3

*Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distrib. Inc.*,
   22 F.3d 51 (2d Cir. 1994)..................................................................................................3

*Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636 (E.D.N.Y. 1996) ..............................10

*Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985)............................................................8

*Capital Venture Int'l v. Network Commerce, Inc.*, 01 CIV. 4390 (JSM),
   2002 U.S. Dist. LEXIS 4450 (S.D.N.Y. Mar. 14, 2002)....................................................3

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
   24 F. App'x 16 (2d Cir. 2000) ..........................................................................................4

*Eaton-Ross Assocs., Ltd. v. Mok*, 89 Civ. 7861 (WK),
   1991 U.S. Dist. LEXIS 17815 (S.D.N.Y. Dec. 9, 1991) ...................................................7

*Gateway, Inc. v. Vitech Am., Inc.*,
   143 F. Supp. 2d 391 (S.D.N.Y. 2001)...............................................................................4 n.6

*Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank*, 01 Civ. 11379/11380 (AGS),
   2002 U.S. Dist. LEXIS 7980,(S.D.N.Y. May 2, 2002),
   *aff'd mem.*, 57 F. App'x 892 (2d Cir. 2003) ......................................................................6

*IPS Card Solutions, Inc. v. Boyd*, 00 Civ. 0776 (MBM),
   2000 U.S. Dist. LEXIS 6514 (S.D.N.Y. May 12, 2000)....................................................5-6

*Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990) .....................................................................4

*Judice v. Vail*, 430 U.S. 327 (1976)........................................................................................8

*Kingsway Fin. Servs. v. PricewaterhouseCoopers, LLP*,
   420 F. Supp. 2d 228 (S.D.N.Y. 2005)...............................................................................3

*Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*,
   386 F. Supp. 2d 421 (S.D.N.Y. 2005)...................................................................................4

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
   840 F. Supp. 211, 217 (E.D.N.Y. 1994) ..............................................................................10

*Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir. 1985) .........................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1982)...............................6, 10

*Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303 (S.D.N.Y. 2005) ....................8

*Orix Credit Alliance v. Bell Realty*, 93 Civ. 4949 (LAP),
   1994 U.S. Dist. LEXIS 2987 (S.D.N.Y. Mar. 14, 1994) ......................................................5

*Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462 (S.D.N.Y. 2001)................................. 5, 8-9, 10

*Sheerbonnet, Ltd. v. Am. Express Bank*, 17 F.3d 46 (2d Cir. 1994) ..............................................9 n.8

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988)............................................................................4

## OTHER AUTHORITIES

28 U.S.C. § 1404 (2008) ..................................................................................................................4

17 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 111.03 (3d ed. 2007).......................4

# PRELIMINARY STATEMENT[1]

**Recent Developments.** On February 19, 2008, the Alabama Court entered an Order (1) granting the plaintiff's motion to strike UBS Securities' Amended Answer in the Alabama Action (which sought to retract UBS's prior admission that UBS Securities, not UBS AG, was the lender under the Credit Agreement) and (2) holding that all UBS claims under the Credit Agreement and Guarantee are "counterclaims that are uniquely intertwined with the matters involved in this derivative action" and should not "be litigated in other Courts."[2] On March 7, 2008, the Alabama Court denied reconsideration of that Order.[3] It granted UBS Securities "leave to assert breach of the Credit Agreement as a counterclaim in this litigation" (Lipsman Decl. Ex. A at 6), or, alternatively, allowed any "other UBS entity" that may be "the actual 'Lender' on the MCDC loan ... leave to intervene ... for purposes of asserting breach of the MCDC loan agreement" (Lipsman Decl. Ex. B. at 2, ¶2). To avoid prejudice to UBS entities, the Alabama Court ruled that HealthSouth could not assert that UBS AG was the real lender" (Lipsman Decl. Ex. A at 6). If UBS entities do not assert their Guarantee claims in the Alabama Action by April 7, 2008, "Tucker and HealthSouth are given leave to move for Judgment as to the MCDC loan" (Lipsman Decl. Ex. B. at 2, ¶4).

