UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
UBS AG, STAMFORD BRANCH,          :
                                  :
            Plaintiff,            :
                                  :   Civil Action No. 07 CV 8490 (LAP)
        - v -                     :   ECF Case
                                  :
                                  :
HEALTHSOUTH CORP.,                :
                                  :
            Defendant.            :
------------------------------x

**UBS AG'S SUPPLEMENTAL SUBMISSION RESPONDING TO NEW
MATTERS RAISED IN HEALTHSOUTH'S REPLY MEMORANDUM**

Plaintiff UBS AG, Stamford Branch ("UBS AG") respectfully submits this supplemental submission addressing new matters — described as "recent developments" — raised for the first time in HealthSouth's Reply Memorandum of Law in Further Support of Its Motion to Dismiss or Stay, dated March 14, 2008 ("HS Reply"), and to notify this Court of recent New York authority enforcing "absolute and unconditional" guarantees like the one in the Credit Agreement in this case.[1]

I.   **THE ORDERS IN THE ALABAMA DERIVATIVE ACTION ARE UNLAWFUL AND HAVE BEEN APPEALED TO THE ALABAMA SUPREME COURT.**

In its reply, HealthSouth relies heavily (*see* HS Reply at 1-2, 7-8) on orders recently issued by the Circuit Court of Jefferson County, Alabama on February 19, 2008 and March 7, 2008, in *Tucker* v. *Scrushy*, No. CV-02-5212 (Cir. Ct. Jefferson Cty.) (the "Circuit

---

[1] UBS AG does not ask the Court to strike any discussion of the so-called "recent developments" first raised in HealthSouth's reply; UBS AG requests only that this Court consider this submission in response to those matters. *See Booking* v. *Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (district court should allow an "adequate opportunity to respond to particular arguments" raised for the first time on reply).

Court Orders"), that purport to obligate UBS Securities LLC ("UBS Securities") to enforce UBS AG's contract rights in that case — notwithstanding the fact that UBS AG is not party to Tucker and UBS Securities is not party to the contract. Those orders are (1) subject to appellate review through UBS Securities' Petition for Writs of Mandamus and Prohibition to the Alabama Supreme Court (a copy of which is attached as Exhibit A hereto), (2) unlawful and unconstitutional, and in any event (3) neither relevant to the narrow issue of law before this Court — whether HealthSouth's "absolute and unconditional" guarantee must be enforced as required by New York law — nor a basis for the Court to take the extraordinary step of declining to exercise its jurisdiction to decide that issue.

The Circuit Court Orders exceed that court's authority and violate settled Alabama and federal constitutional law. As explained in more detail in the attached petition, those orders (1) exceed the Circuit Court's subject-matter jurisdiction, because UBS Securities is indisputably not a party to the Credit Agreement and thus lacks standing to enforce any rights therein, (2) deprive UBS AG of its constitutional right to due process by, *inter alia*, adjudicating UBS AG's rights without addressing UBS AG's defense that the Alabama court does not have personal jurisdiction over it, and (3) violate Alabama Rule of Civil Procedure 15(a), which "freely allow[s]" UBS Securities to amend its answer (particularly when the amendment is premised, as the Circuit Court accepted, on a simple drafting error).

Perhaps equally troubling is the Circuit Court's admitted justification for the orders — to usurp this Court's jurisdiction over UBS AG's claim by declining to "allow" matters deemed by that court to be "intertwined" with the derivative litigation to be litigated "in other Courts." (*See* February 19, 2008 Order at 6.) It is well settled that state courts lack the authority to exert extraterritorial jurisdiction over a federal court. "State courts are completely without power to restrain federal-court proceedings in in personam actions . . . . [W]here the jurisdiction

2

of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." *Donovan v. Dallas*, 377 U.S. 408, 413 (1964); *accord Johnson v. Brown-Service Ins. Co.*, 307 So. 2d 518 (Ala. 1974) (Alabama courts cannot "frustrate[ a litigant's] right to continue [its] federal action"). Indeed, the Alabama Supreme Court has previously vacated in the *Tucker* derivative action a Circuit Court order (entered at HealthSouth's request) that similarly sought improperly to expand that court's authority to force a party to litigate a claim before it (rather than arbitrate as the contract required). In that case (as here), "HealthSouth claimed that it had 'defenses' to that proceeding that gave the circuit court the authority to supersede the arbitration proceeding." *Ex parte Scrushy*, 940 So. 2d 290, 292 (Ala. 2006).

