DOCKET NO. _____


IN THE SUPREME COURT OF ALABAMA


EX PARTE UBS SECURITIES LLC,

Petitioner.

(Re: WADE TUCKER, derivatively for the benefit of
and on behalf of the Nominal Defendant
HealthSouth Corporation, Plaintiff,

v.

RICHARD M. SCRUSHY, et al., Defendants.)


On Appeal from the Circuit Court of Jefferson Cty, Alabama
Case No. CV-02-5212
Allwin E. Horn, III, Circuit Judge


UBS SECURITIES LLC'S PETITION
FOR WRITS OF MANDAMUS AND PROHIBITION


W. Michael Atchison (ATC003)
Jay M. Ezelle (EZE002)
Robin H. Jones (JON143)
Kelley M. Tynes (MCL041)
Starnes & Atchison LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama 35259
(205) 868-6000 (Telephone)
(205) 868-6099 (Facsimile)

Attorneys for Petitioner


**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

**DESCRIPTION OF CIRCUMSTANCES CONSTITUTING GOOD CAUSE FOR ANY DELAY** .................................iii

**TABLE OF AUTHORITIES** ......................................iv

**PRELIMINARY STATEMENT** ......................................1

**STATEMENT OF THE FACTS** ....................................6

    A.   Relevant Parties and Non-Parties to the *Tucker* Circuit Court Action ..................6

    B.   The Credit Agreement Among UBS AG, MedCenter and HealthSouth.........................7

    C.   The *Tucker* Derivative Suit in the Circuit Court............................9

    D.   UBS AG's New York Lawsuit to Enforce HealthSouth's "Absolute and Unconditional" Guarantee........................12

    E.   UBS Securities' Amended Answer, Tucker's Motion to Strike, and the Circuit Court's Order.......................13

**STATEMENT OF THE ISSUES** ..................................15

**STATEMENT OF RELIEF SOUGHT** ..............................15

**STATEMENT WHY THE WRIT SHOULD ISSUE**......................16

I.    THE ORDER IS UNCONSTITUTIONAL AND UNLAWFULLY EXPANDS THE CIRCUIT COURT'S SUBJECT-MATTER JURISDICTION ......................16

    A.   UBS Securities Lacks Standing to Enforce UBS AG's Contract, Thus Depriving the Circuit Court of Subject-Matter Jurisdiction ....16

i

B.   The Order Deprives UBS AG of Due Process ........17

1.   UBS AG Must Be Properly Made Party
     to *Tucker* Before Adjudicating
     UBS AG's Rights in *Tucker* ...................19

2.   UBS AG Has a Valid Jurisdictional Defense...21

C.   The Circuit Court's Invitation
     That UBS AG Intervene in *Tucker*
     Also Is Constitutional Error....................22

D.   The Order's Attempt to Thwart UBS AG's
     New York Lawsuit Is Unconstitutional ...........23

II.   BEYOND THE ORDER'S CONSTITUTIONAL INFIRMITIES,
      UBS SECURITIES WAS ENTITLED TO AMEND ITS ANSWER....24

A.   The Amendment Would Cause Neither Actual
     Prejudice Nor Undue Delay to Tucker ............25

B.   The Order Misapplied Judicial and
     Equitable Estoppel..............................26

1.   There Is No Basis for Judicial
     Estoppel Here ..............................27

2.   Equitable Estoppel Is Inappropriate Here....28

CONCLUSION ...........................................30

**DESCRIPTION OF CIRCUMSTANCES**
**<u>CONSTITUTING GOOD CAUSE FOR ANY DELAY</u>**

This Petition is being filed on March 24, 2008, 17 days after the Circuit Court of Jefferson County, Alabama (the "Circuit Court"), by order of March 7, 2008, denied UBS Securities LLC's Motion to Reconsider the Circuit Court's February 19 Order or, in the Alternative, for Issuance of a Stay Pending Appeal. Thus, this Petition is well within the "presumptively reasonable time for filing a petition seeking review of an order of a trial court" under Ala. R. App. P. 21(a)(3).

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Airlines Reporting Corp.* v. *Higginbotham*,
    643 So. 2d 952 (Ala. 1994) ...........................17

*Ball* v. *Jones*,
    132 So. 2d 120 (Ala. 1961) ...........................18

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985) .................................21

*Burnham* v. *Superior Ct. of Cal.*,
    495 U.S. 604 (1990) .................................19

*Chase Nat'l Bank* v. *Norwalk*,
    291 U.S. 431 (1934) .................................23

*Donovan* v. *Dallas*,
    377 U.S. 408 (1964) .............................24, 26

*Etheridge* v. *State ex rel. Olson*,
    730 So. 2d 1179 (Ala. 1999). ........................17

*Ex parte Bufkin*,
    936 So. 2d 1042 (Ala. 2006) .........................20

*Ex parte Cincinnati Ins. Co.*,
    689 So. 2d 47 (Ala. 1997) ...........................24

*Ex parte Dill, Dill, Carr, Stonbraker & Hutchings P.C.*,
    866 So. 2d 519 (Ala. 2003) ......................20, 22

*Ex parte First Ala. Bank*,
    883 So. 2d 1236 (Ala. 2003) .........................27

*Ex parte GRE Ins. Group*,
    822 So. 2d 388 (Ala. 2001) ......................25, 26

*Ex parte HealthSouth Corp.*,
    No. 1051366, 2007 WL 495247 (Ala. Feb. 16, 2007) .....16

*Ex parte Johnson*,
    No. 1061760, 2008 WL 204447
    (Ala. Jan. 25, 2008) ............................16, 18

*Ex parte Liberty Nat'l Life Ins. Co.*,
    858 So. 2d 950 (Ala. 2003) ......................24, 25

