LEXSEE 2008 N.Y. MISC. LEXIS 744

[*1] **Israel Discount Bank of New York, IDB Factors Division, Plaintiff, against NCC Sportswear, Corp., Robert P. Cesaria, and Charles S. Sobel, Defendants. Charles S. Sobel, Third Party Plaintiff Saul Langer, Oliviero D. Capacchione and Milla Nussenbaum, Third Party Defendants.**

603912/06

SUPREME COURT OF NEW YORK, NEW YORK COUNTY

*2008 NY Slip Op 50375U*; *2008 N.Y. Misc. LEXIS 744*

**February 21, 2008, Decided**

**NOTICE:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**COUNSEL:** [**1] For Plaintiff and Third-Party Defendant, Saul Langer: SILVERBERG STONEHILL GOLDSMITH & HABER, P.C., BY: KENNETH R. SCHACHTER, ESQ., New York, NY.

For Defendants and Third-Party Defendants: WILENTZ, GOLDMAN & SPITZER, BY: JAMES E. TONREY, JR., ESQ., Woodbridge, NJ; PRYOR & MANDELUP, L.L.P., BY: RANDOLPH E. WHITE, ESQ., Westbury, NY.

**JUDGES:** Bernard J. Fried, J.

**OPINION BY:** Bernard J. Fried

**OPINION**

Bernard J. Fried, J.

Motion sequence numbers 003 and 005 are consolidated for disposition.

In this action to, *inter alia,* to collect money due under a personal guaranty executed by defendant Charles S. Sobel ("Sobel") in favor of plaintiff Israel Discount Bank of New York, IDB Factors Division ("IDB"), moves pursuant to *CPLR 3212* for summary judgment on its fourth and seventh causes of action and to dismiss Sobel's counterclaims against it. In addition, third party defendant Saul Langer ("Langer") moves pursuant to *CPLR 3212* for summary judgment dismissing the third party complaint against him. (Motion sequence 005)

In motion sequence 003, third party defendant Oliviero D. Capacchione ("Capacchione") moves pursuant to *CPLR 3211(a)(7)* and *(8)*; *CPLR 1007*; *CPLR 306-b* and *CPLR 3016(b)* to dismiss the third party complaint as against [**2] him. Sobel cross moves pursuant to *CPLR 306-b* for an extension of time, *nunc pro tunc,* to serve Capacchione with the summons and third party complaint and for leave to file an amended third party complaint.

BACKGROUND

A. *Complaint*

The complaint alleges that in September, 2000, IDB and defendant NCC Sportswear Inc. ("NCC") entered into a factoring agreement whereby IDB agreed to make loans and advances to NCC against IDB's purchase of approved accounts receivable from NCC. Pursuant to Section 13.3 of the factoring agreement, NCC represented and warranted that every receivable assigned to IDB represented a *bona fide* sale; that NCC's customer's had accepted the goods reflected in the invoices and that the receivable reflected the sums due and owing from the customer according to the invoice. (Complaint, Ex. A [1])

[1] The complaint is attached as Exhibit 1 to the Notice of Motion.

In connection with the factoring agreement, on

Case 1:07-cv-08490-LAP   Document 24-4   Filed 03/25/2008   Page 2 of 6

Page 2
2008 NY Slip Op 50375U, *1; 2008 N.Y. Misc. LEXIS 744, **2

August 14, 2002, Sobel, who is described in the complaint as an officer of NCC (Complaint, para. 7), executed a personal guaranty whereby he guaranteed NCC's obligations to IDB up to the amount of $ 500,000. The guaranty states in pertinent part:

> This guaranty is absolute, [**3] unconditional and continuing regardless of the validity, regularity or enforceability of any of the Obligations or the fact that a security interest or lien on any collateral or security therefor may not be enforceable by you or may otherwise be [*2] subject to equities or defenses or prior claims in favor of others or may be invalid or defective in any way and for any reason, including any action, or failure to act on your part.
>
> This Guaranty embodies the whole agreement of the parties and may not be modified except in writing, and no course of dealing between you and any of the undersigned shall be effective to change or modify this Guaranty.