In its Order of February 19, 2008, the Alabama Court ruled as follows:

> [T]his Court concludes AG is the Administrative Agent, not the "Lender". This Court further concludes that principles of estoppel apply to prevent UBS from now changing its legal position to the detriment and prejudice of Tucker and HealthSouth.... Too much water has passed under the bridge to now allow counterclaims that are uniquely intertwined with the matters involved in this derivative action to be litigated in other Courts. To ensure that UBS is not prejudiced by enforcing this estoppel, UBS is given leave to assert breach of the Credit Agreement as a counterclaim in this litigation and neither Tucker nor HealthSouth will be permitted to assert, as a defense, that AG, rather than UBS is

---

[1] Abbreviations used in our opening brief are used in this reply. UBS AG's February 19, 2008 brief is "UBS AG Mem." Emphasis is added and citations are omitted in this reply.

[2] *See* the accompanying Declaration of Sandra M. Lipsman dated March 14, 2008 ("Lipsman Decl.") at Ex. A, p. 6.

[3] *See* Lipsman Decl. Ex. B.

1

the real lender.... If UBS fails to amend its counterclaim... Tucker and HealthSouth are given leave to move for Judgment as to the MCDC loan.

Lipsman Decl. Ex. A at pp. 5-6.

The Order of March 7, 2008, modified two decretal paragraphs in the February 19 Order:

> 2.   UBS [Securities] is granted leave to amend its counterclaim within 30 days from this date to assert breach of the MCDC loan agreement. Alternatively, if some other UBS entity is the actual "Lender" on the MCDC loan, that entity is hereby given leave to intervene in this action within 30 days of this Order, for purposes of asserting breach of the MCDC loan agreement. UBS' current counsel are hereby directed to communicate this grant of intervention to the UBS entity making said loan.
>
> 4.   If the UBS parties do not amend or intervene to assert the alleged MCDC loan breach as provided herein, Tucker and HealthSouth are given leave to move for Judgment as to the MCDC loan.

Lipsman Decl. Ex. B at p. 2.

In the Alabama proceedings, UBS counsel (Mr. Giuffra) broadly conceded that the claims UBS AG asserts here are subsumed in the Alabama Action.[4] Consequently, UBS AG cannot credibly argue that "the Alabama pleadings show that the Credit Agreement is not at issue in the Alabama derivative litigation" (UBS AG Mem. at 24), or that HealthSouth merely "speculates" that "UBS Securities might be a lender who might have a 'compulsory counterclaim.'" Id. at 27.

UBS's conscious decision to admit in Alabama that UBS Securities is the lender to MCDC has come back to haunt it. It also appears to be true. Last week, another witness, former UBS Securities executive Roderick O'Neil, testified in the Alabama Action that UBS Securities, not UBS AG, is documented as the lender to MCDC.[5]

---

[4]   See Lipsman Decl. Ex. C at 64 ("look, if they're ordered to pay the 30 million dollars back to UBS and it's sitting in UBS's bank account they can still litigate as part of their claimed damages this Med Center loan. No one is saying they can't as part of this case."); id. at 72 ("They can get the 30 million dollars back, they can put it on their list of 30 million dollars that they're entitled to in the claims against UBS Securities."); id. at 40-41 ("I'm not saying if we get the 30 million dollars back that they can't claim that as part of their damages. They've already identified that as part of their damages even though they haven't had to pay the money back....").

[5]   See Lipsman Decl. Ex. D (excerpts from the 3/5/08 O'Neil deposition) at 206-208, 215-217, 226, 231-232.

I.  **UBS AG's Reliance on the Forum Selection Clause Is Misplaced**

UBS AG's principal argument against abstention is that, in the Credit Agreement, HealthSouth consented to the jurisdiction of New York courts and waived objection to venue (UBS AG Mem. at 19). This argument fails, however, because the contractual forum selection clause is non-exclusive. *See* Kalal Decl. Ex. A §12.11(b)(i) (each party "submits … to the <u>non-exclusive</u> general jurisdiction of the courts of the State of New York, the courts of the United States for the Southern District of New York, and appellate courts from any thereof."). "An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distrib. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994).