In any event, the Circuit Court Orders are irrelevant to UBS AG's action here. UBS AG here seeks enforcement of HealthSouth's "absolute and unconditional" guarantee in a Credit Agreement, which specifies that it is to be governed by New York law and that the parties agree to adjudication in New York state and federal courts. Under clear New York contract law, HealthSouth cannot assert any defenses or counterclaims to its guarantee. The Alabama Circuit Court's Orders have no bearing on that straight-forward issue of New York law, which has now been fully presented to this Court and is set for oral argument on April 11.

Not surprisingly, HealthSouth (and derivative plaintiff operating at its bidding) seek to sow confusion to support its request that this Court decline to exercise its jurisdiction. That request is meritless, particularly when based on orders of dubious constitutionality, because this Court has a "virtually unflagging obligation . . . to exercise [its] jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Sheerbonnet, Ltd. v. Am. Ex. Bank*, 17 F.3d 46, 49 (2d Cir. 1994) (abstention requires both (1) "exceptional circumstances" overcoming a "balance . . . heavily weighted in favor of the exercise

of jurisdiction," and (2) "concurrent" proceedings involving (i) identical — not merely similar — parties, (ii) the same subject matters, and (iii) the same forms of relief).

UBS AG respectfully submits that one of the primary reasons why federal courts *must* exercise their jurisdiction, except under the most limited of circumstances, is to prevent parties from questionable orders by state courts. Thus, abstention is inappropriate where, as here, there exists *any* "substantial doubt" as to whether the state-court litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem. Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

## II. HEALTHSOUTH CITES UNINFORMATIVE DEPOSITION TESTIMONY.

HealthSouth refers in its reply (HS Reply at 2-3) to the deposition of a former UBS Securities investment banker in an attempt to argue that there is uncertainty about what legal entity loaned money to MedCenter. Although the question of whether UBS AG was a "Lender" is not in any event material to UBS AG's motion — because UBS AG has standing to enforce the Credit Agreement as "Administrative Agent" — that deposition sheds no light on the matter.

It is not true that former UBS Securities investment banker Roderick O'Neill "testified in the Alabama Action that UBS Securities, not UBS AG, is documented as the lender to MCDC" (HS Reply at 2). Mr. O'Neill was not asked if he had personal knowledge of which UBS legal entity funded the loan, but simply stated that documents placed in front of him mentioned "UBS Warburg." HealthSouth did not show Mr. O'Neill the indisputably authentic documents submitted by UBS AG to this Court: (1) the Credit Agreement and its Amendments signed by UBS AG — not UBS Securities — with both Amendments signed by UBS AG as "Administrative Agent and Lender"; (2) the "Lender Addendum" to Amendment No. 2 identifying UBS AG as the "Lender" with a $20 million "Loan Commitment"; (3) the demands

for payment sent by UBS AG demanding that money be wired to UBS AG; and (4) UBS AG's July 2005 letter sent to MedCenter and to HealthSouth's Chief Financial Officer and General Counsel, wherein "UBS AG, in its capacity as a Lender, hereby demands from each of the Borrower and the Guarantor, prompt and complete payment."[2]

HealthSouth never asked Mr. O'Neill about any of UBS AG's undisputed evidence, presumably to further HealthSouth's strategy of obfuscation and thereby delay HealthSouth's repayment of the roughly $30 million it owes under its "absolute and unconditional" guarantee. There is no *genuine* dispute that UBS AG is in fact the Lender under the Credit Agreement, and in any event certainly no dispute that UBS AG is in fact fully authorized as Administrative Agent to enforce the Credit Agreement.