*Ex parte Pate*,
    673 So. 2d 427 (Ala. 1995) ..........................19

*Ex parte Scrushy*,
    940 So. 2d 290 (Ala. 2006) ......................5, 18

*Ex parte Segrest*,
    718 So. 2d 1 (Ala. 1998) ........................17, 18

*Ex parte Unitrin, Inc.*,
    920 So. 2d 557 (Ala. 2005) ..........................21

*Faith Props., LLC v. First Commer. Bank*,
    No. 1061149, 2008 WL 110484 (Ala. Jan. 11, 2008).....17

*Hanson v. Denckla*,
    357 U.S. 235 (1958) .................................21

*Hiller Invs. v. Insultech Group, Inc.*,
    957 So. 2d 1111 (Ala. 2006) .....................21, 22

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .................................19

*Jim Walter Homes, Inc. v. Kendrick*,
    810 So. 2d 645 (Ala. 2001) ..........................28

*Johnson v. Brown-Service Ins. Co.*,
    307 So. 2d 518 (Ala. 1974) ..........................24

*Lambert v. Mail Handlers Benefit Plan*,
    682 So. 2d 61 (Ala. 1996) ...........................29

*Locklear Dodge City, Inc. v. Kimbrell*,
    703 So. 2d 303 (Ala. 1997) ..........................29

*Martin* v. *Wilks*,
490 U.S. 755 (1989) ...................................23

*Middleton* v. *Caterpillar Indus.*,
No. 1050939, 2007 WL 2343684 (Ala. Aug. 17, 2007)....26

*New Hampshire* v. *Maine*,
532 U.S. 742 (2001) ...................................27

*Pattillo* v. *Tucker*,
113 So. 1 (Ala. 1927) ................................28

*Pennoyer* v. *Neff*,
95 U.S. 714 (1878) ...................................19

*Richards* v. *Jefferson County*,
517 U.S. 793 (1996) ..................................23

*Russell* v. *Birmingham Oxygen Serv., Inc.*,
408 So. 2d 90 (Ala. 1981) ............................16

*Sanders* v. *Flournoy*,
640 So. 2d 933 (Ala. 1994) ...........................30

*Shaffer* v. *Heitner*,
433 U.S. 186 (1977) ..................................19

*Smith* v. *State Farm Mut. Auto Ins. Co.*,
952 So. 2d 342 (Ala. 2006) ...........................26

*State* v. *2018 Rainbow Drive*,
740 So. 2d 1025 (Ala. 1999) ..........................17

*Western Grain Co. Cases*,
85 So. 2d 395 (Ala. 1955) ............................28

### RULES AND CONSTITUTIONAL PROVISIONS

Ala. R. Civ. P. 12 ...................................20

Ala. R. Civ. P. 15 .......................... 2, 6, 13, 24

U.S. Const. amend. XIV, § 1 ..........................3, 19

## PRELIMINARY STATEMENT

In this Petition, UBS Securities LLC ("UBS Securities") asks this Court to vacate an order dated February 19, 2008, as amended on March 7, 2008 (the "Order"), issued by the Circuit Court of Jefferson County, Alabama (Hon. Allwin E. Horn, III).  The Order was entered in a derivative action brought by Wade Tucker ("Tucker") on behalf of HealthSouth Corporation ("HealthSouth") seeking to recover damages from UBS Securities for the accounting fraud perpetrated by HealthSouth's senior executives.

In 2001 and 2002, in reliance on HealthSouth's "absolute and unconditional" guarantee, UBS AG, Stamford Branch ("UBS AG") loaned $20 million to MedCenterDirect.com ("MedCenter").  In September 2007, after MedCenter defaulted on its loan and HealthSouth refused to honor its guarantee, UBS AG sued HealthSouth in New York to enforce the guarantee (now worth roughly $30 million).  The "Credit Agreement" underlying the loan and HealthSouth's guarantee provided for New York law, and HealthSouth consented in that contract to the jurisdiction of New York courts.

In the *Tucker* derivative action, plaintiff never (i) sued UBS AG or served UBS AG with process, or

1

(ii) brought any claim against any UBS entity seeking to declare invalid HealthSouth's "absolute and unconditional" guarantee of the MedCenter loan. Nevertheless, HealthSouth has sought to evade repayment of its "absolute and unconditional" guarantee by asking the New York court to stay or dismiss UBS AG's action in favor of the *Tucker* derivative action. That request rested in part on a drafting error in UBS Securities' 73-page Answer in *Tucker* stating that "UBS" (defined dozens of pages earlier in the Answer as UBS Securities) had made the loan to MedCenter.

Informed of this simple error, UBS Securities amended its *Tucker* Answer (more than a year before any conceivable trial in *Tucker*), as is "freely allowed" under Alabama Rule of Civil Procedure 15(a). In an effort to thwart UBS AG's New York lawsuit, Tucker moved in Alabama to strike UBS Securities' Amended Answer and demanded that UBS Securities be "estopped" from denying — contrary to the signed contracts — that UBS Securities made the loan.

Although the Circuit Court "accept[ed] that UBS [Securities] contends it made an honest mistake or error," the Circuit Court essentially adopted Tucker's proposed order. Instead of simply allowing Tucker to sue UBS AG,

the Order commanded UBS Securities — a *non-party to the contract* but a party in *Tucker* — to assert the $30 million claim held by UBS AG — a party to the contract but a *non-party to Tucker*.    On reconsideration, the Circuit Court compounded the error of its first order by adopting Tucker's second proposal: that UBS AG intervene in *Tucker*.

The Circuit Court's extraordinary Order violates settled Alabama and federal constitutional law.    In Alabama, because a non-party to a contract lacks standing to enforce that contract, the Circuit Court lacks subject-matter jurisdiction over UBS AG's $30 million contract claim.  (*See* Section I.A., *infra*.)  Moreover, under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, state courts cannot adjudicate the rights of a non-party (here, UBS AG) to a lawsuit.  (*See* Section I.B., *infra*.)  Furthermore, the Due Process Clause protects non-parties to litigation from being forced to intervene in a lawsuit to protect their rights.  (*See* Section I.C., *infra*.)