(Complaint, Ex. C, pp. 2 & 3)

Plaintiff alleges that from January, 2006 through June, 2006, defendants assigned IDB over one million dollars ($ 1,000,000) of fraudulent receivables for goods that were never shipped to customers; that the defendants knew that the receivables were fraudulent and that it submitted the fraudulent receivables to induce IDB to make loans and cash advances to NCC. The complaint further alleges that IDB did, in fact, make those advances and now NCC owes IDB almost $ 2,350,000, no part of which has been paid despite due demand. [**4] (Complaint, paras. 13-19)

The complaint states seven causes of action. The first and second causes of action state claims against NCC for breach of contract and account stated. The third cause of action states a claim against defendant Robert Cesaria ("Cesaria"), NCC's president, based on his personal guaranty and the fourth cause of action states a claim against Sobel on his identical personal guaranty. The fifth cause of action alleges fraud and the sixth and seventh causes of action seek attorney's fees. [2]

  2  In June, 2007, this court granted IDB's motion for a default judgment against defendants NCC and Cesaria on the first and second causes of action for breach of contract and account stated and against Cesaria alone on the third cause of action based on his guaranty. The fourth, fifth, sixth and seventh causes of action were severed and continued. IDB states that no part of the judgment has been satisfied.

B. *Third Party Complaint*

Sobel answered the complaint and asserted counterclaims against plaintiff, cross claims against his co-defendants, NCC and Cesaria, and third party claims against Saul Langer, a vice president at IDB who managed the NCC account, Capacchione, a former NCC [**5] officer, and Milla Nussenbaum, NCC's former bookkeeper.

Sobel, a self described experienced businessman, alleges that in or about July, 2001, based on assurances from Cesaria and Langer that NCC had a rosy future and with the expectation that Sobel would receive a future equity interest in NCC, he joined the company as a salesman and made a $ 200,000 cash contribution to NCC. [3] (White Aff., Ex. E, para. 13-15) [*3] Sobel claims that in 2002, he and others in NCC learned that Capacchione and Nussenbaum were allegedly involved in a false check writing scheme [4] (White Aff., Ex. E, para. 19) and that he and Cesaria brought Capaccione's alleged conduct to Langer's attention but that Langer responded that his only concern was that NCC keep making sales. (White Aff., Ex. E., para. 21)

  3  Although Sobel now alleges that he was merely an NCC employee, in an earlier lawsuit brought by NCC, Sobel and Cesaria against Capacchoine and Nussenbaum (then denominated as "Nudelman"), he alleged that he owned one-third of the outstanding shares of NCC and was a director and officer of the company.
  4  That prior lawsuit, Index No. 603271/03, against Capacchione and Nussenbaum based on the alleged check kiting scheme [**6] was ultimately dismissed with prejudice due, in part, to Sobel and Cesaria's failure to provide relevant and material disclosure, including disclosure regarding their own financial dealings.

Thereafter, Sobel contributed an additional $ 200,000 to the company and he states that IDB required

Case 1:07-cv-08490-LAP    Document 24-4    Filed 03/25/2008    Page 3 of 6

Page 3
2008 NY Slip Op 50375U, *3; 2008 N.Y. Misc. LEXIS 744, **6

him to sign a personal guarantee even though he was never provided with a copy of the factoring agreement or any financial information about NCC. He alleges that Langer insisted that he sign the guaranty and that Langer stated that the company was fully solvent and there was nothing to worry about. (White Aff., Ex. E, para. 23) In addition, Sobel claims that, at Langer's express direction, NCC booked sales and then reported the sales to IDB even though the goods had not been shipped. Sobel claims that Langer had a compensation agreement with IDB that tied his compensation to the number of sales made by NCC and that Langer would receive compensation from IDB for sales booked whether or not they were shipped. (White Aff., Ex. E, paras. 25, 28)

Sobel alleges that in late 2003 or early 2004 he made an additional, unspecified, capital contribution to NCC but that in mid-2006 IDB terminated its relationship [**7] with NCC and because of this, NCC was unable to continue in business. He also claims that a day or two after IDB terminated its business relationship with NCC, IDB fired Langer. (White Aff., Ex. E, paras 30-33)

The third party complaint states causes of action against Capacchione, IDB and Langer for fraudulently inducing Sobel to execute the guaranty and invest in the company (1st cause of action); recission of the guaranty (2nd cause of action); breach of the implied contract that Sobel would be made an equity shareholder (3rd cause of action) and breach of an implied covenant of good faith and fair dealing (4th cause of action). In addition, it states a cause of action against IDB and Langer for unjust enrichment and a cause of action against IDB for negligent hiring and/or supervision.