**Permissive, Not Mandatory, Forum Selection Clause May Be Disregarded.** The language of non-exclusivity means that the clause is "permissive" rather than "mandatory" and, even coupled with an "irrevocable consent" to jurisdiction and venue, may be disregarded in disputes over venue where other factors militate toward transfer. *See, e.g., Kingsway Fin. Servs. v. PricewaterhouseCoopers, LLP*, 420 F. Supp. 2d 228, 234 & n.6 (S.D.N.Y. 2005) (Berman, J.) (forum selection clause provided that "each party hereby irrevocably agrees" that suit "may be brought" in Illinois and "irrevocably submits to … such jurisdiction and … irrevocably waives any and all objections which it may have as to venue;" held, "[u]nder federal law, the forum selection clause … is permissive, not mandatory"); *Capital Venture Int'l v. Network Commerce, Inc.*, 01 Civ. 4390 (JSM), 2002 U.S. Dist. LEXIS 4450, *6-7 (S.D.N.Y. Mar. 14, 2002) (Martin, J.) (parties irrevocably consented to the jurisdiction of the New York courts and irrevocably waived objections to inconvenient forum; held, "even if all the defendants were bound by the forum selection clause, the public interest in judicial economy would militate against enforcement of the contractual provision precluding the Plaintiffs from raising the issue."); *accord APA Excelsior III LP v. Premiere Techs.*, 49 F. Supp. 2d 664, 671-672 (S.D.N.Y. 1999); *Bombardier Capital, Inc. v. Solomon*, 00 Civ. 0848 (RMB), 2000 U.S. Dist. LEXIS 16711, at *10-13 (S.D.N.Y. Nov. 16, 2000).

3

**Federal Common Law Governs Analysis of Forum Selection Clauses.** UBS AG disregards the foregoing federal precedent and "submits" that New York law, including the CPLR, is "binding upon this Court under the *Erie* doctrine." UBS AG proffers <u>no</u> authority for this proposition, as it is contrary to law. "A State cannot pre-empt a district court's consideration of a forum-selection clause by holding that the clause is automatically enforceable." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 n.10 (1988). On the contrary,"[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (expressly rejecting "conten[tion] that under the doctrine of *Erie* … state law … should control."). *Accord, e.g.*, *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 24 F. App'x 16, 18 (2d Cir. 2000) ("the doctrine of *forum non conveniens* in a diversity case (and, thus, the enforceability of a forum-selection clause) … is an issue of federal procedural law, not of state substantive law"); *Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421, 424 (S.D.N.Y. 2005) ("The validity of forum selection clauses in diversity cases is governed by federal law").

**Principles Permitting Disregard of Forum Selection Clauses Apply *A Fortiori* to Abstention Decisions.** It should be stressed that the foregoing cases address transfer to other districts pursuant to 28 U.S.C. § 1404, or to a foreign country forum under the doctrine of *forum non conveniens*, both of which are analytically distinct from *Colorado River* abstention. *See generally* 17 MOORE'S FEDERAL PRACTICE § 111.03 (3d ed. 2007). UBS AG blurs that distinction throughout its argument. *See, e.g.*, UBS AG Mem. at 21-22.[6] But federal common law regarding forum selection clauses applies *a fortiori* in the context of *Colorado River*

---

[6] For example, UBS AG relies heavily on *Gateway, Inc. v. Vitech Am., Inc.*, 143 F. Supp. 2d 391 (S.D.N.Y. 2001), which was not an abstention decision, but a decision on a § 1404 motion. The Court found, *inter alia*, that "special circumstances," including prevention of forum shopping and "encourag[ing] the amicable settlement of disputes" overrode the primacy of the first-filed action where "at the time that the Florida lawsuit was filed, the parties were involved in intensive discussions about their business relationship, discussions with the potential to resolve the disputes regarding the loans or the grant of territorial rights. Where the party filing first rushed to do so in the midst of negotiations to resolve the parties' disputes, the later-filed action often will be permitted to proceed in its chosen forum." *Id.* at 397.

4

abstention, where inconvenience is but one of several factors to be considered. When *Colorado River* abstention is appropriate, even a mandatory forum selection clause is not dispositive, as this Court recognized in *Orix Credit Alliance v. Bell Realty*, 93 Civ. 4949 (LAP), 1994 U.S. Dist. LEXIS 2987 (S.D.N.Y. Mar. 14, 1994) (Preska, J.). In *Orix*, a mandatory forum selection clause was "given full effect," rendering a *forum non conveniens* motion "insupportable." Thus, the Court stated, "the only potential basis for dismissal or stay of this action [was] abstention … under *Colorado River*…." *Id.* at *4.