### III. RECENT NEW YORK CASES CONFIRM THAT "ABSOLUTE AND UNCONDITIONAL" GUARANTEES MUST BE ENFORCED.

Two recent New York state court decisions confirm, as UBS AG has explained in its papers, that New York law requires the enforcement of "absolute and unconditional" guarantees like the one HealthSouth provided in the Credit Agreement. For the Court's convenience, copies of those decisions are attached hereto as Exhibits B and C.

Last week, the Appellate Division, enforcing an "absolute and unconditional" guarantee to a promissory note, held that such a guarantee is enforceable "regardless of the validity or enforceability of any other obligation." *North Fork Bank* v. *ABC Merch. Servs.*, No. 2007-02534, 2008 N.Y. App. Div. LEXIS 2510, at *2-*3 (2d Dep't Mar. 18, 2008). In doing so, the court noted that, to avoid summary judgment, a guarantor must provide more than

---

[2] Nor did HealthSouth ask Mr. O'Neill about UBS AG loan officer David Kalal, who submitted a sworn declaration to this Court stating, with personal knowledge, that UBS AG extended the loan.

"conclusory and unsubstantiated assertions that [are] inconsistent with the unrefuted documentary evidence." *Id.*

A few weeks before that, Justice Fried of the Commercial Division rendered a similar decision enforcing an "absolute and unconditional" guarantee on summary judgment. *Israel Discount Bank of N.Y. v. NCC Sportswear, Corp.*, No. 603912/06, 2008 N.Y. Misc. LEXIS 744, at *13 (N.Y. Sup. Ct. Feb. 21, 2008). In doing so, Justice Fried explained that a guarantor "is foreclosed, as a matter of law, from defenses and counterclaims based on fraud." 2008 N.Y. Misc. LEXIS 744, at *13.

In light of these decisions, and the many that preceded them, HealthSouth's argument that UBS AG's counsel "broadly conceded that the claims UBS AG asserts here are subsumed in the Alabama Action" (HS Reply at 2) misses the mark. Under New York law, HealthSouth cannot avoid immediate enforcement of its "absolute and unconditional" guarantee, however it tries to frame a defense or counterclaim. *See, e.g.*, *Sterling Nat'l Bank v. Biaggi*, 849 N.Y.S.2d 521, 522 (1st Dep't 2008); *Israel Discount Bank*, 2008 N.Y. Misc. LEXIS 744, at *14.

As UBS's counsel explained to the Alabama Circuit Court, HealthSouth's guarantee is enforceable in this Court by UBS AG. But once HealthSouth has honored its guarantee and suffered a loss, HealthSouth could *try* to claim (whether under HealthSouth's legally flawed "civil conspiracy" theory or otherwise) that UBS Securities or some other third party is somehow liable for such loss (although HealthSouth has yet to identify any such claim or what damages if any it seeks from UBS Securities on account of the MedCenter guarantee). But simply because HealthSouth might *try* to assert a claim against UBS Securities under Alabama law does not mean that HealthSouth may refuse to honor its guarantee and hold unlawfully the $30 million it owes UBS AG before any such claim is adjudicated. Indeed, under clear New

6

York law — as set forth in *Citibank, N.A.* v. *Plapinger*, 66 N.Y.2d 90, 485 N.E.2d 974 (1985), and its progeny — HealthSouth cannot do so.

## CONCLUSION

For the foregoing reasons and those set forth herein in UBS's opening and reply memoranda, this Court should grant summary judgment to UBS, ordering HealthSouth to pay all principal and interest now due under the Credit Agreement, plus UBS's reasonable attorneys' fees incurred in enforcing the Credit Agreement, as provided by the Credit Agreement.

Respectfully submitted,

_____
Robert J. Giuffra, Jr. (RJ-9969)
Marc De Leeuw (MD-2166)
William H. Wagener (WW-9089)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for UBS AG, Stamford Branch*

March 25, 2008