The Circuit Court expressed the view that, because UBS AG's $30 million contract claim was "uniquely intertwined" with Tucker's claims against UBS Securities, the Circuit

3

Could would not "allow" UBS AG to litigate its contract in "other Courts."  But state courts cannot constitutionally interfere with federal litigation.  So the Order's command that UBS AG or UBS Securities sue in Alabama by April 6 or risk a default judgment is an unlawful attempt to interfere with UBS AG's fully briefed motion for summary judgment in New York, in which oral argument is scheduled for April 11. (*See* Section I.D., *infra*.)

By seeking to resolve all disputes between HealthSouth and any UBS entity in Alabama without making Tucker establish the Circuit Court's personal jurisdiction over UBS AG, the Circuit Court exceeded its authority.  Simply put, the Circuit Court does not have the power to affect the substantial contract rights of UBS AG, unless and until UBS AG is (1) served with a complaint, *and* (2) held constitutionally subject to the Circuit Court's jurisdiction under the Alabama long-arm statute.

This Court already has granted a similar petition in the HealthSouth derivative action.  In 2006, the Circuit Court ordered former HealthSouth CEO Richard Scrushy to dismiss his arbitration claim against HealthSouth in favor of litigating that same claim in the Circuit Court.  This

Court vacated that order, because "concepts of judicial economy are secondary to the strong federal policy favoring arbitration." *Ex parte Scrushy*, 940 So. 2d 290 (Ala. 2006). The current Order likewise cannot, as a constitutional matter, assert jurisdiction over the substantial contract rights of a non-party.

Wholly aside from the Order's constitutional defects, the Circuit Court should have freely allowed UBS Securities to amend its Answer. In moving to strike UBS Securities' plainly permissible amendment, Tucker claimed that he would have sued UBS AG but for the drafting error. But Tucker never explained how an *answer* could have affected his decision not to sue UBS AG — much less not to bring a claim against *any* UBS entity to invalidate HealthSouth's loan guarantee. (*See* Section II.A., *infra*.)

Finally, neither HealthSouth nor Tucker *reasonably* could have been misled by UBS Securities, because (1) the relevant loan documents identified UBS AG (not UBS Securities) as the lender to MedCenter, (2) UBS AG demanded that HealthSouth honor the guarantee, (3) HealthSouth SEC filings and other agreements identified UBS AG as the lender, and (4) UBS Securities and UBS AG have admitted in

the coordinated HealthSouth securities litigation that UBS AG had loaned money to MedCenter.  Neither judicial nor equitable estoppel are appropriate under such circumstances.  (*See* Section II.B., *infra*.)

*     *     *

In sum, Tucker must properly sue UBS AG if he seeks to adjudicate UBS AG's contract claim in the Circuit Court. Leave to amend pleadings is "freely allowed" under Rule 15(a).  The pleading and service provisions of the Alabama Rules of Civil Procedure are not onerous, and there is ample time to litigate UBS AG's jurisdictional defense before trial.  UBS Securities respectfully asks this Court to instruct the Circuit Court to vacate the Order, to allow UBS Securities to amend its Answer, and to prohibit the Circuit Court from adjudicating UBS AG's contract without establishing personal jurisdiction over UBS AG.

**STATEMENT OF THE FACTS**

**A.    Relevant Parties and Non-Parties to the *Tucker* Circuit Court Action**

UBS Securities, which maintains a registered agent in Alabama, is an investment bank and the wholly owned subsidiary of the Swiss bank UBS AG ("Swiss UBS AG").  UBS Securities is a named defendant in *Tucker*.

6

Non-party UBS AG is a commercial bank, and the Connecticut state-licensed branch of Swiss UBS AG. UBS AG and Swiss UBS AG, neither of which maintains a registered agent in Alabama, have not been named as defendants or served with process in *Tucker*.

Nominal Defendant and Counterclaim Defendant HealthSouth, a Delaware corporation headquartered in Alabama, is a provider of rehabilitative and other medical services. Plaintiff Tucker is a HealthSouth stockholder, asserting derivative claims on behalf of HealthSouth before the Circuit Court.

Defendant MedCenter, which is now defunct, was a Delaware corporation with its principal place of business in Georgia, that provided medical-supply procurement services to HealthSouth.

**B.    The Credit Agreement Among UBS AG, MedCenter and HealthSouth**

In March 2001, UBS AG, MedCenter and HealthSouth executed a "Credit Agreement," governed by New York law. (A-0096, UBS Sec. Opp. to Mot. To Strike, Ex. B., §

12.11(a).)[1]   The Credit Agreement allowed MedCenter to borrow up to $15 million from one or more "Lenders" who were not then identified.   (*Id.* at A-0031.)   Under the Credit Agreement, HealthSouth "absolute[ly] and unconditional[ly]" guaranteed MedCenter's debts.   (*Id.* at A-0089-90.)   UBS AG acted as "Administrative Agent," empowering UBS AG to enforce the Credit Agreement in New York courts and to become a "Lender" if UBS AG so chose. (*Id.* at A-0084, A-0086-87.)

The Credit Agreement was amended twice, increasing the loan amount to $20 million.   Both amendments were signed by UBS AG as "Administrative Agent and Lender."   (A-0294 and A-0301, UBS Opp. to Mot. To Strike, Exs. P and Q.)   The second amendment attached a "Lender Addendum" signed by UBS AG, identifying UBS AG as "Lender" with a "Loan Commitment" of $20 million.   (A-0307-309, UBS Sec. Opp. to Mot. To Strike, Ex. Q.)

HealthSouth retained signed copies of the Credit Agreement, the Amendments thereto, and the Lender Addendum. None of these documents mentioned UBS Securities.   At least

---

[1]   This citation refers to a portion of the record found in the Attachments to UBS Securities' Petition.

four HealthSouth loan agreements identified UBS AG as having loaned money to MedCenter, three of which were attached to HealthSouth SEC filings. (A-0239, A-0243 and A-0246, UBS Sec. Opp. to Mot. To Strike, Exs. F, G, and H; B-0056, UBS Sec. Reply in Support of Reconsid.)