*CAPACCHIONE'S MOTION TO DISMISS THE THIRD PARTY COMPLAINT AND SOBEL'S CROSS MOTION* (003)

Capacchione's motion to dismiss the third party complaint against him is granted and Sobel's cross motion is denied.

It is well settled that on a motion addressed to the sufficiency of the pleadings, the court [*4] must accept every factual allegation as true, and liberally construe the allegations in a light most favorable [**8] to the pleading party. (*Guggenheimer v. Ginzburg, 43 NY2d 268, 372 N.E.2d 17, 401 N.Y.S.2d 182 [1977]*; *see also CPLR 3211[a][7]*). "We . . . determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v. Martinez, 84 NY2d 83, 87-88, 638 N.E.2d 511, 614 N.Y.S.2d 972 [1994])* "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law.'" (*511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 NY2d 144, 151-152, 773 N.E.2d 496, 746 N.Y.S.2d 131 [2002]*[internal citations omitted]) In assessing a motion under *CPLR 3211(a)(7)* the court may freely consider affidavits submitted to remedy any defects in the complaint. (*Rovello v. Orofino Realty, 40 NY2d 633, 635, 357 N.E.2d 970, 389 N.Y.S.2d 314* [198?])

On the other hand, while factual allegations contained in a complaint should be accorded a "favorable inference", bare legal conclusions and inherently incredible facts are not entitled to preferential consideration. (*Sud v. Sud, 211 AD2d 423, 424, 621 N.Y.S.2d 37 [1st Dept 1995])*. Moreover, notwithstanding the lenient standard for reviewing the sufficiency of a complaint under *CPLR 3211*, in order to withstand dismissal, each element of a claim of fraud must be plead with particularity. (*CPLR 3016(b)*; *see, Brown v. Wolf Group Integrated Communications, Ltd., 23 AD3d 239, 806 N.Y.S.2d 9 [1st Dept 2005])*

The [**9] elements of a cause of action for fraud in the inducement are a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely on it, justifiable reliance and damages. (*Lama Holdings Co. v. Smith Barney Inc., 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 [1996])*.

In this case, the complaint fails to allege that Capacchione knowingly made any misrepresentations of material fact for the purpose of inducing Sobel to sign the guarantee. In order to cure this deficiency, Sobel submits an affidavit in which he states that on several occasions Capacchione told him, "that NCC was doing well financially and that I should contribute cash to the company." He further states that those statements were false and that he relied on those statements to his detriment when he contributed more than $ 500,000 to NCC. These allegations are insufficient to state a cause of action for fraudulent inducement to enter into the guaranty because nowhere in his affidavit does Sobel state that Capacchione made a representation that Sobel relied on when he signed the guaranty or that Capacchione's statements induced him to enter into the

Case 1:07-cv-08490-LAP    Document 24-4    Filed 03/25/2008    Page 4 of 6

Page 4

2008 NY Slip Op 50375U, *4; 2008 N.Y. Misc. LEXIS 744, **9

guaranty. [**10] Moreover, if Sobel is also alleging, in his first cause of action, that Capacchione fraudulently induced him to make cash contributions to NCC, then Capacchione's alleged statement that the company was doing well financially amounts to no more than an opinion, and is not actionable as fraud. (*See, Jacobs v. Lewis, 261 AD2d 127, 127-128, 689 N.Y.S.2d 468 [1st Dept 1999]* citing *DH Cattle Holdings, Co. v. Smith, 195 AD2d 202, 208, 607 N.Y.S.2d 227 [1st Dept 1994]*[statement by agent that it was a "safe investment" is not an actionable statement of fact, but merely opinion or puffery]; *Chase Investments Ltd. v. Kent, 256 AD2d 298, 681 N.Y.S.2d 319 [2nd Dept 1998]*[a representation of opinion will not sustain an action for fraud]).