The advanced state of the Alabama Action is a controlling factor. In *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462 (S.D.N.Y. 2001) (Scheindlin, J.), a mandatory forum selection clause provided that "[t]he validity, interpretation and legal effect of this agreement is governed by the laws of New York.... The New York courts (state and federal), only, will have jurisdiction over any controversies regarding this agreement, and the parties hereto consent to the jurisdiction of said courts." *Id.* at 466 n.1 (emphasis added). The Court nonetheless abstained under *Colorado River* and dismissed the New York action in favor of California state litigation, rejecting the plaintiff's argument that "the convenience of the federal forum is demonstrated by the express New York forum selection clause." *Id.* at 476. The Court observed that the parties were already going back and forth between the two states where the dispute was being litigated, but the California suit, while subsuming the issue to be litigated in New York, was broader and further along — as in the present dispute — and concluded that the "inconvenience" factor "weigh[ed] in favor of abstention." *Id.* ("Because all parties, including Radioactive, Manson and Garbage, are already litigating the issues underlying this dispute in California, the New York forum is clearly inconvenient for all involved. This factor weighs in favor of abstention.").

Similarly, in *IPS Card Solutions, Inc. v. Boyd*, 00 Civ. 0776 (MBM), 2000 U.S. Dist. LEXIS 6514 (S.D.N.Y. May 12, 2000) (Mukasey, J.), guarantors of a note had commenced a suit in Tennessee state court that addressed numerous aspects of a complex transaction that related to the guarantee. When the guarantors contacted a successor-in-interest to the noteholder to determine whether it intended to intervene in Tennessee, that party sued in New York on the

guarantee, which "contained a clause whereby the [guarantors] 'submit to the non-exclusive personal jurisdiction of the State of New York for the enforcement of this Guaranty' and waive objections to personal jurisdiction." *Id.* at *3. As in *Radioactive*, the Court abstained, under *Colorado River*, in favor of the Tennessee litigation, stressing that "the question of whether staying this action would avoid piecemeal litigation, which I find to be the principal consideration here," trumped "the permissive forum selection clause in the Guaranty." *Id.* at *8.

Thus, the contractual forum selection clause is no bar to *Colorado River* abstention.

## II.   *Colorado River* Factors Mandate Abstention

Bewilderingly, UBS AG begins its *Colorado River* argument with the proposition that "[a]ny review of a *forum non conveniens* motion starts with a 'strong presumption in favor of plaintiff's choice of forum.'" UBS AG Mem. at 22. This is not a *forum non conveniens* motion; it is an abstention motion, in which plaintiff's choice of forum is but one aspect of the *Colorado River* factor of "inconvenience," and an aspect that is properly disregarded, as discussed above, in favor of more compelling factors, including, principally, avoidance of piecemeal litigation:

> The avoidance of piecemeal litigation goes to the heart of abstention doctrine, principles of which "rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" ... The roots of abstention doctrine, at least with regard to parallel state court litigation, lie in practical considerations as well as legal ones, such as federalism. The spectre of piecemeal litigation implicates both, combining the impracticality of wasting scarce judicial resources with the legal dilemmas posed by the possibility of inconsistent results in two identical or virtually identical cases. It is little wonder, then, that the cornerstone of the seminal *Colorado River* decision was the threat of piecemeal litigation: "By far the most important factor in our decision [in *Colorado River*] to approve the dismissal there was the 'clear federal policy...[of] avoidance of piecemeal adjudication[....]'" *Moses H. Cone*, 460 U.S. at 16.

*Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank*, 01 Civ. 11379/11380 (AGS), 2002 U.S. Dist. LEXIS 7980, at *24-25 (S.D.N.Y. May 2, 2002) (Schwartz, J.), *aff'd mem.*, 57 F. App'x 892 (2d Cir. 2003).

A.  **The Alabama Action and This One Are Clearly "Concurrent"**

UBS's concessions in the Alabama Court that the claims UBS AG asserts here are subsumed in the Alabama Action (*see* n. 4, *supra*) demonstrates that the proceedings are "concurrent" for *Colorado River* purposes.[7]

As for UBS AG's argument that "UBS has neither been named nor served in the Alabama action" (UBS AG Mem. at 23), this is a consequence of nothing other than UBS's gamesmanship, from which UBS is certainly not entitled to profit on a *Colorado River* analysis. In addition to cases cited in HealthSouth's opening brief at 17, s*ee also Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985) ("When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship").