C.    **The *Tucker* Derivative Suit in the Circuit Court**

On March 18, 2003, federal law-enforcement agents raided HealthSouth's headquarters. Soon thereafter, many HealthSouth executives admitted that HealthSouth's financial statements had been manipulated since 1996.

Certain HealthSouth shareholders, including Tucker, filed derivative suits on behalf of HealthSouth.[2]  On or about August 5, 2003, Tucker filed a Third Amended Complaint that named (for the first time) "UBS Group" and "UBS Investment Bank" as defendants, alleging common-law claims premised upon those entities' alleged awareness of

---

[2]    HealthSouth stockholders and bondholders filed multiple lawsuits, consolidated before Judge Bowdre of the Northern District of Alabama, alleging federal securities-law claims against (among others) HealthSouth, HealthSouth insiders, UBS AG and UBS Securities. UBS AG consistently has taken the position in this litigation that UBS AG lent money to MedCenter. (*See* A-0237 and A-0315, UBS Sec. Opp. to Mot. to Strike, Exs. E. and R.)

HealthSouth's fraud while providing investment-banking services.  (C., *Tucker* Third Am. Compl.)

Paragraph 134 of Tucker's Third Amended Complaint alleged the futility of demand on HealthSouth's Board:

> [T]he individual [HealthSouth] directors are independence-impaired, and demand would have been futile, for the following specific reasons: . . . (e) [Defendant Charles] Newhall is and at all relevant times was independence-impaired because his sale of stock in December 2001 at an artificially-inflated price has been challenged legally herein. . . . Further, Newhall's [MedCenter], on which he serves as director, is central to the allegations herein and provides the most vivid example of the Director Defendants' incentive to ignore and/or fail to discover the accounting misdeeds pled herein.  In addition, on information and belief, Newhall and his firm have done many transactions with the UBS Parties. As only one example, ***UBS funded and raised investment capital for [MedCenter]***, on which Newhall serves as director and in which all the Director Defendants are shareholders, having been granted founders' stock by [former HealthSouth Chairman Richard] Scrushy.

(*Id.* at C-0044, 46-47 (emphasis added).)  This paragraph was the only reference in Tucker's 70-page complaint to a loan by "UBS" to MedCenter.

A copy of this Complaint was served upon UBS Securities' registered agent in Montgomery, Alabama; UBS AG

does not maintain a registered agent in Alabama. On October 17, 2003, UBS Securities moved to dismiss the *Tucker* action, supported by an affidavit stating that "'UBS Group' and 'UBS Investment Bank' are non-existent legal entities and as such, were not parties to any investment-banking contract or relationship with HealthSouth." (A-0208, UBS Opp. to Mot. To Strike, Ex. C.) On March 29, 2004, Tucker filed a Supplemental Complaint naming UBS Securities LLC as a defendant.[3] (D., *Tucker* Fourth Am. Compl.) In July 2005, the Circuit Court dismissed all claims against the non-existent entities "UBS Group" and "UBS Investment Bank." (E., Order on Mot. to Dismiss.)

On August 3, 2005, UBS Securities answered Tucker's Complaints. (F., UBS Answer.) At paragraph 134 of its 73-page Answer and Counterclaims, UBS Securities admitted that "UBS provided a loan to [MedCenter]." (*Id.* at F-0024.) Because the term "UBS" had been defined on the first page of the Answer as "UBS Securities LLC," UBS Securities inadvertently had stated that UBS Securities LLC, rather

---

[3]    Neither of Tucker's Complaints named UBS AG as a party or sought to invalidate the Credit Agreement or HealthSouth's guarantee of MedCenter's debts. (*See* C., *Tucker* Third Am. Compl; D., *Tucker* Fourth Am. Compl.)

than UBS AG, was the legal entity that loaned money to MedCenter. (*See id.* at F-0001, 24.)

### D.   UBS AG's New York Lawsuit to Enforce HealthSouth's "Absolute and Unconditional" Guarantee

On March 31, 2003, the Credit Agreement matured. Neither MedCenter nor HealthSouth responded to demands, sent by UBS AG to MedCenter and/or HealthSouth's Chief Financial Officer and General Counsel, that funds be wired to UBS AG to repay MedCenter's debt. (*E.g.*, at A-0291, UBS Sec. Opp. to Mot. to Strike, Ex. O.)

On September 6, 2007, UBS AG filed an action in New York state court to enforce HealthSouth's "absolute and unconditional" guarantee in the Credit Agreement.   On October 1, 2007, HealthSouth removed UBS AG's action to New York federal court, arguing that the New York action should be stayed in deference to *Tucker*.

UBS AG has moved for summary judgment to enforce the Credit Agreement, and HealthSouth has cross-moved for the New York federal court to abstain from hearing the action. Both those motions are now fully briefed, and oral argument is set for April 11, 2008.

### E.   UBS Securities' Amended Answer, Tucker's Motion to Strike, and the Circuit Court's Order

Once informed of the drafting error in its Answer, UBS Securities filed an Amended Answer on November 16, 2007 — well more than 42 days before the first setting of *Tucker* for trial — as permitted by Ala. R. Civ. P. 15(a).  That Amended Answer made one change: amending Paragraph 134 to state that "UBS AG, Stamford Branch provided a loan to MCDC."  (G., UBS Sec. Am. Answer.)

On December 17, 2007, Tucker moved to strike the Amended Answer.  (H., Tucker Mot. to Strike; I., Tucker Mem. in Support of Mot. to Strike.)  Following briefing and oral argument, in which counsel for UBS Securities made clear that UBS AG was the real party to the Credit Agreement and that the Amended Answer sought to correct a drafting error, the parties submitted proposed orders on Tucker's motion.  (*See* A., UBS Sec. Opp. to Mot. to Strike; J., Tucker Proposed Order on Mot. to Strike; K., UBS Sec. Proposed Order on Mot. to Strike.)