The claim for recission of Sobel's personal guaranty against Capacchione fails to state a cause of action because Capacchione is not a party to that guaranty and Sobel does not deny that Capacchione was no longer associated with NCC when Sobel executed the guaranty in favor of IDB. (*McGarry v. Miller, 158 A.D.2d 327, 550 N.Y.S.2d 896 [1st Dept 1990]*)

Moreover, Sobel has failed to state a claim for breach of an implied contract and breach of the implied covenant of good faith and fair dealing fail as against Capacchione because Sobel's [**11] [*5] statement that NCC promised that Sobel would be made an equity shareholder in exchange for his capital contributions and employment do not implicate Capacchione individually. (*See, e.g. Pac. Carlton Dev. Corp. v. 752 Pac., LLC, 17 Misc. 3d 1102A, 2007 WL 2781874 at *4 [Sup. Ct. Kings County]*[so long as corporate officers do not purport to bind themselves individually under contracts, they may not be held personally liable for the obligations of the corporation]) In addition, Sobel's allegations of breach of an agreement to make him an equity partner are directly contradicted by the complaint that Sobel brought against Capacchione in 2003 wherein Sobel alleged that he was a shareholder and officer and director of NCC. (Goldsmith Aff., Ex. A, para 4)

Alternatively, the third party complaint must be dismissed as against Capacchione pursuant to *CPLR 1007* which states, in pertinent part, "a defendant may proceed against a person not a party who is or may be liable to that defendant for all or part of plaintiff's claim against that defendant . . . ." Where no derivative liability is alleged, the third party complaint is defective and should be dismissed. (*See, Bernardo v. Fordham Hoisting Equipment Co., 6 AD2d 619, 620, 180 N.Y.S.2d 525 [1st Dept 1958]*[third [**12] party complaint dismissed where it failed to allege any basis for holding third party defendant liable, derivatively, for the defendant's alleged tortious conduct]; *Whalen v. 50 Sutton Place Owners, Inc., 276 AD2d 356, 714 N.Y.S.2d 269 [1st Dept 2000]*; see also, *Williams v. New York City Transit Authority, 9 AD3d 308, 780 N.Y.S.2d 580 [1st Dept 2004]*)

In this case, IDB's claim against Sobel is for breach of Sobel's personal guaranty. The third party complaint fails to allege any basis under which Capacchione would be derivatively liable for IDB's claims against Sobel based on the guaranty and thus, the third party complaint against Capacchione must be dismissed on that basis.

The cross motion to amend the pleading is denied as Sobel has failed to come forward with a factual or legal basis to support his request for an amendment and he has failed to submit a copy of the proposed pleading for the court's review. [5] (*See,* 84 NY Jur 2d Pleading Section 264 ["The notice must be accompanied by a copy of the proposed amended pleading. A motion to amend the pleading which does not contain a copy of the proposed amendment is fatally deficient . . . ."])

> [5] Cappachione also moved to dismiss on procedural grounds alleging that Sobel [**13] failed to serve him with the third party summons and complaint and prior pleadings in the action within 120 days after filing the third party summons and complaint with the County Clerk. Because the court has granted the motion on the substantive grounds discussed above, it need not address these arguments.