Even assuming, *arguendo*, that honest confusion and not gamesmanship obscured the identity of "Lender" in the Alabama Action, and putting aside the estoppel finding of the Alabama Court ("principles of estoppel apply to prevent UBS from now changing its legal position to the detriment and prejudice of Tucker and HealthSouth" (Lipsman Decl. Ex. A at 5)), the fact that UBS Securities is litigating the issue in the Alabama Court and that UBS AG has been invited by the Alabama Court to intervene militates in favor of "concurrence." *See, e.g., Eaton-Ross Assocs., Ltd. v. Mok*, 89 Civ. 7861 (WK), 1991 U.S. Dist. LEXIS 17815, at *19 (S.D.N.Y. Dec. 9, 1991) (Knapp, J.) ("it ... appears to us ... that the instant plaintiff's federal claims were compulsory counterclaims in the New Jersey action.... [B]ecause Copeland has

---

[7] *See also* Lipsman Decl. Ex. C at 33-34 ("[L]et's suppose Judge Preska gives the 30 million dollars back.... If this case goes forward they certainly can say, well, we have to pay this 30 million dollars back to UBS AG Stamford Branch and that's one of the things that we think the people from UBS Securities did that was wrong and damaged us."); *id.* at 36 ("They can still come and litigate before Your Honor the issue of whether that's part of the damages that HealthSouth suffered, the payment of the 30 million dollars."); *id.* at 39 ("clearly people who worked at UBS Securities were involved and knew about this loan").

represented that it will not object to plaintiff's adding these claims to the New Jersey action, we consider this a factor weighing towards abstention.) (*citing Judice v. Vail*, 430 U.S. 327, 337 (1976)); *Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005) (Cedarbaum, J.) ("The fact that Mouchantaf asserts an additional claim for sums due under the agreement likewise does not distinguish the actions for purposes of *Colorado River*. Mouchantaf has not argued that he is precluded from asserting this claim, which involves the same parties and the same contract, in the Arizona action.").

Moreover, notwithstanding UBS AG's repeated protestation that "it cannot genuinely be disputed that UBS [AG] — not UBS Securities — was the lender on the Credit Agreement" (UBS AG Mem. at 27), the issue remains murky at best. As reflected in Lipsman Decl. Ex. D, yet another senior UBS banker acknowledged under oath last week that the documentation reflects that UBS Securities (UBS Warburg) was in fact the lender. This uncertainty, which was not created by HealthSouth or the Alabama derivative plaintiff, militates in favor of concurrence even if UBS AG were ultimately proved right. *See, e.g., Canaday v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y. 1985) (Leisure, J.) (abstaining under *Colorado River* in favor of a state action brought by a different plaintiff: "True, 'only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.' … That does not, however, remove from the court the power to stay 'proceedings in one suit … to abide proceedings in another,' … when the circumstances call for such action.").

The *Radioactive* Court faced analogous facts. Aligned, but distinct, parties were litigating interrelated contracts in New York federal court and California state court. A singer (Manson) and band (Garbage) sued two record labels (Radioactive and Almo) in California to become "free agents." One of the contracts, between Manson and Radioactive only, had a New York forum selection clause, while two others (between Garbage and each label) selected a California forum. Radioactive unsuccessfully opposed abstention in this Court:

> Radioactive implicitly argues that Manson and Garbage are distinct…. Neither has an interest in the litigation of the other, and there is no need for all of the

> claims to be adjudicated together.... This is disingenuous.... To the record-buying world Garbage and Manson are one and the same, and all of the contracts in dispute necessarily concern all of Garbage's members, Manson included....
>
> Both the New York federal action and the California Action concern the eventual relationship between Garbage and UMG [the owner of both labels and a non-party in New York]. A number of the contracts concerning Garbage's relationship with UMG — the Almo-Garbage Agreement, the Manson Inducement Letter, and the Almo-Radioactive Agreement — contain California forum selection clauses, making it impossible to fully litigate Garbage's status in New York. Separate litigation of the different contracts increases the likelihood that this dispute will drag on and decreases the likelihood of settlement. This factor weighs heavily in favor of abstention.