On February 19, 2008, the Circuit Court entered the Order appealed herefrom, based in large part upon Tucker's proposed order.  (*Compare* L., Feb. 19, 2008 Order *with* J., Tucker Proposed Order on Mot. to Strike.)  Although the

Order "accept[ed] that UBS contends it made an honest error or mistake" in its Answer, (L., Feb. 19, 2008 Order, at L-0005), the Order (1) stated that "principles of estoppel" prevented UBS Securities from now denying that it was the Lender, (2) granted Tucker's motion to strike, (3) ordered UBS Securities to amend its counterclaims within 30 days to seek to enforce the Credit Agreement against HealthSouth, and (4) barred Tucker or HealthSouth from asserting the defense that UBS Securities was not the "Lender" under the Credit Agreement. (*See* *id.* at L-0005-6.) If UBS Securities declined to assert UBS AG's claim, the Order granted leave to HealthSouth and Tucker to seek judgment as to the Credit Agreement. (*See* *id.* at L-0006.)

UBS Securities moved for rehearing on Feb. 26, 2008, raising the constitutional arguments contained in this Petition. (M., UBS Sec. Mot. for Reconsid.) In response, Tucker argued that "UBS AG, Stamford Branch can resolve each of those issues by intervening in this action and submitting to the jurisdiction of this Court" — *i.e.*, by waiving UBS AG's constitutional objection to the Circuit Court's jurisdiction. (N-0007, Tucker Opp. to Mot. for Reconsid.) Oral argument followed.

14

On March 7, 2008, the Circuit Court denied UBS Securities' motion to reconsider.  In doing so, the Court modified its February 19 Order to incorporate Tucker's second proposal, so that it now ordered that either UBS Securities seek to enforce the Credit Agreement or that, if it was the "Lender," UBS AG could voluntarily intervene. (O., March 7, 2008 Order.)

## STATEMENT OF THE ISSUES

1. May the Circuit Court constitutionally use a drafting error in a pleading to force a non-party to a contract to enforce that contract, when the actual party to the contract has never been made subject to the Circuit Court's jurisdiction?

2. Did the Circuit Court err by preventing UBS Securities from correcting a drafting error in its Answer pursuant to Alabama Rule of Civil Procedure 15, when no trial date has been set?

## STATEMENT OF RELIEF SOUGHT

UBS Securities respectfully requests that this Court direct the Circuit Court to vacate the Order, to allow UBS Securities to amend its Answer, and to prohibit the Circuit Court from hearing any claim under the Credit Agreement

unless and until the Circuit Court's personal jurisdiction over UBS AG is properly established.

## STATEMENT WHY THE WRIT SHOULD ISSUE

**I.    THE ORDER IS UNCONSTITUTIONAL AND UNLAWFULLY EXPANDS THE CIRCUIT COURT'S SUBJECT-MATTER JURISDICTION**

### A.    UBS Securities Lacks Standing to Enforce UBS AG's Contract, Thus Depriving the Circuit Court of Subject-Matter Jurisdiction

"Mandamus review is available where the petitioner challenges the subject-matter jurisdiction of the trial court based on the plaintiff's alleged lack of standing to bring the lawsuit." *Ex parte HealthSouth Corp.*, No. 1051366, 2007 WL 495247 at *2 (Ala. Feb. 16, 2007); *see also*, *e.g.*, *Ex parte Johnson*, No. 1061760, 2008 WL 204447, at *7 (Ala. Jan. 25, 2008) (same).

UBS Securities lacks standing to enforce the Credit Agreement. Neither the Credit Agreement nor its Amendments were executed by UBS Securities. Because "it is apparent from the face of the contract that [UBS Securities] is not a third party beneficiary" of the Credit Agreement, UBS Securities "has no standing to enforce [UBS AG's contract] in court." *Russell* v. *Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90, 93 (Ala. 1981) (wholly owned subsidiary lacked standing to enforce parent corporation's contract); *see*

16

*also Airlines Reporting Corp.* v. *Higginbotham*, 643 So. 2d 952, 954 (Ala. 1994).

Because UBS Securities lacks standing to enforce the Credit Agreement, the counterclaim the Order commands UBS Securities to assert would "fail[] to invest the trial court with subject-matter jurisdiction." *State* v. *2018 Rainbow Drive*, 740 So. 2d 1025, 1028 (Ala. 1999). Neither a drafting error nor doctrines of estoppel can expand the Circuit Court's subject-matter jurisdiction. *See Etheridge* v. *State ex rel. Olson*, 730 So. 2d 1179, 1181 n.3 (Ala. 1999) ("[L]ack of subject-matter jurisdiction may not be waived by the parties."). So any judgment entered by the Circuit Court as to an attempt by UBS Securities to enforce the Credit Agreement would be void. *See*, *e.g.*, *Faith Props., LLC* v. *First Commer. Bank*, No. 1061149, 2008 WL 110484, at *3 (Ala. Jan. 11, 2008) ("A judgment entered by a trial court without subject-matter jurisdiction is void.") (internal citations omitted).

**B.   The Order Deprives UBS AG of Due Process**

A writ of prohibition "is a preventive measure, rather than a corrective remedy," whose "purpose is to prevent a lower court from acting outside its jurisdiction." *Ex*

*parte Segrest*, 718 So. 2d 1, 4 (Ala. 1998).  This writ issues "to prevent usurpation or excessive jurisdiction by a judicial tribunal and to keep each court within the limits to which law confines it." *Ball* v. *Jones*, 132 So. 2d 120, 128 (Ala. 1961); *see also Johnson*, 2008 WL 204447, at *7 & n.4; *Scrushy*, 940 So. 2d at 293-94.