*IDB and LANGER'S MOTION FOR SUMMARY JUDGMENT* (005)

On a motion for summary judgment, the proponent of the motion must make a *prima facie* showing of entitlement to judgment as a matter of law by advancing sufficient "evidentiary proof in admissible form" to demonstrate the absence of any material issues of fact. (*Winegrad v. New York Univ. Med. Ctr., 64 NY2d 851, 853, 476 N.E.2d 642, 487 N.Y.S.2d 316 [1985]*; *Zuckerman v. City of New York, 49 NY2d 557, 562, 404 N.E.2d 718, 427 N.Y.S.2d 595 [1980]*) The motion must be supported by "affidavit [from a person having [*6] knowledge of the facts], by a copy of the pleadings and by other available proof, such as depositions." (*CPLR*

Case 1:07-cv-08490-LAP   Document 24-4   Filed 03/25/2008   Page 5 of 6

Page 5
2008 NY Slip Op 50375U, *6; 2008 N.Y. Misc. LEXIS 744, **13

*3212[b]*)

To defeat a motion for summary judgment, the opposing party must show facts sufficient to require trial of any issue of fact (*CPLR 3212[b]*). Thus, where the proponent of the motion makes a *prima facie* showing of entitlement to summary judgment, the burden shifts to the party [**14] opposing the motion to demonstrate, by admissible evidence, the existence of a factual issue requiring a trial of the action, or tender an acceptable excuse for the failure to do so. (*Vermette v. Kenworth Truck Co., 68 NY2d 714, 497 N.E.2d 680, 506 N.Y.S.2d 313 (1986)*; *Zuckerman v. City of New York, supra at 560*)

It is well settled that on a motion for summary judgment to enforce a written guaranty, all the creditor needs to prove is: 1) an absolute and unconditional guaranty; 2) the underlying debt and 3) the guarantor's failure to perform under the guaranty. (*City of New York v. Clarose Cinema Corp., 256 AD2d 69, 681 N.Y.S.2d 251 [1st Dept 1998]*) It is equally well settled that where the language of a guaranty "specifically provides that it was absolute, unconditional, unlimited and could not be altered or discharged orally," the defendant is foreclosed, as a matter of law, from defenses and counterclaims based on fraud. (*Citibank, N.A. v. Plapinger, 66 NY2d 90, 92, 485 N.E.2d 974, 495 N.Y.S.2d 309 [1985]*; *BNY Financial Corp. v. Clare, 172 AD2d 203, 568 N.Y.S.2d 65 [1st Dept 1991]*; *Kensington House Co. v. Oram, 293 AD2d 304, 739 N.Y.S.2d 572 [1st Dept 2002]*)

In *Citibank, N.A. v. Plapinger,* United Department Stores defaulted on its loan and Citibank sued defendant guarantors on their guaranty. The individual [**15] defendants asserted defenses based on, *inter alia,* fraud in the inducement, and counterclaims based on fraud and breach of contract. In that case, the Court of Appeals held that the disclaimer in the guaranty foreclosed consideration of the defenses and counterclaims, stating:

> Fraud in the inducement of a guarantee by corporate officers of the corporation's indebtedness is not a defense to an action on the guarantee when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee, or any other circumstances which might otherwise constitute a defense available to a guarantor with respect of the guarantee, those recitals being inconsistent with the guarantor's claim of reliance on an oral representation . . . .

(*Citibank, N.A. v. Plapinger, 66 NY2d at 92*)

In this case, Sobel's guaranty specifically states that it is "absolute, unconditional and continuing, regardless of the validity, regularity or enforceability of any of the Obligations" and that the guaranty "embodies the whole agreement of the parties and may not be modified except in writing, and no course of dealing between you and any of the undersigned shall [**16] be effective to change or modify this guaranty." Accordingly, because Sobel's guaranty is absolute and unconditional, his defenses and counterclaims based on fraud in the inducement will not lie.

Moreover, Sobel's argument that he received no consideration or benefit for the guaranty is without merit. In *Movado Group, Inc. v. Pressberg, 259 AD2d 371, 687 N.Y.S.2d 116 (1st Dept 1999)* the First Department held that "[a]n extension of credit is ample consideration for execution of a guaranty." Moreover, "it is axiomatic that the consideration which supports a principal [*7] obligation is sufficient to support a guaranty of that obligation." (*CMI II, LLC v. Interactive Brand Dev., Inc., 13 Misc. 3d 1214A, 824 N.Y.S.2d 753, 2006 WL 2770095 [Sup. Ct. NY County]* citing, *The Erie County Savings Bank v. Coit, 104 NY 532, 11 N.E. 54, 5 N.Y. St. 790 [1887])* Here, IDB's extension of credit to NCC is sufficient consideration for the guaranty.