*Radioactive,* 153 F.Supp.2d at 475.

Although UBS AG argues that the Guarantee is a wholly self-contained agreement that can be resolved without any reference to the Alabama Action, that is not the case, as both the Alabama Court found in ruling that the issues were "intertwined," and as UBS conceded in its counsel's repeated assertions that any result in this Court would inevitably be litigated in Alabama as part of claims that are already part of that case. As in *Radioactive*, this Court should abstain in favor of the more inclusive and developed Alabama Action.[8]

### B.     Remaining *Colorado River* Factors Are Favorable to HealthSouth or Neutral

**Presence or Absence of a Res** (UBS AG Mem. at 25). Absence of a *res* is irrelevant, not favorable to UBS AG's position. "There is no res involved in this dispute. This factor is thus irrelevant to the abstention inquiry." *Radioactive*, 153 F. Supp. 2d at 474, quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985).

**Convenience of the Federal Forum** (UBS AG Mem. at 25). UBS Securities and UBS AG share counsel, and all other parties have been litigating in Alabama for more than five years.

---

[8]     UBS AG's reliance on *Sheerbonnet, Ltd. v. Am. Express Bank*, 17 F.3d 46 (2d Cir. 1994), is misplaced. In *Sheerbonnet*, no parties overlapped in the federal and state suits. *Id.* at 50. HealthSouth is a party to both suits, and HealthSouth's UBS counterparties lack "identity" only because of UBS's tactical maneuvering. Further, the outcome of HealthSouth's contentions in the Alabama Action are intertwined with the outcome of the contentions in this action, unlike *Sheerbonnet*, in which the federal court found that, unlike here, "the outcome of its claims will have no impact on the state liquidation proceeding." *Id.*

The factor of "inconvenience" thus weighs in favor of abstention. In addition to authorities cited in HealthSouth's opening brief at 17-18, *see also Radioactive*, 153 F.Supp.2d at 476. UBS AG's infirm reliance on the existence of the forum selection clause is addressed at pp. 3-6, *supra*.

**Order of Filing** (UBS AG Mem. at 26). This factor plainly favors HealthSouth. In addition to the authorities set forth in HealthSouth's opening brief, *see also Arkwright-Boston*, 762 F.2d at 211 ("The second factor is the order in which jurisdiction was obtained. Decision does not rest on a race to the courthouse. Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum" (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21-22). *Banco do Estado* (UBS AG Mem. at 21) is a state case that has no bearing on abstention; *Gateway* is addressed in n. 6, *supra*.

**State Law** (UBS AG Mem. at 26). Contrary to UBS AG's claim that this factor favors New York because no "novel" questions of New York law are involved (UBS AG Mem. 26), the real issue is "the absence of any significant federal interests...." *Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996). *See also Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 217 (E.D.N.Y. 1994) ("When state law will apply to the bulk of the claims this factor will weigh in favor of a federal court abstaining.").

It is not relevant that the state court may be called on to interpret the law of another state. *See Radioactive*, 153 F.Supp.2d at 476 ("New York rather than California law governs disputes concerning the Manson-Radioactive Agreement. This does not necessarily make abstention inappropriate. 'Simply because this court sits in New York does not mean that it can apply New York state law any better than the California court. Federal courts are obliged to give comity to state courts and not to assume expertise where none may lie.'").

## CONCLUSION

This Court should refuse to countenance the UBS entities' efforts to gain advantage in Alabama through duplicative litigation in New York, and abstain from hearing UBS AG's suit. UBS AG's motion for summary judgment should be denied, and HealthSouth's motion for abstention in deference to the prior pending Alabama Action should be granted.

Respectfully submitted,

Dated: New York, New York
March 14, 2008

**GREGORY P. JOSEPH LAW OFFICES LLC**

By: _____
Gregory P. Joseph (GJ-1210)
(gjoseph@josephnyc.com)
Peter R. Jerdee (PJ-1240) (pjerdee@josephnyc.com)
Sandra M. Lipsman (SL-1220) (slipsman@josephnyc.com)
Jeffrey H. Zaiger (JZ-1208) (jzaiger@josephnyc.com)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: (212) 407-1200

*Attorneys for Defendant HealthSouth Corporation*

609304