This Court previously ordered the Circuit Court to allow former HealthSouth Chairman and Chief Executive Officer to pursue his claims against HealthSouth in contractually mandated arbitration.  *See generally Scrushy*, 940 So. 2d 290.  In *Scrushy*, this Court recognized that the Circuit Court's "commendable efforts to coordinate . . . litigation with other cases pending before it . . . as well as its efforts to coordinate pretrial discovery" were secondary to the "strong federal policy favoring arbitration." *Id.* at 296.  UBS Securities respectfully asks this Court likewise to prohibit the Circuit Court from entering judgment as to the Credit Agreement, unless UBS AG is properly made party to *Tucker*, to protect UBS AG's federal constitutional rights.

18

### 1. UBS AG Must Be Properly Made Party to *Tucker* Before Adjudicating UBS AG's Rights in *Tucker*

Under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, state courts must adhere to "a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." *Burnham* v. *Superior Ct. of Cal.*, 495 U.S. 604, 609 (1990) (quoting *Pennoyer* v. *Neff*, 95 U.S. 714, 732 (1878)). Today, "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer* v. *Heitner*, 433 U.S. 186, 212 (1977) (citing *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310 (1945)).

The proper method for establishing an Alabama court's jurisdiction over a non-resident is clear:  A plaintiff seeking to litigate a matter in state court must sue, name and serve his adversary with process.  Failure to do so "deprives a court of jurisdiction and renders its judgment void." *Ex parte Pate*, 673 So. 2d 427, 428-29 (Ala. 1995).

If sued, a non-resident of Alabama may move to dismiss, because plaintiff bears the "burden of proving [an Alabama] court's personal jurisdiction." *Ex parte Dill, Dill, Carr,*

19

*Stonbraker & Hutchings, P.C.*, 866 So. 2d 519, 525 (Ala. 2003); *see also* Ala. R. Civ. P. 12(b)(2).    Even if the complaint *alleges* personal jurisdiction, if the non-resident makes a *prima facie* showing of a lack of personal jurisdiction,    plaintiff    must    "substantiate    the jurisdictional allegations of the complaint by affidavits or other competent proof."    *Ex parte Bufkin*, 936 So. 2d 1042, 1045 (Ala. 2006) (collecting authorities).

UBS Securities' motion for reconsideration asked that Tucker be ordered to join UBS AG as a party, so that personal jurisdiction could be litigated on a proper record.    (B-0005-6, UBS Sec. Reply in Support of Reconsid.; M-0011-13, UBS Sec. Mot. for Reconsid.)    Instead, the Circuit Court adopted Tucker's shortcut of ordering UBS Securities — an entity over which the Circuit Court *has* personal jurisdiction — to litigate UBS AG's claim *in absentia*. (*See* L., Feb. 19, 2008 Order; O, Mar. 7, 2008 Order.)    This end-run around UBS AG's constitutional defense deprives UBS AG of due process.

### 2.    UBS AG Has a Valid Jurisdictional Defense

Tucker's refusal to sue UBS AG is no accident: Tucker has not presented evidence even *suggesting* that UBS AG is subject to personal jurisdiction in Alabama.

A non-resident of Alabama does not become subject to suit in Alabama merely by contracting with an Alabama entity. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 478-79 (1985). Nor does "[d]oing business through a wholly owned subsidiary . . . in and of itself, constitute doing business [in Alabama] by the parent corporation." *Ex parte Unitrin, Inc.*, 920 So. 2d 557, 561 (Ala. 2005). "[T]he unilateral activity of another party" cannot create personal jurisdiction. *Burger King*, 471 U.S. at 475. And personal jurisdiction is not established simply because a state court might be the "'center of gravity' of the controversy, or the most convenient location for litigation." *Hanson* v. *Denckla*, 357 U.S. 235, 254 (1958).

Deciding whether a contracting party is subject to personal jurisdiction in Alabama is a fact-intensive inquiry.[4] *See, e.g., Hiller Invs.* v. *Insultech Group, Inc.*,

---

[4]    UBS AG believes it has a strong objection to the Circuit Court's personal jurisdiction, given

21

957 So. 2d 1111, 1118-19 (Ala. 2006) (weighing several facts regarding contract formation and performance). Tucker, however, has refused even to plead facts supporting his "burden of proving . . . personal jurisdiction" over UBS AG. *Dill, Dill, Carr, Stonbraker & Hutchings, P.C.*, 866 So. 2d at 525. So by accepting Tucker's bald assertion that but for UBS Securities' drafting error, "[UBS] AG would now be a Party to this litigation" (L., Feb. 19, 2008 Order, p. 5), the Order deprived UBS AG of due process.

**C.    The Circuit Court's Invitation That UBS AG Intervene in *Tucker* Also Is Constitutional Error**

In its motion for rehearing, UBS Securities identified the grave constitutional problems of litigating UBS AG's contract claim in *Tucker* without UBS AG. (M-0010-13, UBS Sec. Mot. for Reconsid.) In his opposition, Tucker claimed to "vehemently" (N-0003, Tucker Opp. to Reconsid.) dispute these "patently ridiculous" (*Id.* at N-0007.) constitutional arguments — yet failed to address them. Instead, Tucker argued that these problems could be solved by UBS AG's intervening in *Tucker*. (*Id.* at N-0007.) In other words,

---

MedCenter's location in Georgia, the Credit Agreement's contacts with the state of New York, and the fact that loan funds apparently never flowed through Alabama.

Tucker's solution to UBS AG's due process objection is for UBS AG to waive its right to due process.

The Circuit Court's adoption of this shortcut in its March 7 Order does not cure the defects of its February 19 Order.  Alabama courts cannot constitutionally "impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." *Richards* v. *Jefferson County*, 517 U.S. 793, 800 n.5 (1996) (quoting *Chase Nat'l Bank* v. *Norwalk*, 291 U.S. 431, 441 (1934)).  "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." *Martin* v. *Wilks*, 490 U.S. 755, 765 (1989).