Plaintiff has proven the existence of the guaranty and Sobel's failure to perform his obligations under that guaranty. In addition, in my June 12, 2007 decision and order, I determined that NCC is indebted to IDB in the sum certain amount of $ 1,927,343.44. Accordingly, plaintiff has also sufficiently proven the amount of the underlying debt. Therefore, [**17] summary judgment on the fourth cause of action in the complaint is granted and Sobel's counterclaims against IDB for fraud in the inducement, recission and "unjust enrichment based on fraud in the inducement" and his claims against Langer for fraud in the inducement, recission and "unjust enrichment based on fraud in the inducement" are dismissed.

Moreover, plaintiff's motion for summary judgment on its seventh cause of action for attorney's fees is

Case 1:07-cv-08490-LAP    Document 24-4    Filed 03/25/2008    Page 6 of 6

Page 6

2008 NY Slip Op 50375U, *7; 2008 N.Y. Misc. LEXIS 744, **17

granted as Sobel's guaranty provides:

> [Sobel] agrees to pay to [IDB] on demand the amount of all expenses including reasonable attorney's fees incurred by [IDB] in collecting or attempting to collect any of [NCC's] obligations to [IDB], whether from [NCC], or from any other obligor, or from the undersigned

(Complaint, Ex. C)

As to Sobel's remaining counterclaims against IDB and third party claims against Langer, the third and fourth contract counterclaims against IDB and those same claims against Langer are dismissed because neither IDB nor Langer were parties to Sobel's alleged contract with NCC and Sobel's conclusory allegations that Langer somehow controlled IDB are unsupported by evidence sufficient to raise a question of fact. (*See, e.g.* [**18] *McGarry v. Miller, 158 AD2d at 328*) Moreover, the fifth counterclaim against IDB based on negligent hiring and/or supervision of Langer is dismissed as Sobel has failed to plead or prove that IDB knew of Langer's propensity to commit the alleged tortious acts or that IDB should have known of Langer's propensity had it conducted an adequate hiring procedure. (*See, Naegele v. Archdiocese of New York, 39 AD3d 270, 833 N.Y.S.2d 79 [1st Dept 2007]*

Accordingly, it is ORDERED that as to Motion Sequence 003, Oliviero's motion to dismiss the third party complaint against him is granted; and it is further

ORDERED that Charles S. Sobel's cross motion is denied; and it is further

ORDERED as to Motion Sequence 005, plaintiff's motion for summary judgment on its fourth cause of action against Charles Sobel is granted as to liability and granted as to damages in the sum certain amount of $500,000; and it is further

ORDERED with regard to plaintiff's request for pre-judgment interest running from November 7, 2006, that pursuant to *CPLR 4212* and *4317*, this matter is referred to the Special Referee to hear and report with recommendations as to the amount of interest, if any, due IDB, except that, in the event of and upon [**19] the filing of a stipulation by the parties, as permitted by *CPLR 4317*, the Special Referee or another person appointed by the parties to serve as referee [*8] shall determine the aforesaid issue; and it is further

ORDERED that plaintiff's motion for summary judgment on liability on the seventh cause of action for attorney's fees against Charles S. Sobel is granted; and it is further

ORDERED that the issue of damages on the seventh cause of action for attorney's fees is referred to a special referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties, as permitted by *CPLR Section 4317*, the Special Referee, or another person designated by the parties to serve as referee shall determine the aforesaid issue; and it is further

ORDERED that the remaining causes of action in the complaint are severed and continued; and it is further

ORDERED that the branch of plaintiff's motion seeking summary judgment dismissing Charles S. Sobel's counterclaims against IDB is granted; and it is further

ORDERED that the branch of the motion seeking summary judgment dismissing the third party complaint against Saul Langer is granted; and it is further

ORDERED [**20] that a copy of this order with notice of entry shall be served on the Special Referee Clerk (Room 119) to arrange a date for the reference to the Special Referee.

This decision constitutes the order and judgment of the court.

DATE February 21, 2008