### D.    The Order's Attempt to Thwart UBS AG's New York Lawsuit Is Unconstitutional

Tucker and HealthSouth first complained about UBS Securities' drafting error *after* UBS AG sued to enforce the Credit Agreement in New York.  The New York action plainly played a role in the Circuit Court's decision not to "allow counterclaims that are uniquely intertwined with the matters involved in [*Tucker*] to be litigated in other Courts." (L-0006, Feb. 19, 2008 Order.)

23

Yet as the U.S. Supreme Court has explained:

> [S]tate courts are completely without power to restrain federal-court proceedings in *in personam* actions . . .. [I]t does not matter that the prohibition [may be] addressed to the parties rather than to the federal court itself. . . . [W]here the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.

*Donovan* v. *Dallas*, 377 U.S. 408, 413 (1964) (internal quotation omitted). In other words, Alabama courts cannot "frustrate[ a litigant's] right to continue [its] federal action." *Johnson* v. *Brown-Service Ins. Co.*, 307 So. 2d 518, 521 (Ala. 1974). But that is what the Order seeks to do, by commanding UBS Securities to seek to enforce a claim that UBS AG already has asserted in another court.

## II.   BEYOND THE ORDER'S CONSTITUTIONAL INFIRMITIES, UBS SECURITIES WAS ENTITLED TO AMEND ITS ANSWER

This Court has ordered circuit courts to allow litigants to amend their pleadings under Ala. R. Civ. P. 15, where amendment "would not unduly delay the judicial process or prejudice the substantial rights of any parties." *Ex parte Cincinnati Ins. Co.*, 689 So. 2d 47, 49 (Ala. 1997); *see also*, *e.g.*, *Ex parte Liberty Nat'l Life Ins. Co.*, 858 So. 2d 950, 955 (Ala. 2003) (ordering circuit

24

court to allow defendant to amend answer where no prejudice or delay shown); *Ex parte GRE Ins. Group*, 822 So. 2d 388, 392 (Ala. 2001) (vacating order striking amended answer). Pursuant to that standard, UBS Securities should have been allowed to amend its Answer.

### A.   The Amendment Would Cause Neither Actual Prejudice Nor Undue Delay to Tucker

Tucker would suffer no actual prejudice from UBS Securities' Amended Answer. Discovery in *Tucker* already has been proceeding against both UBS AG and UBS Securities, because both those entities have been producing documents and witnesses in the federal securities litigation coordinated with the *Tucker* matter. Nor would amendment unduly delay *Tucker*; discovery is still underway, and no trial date has been set.

The fact that Tucker and HealthSouth would rather litigate in Alabama than in New York is not "prejudice." HealthSouth contractually consented to suit in New York and agreed not to argue that New York was an inconvenient forum. (A-0096, UBS Sec. Opp. to Mot. to Strike., Ex. B.) And the Circuit Court cannot relieve HealthSouth of the need to defend the New York lawsuit, because "state courts are completely without power to restrain federal-court

proceedings in *in personam* actions." *Donovan*, 377 U.S. at 412.

Even if UBS Securities' amendment asserted a new defense — rather than clarified that UBS Securities does *not* possess a counterclaim which has *not* been asserted — that still would not provide grounds for striking the amendment.  It is well established that a "defense asserted in an amended answer is not prejudicial, merely because it might constitute a meritorious defense to the plaintiff's claim." *GRE Ins. Group*, 822 So. 2d at 391.

**B.   The Order Misapplied Judicial and Equitable Estoppel**

The Order misapplied the doctrines of judicial and equitable estoppel to bar UBS Securities from amending its Answer.  (*See* L-0056, Order at 5-6).  This is reversible error.  *See Middleton* v. *Caterpillar Indus.*, No. 1050939, 2007 WL 2343684, at *11 (Ala. Aug. 17, 2007) (reversing circuit court where party "did not meet its burden in proving the elements of judicial estoppel"); *Smith* v. *State Farm Mut. Auto. Ins. Co.*, 952 So. 2d 342, 351 (Ala. 2006) (reversing circuit court finding of equitable estoppel). Neither doctrine bars a party from correcting a mistake upon which *no one* has *reasonably* relied.

26

### 1.    There Is No Basis for Judicial Estoppel Here

In *Ex parte First Alabama Bank*, 883 So. 2d 1236 (Ala. 2003), this Court adopted the reasoning of *New Hampshire* v. *Maine*, 532 U.S. 742 (2001).    *New Hampshire* held that, because the purpose of the judicial estoppel doctrine is to "protect the integrity of the judicial process," judicial estoppel is inappropriate "[a]bsent success in a prior proceeding." *Id.* at 749-51.   And judicial estoppel may not apply where the inconsistency resulted from "inadvertence or mistake." *Id.* at 753.

Except for a single drafting error by UBS Securities, UBS Securities and UBS AG consistently have taken the accurate position that UBS AG extended the loan to MedCenter in other courts.  (*See, e.g.,* A-0237 and A-0315, UBS Sec. Opp. to Mot. to Strike, Exs. E and R.)   No court has granted relief premised upon the drafting error, and Tucker and HealthSouth have suffered no real prejudice from the error.   So UBS Securities cannot be judicially estopped from correcting its Answer to conform its pleading in the Circuit Court to the evidence and UBS AG's positions in other courts.

## 2.    Equitable Estoppel Is Inappropriate Here

The Order erred by equitably estopping UBS Securities from amending its Answer.  Equitable estoppel is not available when the adversary "was aware of the truth." *Smith*, 952 So. 2d at 351.  Moreover, equitable estoppel "must be tempered by applying a standard of *reasonable* reliance."  *Jim Walter Homes, Inc*. v. *Kendrick*, 810 So. 2d 645, 651 (Ala. 2001) (internal quotation omitted, emphasis added).  In other words:

> Where, therefore, one with convenient opportunity to ascertain the real facts by the exercise of reasonable diligence fails to do so, he will not be permitted to defeat another's just rights by urging an equitable estoppel based upon his having acted to his disadvantage in reliance upon another's innocently mistaken representation.

*Western Grain Co. Cases*, 85 So. 2d 395, 415 (Ala. 1955) (quoting *Pattillo* v. *Tucker*, 113 So. 1, 3 (Ala. 1927)). Tucker's claimed reliance on UBS Securities' drafting error is unreasonable for at least three reasons.

First, the contract documents show unmistakably that UBS AG was the Lender, and thus UBS Securities' answer contained a simple drafting error.  UBS Securities is not party to the Credit Agreement or its Amendments; by

contrast, UBS AG signed the Credit Agreement as "Administrative Agent," and signed both Amendments as "Administrative Agent and Lender." (A-0100, A-0300 and A-0306, UBS Sec. Opp. to Mot. to Strike, Exs. B, P And Q.) HealthSouth cannot *reasonably* profess ignorance of its own written contract. *See*, *e.g.*, *Locklear Dodge City, Inc.* v. *Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997) (parties cannot "avoid their contractual obligations by merely claiming that they did not read a contract" or argue that adversary "suppress[ed] something that was stated clearly in the contract").

<u>Second</u>, UBS AG did not conceal its status as Lender or its contract claim against HealthSouth. To the contrary, UBS AG sent a demand for payment to HealthSouth's General Counsel and Chief Financial Officer: "UBS AG, in its capacity as Lender, hereby demands . . . prompt and complete payment." (A-0293, UBS Sec. Opp. to Mot. to Strike, Ex. O.) Equitable estoppel is unavailable because HealthSouth "was given notice of the possibility of . . . collection" by UBS AG, and thus "knew of the facts [Tucker] alleges were not communicated." *Lambert* v. *Mail Handlers Benefit Plan*, 682 So. 2d 61, 64-65 (Ala. 1996).

Third, between 2002 and 2006, HealthSouth executed several contracts stating that UBS AG had loaned money to MedCenter. (A-0239, A-0243, and A-0246, UBS Sec. Opp. to Mot. to Strike, Exs. F, G, and H; B-0056, UBS Sec. Reply in Support of Reconsid.) The fact that HealthSouth's corporate counsel were aware of UBS AG's loan bars HealthSouth's litigators from professing ignorance of that fact. *See Sanders* v. *Flournoy*, 640 So. 2d 933, 939 (Ala. 1994) (attorney's knowledge generally imputed to client).

## CONCLUSION

For the foregoing reasons, this Court should direct the Circuit Court to vacate its Order, allow UBS Securities to amend its answer, and prohibit the Circuit Court from entering judgment as to the Credit Agreement unless and until UBS AG is properly made party to *Tucker*.

                                    Respectfully submitted,

*Of Counsel:*                       **s/  W. Michael Atchison**

Robert J. Giuffra, Jr.              W. Michael Atchison (ATC003)
William H. Wagener                  Jay M. Ezelle (EZE002)
SULLIVAN & CROMWELL LLP             Robin H. Jones (JON143)
125 Broad Street                    Kelley M. Tynes (MCL041)
New York, New York  10004           Starnes & Atchison LLP
(212) 558-4000                      100 Brookwood Place,
                                    Seventh Floor
                                    Birmingham, Alabama 35259
                                    matchison@starneslaw.com
                                    jezelle@starneslaw.com
                                    rjones@starneslaw.com
                                    (205) 868-6000 (Telephone)
                                    (205) 868-6099 (Facsimile)


                                    ***Counsel for UBS Securities LLC***


Dated: March 24, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 24th day of March, 2008, I filed the foregoing with the Clerk of the Court via the electronic filing system and Certified Mail, and have also served a copy of the foregoing via U.S. Mail to the following:


Honorable Allwin E. Horn, III
Circuit Court Judge
Jefferson County Courthouse
Room 350-JCC
716 North Richard Arrington Jr. Blvd.
Birmingham, Alabama 35263

John W. Haley, Esq.
Hare, Wynn, Newell & Newton
2025 Third Avenue North, Suite 800
Birmingham, AL 35203

John Q. Somerville, Esq.
Galloway & Somerville, LLC
11 Oak Street
Birmingham, AL 35213

Frank DiPrima, Esq.
41 Constitution Way
Convent Station, NJ 07960

Ronald A. Brown, Esq.
Prickett, Jones & Elliott
1310 King Street, Box 1328
Wilmington, DE 19899

Edward F. Haber, Esq.
Shapiro, Haber & Urmy, LLP
75 State Street
Boston, MA 02109

Robert C. Schubert, Esq.
Juden Justice Reed, Esq.
Schubert & Reed, LLP
Two Embarcadero Center
Suite 1660
San Francisco, CA 94111

Steve Gregory, Esq.
Dice & Gregory, LLC
2824 Seventh Street
Tuscaloosa, AL 35401

David R. Scott, Esq.
Arthur L. Shingler, III
Scott & Scott, LLC
108 Norwich Avenue
Cochester, CT 06418

Alan F. Enslen, Esq.
Maynard, Cooper & Gale, P.C.
AmSouth/Harbert Plaza
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203-2618

James Parkman, Esq.
Parkman Adams & White LLP
505 North 20th Street, Suite 825
Birmingham, AL  35203


**__s/ Jay M. Ezelle_____**
**OF COUNSEL**

## Notice Regarding Attachments

The Appendices that are intended as an attachment to UBS's Petition for Writ of Mandamus, which was e-filed on March 24, 2008, is of such size, content, or form that it could not be scanned and e-filed and is therefore being filed with clerk of the Alabama Supreme Court in its original form.

I certify that a copy of this notice and the attachments will this date be served on counsel for each party to the case.

Dated this 24th day of March, 2008.

__s/ Jay M. Ezelle_____
**OF COUNSEL**

34